UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**INTEGRATED HEALTH SERVICES,<br>INC.,** *et al.*,<br><br>Debtors. | CHAPTER 11<br><br><br>**CASE NO. 00-389 (MFW)**<br>**(Jointly Administered)** |
| **IHS LIQUIDATING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ACE INDEMNITY INSURANCE,<br>COMPANY, f/k/a INDEMNITY,<br>INSURANCE COMPANY OF NORTH**<br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br>**ADVERSARY NO. 05-51318** |

**MOTION OF DEFENDANT FOR WITHDRAWAL**
**OF REFERENCE PURSUANT TO 28 U.S.C. § 157(d)**

Defendant, ACE Indemnity Insurance Company, f/k/a Indemnity Insurance Company of North America ("**IICNA**"), by its attorneys, moves the United States District Court for the District of Delaware (the "**District Court**") for the entry of an order pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Del. Bankr. L.R. 5011-1,[1] withdrawing the reference with respect to this adversary proceeding, as follows:

---

[1] Pursuant to Del. Bankr. L.R. 5011-1:

> A motion to withdraw the reference of a matter or proceeding shall be filed with the Clerk. The movant shall concurrently file with the Clerk a motion for a determination by the Bankruptcy Court with respect to whether the matter or proceeding is core or non-core. All briefing shall be governed by the District Court Rules.

### Jurisdiction And Venue

1.     The District Court has jurisdiction over this non-core matter and this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

### Background

**A.     IHS' Bankruptcy Case**

2.     Integrated Health Services, Inc. ("**IHS**"), along with its various affiliates, commenced Chapter 11 cases on February 2, 2000 and became debtors and debtors-in-possession in the above-captioned, jointly-administered case.

3.     By Findings Of Fact, Conclusions Of Law, And Order Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code dated May 12, 2003 (the "**Confirmation Order**"), the Bankruptcy Court confirmed the Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code, dated March 13, 2003 (the "**Plan**").

4.     IICNA had filed objections to confirmation of the Plan [Doc. No. 9349] because, *inter alia*, it prejudiced IICNA's rights under the 1999 IICNA Policy and 2000 IICNA Policy (as defined below).  IICNA's objections to the Plan were resolved by the inclusion in the Confirmation Order of the following reservation of IICNA's rights:[1]

> (e)     With respect to the Objection filed by Pacific Employers Insurance Company et al., the Debtors have agreed as follows: Notwithstanding any other term or provision in the Plan, this Order (i) is without prejudice to the rights, claims and/or defenses of Pacific Employers Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance

---

[1] Contemporaneously herewith, IICNA has filed a motion for determination whether the proceeding is core or non-core.

> Company, formerly known as California Union Insurance Co.), Indemnity Insurance Company of North America and ACE American Insurance Co. (collectively, "Insurers") under the Debtors' insurance policies with the Insurers (the "Policies") and/or the reservation of rights by Insurers as to any issues relating to the Policies (as such issues are set forth in Insurers' Objections to Confirmation [Doc. No. 9349]; provided, however, that the Insurers and the Debtors agree that to the extent section 365 of the Bankruptcy Code is applicable, nothing in the Plan or this Order shall be deemed to constitute a rejection of the Policies under section 365 of the Bankruptcy Code; (ii) confirms that all of the terms, conditions, limitations and/or exclusions contained in the Policies shall remain in full force and effect; (iii) confirms that the Debtors and the Reorganized Debtors shall remain as the insureds under the Policies, and the Debtors, the Reorganized Debtors and the Insurers shall remain bound by all of the terms, conditions, limitations and/or exclusions contained in the Policies; (iv) confirms that the Policies, to the extent they so provide, shall not be assigned by the Debtors or the Reorganized Debtors without Insurers' express written consent; (v) acknowledges that nothing in the Plan shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Policies; and **(vi) is without prejudice to any of the Insurers' or the Debtors' (or the Reorganized Debtors', if applicable) rights and/or defenses in any pending or subsequent litigation in which Insurers or the Reorganized Debtors may seek a declaration regarding the nature and/or extent of any coverage under the Policies.**

Confirmation Order, ¶35(e) (emphasis added).

