**EXHIBIT C**

# Declarations
## Excess Liability Catastrophe Policy

CIGNA Property & Casualty 

**CIGNA**

| PRODUCER CODE | OFFICE | PREVIOUS POLICY NUMBER | |
|---|---|---|---|
| 228384 | New York | XLX G19524139 | |
| AUDIT FREQUENCY | PRODUCER | | |
| None | TRI CITY INSURANCE BROKERS INC | | |
| NAMED INSURED IS: | BUSINESS OF INSURED | | PIIC |
| Corporation | On File With Company | | 8093 |

Policy Number: XLX G19545507

Policy Period: From 01/01/1999 to 01/01/2000
12:01 A.M. Standard Time at the Address of the Named Insured as stated herein

| NAMED INSURED AND ADDRESS | COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BELOW |
|---|---|
| INTEGRATED HEALTH SERVICES, INC.<br>10065 RED RUN BOULEVARD<br>OWINGS MILLS, MD 21117 | Indemnity Insurance Company of North America |

### Limits of Insurance
$ 50,000,000   Each Occurrence        $ 50,000,000   Aggregate

### Underlying Insurance Limits
$ 50,000,000   Each Occurrence        $ 50,000,000   Aggregate

### Premium
Basis of Premium: Flat Charge.

$ 45,000   Advance Premium        $ 45,000   Annual Minimum Premium

### Schedule of Underlying Insurance
First Policy of Underlying Insurance

Company Zurich Insurance Company
Policy Number  On file with Co.
Expiration Date  01/01/2000

Limits of Insurance
$ 50,000,000   Each Occurrence
$ 50,000,000   Aggregate

### Endorsements Attached to and forming a part of this Policy at inception:

CC-1K11A   Signature Endorsement
XS-1V24    Maryland Changes - Cancellation Non-Renewal & State Required Conditions

| DATE OF ISSUE | SIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 05/18/1999 | |

XS-9U59 (12/94)

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

*George D Mulligan*
GEORGE D. MULLIGAN, Secretary

*Dennis Kane*
DENNIS KANE, President

**BANKERS STANDARD FIRE AND MARINE COMPANY**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

**BANKERS STANDARD INSURANCE COMPANY**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

**CIGNA INDEMNITY INSURANCE COMPANY**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

**CIGNA INSURANCE COMPANY**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

**CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY**
900 Cottage Grove Road, Bloomfield, Connecticut 06002

**INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

**PACIFIC EMPLOYERS INSURANCE COMPANY**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

**CIGNA FIRE UNDERWRITERS INSURANCE COMPANY**
1601 Chestnut Street, Philadelphia, Pennsylvania 19192

*George D Mulligan*
GEORGE D. MULLIGAN, Secretary

*Richard C. Franklin*
RICHARD C. FRANKLIN, President

_____
Authorized Agent

CC-1K11a (5/96) Ptd. in U.S.A.

**MARYLAND CHANGES – CANCELLATION, NONRENEWAL AND STATE REQUIRED CONDITIONS**

| Name Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number | Policy Period TO | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY
EXCESS LIABILITY POLICY
EXCESS LIABILITY CATASTROPHE POLICY**

I. The following is added to **SECTION IV - CONDITIONS:**

NONRENEWAL

If we decide not to renew this Policy we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 45 days before the expiration date. Even if we do not comply with these terms, this Policy will terminate:

(1) On the expiration date, if:

    (a) You fail to perform any of your obligations in connection with the payment of premium for the Policy or the renewal of the Policy or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

    (b) We have indicated our willingness to renew this Policy to you or your representative;

    (c) You have notified us or our agent that you do not want to renew this Policy; or

(2) On the effective date of any other insurance policy issued as a replacement for any insurance afforded by this policy, with respect to insurance to which both policies apply.

Authorized Agent

XS-1V24 (1/95) Printed in U.S.A.

