# EXHIBIT I

*Treatment*. Irrespective of whether the Sale Transactions or the Stand-Alone Transactions are implemented each holder of an Allowed Premiere Unsecured Claim shall receive a distribution of Cash in an amount equal to 6% of its Allowed Premiere Unsecured Claim, provided, however, that (i) if the aggregate amount of the Allowed Premiere Unsecured Claims exceeds $22,000,000.00 but is less than or equal to $37,000,000.00, then in lieu of the foregoing, each holder of an Allowed Premiere Unsecured Claim shall receive a distribution of Cash in an amount equal to 3% of its Allowed Premiere Unsecured Claim plus such holder's Pro Rata Share of $660,000.00; and (ii) if the aggregate amount of the Allowed Premiere Unsecured Claims exceeds $37,000,000.00, then in lieu of all of the foregoing, each holder of an Allowed Premiere Unsecured Claim shall receive a distribution of Cash in an amount equal to its Pro Rata Share of $1,770,000.00. In no event shall the amount to be distributed to holders of Allowed Premiere Unsecured Claims exceed $1,770,000.00.

8.  *1999 Insured Tort Claims (Class 8)*.

*Description*. The Claims in this Class are Tort Claims which are covered by the Debtors' insurance policies for professional and general liability claims arising in 1999. IHS maintained a matching deductible insurance policy with Reliance Insurance Company ("Reliance") for professional and general claims arising in 1999 (the "Reliance Policy"). In the view of IHS, the Reliance Policy provides coverage of $2,000,000 per incident for professional liability claims and $1,000,000 per incident for general liability claims, with an aggregate coverage limit of $9,000,000. Under the Reliance Policy, IHS is subject to deductibles in the same amounts as the coverage limits. Approximately $7,600,000 of the $9,000,000 aggregate coverage limit and matching deductible amount (the "1999 Unpaid Deductible Amount") remains unpaid as of the date of this Disclosure Statement. As described below, coverage under the Reliance Policy is subject to certain contingencies and disputes, and Debtors therefore cannot presently estimate what part, if any, of the 1999 Unpaid Deductible Amount will actually be available for payment of Allowed Class 8 Claims.

On October 3, 2001, the Commonwealth Court found Reliance to be insolvent and entered an Order of Liquidation for Reliance. M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, was named as the Reliance Liquidator. On or about September 20, 2002, IHS filed the Reliance Action to resolve certain disputes between the Reliance Liquidator and the Debtors with respect to the Reliance Policy. In the Reliance Action, IHS seeks a declaration that the Reliance Policy provides total coverage of $9,000,000. The Reliance Liquidator maintains that the aggregate policy limit is only $4,500,000. In addition, IHS seeks a declaration that, notwithstanding the matching deductible feature of the policy, the Reliance Policy obligates Reliance to pay claims and defense costs for covered claims, both because IHS is insolvent and because IHS provided Reliance with certain collateral for the deductible obligations of IHS under the Reliance Policy and under certain other insurance policies issued to IHS by Reliance. The Reliance Liquidator has thus far refused to pay any claims or defense costs covered by the Reliance Policy.

The part of the 1999 Unpaid Deductible Amount, if any, that will be available for payment of Allowed Class 8 Claims will depend upon the ultimate resolution of the foregoing issues and other issues raised in the Reliance Action, as well as issues that may be resolved in the Bankruptcy Court. Moreover,

because Reliance is in liquidation and may not have sufficient assets to satisfy its policy obligations in full, the amount of proceeds available to pay 1999 Tort Claims may also depend upon the extent, if any, to which claims under the Reliance Policy are deemed to be general unsecured claims against the Reliance liquidation estate. It is therefore not presently possible to estimate with a reasonable degree of certainty what part, if any, of the 1999 Unpaid Deductible Amount will ultimately be available to pay Class 8 Claims under the Plan. Any part of the 1999 Unpaid Deductible Amount that is recovered from Reliance or the Reliance Liquidator will be deposited by the Liquidating LLC into the 1999 Insured Tort Claims Escrow. If Debtors recover less than the full amount of the 1999 Unpaid Deductible Amount, holders of Allowed Class 8 Claims will not recover 100% of the Allowed amount of their Claims.

