# TAB 3

**INDEPENDENCE BLUE CROSS, et al. v. LEXINGTON INSURANCE COMPANY**

**CIVIL ACTION NO. 94-4267**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**1995 U.S. Dist. LEXIS 10812**

**July 21, 1995, Decided**
**July 26, 1995, FILED; July 27, 1995, ENTERED**

**PRIOR HISTORY:** [*1] Original Opinion of May 19, 1995, Reported at: *1995 U.S. Dist. LEXIS 6803.*

**COUNSEL:** For INDEPENDENCE BLUE CROSS, KEYSTONE HEALTH PLAN EAST, INC., PLAINTIFFS: ALEXANDER KERR, PHILADELPHIA, PA.

For LEXINGTON INSURANCE COMPANY, DEFENDANT: KENNETH SCOTT, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, PHILA, PA. ADRIAN J. GORDON, PHILA, PA.

**JUDGES:** JUDGE JOHN R. PADOVA

**OPINIONBY:** JOHN R. PADOVA

**OPINION:**

MEMORANDUM

Padova, J.

July 21, 1995

Plaintiffs, Independence Blue Cross ("IBC") and Keystone Health Plan East, Inc. ("KHPE"), filed a declaratory judgment action against Defendant, Lexington Insurance Company ("Lexington"), seeking to compel Lexington to provide a defense and indemnify them in connection with litigation initiated against Plaintiffs by Centennial School District (the "underlying litigation"). Plaintiffs subsequently filed a motion for partial summary judgment on bad faith breach of the duty to defend and Defendant cross moved for summary judgment on both the duty to defend and the duty to indemnify. By memorandum and order dated May 19, 1995, I denied Plaintiffs' motion and granted Defendant's motion with respect IBC Policy at [*3] 1, Complaint Ex. A. Relevant to this litigation, the IBC policy excluded coverage for claims to the policy issued to IBC and denied it with respect to the policy [*2] issued to KHPE. IBC now moves for reconsideration of that part of the order that denied its motion for partial summary judgment and granted summary judgment to Lexington. For the following reasons, I will grant the motion as to the entry of summary judgment in favor of Lexington and vacate that judgment. However, I will deny the motion for reconsideration of the denial of IBC's partial motion for summary judgment.

I. BACKGROUND

The following facts are essentially undisputed by the parties. Defendant issued IBC a Preferred Provider Organization Professional Liability Coverage Claims-Made Policy (the "IBC Policy") on February 19, 1993. The IBC Policy had an effective date of February 17, 1993 and a retroactive date of January 1, 1993. The policy provided that coverage depended upon the following conditions:

> 1. [the] claim is first made against the insured during the Policy Period on account of such act, error, or omission; and
>
> 2. such act, error or omission happens subsequent to the Retroactive Date specified in the Declarations; and
>
> 3. the insured has no knowledge of such act, error or omission prior to the Effective Date of the Policy.

asserting "a violation or alleged violation of any anti-trust, price fixing or restraint of trade law or any

infringement or alleged infringement of patent, copyright, trademark, service mark or trade name." IBC Policy at 3, Exclusion N. Subsequently, on September 1, 1993, IBC secured Endorsement C-1, which superseded Exclusion N, and "provided coverage for Damages arising from anti-trust, price fixing or restraint of trade activities when such Damages result from acts, errors or omissions occurring on or after the retroactive date shown below and before the cancellation date or expiration date of this policy." IBC Policy Endorsement C-1. The Endorsement had an effective date of September 1, 1993 and a retroactive date of January 1, 1993.

On June 28, 1993, the underlying litigation was filed in this Court, asserting claims against IBC for alleged violations of antitrust laws. IBC demanded that Lexington defend and indemnify them in connection with the underlying litigation. Lexington did not provide defense costs in the underlying litigation (which has since settled), and has not indemnified [*4] IBC.

## II. STANDARD OF REVIEW

A motion for reconsideration will be granted in one of three situations: "(1) the development of an intervening change in the law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or prevent a manifest injustice." *Cohen v. Austin*, 869 F. Supp. 320, 321 (E.D. Pa. 1994). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citations omitted), cert. denied, 476 U.S. 1171, 90 L. Ed. 2d 982, 106 S. Ct. 2895 (1986). See also *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) ("Whatever other circumstances may justify reconsideration, mere presentation of arguments or evidence seriatim does not."); *Brambles USA, Inc. v. Blocker*, 725 F. Supp. 1239, 1240 (D. Del. 1990) (reargument "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided") (cited in [*5] *Bhatnagar*, 52 F.3d at 1231). However, reargument "may be appropriate where the Court has patently misunderstood a party, . . . or has made an error not of reasoning but of apprehension." *Id. at 1241* (internal quotation omitted).

## III. DISCUSSION

In litigating the summary judgment motions, IBC argued that it intended to secure antitrust coverage

The motion for reconsideration thus turns on IBC's argument that when it obtained Endorsement C-

when it obtained the IBC Policy, that Lexington recognized IBC's intention, that IBC had a "reasonable expectation" of such antitrust coverage, and that Endorsement C-1's retroactive date of January 1, 1993 demonstrated that the Policy provided coverage for the underlying litigation. I denied IBC's motion and granted Lexington's cross-motion for summary judgment because the claim in the underlying litigation was made before the effective date of Endorsement C-1 to the IBC Policy. See *American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 76 (3d Cir. 1985) (holding that where the conduct in an occurrence policy took place before the effective date of the policy, the insurer has no duty to defend).

IBC now asserts that I misapprehended two fundamental material facts: first, that the parties agreed, and [*6] IBC secured a reasonable expectation, that the Endorsement issued in September 1993 would be effective as of January or February 1993; and second, that IBC paid for such coverage. IBC thus argues that it reasonably expected that the Endorsement would provide coverage for the underlying litigation, despite contrary language in the policy.

Under the "reasonable expectation" doctrine, "where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy," in cases in which "the insured, as a result of the insurer's either actively providing misinformation about the scope of coverage provided by a policy or passively failing to notify the insured of changes in the policy, receives something other than what it thought it purchased." *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311-12 (3d Cir. 1994). See also *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1353 (Pa. 1978) (holding that "the public has a right to expect that they will receive something of comparable value in return for the premium paid"), cert. denied, [*7] 439 U.S. 1089, 59 L. Ed. 2d 55, 99 S. Ct. 871 (1979). I ruled for Lexington on the still undisputed facts that IBC initially did not pay for antitrust coverage, the Policy clearly excluded such coverage, and IBC did not review its policy to determine the lack of coverage. I determined then, and reaffirm here, that IBC did not have a reasonable expectation of antitrust coverage from January to September of 1993. IBC may have requested coverage in January, but it is undisputed that it did not pay for or receive such coverage prior to the filing of the underlying litigation.

---

1 in September 1993 it acquired a reasonable expectation of coverage for the underlying litigation. I

previously held that IBC's argument conflicted with the clear language of the IBC Policy and Endorsement C-1 and with the purpose of a claims-made policy. The IBC Policy clearly stated that claims must be made after the effective date and that the "act, error or omission" giving rise to the claim must occur after the retroactive date. The Policy and the Endorsement clearly and unambiguously defined the meaning of the dates consistent with the [*8] principles of claims-made insurance policies. See, e.g., *Hartford Fire Ins. Co. v. California, 125 L. Ed. 2d 612, 113 S. Ct. 2891, 2896 (1993)*. IBC argued originally, and argues again here, that Lexington agreed to provide retroactive coverage specifically to include the underlying litigation in order to correct an alleged error in not providing the coverage as requested in January 1993. However, in connection with the original motions IBC did not produce evidence showing the existence of a genuine issue of material fact that would implicate the reasonable expectation doctrine. The originally-submitted evidence did not support a conclusion that the effective date should have been earlier than September 1993 or that IBC paid for such coverage. n1 Although some of the exhibits in the summary judgment record indicate the possibility of an underwriting error, they do not raise a genuine issue of material fact as to whether IBC acquired a reasonable expectation of coverage that included the underlying litigation, particularly in the absence of evidence that IBC paid for coverage for the period before September. See Exs. 12-14 to Decl. of Denise D. Colliers. n2 Based on the submissions before me at [*9] the time, I could only conclude that because the effective date of Endorsement C-1 to the claims-made Policy postdated the filing of the underlying litigation, the Policy excluded coverage for that litigation and therefore Lexington had no duty to defend or indemnify IBC.

n1 IBC has argued that it did not believe any dispute existed over the payment of the premium. Nevertheless, the Court was never provided with any evidence that the premium paid in September included the full year of 1993. Despite IBC's attempts to downplay the significance of payment, it is a critical feature of the reasonable expectation doctrine. "Where an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." *Tonkovic v. State Farm Mut. Auto Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 925 (Pa. 1987) (emphasis added).

n2 Exhibit 14 is a letter dated September 2, 1993 from Alexander & Alexander, Lexington's agent, to Johnson & Higgins, IBC's agent, enclosing the Endorsement and stating that "the retroactive date is 01/01/93 and it is the intention to provide coverage from that date forward. Due to the surplus lines filing time limit, the effective date of the endorsement is 09/01/93." The parties have not explained how surplus lines requirements, which apply to insurance obtained from insurers not licensed to do business in Pennsylvania, affect the effective date of the policy, and the reference to "coverage," without such context, appears to relate to retroactive coverage. Therefore, this exhibit, in the absence of any evidence of payment, does not support an effective date earlier than the one on the face of the Endorsement.

Similarly, Exhibits 12 and 13 provide evidence of an underwriting error that the parties sought to correct. However, IBC has never argued mutual mistake, and at oral argument on the motion for reconsideration on July 18, 1995, expressly denied any mutual mistake. IBC has rested entirely on its reasonable expectations of coverage. Such expectation requires that the insured not receive paid-for coverage. As noted, IBC provided no evidence that it paid for the coverage it claimed.

[*10]

With its motion for reconsideration, IBC presents additional evidence, arguing for the first time that when it paid for Endorsement C-1 in September 1993, it paid for the entire year, as if it had initially secured an Endorsement with an effective date of January or February 1993. See Exs. 22 and 23 of the Decl. of Royal E. Brown and Exs. 25-28 of the Second Decl. of Denise D. Colliers. Thus, for the first time, the record contains evidence that IBC paid for coverage encompassing the underlying litigation, which would support IBC's contention that it acquired a reasonable expectation of such coverage in September 1993. Also submitted for the first time in the motion for reconsideration is an internal Alexander & Alexander document dated September 1, 1993. This document contains a handwritten notation reading "OK to issue + fax copy of Professional Liability Antitrust Endorsement Effective + retroactive to 1/1/93 + invoice it's [sic] full annual premium of $ 1,320 plus taxes. JS Chao." A second handwritten notation reads "Discussed with[?] John – due to surplus lines filing – make effective date 9-01-93 SDS." Ex. 25 of Second Decl. of Denise D. Colliers. This exhibit, [*11] for the

first time, raises a genuine issue of material fact that when the Endorsement issued in September the parties intended, or at least IBC reasonably expected, that the Endorsement's effective date would be September 1, 1993 and that IBC paid the same premium it would have had the coverage been secured in January or February 1993. n3

> n3 Lexington argues that IBC could not have a reasonable expectation of coverage based on internal Alexander & Alexander documents that it did not see until this litigation. However, IBC does not argue that it relied on these documents, only that the documents support its contention that coverage should have been effective as of January 1993.

Had this evidence been presented with the original motions, I would have determined that a genuine issue of material fact existed as to IBC's reasonable expectation of coverage in September 1993, thus making summary judgment for Lexington inappropriate. n4 However, IBC presented this evidence only after the motions for summary judgment [*12] were decided. IBC has offered no explanation for this failure; the evidence clearly was available when the cross-motions were filed. As the case law makes clear, the parties should not be permitted to belatedly offer such evidence only after an adverse ruling; otherwise the litigation process would never end. Nevertheless, because the evidence does raise a genuine issue of material fact as to IBC's reasonable expectation, and because to some extent, the new information clarifies information in exhibits previously submitted that could support IBC's position, I will exercise my discretion and consider the belatedly submitted evidence for purposes of reviewing the grant of summary judgment in favor of Lexington and against IBC in order to prevent an injustice. Based on the new submissions, IBC has raised a genuine issue of material fact as to whether, in September 1993, it acquired a reasonable expectation that the Endorsement would be effective as of January or February 1993. I will therefore vacate that part of the Memorandum and Order granting summary judgment in favor of Lexington.

> n4 At oral argument, Lexington argued for the first time that because the underlying litigation was known in September, the loss was uninsurable as a matter of Pennsylvania law and that IBC could not have a reasonable expectation of coverage. Lexington has provided no direct citation to authority and I decline to consider the argument at this time.

[*13]

However, I find no justification for IBC not having timely submitted this evidence. The Court can only rule based on the evidence the parties present to it, and the failure to apprise the Court of essential and relevant information has occasioned unnecessary delay and expense for all parties and the system. To give IBC a second opportunity to move for summary judgment would not prevent a manifest injustice but would only reward its dilatory conduct. Thus, I will not consider the belated material in connection with IBC's motion for reconsideration of the denial of its motion for partial summary judgment, and I will not reconsider the denial of IBC's motion. n5

> n5 Even if I were to reconsider the denial of partial summary judgment to IBC, I would reaffirm my earlier ruling. Although the evidence now raises a genuine issue of material fact regarding a reasonable expectation of coverage by IBC, the issue is not established as a matter of law. I also reject IBC's argument that Lexington is estopped from arguing this issue, because as explained in my earlier ruling, IBC has not established reliance.

[*14]

An appropriate Order follows.

ORDER

AND NOW, this 21st day of July 1995, upon consideration of Independence Blue Cross' Motion for Reconsideration (Document No. 18), the response thereto, and the argument of counsel in connection therewith,

It is hereby ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART. Upon reconsideration, that part of the Order of May 19, 1995 granting summary judgment favor of Defendant and against Plaintiff Independent Blue Cross is VACATED, and Defendant's Motion for Summary Judgment is DENIED. Independence Blue Cross' Motion to reconsider the denial of its motion for partial summary judgment is DENIED.

BY THE COURT:

John R. Padova, J.