IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>     Debtors.<br>――――――――――――――――――――<br>IHS LIQUIDATING LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>     Defendant.<br>――――――――――――――――――――<br>IHS LIQUIDATING LLC,<br><br>     Third-Party Plaintiff,<br><br>     v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA.,<br>GENERAL STAR INDEMNITY COMPANY,<br>and ACE INDEMNITY INSURANCE COMPANY f/k/a<br>INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>     Third-Party Defendants. | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered)<br><br><br>Civil Action No. 05-376(GMS) |

**REPLY MEMORANDUM OF IHS LIQUIDATING LLC IN FURTHER
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................ 1

1. IICNA INCORRECTLY ARGUES THAT THE RELIANCE POLICY
   MUST BE EXHAUSTED BY CASH PAYMENTS.............................................................. 3

2. IICNA'S DROP DOWN ARGUMENT IS A STRAW MAN ............................................. 8

3. IICNA CANNOT REPUDIATE THE INSOLVENCY PROVISIONS
   IN ITS OWN INSURANCE CONTRACT ......................................................................... 10

CONCLUSION....................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

In re Amatex Corp.,
    107 B.R. 856 (E.D. Pa. 1989) .............................................................................................14

In re Apache Products Company,
    331 B.R. 288 (Bkr. M.D.Fla. 2004) ..................................................................................13

Associated Electric & Gas Insurance Services Limited v.
    Border Steel Rolling Mills, Inc.,
    2005 U.S. Dist. LEXIS 32198 (W.D.Tx. 2005).................................................................14

Home Ins. Co. v. Hooper,
    294 Ill. App. 3d 626 (1998) ...........................................................7, 11, 12, 13, 15

In re Keck Mahan & Cate,
    241 B.R.583 (Bkr. E.D.Ill. 1999)..........................................................6, 8, 12, 13

Pak-Mor Manufacturing Co. v. Royal Surplus Lines Insurance Co.,
    2005 U.S.Dist. LEXIS 34683 (W.D.Tx. 2005)..................................................7, 8, 14, 15

Wheelwright Trucking Company,
    851 So.2d 466 (Ala. 2002)...............................................................................................13

## STATUTES, RULES AND OTHER AUTHORITIES

Fed. R. Bankr. Pro 7056......................................................................................................1

40 Pennsylvania Statutes § 117.........................................................................................15

Plaintiff IHS Liquidating LLC (the "Liquidating LLC" or "Plaintiff") respectfully submits this Reply Memorandum in further support of its motion (the "Motion") for an order pursuant to Federal Rule of Bankruptcy Procedure 7056: (i) severing and awarding the Liquidating LLC summary judgment on the First Claim for Relief in its adversary proceeding complaint (the "Complaint"), declaring that the Excess Liability Catastrophe Policy XLX G19545507 (the "IICNA Policy") issued by defendant Indemnity Insurance Company of North America, now known as Ace Indemnity Insurance Company ("IICNA") obligates IICNA to pay covered professional liability and general liability claims that have been liquidated in amount, by judgment or settlement, to the extent that such liquidated claims are in excess of the applicable per occurrence or aggregate limits of the Debtors' underlying primary and excess insurance coverage, whether or not the liquidated claims within those underlying limits have been paid in cash; and (ii) dismissing IICNA's counterclaim (the "Counterclaim") as moot.

In further support of its Motion, and in reply to the *Response of Defendant, Indemnity Insurance Company of North America, in Opposition to Plaintiff's Motion for Partial Summary Judgment on Count I of Their Complaint* (the "Response"), the Liquidating LLC respectfully represents as follows.

## PRELIMINARY STATEMENT

IICNA's Response is patently insufficient to raise a triable issue of fact precluding the award of partial summary judgment sought in the Motion. As discussed below, much of the factual background and much of the argument in IICNA's Response is irrelevant to the narrow issue raised in Plaintiff's Motion. Moreover, the few relevant legal authorities cited by IICNA actually support the relief sought by Plaintiff and further demonstrate that IICNA's position is frivolous.

The narrow issue before the Court is whether IICNA can disclaim all coverage under its $50 million Policy on the ground that Plaintiff's primary layer of insurance with Reliance Insurance Co. ("Reliance") has not been exhausted by cash payment of the entire limits of that Policy, a maximum of $9 million (the "Reliance Disclaimer"). IICNA has issued its Reliance Disclaimer in disclaimer letters relating to numerous 1999 Insured Tort Claims that remain unresolved. Because the Reliance Disclaimers put at issue the entire $50 million of coverage under the Policy, Plaintiff has had to impose a moratorium on its distributions to 1999 Tort Claimants, including numerous 1999 Tort Claimants who have settled their claims in the last several months but have received no distribution whatever from the Liquidating LLC. The moratorium on distributions is obviously and undeniably causing a tremendous hardship to members of the Class of 1999 Tort Claimants, many of whom have been waiting over seven years without a recovery and many of whom are now quite elderly.

Rather than stick to the issue at hand, IICNA fills its Response with arguments relating to other coverage disclaimers that IICNA has issued, as described briefly below (the "Additional Disclaimers"). The Additional Disclaimers will ultimately have to be adjudicated among the Plaintiff and the three insurance companies that are defendants in this action. However, the Additional Disclaimers are not relevant to the limited declaratory relief sought in the First Claim for Relief in the Complaint [1]

In this regard, IICNA argues that the underlying first layer of excess coverage issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") has not been

---

[1] The Additional Disclaimers involve a relatively small portion of the total aggregate excess insurance coverage issued for 1999 by National Union, GenStar and IICNA. Moreover, the Additional Disclaimers for the most part involve a possible reapportionment of liability among the three insurers rather than a possible loss of coverage to Plaintiff. Accordingly, Plaintiff expects that the ultimate resolution of those issues will not materially impact upon the recovery of the 1999 Tort Claimants, and Plaintiff therefore also expects that distributions to the 1999 Tort Claimants can resume if the Reliance Disclaimer is declared invalid.

properly exhausted, and therefore IICNA's policy has not yet been "triggered." Specifically, IICNA alleges that National Union has improperly:  (a) charged defense costs against its policy limits, when they should have been paid in addition to the policy limits; and (b) charged claim payments and defense costs relating to facilities owned by IHS of Lester, Inc., when such claims and defense costs should have been paid pursuant to a separate National Union policy which, according to IICNA, does not underlie the IICNA Policy.  Similarly, IICNA argues that the second layer of excess coverage issued by General Star Indemnity Company ("GenStar") has not been properly exhausted, and therefore IICNA's Policy has not been triggered, because GenStar has improperly charged against the GenStar policy claim payments and defense costs relating to facilities owned by IHS of Lester, Inc.

Regardless of the merits or lack of merits of IICNA's Additional Disclaimers, they are irrelevant to the declaratory relief sought in the First Claim for Relief in the Complaint, and therefore irrelevant to this Motion.  Plaintiff is not seeking a declaration that the IICNA Policy has in fact been "triggered," and therefore, it is not necessary for the Court to address any and all possible issues relating to the exhaustion of the underlying insurance limits.  Rather, Plaintiff seeks a limited declaration that will prevent IICNA from using the insolvencies of IHS and Reliance as the basis to permanently disclaim all coverage under its Policy.  With the Reliance Disclaimer out of the way, Plaintiff will be able to proceed with distributions to the 1999 Tort Claimants, and the parties can proceed in due course to resolve issues relating to the Other Disclaimers.

1.    **IICNA INCORRECTLY ARGUES THAT THE RELIANCE POLICY MUST BE EXHAUSTED BY CASH PAYMENTS**

IICNA divides its argument into three parts.  In Part C.1 of its Response (pp. 18-23), IICNA argues that its Policy is not triggered because the underlying policies of Reliance,

3

National Union and GenStar have not been properly exhausted. Much of the discussion in Part C.1 relates to the Additional Disclaimers discussed above, which are not at issue in the Motion. Indeed, the Reliance policy is mentioned only once in all of Part C.1 of the Response (See the first paragraph on page 19).

With regard to the Reliance Disclaimer, IICNA does not dispute that Plaintiff has incurred liabilities with respect to 1999 Insured Tort Claims far in excess of Plaintiff's primary layer of insurance with Reliance. Rather, IICNA argues that it need not pay or defend any claims, even those falling squarely within the limits of IICNA's $50 million layer of excess coverage, because the $9 million Reliance layer (three layers down from IICNA) has not been paid out entirely in cash. As demonstrated in the Motion, neither the IICNA Policy nor applicable law permits IICNA to disavow its insurance obligations in this cynical and callous manner. IICNA's Response offers no persuasive, or even colorable, argument to the contrary.

At page 18 of its Response, IICNA quotes Section I.A. of its Policy:

> WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE and (2) only after **all UNDERLYING INSURANCE** has been **exhausted by the payment of the limits** of such insurance or losses arising out of Occurrences that take place during OUR policy period and are insured by all of the policies designated in the declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance then We shall not pay such loss. [Emphasis Added by IICNA.]

IICNA argues that the phrase "exhausted by the payment of the limits," which IICNA highlights in the foregoing quote, means that IICNA has no insurance obligation whatever unless all underlying limits are paid out in cash. IICNA's argument is unsupported and, for several reasons, it is unsupportable.

In the first instance, it is significant that the phrase emphasized by IICNA, "exhausted by the payment of the limits," does not of its own terms require that the limit be paid in "cash."

4

Although IICNA would like to read the word "cash" into the foregoing phrase, the word is just not there. Rather, the language is broad enough to encompass any means by which the underlying limits may be satisfied, including, as in this case, under a chapter 11 debtor's plan of reorganization. So long as IICNA is not asked to drop down to pay claims falling within the $9 million Reliance layer, it suffers no harm and cannot complain that the first $9 million of claims has been satisfied in some manner other than by cash payments. In the instant situation, under basic principals of insolvency law, the obligations of Reliance under its primary policy, and the obligations of IHS to pay deductibles under that Policy, will be deemed paid and will be discharged whether Reliance and IHS are able to pay those obligations in full or merely in part, and whether those obligations are paid in cash or with some other consideration. Thus, for any purpose relevant to IICNA and its obligations under its own Policy, the limits of the Reliance Policy have been "exhausted."

When read in its entirety, Section I.A of the Policy simply indicates that IICNA will not be responsible for any claims falling within a lower level of coverage. This intention is expressed in the last sentence of the quoted provision, "If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance than We shall not pay such loss." (emphasis in original) That sentence protects IICNA from having to drop down to cover claims falling within a lower level of insurance if, for example, the insured or underlying insurer (or in this instance both) become insolvent and therefore fail to pay a covered claim. The last sentence would be superfluous if, as IICNA argues, all underlying layers must be exhausted by cash payments before IICNA has any insurance obligation. As demonstrated in Plaintiff's original Motion papers, when the IICNA Policy is read in its entirety, including those provisions that confirm IICNA's continuing liability in the event of an

insolvency of an insured or underlying insurer (See additional discussion of insolvency
provisions in Point 3 below), it is clear that IICNA's interpretation of its Policy is contrary to
both the plain meaning of the Policy and to applicable law.[2]

IICNA cites absolutely no legal authority in support of the cash-payment argument in
Part C.1 of its Response. Remarkably, however, in Part C.3 of its Response (pp. 28-29), IICNA
does cite to decisions that squarely reject the argument made by IICNA in Part C.1.

In this regard, at page 29 of its Response, IICNA cites to In re Keck Mahan & Cate, 241
B.R. 583 (Bkr. E.D.Ill. 1999). In that case, an insurer ("ALAS") objected to the debtor's plan of
reorganization because it permitted the debtor to collect insurance proceeds from ALAS in
excess of the amount of the debtor's self-insured retention ("SIR"), even though the debtor had
not satisfied its SIR obligations with cash payments. The argument made by ALAS in the Keck
case is identical to the argument made by IICNA in Part C.1 of its Response, and that argument
was analyzed extensively and squarely rejected by the bankruptcy court in the Keck case, as
follows:

> ALAS alleges that its policy requires the Debtor to satisfy the SIR
> by the actual payment of $1 Million on each claim before ALAS is
> obliged to pay anything. It complains that the Plan, by its treatment of
> insured malpractice claims and the release and injunction provisions,
> impermissibly allows the Debtor and its former partners to avoid the SIR
> obligations and requires ALAS to provide indemnification
> notwithstanding the Debtor's failure to satisfy the SIR. Further, ALAS
> says that there is no showing that the Debtor and its partners could not
> come up with $2 million to satisfy the SIRs in full.
>
> The Court holds, however, that the SIR is satisfied by the Plan's
> grant to Class IV creditors of an unsecured claim for the SIR portion of

---

[2] In Part C.1 of its Response, IICNA does not mention the solvency clauses in its Policy, which are directly
related to, and have a direct bearing upon, the interpretation of the language quoted by IICNA. The solvency
clauses are mentioned in Part C.3 of IICNA's Response, but even in Part C.3, IICNA tries to gloss over the obvious
significance of those clauses. As discussed in Point 3 below, in light of the solvency provisions in the Policy, which
are mandated by Pennsylvania insurance statutes, there is no rational basis for IICNA's position that it is entitled to
disclaim all coverage under its Policy because the Reliance layer has not been paid out in cash.

their recovery and such creditors' acceptance of the Plan. ALAS will not
be liable for any part of the SIR. Indeed, its exposure is not increased by a
penny. ALAS is neither liable to the Class IV claimants for the SIR nor
obligated to fund the costs of defending actions brought by these claimants
until the SIR is satisfied. See <u>Home Ins. Co. v. Hooper, 294 Ill. App. 3d
626, 633, 691 N.E. 2d 65, 70, 229 Ill. Dec. 129 (1998)</u> (insurer is not
obligated to pay an insured's initial self-insured retention amount absent a
"drop down" provision in the insurance policy).

The SIRs are to be satisfied in exactly the same way as every other
unsecured claim against the Debtor. The policy condition to ALAS's
liability that the Debtor "pay" costs and amounts due on the claim "as they
become due" up to the amount of the SIR will be satisfied under the Plan.
An obligation to pay is satisfied when something of value is given and
accepted in full discharge of that obligation. See Black's Law Dictionary
1150 (7th ed. 1999). That is what the Plan provides.

Nor is ALAS's practical risk increased by the Plan. Under the
Plan, the Plan Administrator is charged with the task of defending
malpractice actions, and ALAS is under no obligation to provide defense
costs until the SIR is satisfied. The Plan Administrator has every
incentive to adequately defend malpractice actions. Failure to defend in
good faith might result in the loss of coverage by ALAS, which would
have a devastating effect on creditors to whom the Plan Administrator
owes a duty. Moreover, if a claim can be defeated or settled for less than
the remaining SIR, those creditors will receive a larger distribution.

In addition, a second, independent reason exists for overruling
ALAS's objection. The insurance policies contain a clause entitled
"Bankruptcy and Insolvency", which states that "the bankruptcy or
insolvency of the FIRM or any other ASSURED shall not relieve the
Company of its obligation to pay claims made under this Policy. (241
B.R. at 595-597).

At page 29 of its Response, IICNA also cites to <u>Pak-Mor Manufacturing Co. v. Royal</u>

<u>Surplus Lines Insurance Co.</u>, 2005 U.S.Dist. LEXIS 34683 (W.D.Tex. 2005). In <u>Pak-Mor</u>, the

insurance policy at issue provided that the carrier had no responsibility to provide coverage until

the insured "makes actual payment of the Retained Limit." (p.*9) The defendant insurer argued,

as IICNA does, that in light of the foregoing language of its policy, it had no obligation to

provide coverage unless and until the Retained Limit of the policy was paid out <u>in cash</u>, which

the insured, a chapter 11 debtor, could not do. The District Court in <u>Pak-Mor</u> rejected the insurer's argument, finding that the debtor's obligation to pay the Retained Limit need not be satisfied by cash payments, but rather could be satisfied by any means available to the debtor in its bankruptcy proceeding,. As the <u>Pak-Mor</u> court observed (at p.*31):

> [T]here is no reason why Royal [the insurer] should care what form that payment takes. Indeed, whether the payee and Pak-Mor agree on a $100,000 payment in the form of cash, a promissory note, or anything else, it fulfills its same function as far as everyone is concerned; it fulfills Pak-Mor's $100,000 obligation and provides Royal its $100,000 of protection. Thus, Pak-Mor is free to pay the retained limit in whatever form it likes.

Presumably, IICNA was aware of the foregoing rulings in the <u>Keck</u> and <u>Pak-Mor</u> cases when IICNA cited those cases in support of the argument in Part C.3 of its Response. Given the obvious relevance of those decisions to the discussion in Part C.1 of its brief, and the fact that those decisions are contrary to the argument made in Part C.1, IICNA's failure to discuss those decisions in Part C.1 suggests that, at the very least, IICNA did not fully consider the arguments it has presented in its Response. In any event, the conclusion is inescapable that the IICNA Policy does not require that the underlying limits of the Reliance policy be exhausted by cash payments, as IICNA maintains.

## 2.    IICNA'S DROP DOWN ARGUMENT IS A STRAW MAN

At pages 23 through 28 of its Response, IICNA makes the completely irrelevant argument that it cannot be required to "drop down" to cover claims that should be covered by lower layers of coverage. Plaintiff, however, has never sought to make IICNA or any of its other excess carriers drop down to pay claims within lower levels of coverage. The fact that IICNA wastes the time of the parties and the Court with this argument may be relevant to whether

IICNA has addressed its obligations as an insurer in good faith (Third Claim for Relief in Plaintiff's Complaint), but that issue is not presently before the Court.

"Drop-down coverage occurs when an insurance carrier of a higher level of coverage is obligated to provide the coverage that the carrier of the immediately underlying level of coverage had agreed to provide." 85 A.L.R.4th at 729 n.5 (1991). In this instance, Plaintiff has never demanded, nor does Plaintiff now seek, to have IICNA drop down to provide coverage within the immediately underlying layer of insurance provided by GenStar, or the layers below that provided by National Union and Reliance. The only issue presented here is whether IICNA can disclaim coverage within its $50 million layer (i.e. coverage for liabilities incurred by the insureds over and above the amount of all underlying layers), solely on the grounds that the Reliance layer of coverage, which is two layers below IICNA, has not been paid out in cash.

The record is clear, and IICNA does not dispute, that both National Union and GenStar have paid claims and expenses with respect to liabilities incurred by the insureds over and above the Reliance layer, notwithstanding that the Reliance layer had not been paid out in cash.[3] Plaintiff now seeks declaratory relief to prevent IICNA from honoring its insurance obligation in the same manner. The relief sought by Plaintiff does not in any respect require IICNA to drop down to a lower level of coverage. IICNA's drop-down argument is therefore nothing more than a straw man and should be ignored by this Court.

---

[3] As set forth in Plaintiff's Motion, National Union initially disclaimed its insurance obligation using the same "cash exhaustion" and "drop down" arguments made by IICNA in its Response. On that earlier occasion, as in the instant situation, IHS commenced an adversary proceeding for declaratory relief rejecting National Union's disclaimers, and moved for summary judgment with respect to such relief. On that occasion, the bankruptcy court granted IHS's motion for summary judgment and National Union thereafter defended and paid insured claims within the limits of its excess policy As in the present situation, IHS did not demand or seek coverage from National Union within the underlying $9 million layer of primary insurance. Rather, National Union was called upon to defend and pay claims only once the insureds' liabilities, as established by settlements and judgments, exceeded the $9 million Reliance layer.

**3.    IICNA CANNOT REPUDIATE THE INSOLVENCY PROVISIONS IN ITS OWN
INSURANCE CONTRACT**

At Part C.3 of its Response (pp.28-29), IICNA deals for the first time with the crux of the

issue before this Court. In that section, IICNA tries to explain away the provisions in its own

Policy that plainly and expressly preclude IICNA from disclaiming coverage based upon the

insolvency of an insured or of an underlying insurer. For the convenience of the Court, we

repeat that the insolvency provisions appear in Sections IV(C) and Section IV(I) of the IICNA

Policy. Section IV(C), captioned "Bankruptcy and Insolvency," provides: "Bankruptcy and

insolvency of YOU, or YOUR estate will not relieve US of OUR obligations under this policy;"

and Section IV(I), captioned "Maintenance of Underlying Insurance," provides:

> if any limits of liability of UNDERLYING INSURANCE . . . are
> unavailable due to bankruptcy or insolvency of an underlying
> insurer . . . then the insurance afforded by this policy shall apply in
> the same manner as if such underlying insurance and limits of
> liability had been in effect, available, so maintained and
> unchanged.

Incredibly, IICNA states that the foregoing insolvency clauses are not applicable in the

instant situation because IICNA is not disclaiming coverage based upon the insolvency of the

insured (Response, p. 28). IICNA's position is patently absurd and, since IICNA's position has a

direct impact on the recoveries of many personal injury claimants, truly callous and shocking.

The insolvencies of IHS and Reliance are precisely the purported basis of IICNA's Reliance

Disclaimer, and IICNA's reading of the insolvency clauses in its own Policy defies reason. Had

there been any logic to IICNA's position, IICNA could have and would have described or given

examples of situations in which the insolvency clauses would apply, and contrast those situations

to the situation at hand. Of course, IICNA has not and could not do that.

In the third paragraph of Part C.3 of its Response (p.28), IICNA argues that the Policy is

not ambiguous. Plaintiff agrees. The Policy is very clear that the insolvency of an insured or

10

underlying insurer does not decrease IICNA's insurance obligation. This is precisely why

IICNA remains obligated to provide coverage <u>within the limits of its Policy</u>, notwithstanding the

fact that the Reliance layer could not be paid out entirely in cash, due to the insolvencies of IHS

and Reliance, and therefore will be satisfied in whole or part with bankruptcy claim dollars.

IICNA ends Part C.3 of its Response with a string cite to cases that IICNA claims support

its position that "an insurer has no duty to defend or indemnify an insolvent insured who is

unable to pay its self-insured retention" (Response, p. 29). IICNA's legal authorities are not

binding on this Court. More importantly, they do not support IICNA's position, as should have

been evident to IICNA when it cited them.

The first case cited by IICNA is <u>The Home Ins. Co. of Illinois v. Hooper</u>, 294 Ill.App. 3d

626, 691 N.E.2d 65 (Ill. 1998). In the <u>Home Insurance</u> case, the plaintiff insurer ("Home")

brought a declaratory judgment action against the chapter 11 debtor insured to determine

whether a self-insured retention provision ("SIR") in a liability policy issued by Home was a

condition precedent that had to be satisfied before Home was liable for the limits of its policy.[4]

The policy provided coverage of $1,000,000 per incident, subject to an SIR of $250,000 per

incident. With respect to a particular claim made under the policy, Home argued (as IICNA

does) that the debtor insured had not paid and could not pay the SIR in full, and therefore Home

Insurance had no liability with respect to the incident, even with respect to the insured's liability

in excess of the $250,000 SIR. The trial court agreed with Home, but the Illinois appellate court

reversed, finding that the insured's inability to pay the SIR did not relieve Home of its obligation

to cover the debtor's liability in excess of the SIR. The appellate court ruled, in part, as follows:

---

[4] Home sought and obtained relief from the automatic stay in the debtor's bankruptcy case so that the declaratory judgment action could be litigated in state court.

> The express language of the policy clearly defines Home's liability
> to pay claims in amounts cumulatively exceeding $250,000, such that the
> amounts paid or payable by the company, plus the amounts paid or
> potentially payable by the named insured, shall equal $1 million. Under
> the aforementioned provision, Home is obligated to indemnify Lester for
> that portion of the judgment or settlement exceeding $250,000,
> irrespective of Lester's inability to pay the claimed retention amount.

Unlike the present Motion, the <u>Home Insurance</u> case also involved a "drop down" issue

in that the debtor insured asserted that Home had to drop down to pay even the claim amount that

fell within the $250,000 SIR, while Home argued that it had no drop down liability. Both the

trial court and the appellate court agreed with Home that it did not have a duty to drop down to

cover the debtor's SIR. As explained above, there is no "drop down" issue in the case at bar

because Plaintiff has never demanded, and does not demand, that IICNA drop down to provide

coverage within a lower level of insurance. Thus, the rulings in <u>Home Insurance</u> are entirely

consistent with, and indeed wholly support, the declaratory relief sought by Plaintiff in its

Motion.

The second case cited by IICNA at page 29 of its Response is <u>In re Keck Mahan & Cate</u>,

241 B.R. 583, 596 (Bkr. E.D.Ill 1999). As previously discussed herein (See *supra*, pp.6-8), the

<u>Keck</u> case is also squarely at odds with the arguments made by IICNA, and entirely consistent

with the relief sought by Plaintiff in its Motion. In <u>Keck</u>, the insurer ("ALAS") objected to the

insured chapter 11 debtor's proposed plan of reorganization (the "Plan") on the ground that it

would make ALAS liable with respect to two specific personal injury claims (the "Claims") even

though the debtor, under its Plan, would not pay in full its SIR obligations with respect to the

Claims. As discussed above, the bankruptcy court overruled ALAS's objection, finding that the

debtor's Plan was consistent with the terms of the ALAS insurance policy. Specifically, the

court ruled that, under the ALAS policy, ALAS was obligated to provide coverage, within the

limits of its policy, to the extent that the debtor's liability on the Claims exceeded the debtor's SIR obligations. The court reasoned that the debtor's SIR obligations would be deemed satisfied by reason of the consummation of debtor's Plan, and therefore "paid," for purposes of the policy whether or not the SIR obligations were paid in cash. In addition, the bankruptcy court found that, by reason of the insolvency provisions in the ALAS policy (not materially different from those in the case at bar)[5], ALAS was obligated to "pay any amount in excess of the SIR regardless of whether the SIR is satisfied or not." (241 B.R. at 597).

As demonstrated above, there is no logical basis for IICNA to cite the Home Insurance and Keck cases as authorities in its favor. On the contrary, it is patently obvious that the Home Insurance and Keck cases are entirely supportive of the relief sought by Plaintiff in its Motion. The other cases cited by IICNA are not as pertinent to the issues at hand, but are equally unavailing to IICNA.

The next case cited by IICNa is In re Apache Products Company, 331 B.R. 288 (Bkr. M.D.Fla. 2004). Apache is a "drop down" case, and it therefore of no relevance to the instant Motion. In Apache, the bankruptcy court considered an insurance company's obligations in a situation in which claims made against the insurer's policy did not exceed the amount of the debtor-insured's SIR. The court specifically noted that it was not presented with, and was not addressing, a situation in which the debtor's liability exceeded the amount of its SIR. The court concluded, "the issue is not ripe for consideration of whether or not Wheelright[6] is applicable once there is an adjudication against Apache in excess of the $100,000 SIR" (311 B.R. at 298).

---

[5] The ALAS policy provided that "the bankruptcy or insolvency of the FIRM or any other ASSURED shall not relieve the Company of its obligation to pay claims made under this Policy." (241 B.R. at 597). In substance, this provision in the ALAS policy is identical to the provisions in Sections IV(C) and IV(I) of the IICNA Policy, as quoted above.

[6] The Wheelright case referred by the court in Apache is Liberty Mutual Insurance Company v. Wheelwright Trucking Company, 851 So 2d 466, 2002 WL 31663569 (Ala. 2002). In Wheelright, the court

In re Amatex Corporation, 107 B.R. 856 (E.D.Pa. 1989) is the next case cited by IICNA. Amatex is also a "drop down" case and thus irrelevant to the issue before this Court. In Amatex, unlike the case at bar, the insurance company did not dispute its obligation to provide coverage over and above the amount of the insured debtor's SIR obligation. Rather, the debtor sought a declaration that, as a result of its insolvency, the insurer was obligated to drop down to cover claims falling within the debtor's unpaid SIR. No such declaration is sought in the instant Motion.

The last two cases cited by IICNA are decisions of the Texas District Courts, Associated Electric & Gas Insurance Services Limited v. Border Steel Rolling Mills, Inc., 2005 U.S. Dist. LEXIS 32198 (W.D.Tx. 2005) and Pak-Mor Manufacturing Co. v. Royal Surplus Lines, Inc., 2005 U.S. LEXIS 34683 (W.D.Tx 2005). The analyses and rulings in Associated Electric and Pak-Mor are inapposite to the instant Motion because those analyses and rulings are very clearly rooted in aspects of Texas law that are substantially different from the laws applied in the other cases discussed above and in the Motion. In Associated Electric, the court ruled that the insurance carrier did not have to provide coverage to a debtor who failed to pay its SIR. However, the decision is based in large part upon an analysis of Texas authorities that distinguish between "liability provisions" in an insurance policy and "indemnity provisions" (pp. *7-23). That legal distinction is not discussed in any of the cases from outside of Texas. Moreover, the Texas court's analysis in Associated Electric is confused, and therefore of questionable value, in that the court discusses approvingly several "drop down" cases, even though the debtor did not seek "drop down" relief.

---

determined that an insolvent insured's failure to pay an SIR did not excuse the insurer's obligation to cover the portion of claims in excess of the SIR amount. Wheelright is another decision rejecting the argument made by IICNA and supporting the relief sought by Plaintiff in its Motion.

Similarly, in the Pak-Mor case, the court indicates that numerous states other than Texas have enacted legislation requiring that insurers insert "bankruptcy clauses" in their insurance policies "to *negate* the retained limit requirements in the bankruptcy context and thereby keep insurers *on the hook* when the insureds went bankrupt (2005 U.S. Dist. LEXIS 34683 at p. *18, emphasis in original). Then, emphasizing that Texas has not enacted such legislation, the Pak-Mor court declines to follow cases from other states (including the Home Insurance case discussed above) in which such legislation has been enacted.

As set forth in Plaintiff's Motion (p. 21, par. 61), the State of Pennsylvania, in which IICNA maintains its principal place of business, has enacted just such legislation. Thus, 40 P.S. § 117, captioned "Indemnity insurance, statement as to insolvency or bankruptcy of insured," requires that any liability or property damage insurance policy issued by an insurer authorized to do business in Pennsylvania include "a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such Policy." Since the analysis in Pak-Mor is specifically dependent upon distinctions between the statutes of Texas, which have no bearing in the case at bar, and the statutes of states like Pennsylvania, that require solvency clauses in all liability policies, the legal analysis in Pak-Mor can not be applied to the case at bar.[7]

It is clear from the foregoing that the cases cited by IICNA provide no support for its Reliance Disclaimer. On the contrary, the relevant cases uniformly support the proposition that IICNA is obligated to honor its insurance obligation with respect to claim within its Policy

---

[7] As discussed above at pages 7-8, the District Court in Pak-Mor did reach one logical conclusion not dependent upon Texas law. The court ruled that the payment of debtor's SIR obligation, as required by the relevant insurance policy, did not have to be made in cash. Rather, the debtor's satisfaction of that claim pursuant to a confirmed plan of reorganization would constitute "payment" of the SIR for purposes of the policy, regardless of the form of satisfaction provided in the plan. This ruling in the Pak-Mor decision is directly contrary to IICNA's argument that the Reliance layer of coverage must be paid in cash before IICNA has any obligation under its Policy.

limits, whether or not the Reliance layer of coverage has been paid out in cash. IICNA has demonstrated a crass disregard for the rights and interests of the insureds and the many personal injury claimants who depend upon the IICNA Policy for their recovery. The Plaintiff accordingly respectfully requests that this Court grant forthwith the declaratory relief requested in the Motion.

## CONCLUSION

For all the foregoing reasons, and as set forth in Plaintiff's Motion, this Court should

grant partial summary judgment in favor of the Liquidating LLC and against IICNA: (i) severing

the First Claim for Relief; (ii) awarding a judgment declaring that the IICNA Policy obligates

IICNA to pay claims that have been liquidated in amount by judgment or settlement to the extent

that such claims exceed the limits of liability set forth in underlying policies, whether or not the

Debtors' primary layer of coverage with Reliance has been exhausted by actual cash payments

of claims and defense costs; and (iii) denying the relief requested in the IICNA Counterclaim.

Dated: Wilmington, Delaware
     April 4, 2006

BIFFERATO, GENTILOTTI, BIDEN & BALICK

_____
Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
1308 Delaware Avenue
Wilmington, Delaware 19899
(302) 429-1900

-and-

KAYE SCHOLER LLP
Arthur Steinberg
Marc D. Rosenberg
Ana Alfonso
425 Park Avenue
New York, New York 10022-3598
(212) 836-8000

-and-

TROUTMAN SANDERS LLP

Lee W. Stremba
Clement H. Berne
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000

Attorneys for IHS Liquidating LLC

17

## CERTIFICATE OF SERVICE

I, Garvan F. McDaniel, hereby certify that on this, the 4th day of April, 2006, a copy of the foregoing *Reply Memorandum of IHS Liquidating LLC in Further Support of Its Motion for Partial Summary Judgment* was caused to be served in the manner indicated upon the following:

**BY HAND DELIVERY & BY U.S. MAIL**

Thomas G. Whalen, Esquire
Stevens & Lee, P.C.
1105 North Market Street
7th Floor
Wilmington, DE 19801

James F. Harker, Esq.
Herlily Harker & Kavanaugh
1400 N Market St
Suite 200
Wilmington, DE 19801

Joshua W. Cohen, Esq.  **
Day, Berry & Howard LLP
One Audubon Street, 6th Floor
New Haven, CT 06511

Marc Stephen Casarino, Esq.
White and Williams LLP
824 Market Street
Suite 902
Wilmington, DE 19899

Christopher Page Simon, Esq.
Cross & Simon, LLC
913 Market Street
Suite 1001
Wilmington, DE 19899

Leonard P. Goldberg, Esq.  **
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103

Joseph Michael Barry, Esquire
Kenneth John Enos, Esquire
Young, Conaway, Stargatt & Taylor
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

Thomas O. Farrish, Esquire  **
Daniel L. FitzMaurice, Esquire
Day, Berry & Howard, LLP
City Place I
Hartford, CT 06103-3499

Francis J. Deasey, Esq.  **
Gerald J. Valentini, Esq.
Deasey Mahoney & Bender, Ltd.
1800 JFK Blvd., Suite 1300
Philadelphia, PA19103

John B. Nolan, Esquire  **
Day, Berry & Howard, LLP
City Place I
Hartford, CT 06103-3499

George C. Campion, Esq.  **
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, NJ 07054-0438

By: _____

Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
Bifferato, Gentilotti, Biden & Balick
1308 Delaware Ave
P.O. Box 2165
Wilmington, DE 19899-2165

**        By U.S. Mail only