IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Civil Action No. 05-376(GMS) |
| IHS LIQUIDATING LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., GENERAL STAR INDEMNITY COMPANY, and ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,<br><br>Third-Party Defendants. | |

**JOINT STATUS REPORT**

This Joint Status Report is respectfully submitted by the parties in accordance with the Order Setting Scheduling Conference, and accompanying Notice of Scheduling Conference, issued by this Court on August 8, 2006 (the "Order and Notice"). The parties have conferred with respect to each of the agenda items enumerated in the Court's Order and Notice, and the

parties hereby report with respect to each such agenda item, as follows:

**1. Jurisdiction and Service.**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334. The action was originally commenced in the United States Bankruptcy Court, District of Delaware, in the Chapter 11 case of Integrated Health Services, Inc. and its numerous filing subsidiaries (collectively, "IHS").

On March 14, 2006, this Court issued an Order granting a motion of defendant ACE Indemnity Insurance Co., formerly known as Indemnity Insurance Company of North America ("IICNA"), to withdraw the reference of this matter to the Bankruptcy Court.

Plaintiff IHS Liquidating LLC (the "Liquidating LLC" or "Plaintiff") was formed pursuant to the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code, dated March 13, 2003 (the "Plan"), for the purpose of implementing certain aspects of the Plan including, among other things, enforcing the rights of the IHS debtors' estates with respect to their pre-petition insurance policies. This action involves the construction and enforcement of insurance policies covering professional and general liability ("PL/GL") claims against the IHS debtors arising during the year 1999. As such, this Court has subject matter jurisdiction under 28 U.S.C. § 1334 (b) in that this is an action "arising in or related to cases under title 11."

The defendant and third party defendants have all been served and have appeared and answered in the action. No defenses have been raised by any of the parties with respect to service of process or the exercise of personal jurisdiction.

***IICNA States the Following With Regard To A Related Case:***

*On August 15, 2003, IICNA initiated a declaratory judgment action against IHS and ABE Briarwood Corp. seeking inter alia, a declaration that Excess Catastrophe Liability Policy No. XLXG20108034, issued by IICNA to IHS for the period January 1, 2000 to January 1, 2001, had been improperly assigned to ABE Briarwood Corp. under the terms of that certain Stock Purchase Agreement dated as of January 28, 2003 made by and between ABE Briarwood Corp. and IHS. In addition, IICNA sought a declaration that ABE Briarwood Corp. was not an "insured" as that term is defined in the policy. On or about that same date, IICNA filed a Motion For Determination That The Proceeding Was Non-Core and a Motion to Withdraw the Reference. The United States Bankruptcy Court for the District of Delaware issued an order on October 14, 2004 finding that the matter was non-core. This Court granted IICNA's Motion to Withdraw the Reference on December 2, 2004.*

*In April 2005, IICNA was informed that the policies underlying its Excess Catastrophe Liability Policy No. XLXG19524139 issued to IHS for the period January 1, 1999 to January 1, 2000 (hereinafter the "1999 IICNA Policy") were nearly exhausted. On April 15, 2005, IICNA submitted a proposed Amended Complaint For Declaratory Judgment to counsel for IHS and counsel for ABE Briarwood Corp.*

*As set forth in greater detail, infra, the first layer of insurance available to IHS during the period January 1, 1999 to January 1, 2000 was issued by Reliance Insurance Company ("Reliance"). That policy was part of the IHS self-insured retention. The limits of the Reliance Policy were never paid. The first layer of excess insurance available to IHS during the period January 1, 1999 to January 1, 2000 was provided by the National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union"). There is an issue among the parties*

*to this litigation as to the terms, conditions and limits of coverage provided by National Union for this period.*

*At some point, IHS tendered the defense and indemnification of the, then, known claims which alleged injury, residency or injury and residency occurring between January 1, 1999 and January 1, 2000 to National Union. National Union refused to accept IHS's tender on the ground that the limits of the underlying Reliance policy had not been exhausted by actual claim payments totaling $9 million. IHS filed a declaratory judgment action against National Union in the United States Bankruptcy Court for the District of Delaware (hereinafter the "Bankruptcy Court") and moved for summary judgment. The Bankruptcy Court held in favor of IHS finding that, "the 'Retained Limit' is exhausted and National Union's obligation to pay IHS for liabilities covered by the Policy commences accordingly when the 'Insured" or the "Insured's underlying carrier' becomes legally obligated to pay 'sums in excess of the Retained Limit' (as the foregoing quoted terms are used in the National Union Main Policy), irrespective of whether such sums have been or ever will be paid." The Bankruptcy Court dismissed as "moot" Count II of National Union's Counterclaim which sought to compel partial payment of the "Retained Limits" by IHS's non-debtor subsidiaries.*[1]

*IICNA contends that its policy is not triggered on a "legal obligation" to pay standard. In IICNA's proposed Amended Complaint For Declaratory Judgment, IICNA sought a declaration the 1999 IICNA Policy was not triggered because (1) the first layer insurance policy, issued by Reliance, had not been exhausted by actual payment, and (2) the Bankruptcy Court had failed to require the payment of claims within Retained Limits by IHS's non-debtor subsidiaries. Counsel for IHS objected to IICNA's proposed Amended Complaint For*

[1] National Union states that after this decision, National Union assumed the defense of claims and paid $25 million before tendering the defense of the claims to GenStar.

*Declaratory Judgment and on May 6, 2005 initiated a declaratory judgment action in the Bankruptcy Court. Defendant, IICNA, believes its original Complaint for Declaratory Judgment against IHS and ABE Briarwood Corp. to be a companion case which should be consolidated with this action.*

**2. Substance of Issues.**

The IHS debtors had three principal business segments, one of which operated over 377 skilled nursing and subacute care facilities. IHS maintained insurance programs to manage its exposure to personal injury claims arising from the Debtors' businesses. For the 1999 policy year, IHS had four layers of PL/GL insurance coverage, as follows:

**a. Primary Layer with Reliance.** IHS procured primary PL/GL insurance coverage for 1999 from Reliance Insurance Company ("Reliance"). The policy issued by Reliance for 1999 (the "Reliance Policy") provides coverage of $2,000,000 each medical incident for professional liability claims and $1,000,000 per occurrence for general liability claims, with an aggregate coverage limit of $9,000,000. On October 3, 2001, an Order of Liquidation was entered against Reliance in the Commonwealth Court of Pennsylvania, thereby commencing liquidation proceedings against Reliance under the Pennsylvania insurance statutes. As a result of the coincidental insolvency proceedings of IHS, the insured, and Reliance, its primary insurer, it is a virtual certainty that a substantial part of the $9,000,000 Reliance Policy will never be paid out in cash.

The Reliance Policy is part of the IHS self-insurance program. Upon IHS's insolvency, IHS tendered all known claims to Reliance, which adjusted the individual claims until its own insolvency. It is undisputed that a substantial portion of the aggregate limits have not been paid

by either IHS or Reliance.[2]

There is no relief sought in the instant action with respect to the Reliance Policy.

***IICNA Makes the Following Additional Statement:***

*Despite numerous assertions in this document and in its Reply Brief to IICNA's Reply to IHS Motion for Summary Judgment, IICNA has never contended that the limits of the Reliance Policy must be paid out "in cash". However, IICNA has always contended that the limits must be "paid". In the instant matter, the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code, dated March 13, 2003, makes no provision for the payment of the unpaid Reliance Limits. 1999 Insured Tort Claimants (as that term is defined in the Plan) have a pro-rata claim to the limits of insurance, discounted for the gap in limits resulting from Reliance's insolvency, or they have no claim at all. Moreover, under the Plan, 1999 Insured Tort Claimants must agree to waive any individual claims that they may have against the estate of Reliance in favor of IHS. In so doing, the Plan precludes the further erosion of the Reliance Policy's limits in favor of IHS.*

***The Liquidating LLC Makes the Following Additional Statement:***

*The Liquidating LLC disputes IICNA's characterization of the IHS Plan, as aforesaid, but agrees that, as a result of the IHS and Reliance insolvencies, the Retained Limits of the Reliance Policy will very likely never be fully paid out in cash. The Liquidating LLC contends, however, that whether or not the Retained Limits of the IHS*

---

[2] The Liquidating LLC does not dispute that the Retained Limits of the Reliance Policy have not been paid in cash. However, the Liquidating LLC contends that the term "paid" can have more than one meaning. In this instance, the Retained Limits of the Reliance Policy have been satisfied in part by cash payments an in part by claims allowed in the IHS and Reliance insolvency proceedings and may therefore be considered "paid."

*Policy are ever paid out in full, the Liquidating LLC does not seek to have IICNA "drop down" to cover any part of the Reliance insurance layer, nor have either National Union or GenStar been asked to do so. The issue before this Court for which the Liquidating LLC seeks summary judgment is whether IICNA can avoid payment of claims within its own $50 million layer of excess coverage on the grounds that the primary underlying layer of insurance could not be paid out in cash due to the insolvencies of IHS and Reliance.*

**b. First Excess Layer with National Union.** Third Party Defendant National Union Insurance Company of Pittsburgh, Pa. ("National Union") issued an excess insurance policy providing IHS with a $25 million first layer of PL/GL coverage in excess of the Reliance Policy (the "National Union Main Policy").

In addition, a Landlord of IHS of Lester, Inc. (the "Lester Landlord" and "IHS of Lester") one of IHS's operating subsidiaries, demanded that IHS of Lester obtain separate excess coverage for 1999. Accordingly, IHS obtained a second National Union Commercial Umbrella Policy, BE 357-43-44, (the "National Union Lester Policy," together with the National Union Main Policy, the "National Union Policies"). National Union contends that the National Union Lester Policy provides IHS of Lester with a separate $2 million first layer of excess coverage, while IICNA contends that the National Union Lester Policy actually provides limits of up to $25 million in first layer excess coverage. *National Union makes the following contention concerning this dispute:*

> *The declaration page of the 1999 National Union Lester Policy, attached as Exhibit B to the third-party complaint of IHS Liquidating, says that the limit of insurance is $25,000,000 per occurrence and in the aggregate. The Lockton Companies, the broker*

*for IHS, issued a correction to the 1999 National Union Lester Policy, also attached as an exhibit to the third-party complaint of IHS, stating that the "Limit of liability should be 2,000,000 in lieu of 25,000,000." If IHS Liquidating claims that the limit of insurance of the 1999 National Union Lester Policy is $25,000,000, that dispute can be resolved by motion. If IHS Liquidating does not claim that the limit of insurance of the 1999 National Union Lester Policy is $25,000,000, IICNA will lack standing to claim that the limit of insurance of the 1999 National Union Lester Policy is $25,000,000.*

In its answer to the Complaint herein, defendant IICNA asserted a Counterclaim in which it sought a declaration, *inter alia*, that the IICNA Policy could not properly be called upon because the Plaintiff permitted the improper exhaustion of the lower levels of coverage. With respect to the National Union Policies, IICNA alleged that the Plaintiff permitted National Union to improperly exhaust the National Union Policies in that, *inter alia*, (a) National Union disregarded the Lester Policy entirely and charged all 1999 claim losses against the National Union Main Policy; and (b) National Union charged defense costs against the policy limits of the National Union Main Policy notwithstanding that the National Union Policies provide that coverage for defense costs is in excess of the above-stated policy limits.

To resolve the foregoing issues fully, Plaintiff included in its Reply a Third-Party Complaint against National Union and GenStar.

**c. Second Excess Layer with GenStar.** Third Party Defendant General Star Indemnity Company ("GenStar") issued an excess insurance policy providing IHS with a $25 million second layer of coverage in excess of the Reliance Policy and the National Union Policies (the "GenStar Policy").

In its Counterclaim for declaratory relief, as described above, defendant IICNA alleged

that the Plaintiff permitted GenStar to improperly exhaust the GenStar Policy in that, *inter alia*, the Plaintiff permitted GenStar to charge defense costs against the policy limits of the GenStar Policy. IICNA contends that at the time of its Counterclaim, IICNA had requested on numerous occasions, but not received a copy of the GenStar Policy. GenStar states that it has subsequently provided a copy of the GenStar Policy to IICNA, which policy, GenStar contends, unambiguously includes defense costs within its policy limits; yet IICNA has not withdrawn this allegation. GenStar has contended that the GenStar Policy provides coverage with defense costs within the policy limits. In addition, IICNA alleged that the Plaintiff had permitted GenStar to improperly exhaust the GenStar Policy by permitting GenStar to charge 1999 claim losses for IHS of Lester facilities against its policy. IICNA alleges that the GenStar Policy follows form to the National Union Main Policy's exclusion for IHS of Lester.

As indicated above, to resolve the foregoing issues fully, Plaintiff included in its Reply a Third-Party Claim against National Union and GenStar.

**b. Third Excess Layer with IICNA.** Defendant IICNA issued an excess insurance policy providing IHS with a $50 million layer of PL/GL coverage (the "ACE Policy") in excess of the Reliance Policy, the National Union Policies and the GenStar Policy.

In or about May, 2005, as the GenStar layer of coverage was nearing exhaustion (according to National Union and GenStar) and GenStar was preparing to turn over the open claim files to IICNA, IICNA disclaimed all coverage under the IICNA Policy unless and until all underlying policy limits were paid out *in cash*. It is undisputed that, in light of the bankruptcy of IHS and the liquidation of Reliance, there is no reasonable likelihood that the Reliance Policy, IHS's $9 million primary layer of coverage for 1999, will never be paid out in full in cash.

IICNA's disclaimer therefore put at issue the entirety of coverage under the $50 million IICNA Policy.

*IICNA makes the following additional statement:*

> *IICNA disputes the characterization of its coverage position as contained in the foregoing paragraphs. Rather, IICNA assumed the defense of all open claims, except claims asserted against IHS of Lester facilities, subject to a full and complete reservation of rights. IICNA disclaimed coverage under its policy for IHS of Lester. IICNA's reservation of rights included a reservation that its policy was not triggered unless and until all underlying policy limits were properly exhausted by payment.*
>
> *IICNA's disclaimer of coverage for IHS of Lester facilities was based on the failure of National Union to make any payments, whatsoever, from the National Union Lester Policy. It was also based on the failure of the Plaintiff to require the exhaustion of all underlying insurance by actual payment as required by the IICNA policy. In addition, IICNA disclaimed coverage for the IHS of Lester facilities because the 1999 IICNA Policy is a follow form policy, which follows the form of the National Union Main Policy. The National Union Main Policy expressly excludes coverage for IHS of Lester facilities.*
>
> *IICNA acknowledges that the Plaintiff's failure to make provision, in some fashion, for the actual payment of the Reliance Policy's limits may preclude the triggering of the 1999 IICNA Policy. However, Plaintiff has failed to require the proper exhaustion of the underlying coverage, and has unnecessarily required IICNA to defend and indemnify claims which should otherwise have been paid by the underlying carriers.*

On May 6, 2005, the Liquidating LLC commenced the present adversary proceeding in the Bankruptcy Court. The First Claim for Relief in the Liquidating LLC's Complaint seeks a

declaration that the IICNA Policy obligates IICNA to pay covered claims in excess of underlying policy limits notwithstanding that the full limits of the underlying primary Reliance Policy have not been paid in cash due to the bankruptcy and insolvency of IHS and Reliance. Plaintiff has filed a motion for partial summary judgment with respect to its First Claim for Relief. The motion has been fully briefed and submitted to the Court. IICNA has responded to Plaintiff's brief submitted to the Court. It is IICNA's position, as set forth more fully in its brief, that the 1999 IICNA Policy is not triggered because none of the underlying policies were properly exhausted by payment.

In its Complaint, Plaintiff also asserts Second and Third Claims for Relief which seek compensatory and punitive damages. Only the declaratory relief sought in the First Claim is at issue in the pending motion for partial summary judgment. IICNA contends that Plaintiff is not entitled to its Second and Third Claims for Relief because IICNA is defending each and every claim alleging injury, residency or injury and residency at an IHS facility during the term of the 1999 IICNA Policy, excluding only those claims alleging injury, residency or injury and residency at an IHS of Lester facility. Further, IICNA contends that Plaintiff is not entitled to punitive damages because IICNA's reservation of rights is not improper.

On May 13, 2005, IICNA moved for a determination that Plaintiff's adversary proceeding is not a core proceeding and further moved for withdrawal of the reference. As previously stated, by Order dated March 14, 2006, this Court removed the reference with respect to the adversary proceeding.

On July 26, 2005, IICNA filed its Answer to the Complaint and a Counterclaim seeking a declaration that:

> Unless and until the limits of the underlying Reliance Policy, as well as the limits of all other underlying insurance, have been

> exhausted by the actual payment of covered claims against IHS during the relevant policy period, IICNA owes no duty under its 1999 IICNA Policy to indemnify and/or defend IHS for the 1999 Insured Tort Claims or any other claims otherwise occurring within the relevant policy period.

In addition, as previously indicated, IICNA alleged in its Counterclaim that the lower levels of coverage with National Union and GenStar have not properly been exhausted in that: (a) National Union improperly charged claim payments and expenses relating to IHS of Lester claims against the National Union Main Policy and failed to provide coverage under the National Union Lester Policy; and (b) the National Union and GenStar policies provided coverage for defense costs in excess of the stated limits of the policies, but National Union and GenStar charged defense costs against the policy limits.

In response to the Counterclaim, the Liquidating LLC has asserted a Third-Party Claim against all three excess carriers, joining National Union and GenStar, to permit a determination binding on all with respect to the terms of the National Union Policies and the GenStar Policy. The issues addressed in the Liquidating LLC's third-party claim are distinct from the issue raised in the Liquidating LLC's Complaint and are not at issue in Plaintiff's pending motion for partial summary judgment.

IICNA disagrees with Plaintiff's characterization that a determination of the payment of the Reliance Policy is distinct from the other coverage issues in the instant action. IICNA contends that the underlying coverage was not properly exhausted, and that the 1999 IICNA Policy is not triggered. Any determination on whether IICNA's coverage is triggered must include a determination of the limits and exhaustion of the underlying coverage.

**3. Identification of Issues.** The claims in this case principally involve a determination of the rights and obligations of the parties under the insurance policies issued by National Union, GenStar and IICNA. Those issues are summarized above. In addition, the issues relating to the

IICNA Policy are discussed in detail in the papers filed by Plaintiff and IICNA in connection with Plaintiff's motion for partial summary judgment. It is IICNA's position that the motion for partial summary judgment addresses the issues arising from the insolvency of Reliance only and does not address the broader issues applicable to IICNA's coverage.

In addition, IICNA believes that issues involving the amount and exhaustion of the underlying limits are relevant to issues of coverage and must also be addressed. The parties may seek to offer parol evidence of the formation and content of the underlying insurance policies.

In its Complaint, Plaintiff asserts a Second Claim for Relief seeking damages resulting from IICNA's alleged breach of the IICNA Policy. Plaintiff's damages would consist of the additional costs of administering the IHS Plan resulting from IICNA's disclaimer of coverage. Plaintiff also asserts a Third Claim for Relief seeking punitive damages on the ground that IICNA's breach of the IICNA Policy was not based upon a good faith denial of coverage.

As set forth more fully above, IICNA disputes the characterization of its reservation of rights as a "disclaimer". IICNA contends that it has not breached its insurance contract since IICNA continues to provide for the defense of IHS notwithstanding that the Plaintiff failed to require National Union and GenStar to properly exhaust the underlying limits. Moreover, IICNA contends that it should not be subject to the payment of the "additional costs of administering the IHS Plan" simply because it alerted the Plaintiff to its own shortcomings.

**4. Narrowing of Issues.** As previously indicated, Plaintiff's First Claim for Relief is the subject of Plaintiff's pending motion for partial summary judgment. Plaintiff and IICNA are in agreement that the issues raised in that motion are amenable to summary determination based upon the policy documents submitted to the Court. The parties anticipate accordingly that upon the determination of the motion for partial summary judgment, the issues in this action will be

substantially narrowed.

*IICNA makes the following additional statement:*

*However, while it is possible to resolve the Reliance issue at this level, that resolution will not otherwise address the underlying coverage issues. As such, simply addressing the Reliance issue does not preclude IICNA from improperly being required to spend millions of dollars defending and indemnifying claims for which IICNA has no coverage obligation.*

5. **Relief.** As summarized above, Plaintiff and IICNA seek declaratory relief concerning their rights and obligations under the IICNA, National Union and GenStar insurance policies.

In addition, Plaintiff has asserted a claim for damages, consisting of additional costs of administration caused by IICNA's alleged breach of its insurance policy. Plaintiff contends that, as a result of IICNA's disclaimer of coverage, Plaintiff has been forced to place a moratorium on all distributions to the 1999 tort claimants who, under the IHS Plan, are to share in the proceeds from IHS's 1999 insurance program, and the moratorium has caused an uproar among the 1999 tort claimants, (particularly those who have settled claims recently and have not received any recovery whatever under the Plan). Plaintiff contends that its damages arise from, *inter alia*, the additional time and money expended to respond to constant calls, letters, e-mails and, in some cases motion practice, initiated by these angry claimants and their counsel. Because those damages are in substantial part contingent on the future course of this action, Plaintiff cannot presently calculate those damages but believes that they will exceed $50,000.

Again, IICNA disputes the characterization of its reservation of rights as a disclaimer. IICNA further disputes that it has cost the Plaintiff additional time and money. Rather, IICNA contends that it has merely notified the Plaintiff that it will seek to enforce the express terms of its policy. Further, IICNA contends that it has notified the Plaintiff of the improper exhaustion

of the underlying coverage, and that, had the Plan properly addressed the terms of the insurance coverage, IICNA would have had no basis for a reservation of rights.

**6. Amendment of Pleadings.** Unknown at this time. It is possible that one or more of the parties may file Motions to Amend to assert claims or counterclaims to address issues that arise during discovery.

**7. Joinder of Parties.** All necessary parties are joined.

**8. Discovery.** No discovery has been conducted in this action. However, some relevant document discovery has been conducted in an action commenced by IICNA against National Union and GenStar in a Florida state court (the "Florida Action") involving the some insurance policies at issue in the instant action. Although the Liquidating LLC is not a party to the Florida Action, the Liquidating LLC will have access to the document discovery conducted by the parties in that action.

The Florida Action has been stayed by agreement of the parties thereto because the issues in dispute in the Florida Action are also in dispute in the instant action in this Court, and the parties believe that those issues can better resolved in the instant action to which the Liquidating LLC and all the insurance carriers are parties. Accordingly, no further discovery will be conducted in the Florida Action while the stay is in place.

By mutual agreement, the parties have been awaiting a decision on the pending motion for partial summary judgment before moving forward to complete document discovery and conduct depositions. The parties are in accord that, once the summary judgment motion is decided, it would be helpful to refer any and all remaining issues to mediation. One or more parties may wish to conduct discovery prior to mediation.

If it is ultimately necessary to resolve issues by trial, the parties estimate that it would

take 6 months to complete all necessary factual discovery.

**9. Estimated trial length.** Two weeks.

**10. Jury trial?** No.

**11. Settlement.** The parties have held settlement discussions and have resolved certain issues. Most significantly, in the course of discussions, National Union agreed to provide $2 million of coverage for IHS of Lester claims and has taken over the defense of all open claims arising at the IHS of Lester healthcare facilities. Unfortunately, the parties were not been able to resolve the other coverage issues raised in this action, and the parties feel that further settlement discussions at this time would not be productive.

As previously indicated, the parties are in agreement that, following a decision on the pending motion for partial summary judgment, they are prepared to resume discussions in the context of a mediation proceeding.

**12. Other matters.** None.

***The remainder of this page left intentionally blank***

| BIFFERATO, GENTILOTTI, BIDEN & BALICK<br><br>[signature]<br>Ian Connor Bifferato (#3273)<br>Garvan F. McDaniel (#4167)<br>Buckner Building<br>1308 Delaware Avenue<br>Wilmington, Delaware 19899<br>(302) 429-1900<br><br>-and-<br><br>KAYE SCHOLER LLP<br>Arthur Steinberg<br>Marc D. Rosenberg<br>Ana Alfonso<br>425 Park Avenue<br>New York, New York 10022-3598<br>(212) 836-8000<br><br>-and-<br><br>TROUTMAN SANDERS LLP<br><br>Lee W. Stremba<br>Clement H. Berne<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>(212) 704-6000<br><br>Attorneys for IHS Liquidating LLC<br><br>Dated: August 24, 2006 | STEVENS & LEE, P.C.<br><br>____________________<br>Thomas G. Whalen, Jr.(#4034)<br>1105 North Market Street, 7th Floor<br>Wilmington, Delaware 19801<br>(302) 654-5180<br><br>-and-<br><br>DEASEY MAHONEY & BENDER, LTD.<br>Francis J. Deasey<br>Gerald J. Vaalentini<br>Ward A. Rivers<br>1800 JFK Boulevard<br>Suite 1300<br>Philadelphia, PA 19103<br><br>Attorneys for Ace Indemnity Insurance Company<br><br>Dated: August ____, 2006 |
|---|---|

| BIFFERATO, GENTILOTTI, BIDEN & BALICK | STEVENS & LEE, P.C. |
|---|---|
| ____________________________<br>Ian Connor Bifferato (#3273)<br>Garvan F. McDaniel (#4167)<br>Buckner Building<br>1308 Delaware Avenue<br>Wilmington, Delaware 19899<br>(302) 429-1900<br><br>-and-<br><br>KAYE SCHOLER LLP<br>Arthur Steinberg<br>Marc D. Rosenberg<br>Ana Alfonso<br>425 Park Avenue<br>New York, New York 10022-3598<br>(212) 836-8000<br><br>-and-<br><br>TROUTMAN SANDERS LLP<br><br>Lee W. Stremba<br>Clement H. Berne<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>(212) 704-6000<br><br>Attorneys for IHS Liquidating LLC<br><br>Dated: August ____, 2006 | ____________________________<br>Thomas G. Whalen, Jr.(#4034)<br>1105 North Market Street, 7th Floor<br>Wilmington, Delaware 19801<br>(302) 654-5180<br><br>-and-<br><br>DEASEY MAHONEY & BENDER, LTD<br>Francis J. Deasey<br>Gerald J. Vaalentini<br>Ward A. Rivers<br>1800 JFK Boulevard<br>Suite 1300<br>Philadelphia, PA 19103<br><br>Attorneys for Ace Indemnity Insurance Company<br><br>Dated: August ____, 2006 |

| CROSS & SIMON, LLC | COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC |
| --- | --- |
| CPS<br>_____________________________<br>Christopher Page Simon (#3697)<br>913 North Market Street<br>11th Floor<br>Wilmington, Delaware 19801<br>(302) 777-4200<br><br>-and-<br><br>WEINER LESNIAK, LLP<br>George C. Campion<br>629 Parsippany Road<br>Parsippany, NJ 07054<br><br>Attorneys for National Union fire Insurance Company of Pittsburgh, PA<br><br>Dated: August 24, 2006 | _____________________________<br>James F. Harker (#255)<br>Nemours Building, Suite 1130<br>1007 Orange Street<br>Wilmington, Delaware 19801<br>(302) 425-5089<br><br>-and-<br><br>DAY, BERRY & HOWARD LLP<br>Joshua W. Cohen<br>One Audubon Street, 6th Floor<br>New Haven, CT 06511<br><br>-and-<br><br>DAY, BERRY & HOWARD LLP<br><br>John B. Noland<br>CityPlace1<br>Hartford, CT 06103-3499<br><br>Attorneys for General Star Indemnity Company<br><br>Dated: August ____, 2006 |

| CROSS & SIMON, LLC | COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC |
|---|---|
| ____________________<br>Christopher Page Simon (#3697)<br>913 North Market Street<br>11th Floor<br>Wilmington, Delaware 19801<br>(302) 777-4200 | ____________________<br>James F. Harker (#255)<br>Nemours Building, Suite 1130<br>1007 Orange Street<br>Wilmington, Delaware 19801<br>(302) 425-5089 |
| -and- | -and- |
| WEINER LESNIAK, LLP<br>George C. Campion<br>629 Parsippany Road<br>Parsippany, NJ 07054 | DAY, BERRY & HOWARD LLP<br>Joshua W. Cohen<br>One Audubon Street, 6th Floor<br>New Haven, CT 06511 |
| | -and- |
| Attorneys for National Union fire Insurance Company of Pittsburgh, PA | DAY, BERRY & HOWARD LLP<br>John B. Noland<br>CityPlace I<br>Hartford, CT 06103-3499 |
| Dated: August ____, 2006 | Attorneys for General Star Indemnity Company<br><br>Dated: August 24th, 2006 |