# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC.,<br>*et al.*,<br><br>Debtors. | Case No. 00-389 (MFW)<br>Jointly Administered |
| IHS LIQUIDATING LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>Defendant. | Chapter 11<br><br>Adv. Pro. No. 05-51318 (MFW) |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant, Indemnity Insurance Company of North America ("IICNA"), by and through its undersigned counsel of record, sets forth its Answer, Affirmative Defenses and Counterclaim to the Complaint, as follows:

### ANSWER TO COMPLAINT

1. Admitted.

2. Denied as stated. Defendant is properly identified as Indemnity Insurance Company of North America.

3. Denied.

4. Admitted.

5. Admitted.

6. Denied to the extent that paragraph 6 attempts to characterize the Plan which is a document that speaks for itself.

7. Admitted.

8. Denied to the extent that paragraph 8 attempts to characterize the Plan which is a document that speaks for itself. By way of further answer, the Available 1999 Insurance Proceeds are subject to the terms of all applicable insurance policies as well as the Confirmation Order.

9. Denied to the extent that paragraph 9 attempts to characterize the Plan which is a document that speaks for itself.

10. Denied to the extent that paragraph 10 attempts to characterize the policy which is a document that speaks for itself.

11. Admitted.

12. Admitted.

13. Admitted.

14. IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14, and strict proof thereof is demanded.

15. Admitted.

16. IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16, and strict proof thereof is demanded.

17. IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17, and strict proof thereof is demanded.

18. Admitted.

19. IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19, and strict proof thereof is required. To the extent that paragraph 19 sets forth a conclusion of law, no responsive pleading is required.

20. Admitted.

21. Admitted, upon information and belief.

22. Denied as stated. It is admitted only that 1999 Insured Tort Claims have been liquidated and that National Union has made payments to Liquidating LLC for the 1999 Insured Tort Claims. It is denied that the limits of the National Union policy are exhausted.

23. Admitted, upon information and belief.

24. IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24, and strict proof thereof is required. By way of further answer, and as set forth in the Counterclaim, Liquidating LLC has not required that the underlying limits of the National Union Policy or the GenStar Policy be properly exhausted. As such, it is impossible to determine whether Allowed 1999 Insured Tort Claims will exhaust the limits under the GenStar Policy, or whether some portion of the excess coverage available under the 1999 IICNA Policy will be payable. To the extent that paragraph 24 sets forth a conclusion of law, no responsive pleading is required.

25. Admitted.

26. Admitted; however, the pleadings in the Briarwood Action are documents that speak for themselves.

27. Admitted.

28. Denied. By way of further answer, to the extent that paragraph 28 sets forth a conclusion of law, no responsive pleading is required.

3

29. Denied. The Plan and the related Disclosure Statement are documents that speak for themselves, and any attempts to characterize them are denied.

30. Denied.

31. Denied. To the extent that paragraph 31 sets forth a conclusion of law, no responsive pleading is required.

32. Denied.

33. Paragraphs 1 through 32 hereof are incorporated by reference as if more fully set forth at length.

34. Denied to the extent that an actual controversy exists with respect to administration of the Plan.

35. Denied.

36. Denied.

37. Paragraphs 1 through 36 hereof are incorporated by reference as if more fully set forth at length.

38. Denied. To the extent that paragraph 38 sets forth a conclusion of law, no responsive pleading is required.

39. Paragraphs 1 through 38 hereof are incorporated by reference as if more fully set forth at length.

40. Denied.

41. Denied. To the extent that paragraph 41 sets forth a conclusion of law, no responsive pleading is required.

WHEREFORE, IICNA respectfully requests that the Complaint be dismissed with prejudice; and for such other and further relief as is just.

4

## AFFIRMATIVE DEFENSES

42. The Complaint fails to state a claim upon which relief can be granted.

43. The relief requested is barred by the doctrines of waiver and estoppel.

44. This Court should abstain in favor of the prior pending action in the district court styled *Indemnity Insurance Company of North America v. Integrated Health Services, Inc. and Abe Briarwood Corporation*, C.A. No. 04-1262-GMS, into which Liquidating LLC has moved to intervene without opposition from IICNA.

## COUNTERCLAIM

Defendant, Indemnity Insurance Company of North America ("IICNA"), by and through its undersigned counsel of record, files the following Counterclaim to the Complaint filed by plaintiff, IHS Liquidating LLC ("Liquidating LLC"), as follows:

### A.    The Parties

1. IICNA is an insurance company organized and existing under the laws of the State of Connecticut, with its principal place of business located at 1601 Chestnut Street, Philadelphia, PA 19103, and with offices located at 500 Colonial Center Parkway, Suite 200, Roswell, Georgia 30076.

2. Liquidating LLC is a Delaware limited liability company, with its principal place of business located at 21 East 40th Street, Suite 1300, New York, NY 10016.

### B.    Jurisdiction and Venue

3. This Court has non-core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(c), 1334(b) and 2201(a). This is a non-core proceeding pursuant to 28 U.S.C. § 157(c)(1) and IICNA does not consent to the entry of final orders or judgments by the bankruptcy judge in the underlying bankruptcy case.

5

4. Jurisdiction is also founded upon diversity of citizenship under 28 U.S.C. § 1332, as the amount in controversy is in excess of $75,000, exclusive of interest and costs. Venue in this district court is proper pursuant to 28 U.S.C. § 1409(a).

5. On May 13, 2005, IICNA filed its Motion of Defendant Pursuant to Del. Bankr. L.R. 5011-1 for Determination Whether Proceeding is Core [D.I. 5] and its Motion for Withdrawal of Reference [D.I. 6]. Both of these Motions are still pending. ICNA does not waive its request that reference of this entire adversary proceeding, including this Counterclaim, be withdrawn to the district court because the bankruptcy court does not have core jurisdiction over the subject matter of this litigation.

## C.    Background – IHS' Bankruptcy Case

6. Integrated Health Services, Inc. ("IHS"), along with its various affiliates, filed Petitions for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware on February 2, 2002, under Case No. 00-389 (MFW).

7. By Findings of Fact, Conclusions of Law and Order under 11 U.S.C. § 1129(a) and (b) and Fed.R.Bankr.P. 3020 Confirming Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its subsidiaries under Chapter 11 of the Bankruptcy Code dated May 12, 2003 (the "Confirmation Order"), the Bankruptcy Court confirmed the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its subsidiaries under Chapter 11 of the Bankruptcy Code, dated March 13, 2003 [Doc. No. 9349] (the "Plan").

8. IICNA filed objections to the confirmation of the Plan because, *inter alia*, the Plan prejudiced IICNA's rights under IICNA's various insurance policies issued to IHS. IICNA's objections to confirmation of the Plan are incorporated herein by reference.

9. IICNA's objections to the Plan were resolved by the inclusion in the Confirmation Order of the following reservation of IICNA's rights:

6

(e)    With respect to the Objection filed by Pacific Employers Insurance Company et al., the Debtors have agreed as follows: Notwithstanding any other term or provision in the Plan, this Order (i) is without prejudice to the rights, claims and/or defenses of Pacific Employers Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Co.), Indemnity Insurance Company of North America and ACE American Insurance Co. (collectively, "<u>Insurers</u>") under the Debtors' insurance policies with the Insurers (the "<u>Policies</u>") and/or the reservation of rights by Insurers as to any issues relating to the Policies (as such issues are set forth in Insurers' Objections to Confirmation [Doc. No. 9349]; provided, however, that the Insurers and the Debtors agree that to the extent section 365 of the Bankruptcy Code is applicable, nothing in the Plan or this Order shall be deemed to constitute a rejection of the Policies under section 365 of the Bankruptcy Code; (ii) confirms that all of the terms, conditions, limitations and/or exclusions contained in the Policies shall remain in full force and effect; (iii) confirms that the Debtors and the Reorganized Debtors shall remain as the insureds under the Policies, and the Debtors, the Reorganized Debtors and the Insurers shall remain bound by all of the terms, conditions, limitations and/or exclusions contained in the Policies; (iv) confirms that the Policies, to the extent they so provide, shall not be assigned by the Debtors or the Reorganized Debtors without Insurers' express written consent; (v) acknowledges that nothing in the Plan shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Policies; and **(vi) is without prejudice to any of the Insurers' or the Debtors' (or the Reorganized Debtors', if applicable) rights and/or defenses in any pending or subsequent litigation in which Insurers or the Reorganized Debtors may seek a declaration regarding the nature and/or extent of any coverage under the Policies.**

Confirmation Order, ¶35(e) (emphasis added).

10.  The effective date of the Plan was September 9, 2003.

### D.    The Stock Purchase Agreement and Settlement With Abe Briarwood Corporation

11.  Pursuant to a Stock Purchase Agreement dated January 28, 2003 between IHS and Briarwood, IHS contracted to sell its long-term care and rehabilitation therapy business to Abe Briarwood Corporation ("Briarwood").  The Stock Purchase Agreement is incorporated

7

herein by reference.  The sale was effectuated by the formation of two new IHS subsidiaries, *i.e.*, the LTC subsidiary and the Therapy subsidiary (as defined in the Stock Purchase Agreement), all shares of which were purchased by Briarwood on the closing date.

12. The Bankruptcy Court approved the sale transaction contemplated by the Stock Purchase Agreement on March 14, 2003.

13. The Stock Purchase Agreement provides that IHS has "made available" to Briarwood "accurate and complete copies of all material policies of insurance to which the seller [IHS] or any subsidiary is or was a party ... at any time since January 1, 2000..." Stock Purchase Agreement at Sec. 3.14.

14. The Stock Purchase Agreement further provides that IHS has received no refusal of coverage, reservation of rights notice or cancellation with respect to any policy of insurance and that "each policy of insurance is legal, valid, binding, enforceable, and in full force and effect". Stock Purchase Agreement at Sec. 3.14(c).

15. Upon information and belief, a dispute arose between IHS and Briarwood with respect to the completion of the stock purchase transaction.  Briarwood filed Motions to Compel IHS to consummate the transaction and IHS filed a notice of termination.  Among other issues, Briarwood complained that IHS had not informed it of a reservation of rights letter that IICNA provided to IHS on November 9, 2002.  (Motion to Compel, ¶ 11-13).  In its second Motion to Compel the Debtor to Close, Briarwood requested that the Bankruptcy Court, by application of New York law, determine that the 2000 IICNA Policy (as defined below) "is in full force and effect and ACE cannot disclaim coverage".

16. IICNA filed objections to the Motion to Compel asserting, *inter alia*, that Briarwood had no standing, and that the Bankruptcy Court lacked jurisdiction, to determine the parties' rights and obligations under the 2000 IICNA Policy.

17. IHS and Briarwood settled their dispute pursuant to the terms of their Stipulation of Settlement (the "Stipulation") approved by the Bankruptcy Court on July 21, 2003. The Stipulation provides, *inter alia*, that the closing under the Stock Purchase Agreement would take place by August 31, 2003. By agreement of all parties as placed on the record at a hearing on July 21, 2003, the demand for a declaration concerning the 2000 IICNA Policy and IICNA's objections thereto were expressly carved out, and not resolved by, the Stipulation.

18. Briarwood acknowledged in the Stipulation that "it will be subject to the confirmation order in all respects, notwithstanding any provision therein to the contrary." Stipulation, ¶ 27.

### E.    The IICNA Policy For The Policy Period From January 1, 1999 TO January 1, 2000

19. IICNA issued an Excess Liability Catastrophe Policy, No. XLXG19524139 to IHS for the policy period January 1, 1999 to January 1, 2000, with limits of liability insurance of $50,000,000 for each occurrence, and $50,000,000 in the aggregate, in excess of underlying insurance limits of $50,000,000 each occurrence/$50,000,000 aggregate which in turn is excess of underlying insurance or retained limit (the "1999 IICNA Policy"). A true and correct copy of the 1999 IICNA Policy is attached hereto as Exhibit "A" and incorporated herein by reference.

20. Pursuant to the insuring agreement of the 1999 IICNA Policy coverage under the policy is afforded as follows:

A. COVERAGE

We will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of UNDERLYING INSURANCE and (2) only after all

9

UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy and are insured by all of the policies designated in the declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

The Definitions Terms, Conditions, Limitations and Exclusions of the first policy of UNDERLYING INSURANCE in effect at the inception date of this policy apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

21. The insuring agreement of the 1999 IICNA Policy further provides as follows:

C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

I. DEFENSE PROVISIONS

When insurance is available to you in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any occurrence which, in OUR opinion, may create liability on the part of US under the terms of this policy.

We will assume charge of the settlement or defense of any suit brought against you to which this policy applies and to which no UNDERLYING INSURANCE applies because of the exhaustion of aggregate limits of insurance.

If WE assume any right, opportunity or obligation, we shall not be obligated to defend any SUIT after the applicable limits of this policy have been exhausted.

22. The 1999 IICNA Policy is a follow form policy to the extent that the "definitions, terms, conditions, limitations and exclusions of the 'first policy of UNDERLYING INSURANCE', in effect at the inception date of the policy" are not inconsistent with the provisions of the 1999 IICNA Policy and, as a result, the 1999 IICNA Policy incorporates by

10

reference the terms and conditions of the various policies of underlying insurance including, but not limited to, any self-insured retentions, deductibles or other policies of underlying insurance which underlie the $50,000,000 of underlying insurance identified in the 1999 IICNA Policy.

23. In addition to the named insured, IHS, subsidiaries of IHS in existence during the policy period may also qualify as additional insureds under the 1999 IICNA Policy.

24. In connection with the 1999 IICNA Policy, IICNA has been placed on notice by IHS and/or the underlying insurers that the aggregate coverage limits of the underlying insurance to the 1999 IICNA Policy may be exhausted.

25. In connection with the 1999 IICNA Policy, upon information and belief, IICNA avers that there are at least 62 claims and/or lawsuits presently pending against IHS for which the alleged occurrence(s) took place, either in whole or in part, during the effective policy period of the 1999 IICNA Policy (collectively, the "1999 Insured Tort Claims").

26. IICNA has not received copies of all the complaints or other documentation supporting the 1999 Insured Tort Claims, nor does IICNA possess all the pertinent details of the outstanding 1999 Insured Claims. Accordingly, IICNA does not presently have the ability to evaluate the 1999 Insured Tort Claims, including portions or components of claims, to even determine if they are covered under the 1999 IICNA Policy.

27. Once the underlying limits of insurance have been properly exhausted, IICNA has the obligation to defend covered claims that are then outstanding against IHS pursuant to the terms of the 1999 IICNA Policy.

F.  **General Allegations Applicable To The 1999 IICNA Policy**

28. In connection with the insurance underlying the 1999 IICNA Policy, National Union Fire Insurance Company of Pittsburgh ("National Union") issued a Commercial Umbrella policy providing both professional liability and general liability coverage for IHS under policy

11

no. BE 35743-43 for the policy period January 1, 1999 through January 1, 2000 (the "National Union Policy"). A true and correct copy of the National Union Policy (as previously filed as an exhibit in this bankruptcy case) is attached hereto as Exhibit "B" and incorporated herein by reference.

29. The National Union Policy provides a coverage layer of $25,000,000 per occurrence/aggregate in excess of underlying insurance. The underlying insurance is comprised of a primary policy issued by Reliance Insurance Company ("Reliance") under policy no. NGB015164-00 (the "Reliance Policy") with professional liability limits of $2,000,000 per occurrence/$4,500,000 aggregate.

30. The insureds under the Reliance Policy are IHS and IHS' various debtor and non-debtor subsidiaries.

31. On October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance (parent company to Reliance National Indemnity Co.) insolvent and entered an order of liquidation (the "Liquidation Order"). The Liquidation Order names the Insurance Commissioner of the Commonwealth of Pennsylvania as the Reliance liquidator.

32. Upon information and belief, Reliance's insolvency and the Liquidation Order has resulted in the cessation of actual payments from what was to be the coverage limit under the Reliance Policy.

33. Upon information and belief at the time of cessation of payments, there were several million dollars of unpaid aggregate limits under the Reliance Policy remaining.

34. IHS allegedly "resolved" certain 1999 Insured Tort Claims in excess of the $4,500,000 aggregate retained limit under the Reliance Policy. IHS sought to have its excess

12

carrier, National Union, assume administration and defense of any remaining open 1999 Insured Tort Claims.

35. IHS further alleged that the settlement value of the open 1999 Insured Tort Claims was in excess of the limits of the National Union Policy and would reach, at a minimum, the next layer of coverage which is provided by a second layer excess insurance policy issued by General Star Indemnity Company (the "GenStar Policy"). IICNA has not been provided with a copy of the GenStar Policy; however, upon information and belief, IICNA alleges that the GenStar Policy follows form to the National Union Policy.

36. National Union contended that the excess coverage provided by the National Union Policy was triggered only after the actual payment of the retained limit. It therefore denied any obligation to assume the administration and defense of the 1999 Insured Tort Claims.

37. IHS, therefore, filed an adversary proceeding against National Union, styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, at Adv. No. 03-52081, in this bankruptcy court in an effort to enforce coverage under the National Union Policy.

38. IHS argued, *inter alia*, that pursuant to Article 1 of the National Union Policy, coverage attaches under the National Union Policy when the insured is "legally obligated" to make payments in excess of the retained limit.

39. Moreover, IHS contended that although the majority of the judgments and settlements of 1999 Insured Tort Claims had not been paid, it was nonetheless "legally obligated" to pay such amounts and that, therefore, IHS was entitled to coverage under the National Union Policy.

40. National Union replied and counterclaimed arguing, *inter alia*, that the 1999 Insured Tort Claims for which IHS sought coverage were comprised of claims asserted against both IHS and its non-debtor subsidiaries. National Union sought a declaration that non-debtor subsidiaries were required to make payments of sums within the retained limit.

41. The Bankruptcy Court entered partial summary judgment in favor of IHS by Order Granting Debtors' Motion for Partial Summary Judgment dated October 23, 2003 (the "Summary Judgment Order").

42. National Union did not appeal from the Summary Judgment Order.

43. On information and belief, after the issuance of the Summary Judgment Order, National Union assumed the administration and defense of the 1999 Insured Tort Claims.

44. On information and belief, National Union has entered into settlement agreements on behalf of IHS, has obligated itself to satisfy judgments against IHS and/or paid attorneys fees and defense costs on behalf of IHS in an amount equaling $25 million, which purportedly exhaust the National Union Policy limits.

45. On information and belief, GenStar has entered into settlement agreements on behalf of IHS, has obligated itself to satisfy judgments against IHS and/or paid attorneys fees and defense costs on behalf of IHS in an amount equaling $25 million, which purportedly exhaust the GenStar Policy limits.

### COUNT I

46. Paragraphs 1 through 45 hereof are incorporated by reference as if more fully set forth at length.

47. Because coverage under the 1999 IICNA Policy is triggered by actual payment of the underlying limits of the Reliance Policy and is not simply predicated on the insured becoming "legally obligated" to pay, coverage under the 1999 IICNA Policy will not be

triggered until the underlying limits of the Reliance Policy are properly exhausted by actual payment.

48. The underlying aggregate policy limits of the National Union Policy are improperly exhausted because of National Union improperly charging against the underlying aggregate policy limits (i) payment of defense costs and expenses; and (ii) payments made pursuant to judgments or settlements of claims against facilities owned and/or operated by Integrated Health Services of Lester, Inc.

49. The underlying aggregate policy limits of the GenStar Policy are improperly exhausted because of GenStar improperly charging against the underlying aggregate policy limits (i) payment of defense costs and expenses; and (ii) payments made pursuant to judgments or settlements of claims against facilities owned and/or operated by Integrated Health Services of Lester, Inc.

50. Pursuant to the terms of the Plan, Liquidating LLC stands in the shoes of IHS for purposes of the 1999 Insured Tort Claims.

51. Liquidating LLC has requested that IICNA assume the defense of the 1999 Insured Tort Claims. On June 6, 2005, counsel for IICNA sent a letter to counsel for Liquidating LLS informing Liquidating LLC of the improper exhaustion of the underlying limits. A copy of the June 6, 2005 letter is attached hereto as Exhibit "C".

52. Because the underlying limits were not properly exhausted an actual case or controversy exists between IICNA and Liquidating LLC as to whether IICNA has a duty to defend the 1999 Insured Tort Claims

SL1 549254v3/000000.00000

WHEREFORE, IICNA respectfully requests that this Court enter a judgment declaring that:

(i) unless and until the limits of the underlying Reliance Policy, as well as the limits of all other underlying insurance, have been exhausted by the actual payment of covered claims against IHS during the relevant policy period, IICNA owes no duty under its 1999 IICNA Policy to indemnify and/or defend IHS for the 1999 Insured Tort Claims or any other claims otherwise occurring within the relevant policy period;

(ii) unless and until the underlying aggregate policy limits of the National Union Policy and the GenStar Policy, as well as the limits of all other underlying insurance, have been properly exhausted by actual payment of covered claims against IHS during the relevant policy periods, IICNA owes no duty under its 1999 IICNA Policy to indemnify and/or defend IHS for the 1999 Insured Tort Claims or any other claims otherwise occurring within the relevant policy period; and

(iii)  for such other and further relief as is just.


Dated: July 26, 2005

STEVENS & LEE, P.C.

*/s/ Thomas G. Whalen, Jr., Esq.*
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3304
Telecopier: (610) 371-8512
E-mail: tgw@stevenslee.com

and

Leonard P. Goldberger, Esquire
(Member of PA Bar)
1818 Market Street
29th Floor
Philadelphia, PA  19103
Telephone:  (215) 864-7000
Telecopier:  (215) 864-7123
E-mail: lpg@stevenslee.com

and

Francis J. Deasey, Esquire
Gerald J. Valentini, Esquire
Ward A. Rivers, Esquire
(Members of PA Bar)
DEASEY, MAHONEY & BENDER, LTD.
1800 John F. Kennedy Boulevard
Suite 1300
Philadelphia, PA  19103
Telephone:  (215) 587-9400
Telecopier:  (215) 587-9456

*Attorneys for Indemnity Insurance
Company of North America*

17

# EXHIBIT A
# TO EXHIBIT 2

# *Binder*
## *Excess Catastrophe Liability*

We are pleased to authorize this Binder as a Temporary Insurance Contract. This coverage is subject to all terms and conditions of this policy to be issued which, when delivered, replaces this binder. This Binder is valid for 30 days from effective date.

Company: Indemnity Insurance Company of North America
Policy Number: XLX G19545507
Effective Date: 01/01/1999
Expiration Date: 01/01/2000

Insured Name & Address:
INTEGRATED HEALTH SERVICES, INC.

10065 Red Run Boulevard
Owings Mills, MD 21117

Producer:
TRI CITY INSURANCE BROKERS INC
110 William Street
26th Floor
New York, NY 10038
Attn: GEORGE GOETTELMANN

Coverage: Excess Catastrophe Liability

Limits:        $50,000,000   each occurrence
               $50,000,000   aggregate (where applicable)


               IN EXCESS OF
               $50,000,000   each occurrence
               $50,000,000   aggregate (where applicable)

Which in turn is excess of underlying insurance or retained limit.

Advanced Premium:  $45,000            Commission:  17.5 %

Basis of Premium: Flat

Annual Minimum Premium: $45,000

Conditions & Attachments:

This binder contemplates the issuance of policy form no. XS-4U19. (If a specimen copy of this form is desired, please advise.) Subject to its standard provisions plus the following attachments:

　　　1.  XS-1V24: Maryland Changes - Cancellation Non-Renewal & State Required Conditions

Subject to:

Authorized by
Bob Hogan

New York
195 Broadway

New York, NY 10007
Phone: (212)618-5054  Fax: (212)618-5059

Date
April 21, 1999
7th Floor