# EXHIBIT 5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Integrated Health Services, Inc., et. al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 00-389 (MFW) |
| | ) | Jointly Administered |
| ------------------------------------------- | | |
| | ) | |
| INTEGRATED HEALTH SERVICES, | ) | |
| INC., Debtor and Debtor-in-Possession, | ) | Adv. Pro. No. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA., | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------- | ) | |

## COMPLAINT

Integrated Health Services, Inc. ("IHS" or "Plaintiff"), debtor and debtor-in-possession, by its undersigned counsel, for its complaint against defendant, alleges:

### THE CHAPTER 11 CASES

1. On February 2, 2000 (the "Petition Date"), IHS and a number of its direct and indirect subsidiaries (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors-in-possession. No trustee or examiner has been appointed in the above-captioned Chapter 11 cases.

NEWYORK 894626v2 59273-00075 03/26/03

2. By order of the Court, the Debtors' cases have been procedurally consolidated.

3. On February 15, 2000, the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors (the "Committee") in the above-captioned Chapter 11 cases.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157 (b) (2) (A) and (C). This action is authorized to be brought as an adversary proceeding by Bankruptcy Rule 7001 (2) and (9). Venue is proper under 28 U.S.C. § 1409 (a).

## GENERAL ALLEGATIONS

5. Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), is an insurance company.

6. Heretofore, National Union, for consideration, issued to IHS and various subsidiaries and related companies a Commercial Umbrella Policy, numbered BE 357-43-43 (the "Policy"). The Policy provides general liability and medical professional liability ("PL/GL") excess coverage for the policy period January 1, 1999 through January 1, 2000. The Policy provides PL/GL excess coverage of $25 million per occurrence and $25 million in the aggregate.

7. Article I of the Policy defines the coverage obligation of National Union as follows:

> We will pay on behalf of the insured those sums in excess of the Retained Limits **that the insured becomes legally obligated to pay** by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance. (emphasis added)

8. As set forth in Article I of the Policy, the Policy provides coverage in excess of the Retained Limits. The Retained Limits under the Policy, to the extent relevant here, are $2 million per professional liability occurrence, and $9 million in the aggregate.

9. Article VI of the Policy sets forth various conditions of the Policy. Article VI.P specifies "When Loss Is Payable." That section provides:

> Coverage under this policy will not apply unless and until the Insured or the Insured's underlying insurer **is obligated to pay the Retained Limit.**
>
> **When the amount of loss has finally been determined, we will promptly pay** on behalf of the Insured the amount of loss falling within the terms of this policy.
>
> You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an Insured. (emphasis added).

10. In addition, Article VI.C expressly provides that neither the insolvency nor inability to pay nor bankruptcy of IHS, or of IHS's primary insurance carrier, will relieve National Union of any obligation to pay a covered claim. Article VI.C states, in relevant part:

> Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers **will not relieve us from the payment of any claim covered by this policy.** (emphasis added)

11. Plaintiff has resolved 1999 PL/GL claims in excess of the $9 million aggregate Retained Limit under the Policy. The resolved 1999 PL/GL claims have been liquidated in amount by judgments or settlement agreements constituting binding legal obligations. Accordingly, by reason of such judgments and settlements, IHS is, in the words of Article I of the Policy, "legally obligated" to pay amounts in excess of the Retained Limits under the Policy. Under Article I and Article VI of the Policy, National Union is obligated to "promptly pay" all such excess amounts.

-3-

12. In large part, the judgments and settlements giving rise to IHS's legal obligations as aforesaid have not been paid by IHS or its primary insurance carrier, Reliance Insurance Company ("Reliance"), because IHS is in bankruptcy and Reliance is the subject of its own liquidation proceeding in the Pennsylvania Commonwealth Court. Moreover, it is likely that IHS and Reliance will never pay out, or be able to pay out, the entire $9 million of primary coverage constituting the Retained Limits under the Policy because the assets of the IHS bankruptcy estate and the assets of the Reliance liquidation estate will be insufficient to pay such liability in full. Nevertheless, as confirmed by the express language of Article VI.C of the Policy, the insolvency and bankruptcy of IHS and Reliance do "not relieve [National Union] from the payment of any claim covered by" the Policy.

13. IHS estimates that the total amount of allowed 1999 PL/GL claims will aggregate to $40 million or more. There is no doubt that the entire $25 million of excess coverage provided by the Policy will be payable.

14. Plaintiff's representatives have periodically been in contact with National Union with regard to the administration of Plaintiff's 1999 PL/GL claims since the Policy was issued. In the past several months, because certain large 1999 PL/GL claims were approaching trial or settlement, and because the time was fast approaching that the aggregate total of liquidated 1999 PL/GL claims would exceed $9 million, Plaintiff's communications with National Union became more frequent. During the course of those discussions, the parties have often discussed the protocols under which National Union would assume control over files relating to the remaining unresolved 1999 PL/GL claims. Until March 17, 2003, IHS understood that National Union was in fact preparing to assume the administration and defense of those open claims files.

-4-

15. However, on March 17, 2003, Phillip Mancuso, Senior Corporate Counsel of IHS received a letter from Donna DiTuri, of AIG Technical Services, Inc., written on behalf of National Union (the "March 17 Letter"). By means of the March 17 Letter, National Union advised IHS that National Union would not provide any coverage under the Policy unless and until IHS or its primary carrier makes **actual claim payments** totaling in excess of the $9 million Retained Limits.

16. Because neither IHS nor Reliance, IHS's primary carrier, are expected to make actual claim payments totaling in excess of the $9 million Retained Limits, National Union has, in effect, disclaimed all coverage under the Policy. As previously indicated, it is likely that 1999 PL/GL claims will aggregate to $40 million or more, and therefore, the entire $25 million of excess coverage provided by the Policy will be payable. National Union's refusal to provide coverage in accordance with the Policy therefore deprives IHS and its 1999 PL/GL claimants of a full $25 million of coverage.

17. Debtors have proposed a Plan of Reorganization (the "Plan") and have obtained approval of a Disclosure Statement for the Plan, both of which have been distributed to creditors for their votes. The Plan and Disclosure Statement reflect IHS's belief that it has excess coverage under the Policy which will be available, with other insurance funds, for distribution *pro rata* to holders of allowed 1999 PL/GL claims.

18. Notwithstanding the fact that National Union and IHS have been in discussions for many months with respect to the administration of 1999 PL/GL claims, and notwithstanding the fact that National Union has at all times been aware of the status of proceedings in these chapter 11 cases with respect to the Plan and the Disclosure Statement, National Union did not advise IHS until March 17, 2003, after the Disclosure Statement had been approved and

-5-

preparations were completed to distribute the Plan and Disclosure Statement for a vote of the creditors.

19. Accordingly, both by the content and the timing of its March 17 Letter, National Union has caused the maximum confusion and concern among the Debtors and the 1999 PL/GL claimants with respect to the recovery they can expect in these chapter 11 cases.

20. National Union's interpretation of the Policy, and its refusal to honor its obligations under the Policy, as set forth in the March 17 Letter, are contrary to the express and unambiguous provisions of the Policy as set forth above and are without a reasonable basis.

21. National Union's bad-faith disclaimer of coverage under the Policy has implications not only with respect to the Debtors and its 1999 PL/GL claimants, who are deprived of coverage, but also to other insureds of National Union who have sought protection, or may seek protection, under the Bankruptcy Code. The Policy is a standard policy document under which National Union and its related AIG entities have no-doubt provided excess insurance to hundreds of companies. The position taken in the March 17 Letter by National Union, and implicitly by the entire AIG Group, would effectively eliminate coverage under all AIG excess policies for all insolvent insureds and their personal injury claimants.

## FIRST CLAIM FOR RELIEF

22. Plaintiff repeats and realleges the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23. An actual controversy exists between the parties as to whether the National Union is obligated to provide coverage under the Policy. This controversy has a substantial and present adverse impact upon the Debtors' administration of: (a) 1999 PL/GL claims; and (b) the Debtors' Plan and the proceedings related thereto.

NEWYORK 894626v2 59273-00075 03/26/03

24. Plaintiff is entitled to a declaration that the Policy obligates National Union to pay covered professional liability claims which have been liquidated in amount by judgement or settlement to the extent that such liquidated claims are in excess of $2 million per occurrence or $9 million in the aggregate, whether or not the applicable per occurrence or aggregate limit of the Debtors' primary insurance coverage has been paid.

25. Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

26. Plaintiff repeats and realleges the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

27. Plaintiff's disclaimer of all coverage under the Policy constitutes a breach of the Policy for which Plaintiff is entitled to recover its damages from National Union. Plaintiff has incurred additional administrative costs and will incur additional costs by reason of National Union's eleventh-hour disclaimer. Plaintiff is entitled to judgment against National Union for all such costs, in such amount as may be demonstrated at trial.

## THIRD CLAIM FOR RELIEF

28. Plaintiff repeats and realleges the allegations of paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. National Union's disclaimer of all coverage under the Policy was made without reasonable basis and in bad faith, at the most disadvantageous time possible for the Debtors and their 1999 PL/GL claimants.

30. Under the common law of the State of Delaware, and under statutory law of the State of Pennsylvania, Plaintiff is entitled to an award of punitive damages against National Union, in an amount to be determined by the Court.

-7-

**WHEREFORE**, Plaintiff demands judgment:

(A) On the First Claim for Relief, declaring that the Policy obligates National Union to pay covered professional liability claims which have been liquidated in amount by judgement or settlement to the extent that such liquidated claims are in excess of $2 million per occurrence or $9 million in the aggregate, whether or not the applicable per occurrence or aggregate limit of the Debtors' primary insurance coverage has been paid;

(B) On the Second Claim for Relief, compensatory damages in an amount to be determined at trial, together with appropriate interest thereon;

(C) On the Third Claim for Relief, punitive damages in an amount to be determined by the Court;

(D) For the costs and disbursements of the action; and

(E) For such other and further relief as the Court shall deem proper.

Dated: March 26, 2003

Wilmington, DE

BIFFERATO, BIFFERATO & GENTILOTTI

By: _____
Ian Connor Bifferato (#3273)
Megan N. Harper (#4103)
1308 Delaware Avenue
PO Box 2165
Wilmington, DE 19899-2165

-and-

KAYE, SCHOLER, FIERMAN, HAYS &
HANDLER, LLP
Michael J. Crames
Arthur Steinberg
Marc D. Rosenberg
425 Park Avenue
New York, NY 10022-3598
(212) 836-8000

-and-

PARKER CHAPIN LLP
Lee W. Stremba
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 704-6000

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION