IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*<br><br>      Debtors. | Case No. 00-389 (MFW)<br>Jointly Administered |
| IHS LIQUIDATING LLC,<br><br>      Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA,<br><br>      Defendant. | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC,<br><br>      Third-Party Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY<br>OF PITTSBURGH, PA., GENERAL STAR<br>INDEMNITY COMPANY, and ACE INDEMNITY<br>INSURANCE COMPANY f/k/a INDEMNITY<br>INSURANCE COMPANY OF NORTH AMERICA,<br><br>      Third-Party Defendants. | |

## GENERAL STAR INDEMNITY COMPANY'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Third-Party Defendant, General Star Indemnity Company ("GenStar"), hereby submits its Amended Answer, Affirmative Defenses, and Counterclaim to the Third-Party Complaint of the Third-Party Plaintiff, IHS Liquidating LLC.

## ANSWER

### PARTIES

1.  Upon information and belief, Paragraph 1 is admitted.

2.  GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 and, therefore, leaves Third-Party Plaintiff to its proof.

3.  Paragraph 3 is admitted.

### JURISDICTION AND VENUE

4.  GenStar admits that this is an adversary proceeding and that venue is proper. The remaining allegations of Paragraph 4 state legal conclusions and, accordingly, GenStar does not respond to them.

### THE CHAPTER 11 CASES

5.  Paragraph 5 is admitted.

6.  Paragraph 6 is admitted.

7.  Upon information and belief, Paragraph 7 is admitted.

8.  Paragraph 8 is denied insofar as it purports to characterize the terms of the Plan, which speaks for itself.

9. Paragraph 9 is denied insofar as it purports to characterize the terms of the Plan, which speaks for itself.

10. Paragraph 10 is denied insofar as it purports to characterize the terms of the Plan, which speaks for itself.

**GENERAL ALLEGATIONS**

11. Upon information and belief, Paragraph 11 is admitted.

12. GenStar admits that National Union issued a policy to IHS of Lester. GenStar admits that IHS of Lester is a subsidiary of IHS. GenStar admits that the policy issued by National Union to IHS of Lester bore policy number BE 357-43-44 and had a policy period of January 1, 1999 through January 1, 2000. As to all other allegations of Paragraph 12, GenStar is without knowledge or information sufficient to form a belief as to their truth and, therefore, leaves Third-Party Plaintiff to its proof.

13. GenStar admits that it issued a policy bearing policy number IXG-347714B for the policy period January 1, 1999 to January 1, 2000, which policy speaks for itself. Otherwise, Paragraph 13 is denied.

14. GenStar admits that Defendant Indemnity Insurance Company of North America ("IICNA") alleges that the aggregate policy limits of both the National Union Policy and the GenStar Policy are improperly exhausted. GenStar denies that the aggregate limit of the GenStar Policy is in fact improperly exhausted. As to whether the National Union Policy is in fact improperly exhausted, GenStar is without knowledge or information sufficient to form a belief as to the truth of that allegation and, therefore, leaves Third-Party Plaintiff to its proof.

15. GenStar admits that Defendant IICNA alleges that National Union improperly charged against the National Union Policy limits: (i) payments of defense costs and expenses;

and (ii) payments of judgments or settlements against IHS of Lester. GenStar is without knowledge or information sufficient to form a belief as to the truth of IICNA's allegation and, therefore, leaves Third-Party Plaintiff to its proof.

16. GenStar admits that Defendant IICNA alleges that GenStar improperly charged against the GenStar Policy limits: (i) payments of defense costs and expenses; and (ii) payments of judgments or settlements against IHS of Lester. GenStar denies IICNA's allegations.

17. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 and, therefore, leaves Third-Party Plaintiff to its proof.

18. Paragraph 18 is admitted.

19. To the extent that the allegations directed to GenStar in Paragraph 19 state legal conclusions, GenStar does not respond to them. As to those allegations of Paragraph 19 that are directed to parties other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to their truth and, therefore, leaves Third-Party Plaintiff to its proof. All other allegations in Paragraph 19 are denied.

20. To the extent that the allegations directed to GenStar in Paragraph 20 state legal conclusions, GenStar does not respond to them. To the extent that the allegations directed to GenStar in Paragraph 20 purport to characterize the terms of GenStar's insurance policy, those allegations are denied as the policy speaks for itself. As to the allegation in Paragraph 20 that the Third-Party Plaintiff harbors an expectation that "the aggregate coverage . . . will substantially exceed the aggregate amount of all covered claims arising during 1999," GenStar is without knowledge or information sufficient to form a belief as to its truth and, therefore, leaves Third-Party Plaintiff to its proof. As to those allegations of Paragraph 20 that are directed to parties other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to

their truth and, therefore, leaves Third-Party Plaintiff to its proof. All other allegations in Paragraph 20 are denied.

21. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 and, therefore, leaves Third-Party Plaintiff to its proof.

22. With respect to Paragraph 22, GenStar admits having received the letter from counsel for the Third-Party Plaintiff dated June 17, 2005 ("the June 17 Letter"), which letter speaks for itself. All other allegations directed to GenStar in Paragraph 22 are denied. As to those allegations of Paragraph 22 that are directed to parties other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to their truth and, therefore, leaves Third-Party Plaintiff to its proof.

23. With respect to Paragraph 23, GenStar admits that it did not respond to the June 17 Letter but denies that a response was called for. As to those allegations of Paragraph 23 that are directed to parties other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to their truth and, therefore, leaves Third-Party Plaintiff to its proof.

24. With respect to Paragraph 24, GenStar admits having received the letter from Counsel for the Third-Party Plaintiff dated July 6, 2005 ("the July 6 Letter"), which letter speaks for itself. All other allegations directed to GenStar in Paragraph 24 are denied. As to those allegations of Paragraph 24 that are directed to parties other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to their truth and, therefore, leaves Third-Party Plaintiff to its proof.

25. With respect to Paragraph 25, GenStar admits that it did not respond to the July 6 Letter but denies that a response was called for. As to those allegations of Paragraph 25 that are

directed to parties other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to their truth and, therefore, leaves Third-Party Plaintiff to its proof.

26. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 and, therefore, leaves Third-Party Plaintiff to its proof.

27. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 and, therefore, leaves Third-Party Plaintiff to its proof.

28. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 and, therefore, leaves Third-Party Plaintiff to its proof.

29. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29 and, therefore, leaves Third-Party Plaintiff to its proof.

30. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30 and, therefore, leaves Third-Party Plaintiff to its proof.

31. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31 and, therefore, leaves Third-Party Plaintiff to its proof.

32. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 and, therefore, leaves Third-Party Plaintiff to its proof.

33. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and, therefore, leaves Third-Party Plaintiff to its proof.

34. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 and, therefore, leaves Third-Party Plaintiff to its proof.

35. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35 and, therefore, leaves Third-Party Plaintiff to its proof.

36. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36 and, therefore, leaves Third-Party Plaintiff to its proof.

37. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37 and, therefore, leaves Third-Party Plaintiff to its proof.

38. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38 and, therefore, leaves Third-Party Plaintiff to its proof.

39. Upon information and belief, Paragraph 39 is admitted.

40. Upon information and belief, Paragraph 40 is admitted.

41. Upon information and belief, Paragraph 41 is admitted.

42. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42 and, therefore, leaves Third-Party Plaintiff to its proof.

43. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43 and, therefore, leaves Third-Party Plaintiff to its proof.

**FIRST CLAIM FOR RELIEF**

44. With respect to Paragraph 44, GenStar hereby incorporates its responses to Paragraphs 1 through 43 as if fully set forth herein.

45. Paragraph 45 is admitted.

46. Paragraph 46 is admitted.

47. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 and, therefore, leaves Third-Party Plaintiff to its proof.

48. Paragraph 48 is denied.

49. To the extent that the allegations of Paragraph 49 are directed to GenStar, those allegations are denied. To the extent that the allegations of Paragraph 49 are directed to parties

other than GenStar, GenStar is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leaves Third-Party Plaintiff to its proof.

50. GenStar is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and, therefore, leaves Third-Party Plaintiff to its proof.

51. Paragraph 51 states a legal conclusion and, accordingly, GenStar does not respond to it.

**SECOND CLAIM FOR RELIEF**

52. With respect to Paragraph 52, GenStar hereby incorporates its responses to Paragraphs 1 through 51 as if fully set forth herein.

53. Paragraph 53 is not directed to GenStar and, accordingly, GenStar does not respond to it.

**THIRD CLAIM FOR RELIEF**

54. With respect to Paragraph 54, GenStar hereby incorporates its responses to Paragraphs 1 through 53 as if fully set forth herein.

55. Paragraph 55 is not directed to GenStar and, accordingly, GenStar does not respond to it.

**FOURTH CLAIM FOR RELIEF**

56. With respect to Paragraph 56, GenStar hereby incorporates its responses to Paragraphs 1 through 55 as if fully set forth herein.

57. Paragraph 57 is not directed to GenStar and, accordingly, GenStar does not respond to it.

58. Paragraph 58 is not directed to GenStar and, accordingly, GenStar does not respond to it.

## AFFIRMATIVE DEFENSES

**FIRST AFFIRMATIVE DEFENSE**

Third-Party Plaintiff's claims are barred by the doctrine of waiver and estoppel.

**SECOND AFFIRMATIVE DEFENSE**

Third-Party Plaintiff's claims are barred by the doctrine of laches.

## COUNTERCLAIM

**NATURE OF THE COUNTERCLAIM**

1. This counterclaim seeks to reform an insurance policy that the third-party defendant issued to the third-party plaintiff in order to conform the policy to the parties' intent.

**THE PARTIES**

2. The third-party defendant General Star Indemnity Company ("GenStar") is a Connecticut corporation with its principal place of business at 695 East Main St., Stamford, Connecticut, 06904.

3. Upon information and belief, the third-party plaintiff IHS Liquidating LLC ("Liquidating LLC") is a Delaware limited liability company with its principal place of business at 21 East 40th St., Suite 1300, New York, New York, 10016 and was formed under the Integrated Health Services, Inc. ("IHS") Plan of Reorganization for the purpose of implementing certain terms thereof including, among other things, enforcing the rights of the IHS debtors' estates with respect to insurance policies that IHS and its subsidiaries held prior to their petition for bankruptcy protection.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1334(b), in that it arises out of Liquidating LLC's alleged responsibilities under the Plan and is therefore "related to cases under title 11."

5. Venue in this District is proper under 28 U.S.C. § 1409(a).

**GENERAL ALLEGATIONS**

6. At all times relevant to this counterclaim, IHS owned and operated nursing home facilities in several states.

7. At all times relevant to this counterclaim, IHS owned a subsidiary corporation, Integrated Health Services of Lester, Inc. ("IHS of Lester"), which owned and operated nursing home facilities in Florida, Louisiana, Texas, and other states.

**IHS'S FIRST LAYER OF EXCESS INSURANCE**

8. In 1999, IHS maintained three layers of excess insurance.

9. Upon information and belief, the National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a unit of the American International Group ("AIG"), provided IHS' first layer of excess insurance for the 1999 year. The National Union policy for IHS (the "National Union IHS Policy") bore policy number BE-357-43-43, provided coverage limits of $ 25,000,000, and identified IHS as the named insured.

10. Upon information and belief, in addition to the National Union IHS Policy, National Union provided a second policy, which bore policy number BE-357-43-44 and identified IHS of Lester as the named insured (the "National Union Lester Policy").

11.  Upon information and belief, IHS of Lester obtained the second policy from National Union to accommodate a request from its landlord. Upon further information and belief, the landlord's request had no bearing on any insurance provided above the level that National Union insured.

12.  Upon information and belief, neither IHS of Lester nor IHS contemplated that the distinction in insurance between IHS and IHS of Lester would affect any excess insurance other than the coverage provided by National Union.

13.  The National Union IHS Policy includes a provision purporting to "exclude all coverage and limits for the exposure of" IHS of Lester (the "Lester Exclusion").

**IHS'S SECOND LAYER OF EXCESS INSURANCE**

14.  IHS retained a broker to obtain a second layer of excess insurance for the 1999 year. The broker in turn contacted an insurance wholesaler, Tri-City Insurance Brokers, Inc. of New York, New York, ("Tri-City").

15.  Through the broker and Tri-City, IHS asked GenStar to provide it with a quote for second-layer excess insurance for the 1999 year.

16.  In connection with the request for insurance from GenStar, IHS provided certain information relating to IHS' business. Among other things, IHS provided GenStar with IHS' annual sales, the number of beds in IHS' nursing home facilities, the number of automobiles owned or operated by IHS, and lists of nursing home facilities owned or operated by IHS. In each instance, IHS did not differentiate IHS of Lester from other parts of IHS; rather, IHS provided information for all of IHS' operations.

17.   In 1997 and 1998, GenStar had issued to IHS similar coverage at the same excess insurance layer that was similar to the coverage that GenStar issued in 1999. Neither of GenStar's policies differentiated IHS of Lester from other parts of IHS.

18.   Based on the information that IHS provided in advance, GenStar issued a policy of second-layer excess insurance to IHS for the 1999 year (the "GenStar Policy"). The GenStar Policy bore policy number IXG-347714B and its period of coverage ran from January 1, 1999 to January 1, 2000.

19.   At no time prior to the issuance of the GenStar Policy did IHS advise GenStar of the fact that National Union was issuing separate policies for IHS and IHS of Lester, respectively, in 1999.

20.   At no time prior to the issuance of the GenStar Policy did IHS provide GenStar with a copy of the National Union IHS Policy or the National Union Lester Policy.

21.   Although IHS provided GenStar with a description of the underlying excess coverage, including a description of the policy exclusions other than the Lester Exclusion, at no time prior to the issuance of the GenStar Policy did IHS advise GenStar that the underlying insurance did not apply to all of IHS, nor did IHS inform GenStar of any exclusion for IHS of Lester.

22.   At no time prior to the issuance of the GenStar Policy did IHS advise GenStar that IHS and IHS of Lester had separate first-layer excess policies.

23.   When GenStar and IHS entered into the GenStar Policy, both parties understood and intended that the policy would cover all of the IHS nursing home facilities, including those

operated by IHS of Lester. Neither GenStar nor IHS intended that that GenStar Policy would exclude the coverage and limits for the exposures of IHS of Lester.

24. The GenStar Policy provides in part as follows:

Except for the limits of liability and any provisions in the underlying insurance policy which are inconsistent with this Policy, including any endorsements attached hereto, the terms, conditions, agreements, definitions, exclusions and limitations of the controlling underlying insurance policy are incorporated by reference as a part of this Policy.

(The "Follow Form Provision.")

25. The GenStar Policy additionally provided that "[t]he term 'Controlling Underlying Insurance Policy' means the insurance policy designated as such in Item 2 of the Declarations." Item 2 of the Declarations described the "Underlying Insurance" as a $25,000,000 Commercial Umbrella Liability policy issued by the "AIG Insurance Company."

**IHS'S THIRD LAYER OF EXCESS INSURANCE AND THE NEED FOR REFORMATION**

26. Upon information and belief, Indemnity Insurance Company of North America ("IICNA") provided IHS' third layer of excess insurance for the year 1999 (the "IICNA Policy").

27. In the instant action, Liquidating LLC sued IICNA, claiming *inter alia* that IICNA wrongfully disclaimed coverage under the IICNA Policy.

28. Also in the instant action, IICNA counterclaimed, claiming *inter alia* that GenStar improperly charged against its policy limits payments made pursuant to judgments or settlements of claims against facilities owned and/or operated by IHS of Lester. Upon information and belief, IICNA maintains that the GenStar Policy incorporates the Lester Exclusion by operation of the Follow Form Provision.

29. Since the issuance of the GenStar Policy, GenStar and IHS have acted consistently with their understanding that the policy covers the IHS of Lester facilities, among others. Accordingly, before the GenStar Policy's limits were exhausted, IHS requested that GenStar provide a defense and indemnity for claims asserted against IHS facilities without regard to whether the subject of the claim was an IHS of Lester facility. Likewise, GenStar defended and indemnified claims against IHS facilities under the GenStar Policy without regard to whether the subject of the claim was an IHS of Lester facility.

30. To the extent that language in the GenStar Policy may be interpreted as excluding coverage for IHS of Lester, the pertinent language reflects the parties' mutual failure to memorialize their true understanding, agreement, and intention in the written contract.

31. To the extent that the GenStar Policy may be interpreted as excluding coverage for IHS of Lester, the GenStar Policy reflects the parties' mutual mistake in failing to memorialize their actual intent that the GenStar Policy cover the IHS of Lester facilities to the same extent as other IHS facilities.

WHEREFORE, the third-party defendant General Star Indemnity Company respectfully requests that this Court enter a judgment reforming the GenStar Policy to reflect the true understanding, agreement, and intention of GenStar and IHS. Specifically, General Star

Indemnity Company respectfully requests that this Court reform the GenStar Policy to make clear that the GenStar Policy does not incorporate by reference the Lester Exclusion.

Dated: October 12, 2006
        THIRD-PARTY DEFENDANT,
        GENERAL STAR INDEMNITY COMPANY

/S/ James F. Harker, Esquire
James F. Harker, Esquire (Bar I.D. No. 255)
COHEN, SEGLIAS, PALLAS, GREENHALL &
FURMAN, P.C.
Nemours Building
1007 Orange Street, Suite 1130
Wilmington, DE 19801
(302) 425-5089
Fax: (302) 425-5097
jharker@cohenseglias.com

Joshua W. Cohen, Esquire
Day, Berry & Howard LLP
One Audubon Street, 6th Floor
New Haven, CT 06511
(203) 752-5000
Fax: (203) 752-5001
jwcohen@dbh.com

Daniel L. FitzMaurice, Esquire
Thomas O. Farrish, Esquire
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100
Fax: (860) 275-0343
dlfitzmaurice@dbh.com
tofarrish@dbh.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was served electronically in accordance with the Court's electronic filing process, to the extent possible, on the parties listed below (and served by mail on anyone unable to accept electronic filing). Parties may access this filing through the Court's system.

Ian Connor Bifferator, Esq.
Garvan F. McDaniel, Esq.
Bifferato Gentilotti Biden & Balick
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899
Tel:   (302) 429-1900
Email: icb@bgbblaw.com
         gfm@bgbblaw.com

Marc Stephen Casarino, Esq.
White & Williams LLP
824 Market Street, Suite 902
Wilmington, DE 19899-0709
Tel:   (302) 654-0424
Email: casarinom@whiteandwilliams.com

Thomas G. Whalen, Jr., Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Tel:   (302) 425-3304
Fax:   (610) 371-8512
Email: tgw@stevenslee.com

Francis J. Deasey, Esq.
Gerald J. Valentini, Esq.
Deasey, Mahoney & Bender, Ltd.
1800 John F. Kennedy Boulevard, Suite 1300
Philadelphia, PA 19103
Tel:   (215) 587-9400
Fax:   (215) 587-9456
Email: fjdeasey@dmbphila.com
         gjvalentini@dmbphila.com

Christopher Page Simon, Esq.
Cross & Simon, LLC
913 Market Square, Suite 1001
Wilmington, DE 19801
Tel:   (302) 777-4200
Email: csimon@crosslaw.com

Lee W. Stremba, Esq.
Clement H. Berne, Esq.
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel:   (212) 704-6000
Email: lee.stremba@troutmansanders.com

Leonard P. Goldberg, Esq.
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Tel:   (215) 864-7000
Fax:   (215) 864-7123
Email: lpg@stevenslee.com

George C. Campion, Esq.
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, NJ 07054-0438

/S/ James F. Harker, Esquire