5.   The Effective Date of the Plan was September 9, 2003.

B.   **The 1999 IICNA Policy**

6.   IICNA issued an Excess Liability Catastrophe Policy, No. XLXG19524139 to IHS for the policy period January 1, 1999 to January 1, 2000, with limits of liability insurance of $50,000,000 for each occurrence, and $50,000,000 in the aggregate, in excess of underlying insurance limits of $50,000,000 each occurrence/$50,000,000 aggregate which in turn is excess of underlying insurance or retained limit (the "**1999 IICNA Policy**").

-3-

7.  In connection with the 1999 IICNA Policy, IICNA has been placed on notice by IHS and/or its underlying insurers that the aggregate coverage limits of the underlying insurance to the 1999 IICNA Policy will soon be exhausted.

## C.  The 2000 IICNA Policy

8.  IICNA issued an Excess Liability Catastrophe Policy, No. XLXG20108034 to IHS for the policy period January 1, 2000 to January 1, 2001, with limits of liability insurance of $50,000,000 for each occurrence, and $50,000,000 in the aggregate, in excess of underlying insurance limits of $50,000,000 each occurrence/$50,000,000 aggregate (where applicable) (the "**2000 IICNA Policy**").

9.  The 2000 IICNA Policy identifies the following policies of insurance issued to IHS as underlying coverage:

> A.  Policy No. BE357-43-84 issued by National Union Fire Insurance Company of Pittsburgh, PA, with effective policy dates from January 1, 2000 to January 1, 2001 (hereinafter "the AIG Policy"). The AIG Policy provides limits of coverage in the amount of $25,000,000 each occurrence/$25,000,000 general aggregate. The AIG Policy also provides that there is also a corporate-wide self-insured retention ("SIR") of $2,000,000 per occurrence/$14,000,000 aggregate.
>
> B.  Policy No. IXG-347714C issued by General Star Indemnity Company, for the policy period commencing January 1, 2000 to January 1, 2001 (hereinafter "the Gen Star Policy"). The Gen Star Policy affords coverage limits in the amount of $25,000,000 per occurrence/$25,000,000 aggregate (where applicable) in excess of primary insurance or self-insured retention.

10.  IICNA has been placed on notice by IHS and/or its underlying insurers that the aggregate coverage limits of the underlying coverage have been exhausted.

11.  IICNA has the obligation to defend and, where applicable, indemnify covered claims that are outstanding against IHS pursuant to the terms of the 2000 IICNA Policy.

-4-

**D.      The IICNA Adversary Proceeding**

12.     On August 15, 2003, IICNA filed a complaint commencing an adversary proceeding against IHS and Abe Briarwood Corp. (the "**IICNA Adversary**"), which seeks:

>   (i)     a declaration that neither Abe Briarwood Corp. ("**Briarwood**"), the IHS Long Term Care Subsidiary ("**LTC Subsidiary**") nor IHS Therapy Subsidiary ("**Therapy Subsidiary**") are insureds, or have any rights to coverage, under the 2000 IICNA Policy.  Alternatively, to the extent Briarwood, the LTC Subsidiary and/or the Therapy Subsidiary are deemed to be insureds under the 2000 IICNA Policy, that they are subject to the same terms, conditions and/or defenses to coverage as was IHS;
>
>   (ii)    a declaration that IICNA is entitled to defend and/or settle claims subject to a full and complete reservation of its rights to disclaim or further limit coverage under the 2000 IICNA Policy in the future based upon, *inter alia*:  late notice by the insured; lack of coverage in the relevant policy period; lack or improper exhaustion of coverage pursuant to the terms of the Underlying Insurance; or for any other reason pursuant to the terms and conditions of the 2000 IICNA Policy or applicable law.  All such rights, terms, conditions and/or policy defenses under the 2000 IICNA Policy that IICNA has asserted or will assert are specifically reserved and preserved; and
>
>   (iii)   such other and further relief as may be just and proper.

13.     By order entered October 14, 2004 (DI 5), the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") held the subject matter of the IICNA Adversary is non-core. On December 2, 2004 (DI 7), this Court entered an order withdrawing the reference to the Bankruptcy Court with respect to the IICNA Adversary.

14.     A motion to amend the complaint in the IICNA Adversary is pending before this Court. By such amendment, IICNA seeks to include another count in its complaint seeking, *inter alia*, a declaration that unless and until the limits of IHS' underlying insurance, "have been exhausted by the actual payment of claims against IHS during the relevant policy period, IICNA

owes no duty under its 1999 IICNA Policy to indemnify and defend IHS for the 1999 Claims or any other claims otherwise occurring within the relevant policy period."

15. The complaint in the above-captioned adversary proceeding by IHS Liquidating LLC (the "**Liquidating Adversary**") seeks:

> (i) a declaration that the 1999 IICNA Policy "obligates IICNA to pay covered professional liability claims which have been liquidated in amount by judgment or settlement to the extent that such liquidated claims are in excess of $50 million per occurrence or $50 million in the aggregate, whether or not the applicable per occurrence or aggregate limit of the Debtors' primary insurance coverage has been paid.";
>
> (ii) compensatory damages for breach of the 1999 IICNA Policy; and
>
> (iii) Punitive damages for bad faith disclaimer of coverage under the 1999 IICNA Policy.

16. The relief sought in the Liquidating Adversary is therefore based upon a virtually identical factual basis and relies upon the same legal principles as the IICNA Adversary. In short, both the Liquidating Adversary and the IICNA Adversary are insurance coverage disputes with respect to the same insurance policies. Accordingly, for the same reasons the reference was withdrawn in the IICNA Adversary, so too should the reference be withdrawn in the Liquidating Adversary.

### Legal Standards For Withdrawal Of Reference

17. The United States district courts have original and exclusive jurisdiction of all cases under the Bankruptcy Code, as well as original, non-exclusive jurisdiction over all civil proceedings "arising under [the Bankruptcy Code]" or "arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(a)-(b). However, "[e]ach district court may provide that . . . any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall

be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Pursuant to 28 U.S.C. § 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

18.   Section 157(d) contemplates two types of withdrawal: permissive and mandatory. *See McMillan v. Trans World Airlines, Inc. (In re Trans World Airlines)*, 280 B.R. 806, 807 (D. Del. 2002). Withdrawal of the reference is mandatory when "resolution of that action necessitates consideration of Title 11 and non-Bankruptcy Code law which affects interstate commerce." *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 38 (D. Del. 1989). When mandatory withdrawal is unwarranted, permissive withdrawal may nonetheless be appropriate where "cause" is shown. *Id.* at 39. Because the Liquidating Adversary involves insurance coverage issues that arise exclusively under state law and independently of the Bankruptcy Code and other federal law, the factors for mandatory withdrawal are not present. Cause exists, however, for permissive withdrawal.

19.   Although Congress provided no statutory definition of "cause," Third Circuit courts consider the following factors when conducting a discretionary withdrawal analysis:

> [1] whether the claim is a core bankruptcy proceeding or whether it is non-core; [2] whether the parties have requested a jury trial; and [3] whether withdrawal would serve judicial economy, such as the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 913 (D. Del. 1996). *See also In re Pruitt*, 190 F.2d 1160, 1168 (3d Cir. 1990) (district court failed to evaluate cause for withdrawal, which did not exist under facts of proceeding). Here, the relevant factors support withdrawal of the reference.

A. **The Non-Core Nature of This Adversary Proceeding Strongly Supports Withdrawal of the Reference**

20. The threshold step in the analysis, which is to be performed by the Bankruptcy Court, is to classify the Liquidating Adversary as either core or non-core. *See NDEP Corp.*, 203 B.R. at 908. As stated in its motion pursuant to Del. Bankr. L.R. 5011-1 for determination that this adversary proceeding is non-core, attached hereto as Exhibit "A" and incorporated herein by reference, IICNA contends that the Liquidating Adversary, which seeks to determine insurance coverage under pre-petition insurance policies, is plainly non-core.

B. **Additional Factors Support Withdrawal of the Reference**

   1. **Withdrawal of the Reference Promotes Judicial Economy and Efficiency**

21. Additional considerations supporting withdrawal of the reference include the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, minimizing delay and costs to the parties, and expediting the bankruptcy process. *See Pruitt*, 910 F.2d at 1168; NDEP *Corp.*, 203 B.R. at 908.

22. When deciding whether to withdraw the reference, courts recognize that such decisions frequently hinge more on pragmatic concerns about judicial efficiency than strictly legal determinations. *See Travelers Ins. Co. v. Goldberg,* 135 B.R. 788, 792 (D. Md. 1992). In *Goldberg*, the court declined to refer the case to the bankruptcy court in view of the inescapable conclusion that the district court would "in all probability be required either to make *de novo* factual determinations or to hold a jury trial in the first instance." 135 B.R. at 792; *see also*

*Travelers Indem. Co. v. Babcock & Wilcox Co.*, No. CIV.A. 01-3387, 2002 WL 100625, at *4 (E.D. La. Jan. 23, 2002) (granting motion to withdraw the reference and noting that "[t]he issues before the bankruptcy court are non-core issues, with which the bankruptcy court has no greater familiarity than does [the district court].").

23. Similarly, in this action, considerations of judicial efficiency and costs to the parties weigh heavily in favor of having the Liquidating Adversary resolved in the District Court. Any delay in withdrawing the reference will only add an additional layer of judicial review and require duplication of effort. Not only will judicial resources be wasted, but the parties will be forced to expend unnecessary sums on duplicative activity. What will otherwise involve the two-step process described above can be resolved in a single step if the District Court resolves the matter in the first instance. Moreover, given the common factual underpinnings and legal theories between the Liquidating Adversary and the IICNA Adversary, which is pending before this Court, withdrawing the reference as to the Liquidating Adversary so that it can proceed simultaneously with the IICNA Adversary will eliminate any risk of conflicting rulings and duplication of efforts. In light of this, withdrawing the reference will allow for the most expeditious resolution of the Liquidating Adversary.

24. Considerations of judicial economy and efficiency favor withdrawal of the reference where the action is non-core regardless of whether or not the parties have requested a jury trial. *See NDEP Corp.*, 203 B.R. 913 (stating that, even absent right to jury trial, court would nonetheless have withdrawn the reference because case involved contract, tort, and restitution claims "somewhat removed from the bankruptcy court's realm of expertise"); *In re G-I Holdings, Inc.*, 295 B.R. 211, 218 (D.N.J. 2003) (court need not determine viability of defendants' jury trial right claims in proceeding where non-core issues predominate; issues

DOCS_DE 110425v2

surrounding jury trial claim as well as state law dispute more appropriately and economically decided in district court); *In re Pelullo*, 1997 U.S. Dist. LEXIS 12324, at *5 (E.D.Pa. Aug. 15, 1997) ("Since the bankruptcy court may not enter a final order or judgment in a non-core proceeding without the consent of the parties, keeping the proceeding in the bankruptcy court wastes judicial resources because the district court must review the bankruptcy court's proposed findings of fact and conclusions of law *de novo*.").

25. Accordingly, even if the parties elect to waive their Seventh Amendment jury trial rights, permissive withdrawal is nevertheless appropriate in this non-core proceeding in the interest of judicial economy and expediting the bankruptcy process. Where, as here, the parties in a non-core proceeding have not consented to entry of final judgment by the bankruptcy court judge, this Court would have to review the Bankruptcy Court's findings and conclusion *de novo* in any event. *See* 28 U.S.C. § 157(c)(1). Therefore, considerations of judicial economy favor withdrawal of the reference, especially at this early stage of the proceeding. *Hatzel & Buehler*, 107 B.R. at 40 (D. Del. 1989).

      **2.**    **Withdrawal of the Reference Promotes Convenience and Expedites the Bankruptcy Process**

26. The reference also may be appropriately withdrawn where the proceeding at issue is sufficiently different from the kinds of cases that typically arise in the course of bankruptcy administration. Where, for example, extensive discovery or expert testimony may be required, or a lengthy or complex trial is anticipated, withdrawal of the reference has been held to be appropriate. *See, e.g., Complete Management Inc. v. Arthur Andersen, LLP (In re Complete Management, Inc.)*, 02 Civ. 01736, 2002 U.S. Dist. LEXIS 18344, *12 (S.D.N.Y. Sept. 27, 2002). *See also G-I Holdings*, 295 B.R. at 217-18 (finding withdrawal serves the court's best interest by "adjudicating the non-bankruptcy dispute once, while the Bankruptcy Court continues

to administer the Chapter 11 reorganization and conduct other common bankruptcy proceedings."). *Cf. Miller v. Harlow Credit & Clearing Corp.*, Adv. No. 91-0702F, 1992 U.S. Dist. LEXIS 1823, *4-5 (E.D. Pa. Feb. 14, 1992) (noting that judicial economy might prove sufficient cause for withdrawal of even a core proceeding under certain circumstances).

### 3. Withdrawal of the Reference Promotes Uniformity in the Bankruptcy Process.

27. The Liquidating Adversary seeks relief similar to that sought in the IICNA Adversary already pending before this Court. Rather than having virtually identical litigation proceeding in both the Bankruptcy Court and this Court, withdrawing the reference with respect to the Liquidating Adversary so that it can proceed simultaneously in this Court with the IICNA Adversary would promote uniformity and avoid any risk of inconsistent rulings and duplication of efforts.

28. The other enumerated considerations — reducing forum shopping and confusion and fostering the economic use of debtors' and creditors' resources — either do not apply to the instant case or support withdrawal. Reducing forum shopping is not applicable here. If, however, the Liquidating Adversary was permitted to proceed in the Bankruptcy Court, even for pre-trial matters, this Court would still have to review the Bankruptcy Court's orders *de novo* without the benefit of having overseen the pre-trial stage of the proceeding, resulting in unnecessary duplication of effort. Accordingly, permissive withdrawal is appropriate because it fosters the economic use of the parties' resources as well as this Court's.

### Conclusion

28. Reference should be withdrawn with respect to the Liquidating Adversary Proceeding, which involves non-core, insurance-related claims arising exclusively under state law and entirely independent of the Bankruptcy Code. Considerations of judicial economy

likewise strongly favor withdrawal of the reference. Accordingly, IICNA requests that this Court enter an order withdrawing the reference with respect to the Liquidating Adversary, and for such other and further relief as is just.

Dated: May 13, 2005                                      **WHITE AND WILLIAMS LLP**


                                                         _____
                                                         Christian J. Singewald (No. 3542)
                                                         Marc S. Casarino (No. 3613)
                                                         824 N. Market Street , Suite 902
                                                         P.O. Box 709
                                                         Wilmington, DE 19899-0709
                                                         Telephone: (302) 467-4510
                                                         Telecopier: (302) 467-4547
                                                         singewaldc@whiteandwilliams.com

                                                                  **and**

                                                         Leonard P. Goldberger
                                                         Martha E. Johnston
                                                         (Members of the PA Bar)
                                                         1800 One Liberty Place
                                                         Philadelphia, PA   19103
                                                         Telephone:  (215) 864-7000
                                                         Telecopier: (215) 864-7123

                                                                  **and**

                                                         Francis J. Deasey, Esquire
                                                         Gerald J. Valentini, Esquire
                                                         DEASEY, MAHONEY & BENDER, LTD.
                                                         1800 John F. Kennedy Boulevard
                                                         Suite 1300
                                                         Philadelphia, PA   19103
                                                         Telephone:  (215) 587-9400
                                                         Telecopier: (215) 587-9456

                                                         **Attorneys for Indemnity Insurance**
                                                         Company of North America

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) CHAPTER 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) |
| Debtors. | ) CASE NO. 00-389 (MFW) <br> ) (Jointly Administered) |
| IHS LIQUIDATING LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| ACE INDEMNITY INSURANCE, COMPANY, f/k/a INDEMNITY, INSURANCE COMPANY OF NORTH | ) |
| Defendants. | ) ADVERSARY NO. 05-51318 |

### CERTIFICATE OF SERVICE

I, Marc S. Casarino, Esquire, certify that I am not less than 18 years of age, and that I caused service of the **Motion of Defendant for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d)** to be made on May 13, 2005, to the following:

| VIA HAND DELIVERY: | VIA FIRST CLASS MAIL: |
|---|---|
| Alfred Villoch, III, Esquire | Arthur Steinberg, Esquire |
| Young Conaway Stargatt & Taylor LLP | Ana M. Alfonso, Esquire |
| The Brandywine Building | Kaye Scholer LLP |
| 17th Floor | 425 Park Avenue |
| 1000 West Street | New York, NY 10022-3598 |
| Wilmington, DE 19801 | |

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: May 13, 2005        */s/ Marc S. Casarino*
                                             Marc S. Casarino (#3613)