# Excess Liability Catastrophe Policy

CIGNA Property & Casualty



CIGNA

WE, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of UNDERLYING INSURANCE attached to this policy, and in return for the payment of the premium and subject to the terms, conditions, exclusions, and limits of insurance of this policy, agree with YOU as follows:

## SECTION I
## INSURING AGREEMENTS

### A. COVERAGE

WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy period and are insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

The Definitions, Terms, Conditions, Limitations, and Exclusions of the "first policy of UNDERLYING INSURANCE", in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

### B. LIMITS OF INSURANCE

The Limit of Insurance stated in the Declarations as applicable to "each OCCURRENCE" shall be the total limit of OUR liability for all covered damages sustained as the result of any one OCCURRENCE.

The Limit of Insurance stated in the Declarations as "aggregate" shall be the total limit of OUR liability for all covered damages sustained during each annual period of this policy; and for which any UNDERLYING INSURANCE provides coverage that is subject to an aggregate limit. If the UNDERLYING INSURANCE limit has been reduced or exhausted solely by reason of losses paid thereunder arising out of OCCURRENCES which take place during OUR policy period, then this policy shall:

1. In the event of reduction, pay the excess of the reduced underlying limit;
2. In the event of exhaustion continue in force as UNDERLYING INSURANCE.

The aggregate limit in this policy shall apply separately for each coverage as to which all underlying policies provide an aggregate limit.

### C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

1. DEFENSE PROVISIONS

   When insurance is available to YOU in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any occurrence which, in OUR opinion, may create liability on the part of US under the terms of this policy.

   We will assume charge of the settlement or defense of any SUIT brought against YOU to which this policy applies and to which no UNDERLYING INSURANCE applies because of the exhaustion of aggregate limits of insurance.

   If WE assume any right, opportunity or obligation, WE shall not be obligated to defend any SUIT after the applicable limits of this policy have been exhausted.

2. SUPPLEMENTAL PAYMENTS

   The only Supplemental Payments and expenses that WE shall pay under this policy are as follows:
   a. All expenses incurred by US;
   b. All interest on that part of any judgement which accrues after entry of the judgement and before WE have paid, offered to pay, or deposited in court that part of the judgement which does not exceed the limit of liability, and to which this policy applies;
   c. If all UNDERLYING INSURANCE pays pre-judgement interest, then WE will pay related pre-judgement interest awarded against YOU on that part of the judgement WE pay. If WE make an offer to pay the applicable limit of insurance, WE will not pay any pre-judgement interest based on that period of time after the offer.

3. Subject to all of the foregoing:
   a. If Defense and/or Supplemental payment expenses are included within the limit of insurance of any UNDERLYING INSURANCE, then any such expense payment WE make shall reduce the limit of insurance of this policy.

XS-4U19 (5/94)

Page 1 of 5

b. If none of the policies of UNDERLYING INSURANCE include Defense and/or Supplemental payment expenses within the limit of insurance, then any such expense payment WE make shall not reduce the limit of insurance of this policy.

## SECTION II (EXCLUSIONS)
## WHAT IS NOT COVERED BY THIS POLICY

This insurance does not apply:

A. To any injury, damage, expense, cost, loss, liability, or legal obligation arising out of or in any way related to asbestos or asbestos-containing materials.

B. To any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.

Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance, if such substance has or is alleged to have the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

If such insurance is available to YOU in the UNDERLYING INSURANCE and for the full limits of liability shown therein, this exclusion does not apply to liability caused by heat, smoke or fumes from a hostile fire. As used in the exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

C. To any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances. This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

D. To any claim or claims arising out of the Employee Retirement Income Security Act (ERISA) of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, including any amendments or revisions thereto.

E. To any liability for injury or damages due to war, whether or not declared, or any act or condition incident to war. War includes civil war, acts of terrorism, insurrection, rebellion or revolution.

F. To any liability:

1. With respect to which the insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability; or

2. Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any aggreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Resulting from the hazardous properties of nuclear material, if:

   a. The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of the insured or (b) has been discharged or dispersed therefrom;

   b. The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the insured; or

   c. The injury or damage arises out of the furnishing by the insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to any property at the nuclear facility.

As used in this exclusion:

a. Hazardous properties include radioactive, toxic, or explosive properties;

b. Nuclear material means source material, special nuclear material, or byproduct material;

c. Source material, special nuclear material, and byproduct material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

d. Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e. Waste means any waste material (1) containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

f.  Nuclear facility means:

1.  Any nuclear reactor;

2.  Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packaging waste;

3.  Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.  Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste; and

5.  The site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.  Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.  Property damage includes all forms of radioactive contamination of property.

We shall have no duty or obligation to provide or pay for the investigation or defense of any suit excluded in this section, and in connection therewith Defense Provisions and Supplemental Payments shall not apply.

## SECTION III
## DEFINITIONS

A.  OCCURRENCE means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

B.  OTHER INSURANCE means insurance, other than UNDERLYING INSURANCE, which has been provided to YOU and affords coverage with respect to injury or damage to which this policy also applies.

C.  ULTIMATE NET LOSS means the amount paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with OUR written consent, after making proper deduction for all recoveries and salvages.

Defense expense payments shall be included within the ULTIMATE NET LOSS, provided that such expenses are included within the terms, conditions, and limits of insurance of any UNDERLYING INSURANCE.

D.  UNDERLYING INSURANCE means the policy or policies of insurance as described in the Declarations and Schedule of Underlying Insurance forming a part of this policy.

E.  WE, US and OUR means the company shown in the Declarations as providing this insurance.

F.  YOU and YOUR means a person or organization who qualifies as an insured in all of the underlying policies.

## SECTION IV
## CONDITIONS

A.  APPEALS

If YOU or any of the underlying insurers elect not to appeal a judgement in excess of the limits of liability afforded by the UNDERLYING INSURANCE, or any OTHER INSURANCE available to YOU, WE may elect to appeal. OUR limit of liability shall not be increased because of the appeal, except that WE will make the appeal at OUR cost and expense.

B.  ASSIGNMENT

Interest in this policy may not be transferred to another, except by an endorsement issued by US which gives OUR consent. If YOU are bankrupt or insolvent or if YOU die, this policy shall cover YOUR legal representative(s), but only while acting within the scope of their duties as such.

C.  BANKRUPTCY AND INSOLVENCY

Bankruptcy and insolvency of YOU, or YOUR estate will not relieve US of OUR obligations under this policy.

D.  CANCELLATION

This policy may be cancelled by the first Named Insured by mailing to US written notice stating when such cancellation shall be effective.

This policy may be cancelled by US by mailing to the first Named Insured at YOUR last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the policy period.

If YOU cancel, earned premium shall be computed in accordance with the applicable short rate table or procedure. If WE cancel, earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation becomes effective. OUR check or the check of OUR representative mailed to YOU shall be sufficient proof of any refund or premium due YOU.

E. CHANGES

This policy may be changed only by an endorsement issued by US to form a part of the policy.

F. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

1. YOU must see to it that WE receive prompt written notice of an OCCURRENCE or an offense which may result in a claim. Notice should include:
   a. How, when and where the OCCURRENCE or offense took place;
   b. The names and addresses of any injured persons and witnesses.

2. If a claim is made or suit brought against YOU, YOU must see to it that WE receive written notice of the claim or suit as soon as practicable.

3. YOU and any other involved insured must:
   a. Immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or suit.
   b. Authorize US to obtain records and other information;
   c. Cooperate with US in the investigation, settlement or defense of the claim or suit;
   d. Assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to YOU because of injury or damage to which this policy may also apply.

4. YOU shall not make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or suit without OUR written consent.

G. INSPECTION AND AUDIT

WE shall be permitted but not obligated to inspect YOUR property and operations. Neither OUR right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of YOU or others, to determine or warrant that such property or operations are safe.

WE may examine and audit YOUR books and records during this policy period and extensions thereof and within three (3) years after the final termination of this policy.

H. LEGAL ACTION AGAINST US

No person or organization has a right under this policy to:

1. Join US as a party or otherwise bring US into a SUIT asking for damages from YOU;
2. Sue US, unless all of the terms of this policy have been fully complied with.

A person or organization may sue US to recover on an agreed settlement or on a final judgement against YOU obtained after trial. WE will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of this policy. An agreed settlement means a settlement and release of liability signed by US, YOU, and the claimant or the claimant's legal representative.

I. MAINTENANCE OF UNDERLYING INSURANCE

The policy or policies referred to in the Declarations and schedule of UNDERLYING INSURANCE or renewals or replacements thereof not more restrictive in coverage shall be maintained in full effect during this policy period, except for any reduction in the aggregate limits solely by payment of covered claims and/or claims expense.

If such UNDERLYING INSURANCE is not maintained in full effect, or if any limits of liability of UNDERLYING INSURANCE are:

1. less than as stated in the schedule of UNDERLYING INSURANCE; or
2. unavailable due to bankruptcy or insolvency of an underlying insurer; or
3. if there is any material change in the coverage of any UNDERLYING INSURANCE;

then the insurance afforded by this policy shall apply in the same manner as if such UNDERLYING INSURANCE and limits of liability had been in effect, available, so maintained and unchanged.

J. OTHER INSURANCE

If OTHER INSURANCE, whether collectible or not, is available to YOU covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such OTHER INSURANCE.

K. **PREMIUM**

Unless otherwise provided, the premium for this policy is a flat premium and is not subject to adjustment except as provided herein or amended by endorsement.

L. **YOUR REPRESENTATIONS**

By accepting this policy, YOU agree that:

1. The statements in the Declarations, Schedule of UNDERLYING INSURANCE, and Application for this policy are accurate and complete;

2. Those statements are based upon representations YOU made to US;

3. This policy has been issued in reliance upon YOUR representations.

M. **SEPARATION OF INSUREDS**

Except with respect to the Limits of Insurance, this policy applies:

1. As if each insured were the only insured;

2. Separately to each insured against whom claim is made or suit brought.

N. **SUBROGATION**

In the event of any payment under this policy by US, WE shall be subrogated to all of YOUR rights of recovery against any person or organization, and YOU shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. YOU shall do nothing after loss to prejudice such rights.

The amount recovered through subrogation shall be apportioned in the inverse order of payment of the ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all recovery proceedings shall be apportioned in the ratio of respective recoveries.

WE have no duty to provide coverage under this policy unless YOU and any other involved insureds have fully complied with the conditions of this policy.

IN WITNESS WHEREOF, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**AFFIDAVIT OF SERVICE**

STATE OF DELAWARE )
) SS
NEW CASTLE COUNTY )

    Thomas Hartzell, being duly sworn according to law, deposes and says that he is employed by the law firm of Young Conaway Stargatt & Taylor, LLP, attorneys for the Liquidating LLC in the within captioned matter, and that on the 1st day of June 2005, he caused a copy of the attached pleading to be served, as indicated, on the parties on the attached service list.

Thomas Hartzell

SWORN TO AND SUBSCRIBED before me this ___/___ day of June 2005.

Notary Public

DEBBIE E. LASKIN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Dec. 21, 2008

**SERVICE LIST**
**Integrated Health Services, Inc.**

Marc S. Casarino, Esq.
Christian J. Singewald, Esq.
White and Williams LLP
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899
(Indemnity Insurance Company of North America)
*Hand Delivery*

Francis J. Deasey, Esq.
Gerald J. Valentini, Esq.
Deasey, Mahoney & Bender, Ltd.
1800 John F. Kennedy Blvd., Suite 1300
Philadelphia, PA 19103
(Indemnity Insurance Co. of North America)
*Federal Express*

Leonard P. Goldberger, Esq.
Martha E. Johnston
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
(Indemnity Insurance Co. of North America)
*Federal Express*