Holders of Allowed 1999 Insured Tort Claims will share in any available coverage under the Reliance Policy only pursuant to the treatment provided in the Plan. Pursuant to the Plan, holders of 1999 Insured Tort Claims assign to Debtors any rights such holders may have to file a claim under the Reliance Policy in the liquidation proceedings presently pending with respect to Reliance in the Commonwealth Court of Pennsylvania (the "Reliance Liquidation Proceedings"), and Debtors shall file a single claim in the Reliance Liquidation Proceeding on behalf of all holders of Allowed 1999 Insured Tort Claims. To avoid duplication of claims under the Reliance Policy, any claim for proceeds of the Reliance Policy filed in the Reliance Liquidation Proceedings by a holder of an Allowed 1999 Insured Tort Claim shall be deemed void. Any claim for proceeds of the Reliance Policy filed in the Reliance Liquidation Proceedings by the holder of a 1999 Insured Tort Claim shall not be deemed to cause of waiver of such claimant's 1999 Insured Tort Claim against the Debtors.

In addition to the Reliance Policy, IHS maintained excess insurance policies, with firms other than Reliance, for 1999 professional and general liability claims. Coverage under the excess policies totals $100,000,000. The excess insurance layers become available upon the exhaustion of the Reliance Policy coverage limits, that is, when Debtors' liability (including costs of defense) for 1999 covered claims exceeds $9,000,000. The Plan provides that each of the Debtors' excess insurance carriers will pay to the Liquidating LLC, as Claims are liquidated, insurance proceeds payable with respect to such claims. The funds paid by the excess carriers will be deposited by the Liquidating LLC in the 1999 Insured Tort Claims Escrow. To the extent that the total amounts recovered by the Liquidating LLC under the Reliance Policy and under the excess policies (collectively, the "Available 1999 Insurance Proceeds") is insufficient to pay Allowed Class 8 Claims in full, the Plan provides for a 3% distribution on the deficiency.

The Debtors estimate that Allowed Class 8 Claims will ultimately total approximately $77,000,000. The ultimate recovery of Class 8 Claimants will depend on several factors, including, most importantly: (a) how much, if any, of the 1999 Unpaid Deductible Amount is recovered from the Reliance Liquidator; and (b) the total amount of Class 8 Claims ultimately Allowed. If the amount of insurance proceeds available from the Reliance Policy is less than the 1999 Unpaid Deductible Amount, the recovery to holders of Allowed Class 8 Claims will be less than 100%. In addition, in the event, which Debtors believe to be unlikely, that total Allowed Class 8 Claims exceed the amount of coverage available under Debtors' excess insurance policies for 1999, the recovery to holders of Allowed Class 8 Claims would be less than 100%. Assuming that the total of all Allowed Class 8 Claims equals $77,000,000 and no recovery

33

IHS1500

from Reliance, Debtors estimate that the recovery of holders of Allowed Class 8 Claims would equal approximately 90%.

The treatment of Allowed Class 8 Claims in the Plan is based, in part, on the equitable principle that holders of all Allowed Class 8 Claims should share equally in any available insurance coverage and in any shortfall in available insurance coverage. For this reason, the final total amount of distributions to be made on account of Allowed Class 8 Claims can not be determined until the total amount of all Allowed Class 8 Claims is determined and the total amount of Available 1999 Insurance Proceeds is determined. The Plan accordingly provides that holders of Allowed Class 8 Claims may receive interim distributions as Class 8 Claims are liquidated in amount, with a final distribution to be made after all Class 8 Claims are liquidated and all 1999 Insurance Proceeds are collected by the Liquidating LLC.

Because all Allowed Class 8 Claims will share *pro rata* in any shortfall between the 1999 Unpaid Deductible Amount and the amount actually recovered under the Reliance Policy, the burden of such a shortfall on each holder of an Allowed Class 8 Claim would actually decrease, and the recovery to holders of Allowed Class 8 Claimants would actually increase, as the total amount of Allowed Class 8 Claims increases. To illustrate this somewhat counterintuitive result, assume the worst case scenario that Debtors recover no part of the $7.6 million 1999 Unpaid Deductible amount, the $7.6 million shortfall would be borne *pro rata* by all holders of Allowed Class 8 Claims. If total Allowed Class 8 Claims amount to $60,000,000, the shortfall would amount to 12.7% of the total amount of Allowed Class 8 Claims, and the recovery of Class 8 Claimants from insurance proceeds would be approximately 87.3%. On the other hand, if Allowed Class 8 Claims reached a total of $100 million, the $7.6 million shortfall would amount to only 7.6% of the total amount of Allowed Class 8 Claims, and the recovery of Class 8 Claimants from insurance proceeds would be approximately 92.4%.[8]

*Claims Against Non-Debtor Insureds.* In addition to the Debtors, there are certain non-debtor parties insured under the Reliance Policy and the 1999 excess insurance policies. Such non-debtor insureds include Lyric Healthcare LLC and related companies. The Plan does not affect the administration of claims against non-debtor insureds, and Debtors anticipate that such claims would be pursued and resolved in the ordinary course, outside of the context of this Plan. To the extent that claims against non-debtor insureds result in payments of proceeds of the Reliance Policy or proceeds of the Debtors' 1999 excess insurance policies, such payments would reduce the coverage available under such policies to holders of Allowed 1999 Insured Tort Claims under this Plan. However, based upon Debtors' estimate of total Allowed 1999 Insured Tort Claims, and their knowledge of claims pending against non-debtor insureds, Debtors believe that total claims covered by the Reliance Policy and Debtors' 1999 excess policies, including claims against non-debtor insureds, will not exceed the total amount of coverage under the excess policies, as described above.

---

[8] These illustrative calculations do not include the additional recovery afforded by the Debtors' contribution of 3% of the amount of any deficiency between the total Available 1999 Insurance Proceeds and the total Allowed 1999 Insured Tort Claim.

34

*Treatment.* Irrespective of whether the Sale Transactions or Stand-Alone Transactions are implemented, each holder of an Allowed 1999 Insured Tort Claim shall be entitled to receive its Pro Rata Share of the aggregate sum of (i) the Available 1999 Insurance Proceeds; and (ii) 3% of the difference between the Available 1999 Insurance Proceeds and the total amount of Allowed 1999 Insured Tort Claims. On the Effective Date, or as soon thereafter as is reasonably practicable, the Liquidating LLC or the Reorganized Debtors, as applicable, shall deposit an amount of Cash equal to 3% of the 1999 Unpaid Deductible Amount plus any Available 1999 Insurance Proceeds due and owing by the Debtors' insurance carriers in respect of Allowed 1999 Insured Tort Claims into the 1999 Insured Tort Claims Escrow. Thereafter, the Liquidating LLC or the Reorganized Debtors, as applicable, shall deposit all additional Available 1999 Insurance Proceeds which become due and owing by the Debtors' insurance carriers in respect of Allowed 1999 Insured Tort Claims into the 1999 Insured Tort Claims Escrow. On the Initial Class 8 Distribution Date, the Liquidating LLC or the Reorganized Debtors, as applicable, shall make an Initial Class 8 Distribution to each holder of an Allowed 1999 Insured Tort Claim in Cash in an amount equal to 50% of its Allowed Claim. After the Initial Claims 7 Distribution Date but prior to the Final Class 8 Distribution Date, the Liquidating LLC or the Reorganized Debtors, as applicable, shall distribute to each holder of a Disputed 1999 Insured Tort Claim which becomes an Allowed 1999 Insured Tort Claim after the Initial Class 8 Distribution Date within thirty (30) days of such allowance, an amount in Cash equal to 50% of its Allowed 1999 Insured Tort Claim. The Liquidating LLC or the Reorganized Debtors, as applicable, may make additional distributions to holders of Allowed 1999 Insured Tort Claims prior to the Final Class 8 Distribution Date. If necessary, on the Final Class 8 Distribution Date, the Liquidating LLC or the Reorganized Debtors, as applicable, shall distribute to each holder of an Allowed 1999 Insured Tort Claim a Catch-up Distribution (or portion thereof), such that the total distribution of Cash received by such holder in respect of its Allowed 1999 Insured Tort Claim equals its Pro Rata Share of the aggregate sum of (i) the Available 1999 Insurance Proceeds; and (ii) 3% of the difference between the Available 1999 Insurance Proceeds and the total amount of Allowed 1999 Insured Tort Claims. Upon payment of the total distribution to be received by holders of Allowed 1999 Insured Tort Claims, all Cash remaining in the 1999 Insured Tort Claims Escrow, if any, shall be returned to the Liquidating LLC or to the Reorganized Debtors, as applicable, for other uses in accordance with the Plan.

9.  *Settled Senior Subordinated Debt Claims (Class 9).*

*Description.* The Claims in this Class total $1,150,814,148.09 and consist of the principal and interest accrued and unpaid through the Commencement Date under three separate series of senior subordinated notes issued by IHS. The following table describes each series of the notes: