**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>Debtors. | | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>Defendant | | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC,<br><br>Third-Party Plaintiff<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA,<br>GENERAL STAR INDEMNITY COMPANY,<br>and ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA<br><br>Third-Party Defendants | | |

**THIRD-PARTY DEFENDANT AND FOURTH-PARTY PLAINTIFF**
**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S**
**PROPOSED AMENDED ANSWER TO THIRD-PARTY COMPLAINT**
**AND CROSSCLAIM FOR DECLARATORY JUDGMENT**

Defendant–Third Party Defendant, ACE Indemnity Insurance Company, f/k/a Indemnity Insurance Company of North America ("IICNA"), by its attorneys, sets forth its Answer and Affirmative Defenses to the Third-Party Complaint filed by IHS Liquidating LLC, as follows:

## ANSWER TO THIRD-PARTY COMPLAINT,

## AFFIRMATIVE DEFENSES AND FOURTH-PARTY CROSS-CLAIMS

Defendant-Third Party Defendant, Indemnity Insurance Company of North America ("IICNA"), improperly identified as "ACE Indemnity Insurance Company, f/k/a Indemnity Insurance Company of North America", by its attorneys, sets forth its Answer and Affirmative Defenses and Cross-Claims for Declaratory Judgment to the Third-Party Complaint filed by IHS Liquidating LLC, as follows:

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Denied.

5.      Admitted.

6.      Admitted.

7.      Denied to the extent that paragraph 7 attempts to characterize the Plan which is a document that speaks for itself.

8.      Denied to the extent that paragraph 8 attempts to characterize the Plan which is a document that speaks for itself.

9.      Denied to the extent that paragraph 9 attempts to characterize the Plan which is a document that speaks for itself.

10.     Denied to the extent that paragraph 10 attempts to characterize the Plan which is a document that speaks for itself.

11.     Admitted, except to the extent that paragraph 11 attempts to characterize the National Union Policy which is a document that speaks for itself.  Moreover, as to the authenticity of Exhibit A, strict proof thereof is demanded.

12.     Denied.  By way of further answer, upon information and belief, Exhibit B is not a true, correct and complete copy of the National Union policy issued to IHS of Lester, Inc.

13.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 13, and strict proof thereof is demanded.

14.     Admitted, except to the extent that paragraph 14 attempts to characterize paragraphs 48 and 49 of the Counterclaim which is a document that speaks for itself.

15.     Admitted.

16.     Admitted.

17.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 17, and strict proof thereof is demanded.

18.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 18, and strict proof thereof is demanded.

19.     Paragraph 19 sets forth conclusions of law to which no responsive pleading is required.

20.     Paragraph 20 sets forth conclusions of law to which no responsive pleading is required.

21.     Denied to the extent that paragraph 21 attempts to characterize the letter which is a document that speaks for itself.

22.     Admitted, except to the extent that paragraph 22 attempts to characterize the letter which is a document that speaks for itself.

23.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 23, and strict proof thereof is demanded.

24.     Admitted, except to the extent that paragraph 24 attempts to characterize the letter which is a document that speaks for itself.

25.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 25, and strict proof thereof is demanded.

26.     Admitted; however, the letter is a document that speaks for itself.

27.     Denied to the extent that paragraph 27 attempts to characterize the letters which are documents that speak for themselves.

28.     Denied.

29.     Admitted.

30.     Admitted.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied to the extent that paragraph 35 attempts to characterize the policies referred to, which are documents that speak for themselves, and/or attempts to characterize any coverage afforded thereby.

36.     Denied to the extent that paragraph 36 attempts to characterize the IICNA Policy which is a document that speaks for itself.

37.     Denied to the extent that paragraph 37 attempts to characterize any coverage provided by IICNA.

38.     Denied to the extent that paragraph 38 attempts to characterize any coverage provided by IICNA.

39.     Denied to the extent that paragraph 39 attempts to characterize any coverage provided by IICNA.

40.     Denied to the extent that paragraph 40 attempts to characterize any coverage provided by IICNA.

41.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41, and strict proof thereof is demanded.

42.     Denied.

43.     Denied.

### First Claim For Relief

44.     Paragraphs 1 through 43 are hereby incorporated by reference as if more fully set forth at length.

45.     Paragraph 45 sets forth a conclusion of law to which no responsive pleading is required.

46.     Admitted.

47.     It is admitted that these controversies impact the 1999 Insured Tort Claims; it is denied that they impact the Plan and the proceedings related thereto.

48.     Denied to the extent that the declaratory relief sought is the subject matter of a prior pending action.

49.     Paragraph 49 sets forth a conclusion of law to which no responsive pleading is required.

50.     Denied to the extent that the declaratory relief sough is the subject matter of a prior pending action.

51.     Denied.  To the extent that paragraph 51 sets forth a conclusion of law, no responsive pleading is required.

## Second Claim For Relief

52.     Paragraphs 1 through 51 hereof are hereby incorporated by reference as if more fully set forth at length.

53.     Denied. To the extent that paragraph 53 sets forth a conclusion of law, no responsive pleading is required.

## Third Claim For Relief

54.     Paragraphs 1 through 53 hereof are hereby incorporated by reference as if more fully set forth at length.

55.     Denied.  To the extent that paragraph ~~54~~ 55 sets forth a conclusion of law, no responsive pleading is required.

## Fourth Claim For Relief

56.     Paragraphs 1 through 55 hereof are hereby incorporated by reference as if more fully set forth at length.

57.     Denied.

58.     Denied.  To the extent that paragraph 58 sets forth a conclusion of law, no responsive pleading is required.

### Affirmative Defenses

59.     The Third-Party Complaint fails to state a claim upon which relief can be granted.

60.     The relief requested by this Third-Party Complaint is barred by the doctrines of waiver and estoppel.

61.     This Court should abstain in favor of the prior pending action in the district court styled *Indemnity Insurance Company of North America v. Integrated Health Services, Inc. and Abe Briarwood Corporation*, C.A. No. 04-1262-GMS, into which Liquidating LLC has moved to intervene without opposition from IICNA.

62.     The Third-Party Complaint misstates the extent and nature of the insurance coverage provided, and is without any basis in fact or in law.

63.     Liquidating LLC has suffered no prejudice by IICNA's failure to join National Union and GenStar; and this Court lacks jurisdiction over any claim that IICNA may have against National Union and/or GenStar.

64.     Liquidating LLC's Sixth Affirmative Defense is without any basis in fact or in law.

65.     IICNA incorporates by reference its Answer, Affirmative Defenses and Counterclaim to the Complaint, along with its Motion for Withdrawal of Reference, that have been previously filed in this adversary proceeding.

WHEREFORE, IICNA respectfully requests that the Third-Party Complaint be dismissed with prejudice; and for such other and further relief as is just.

### IICNA'S CROSS-CLAIM AGAINST NATIONAL UNION AND GENSTAR PURSUANT TO F.R.C.P. 13

Defendant-Third Party Defendant and Fourth-Party Plaintiff, Indemnity Insurance Company of North America ("IICNA"), by and through its undersigned counsel of record, files this Fourth-Party Cross-Claim for Declaratory Judgment against co-defendants National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and General Star Indemnity Company ("GenStar") and in support thereof respectfully alleges:

**A.     THE PARTIES**

1.     IICNA is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1601 Chestnut Street, Philadelphia, PA 19103, with additional offices located at 500 Colonial Center Parkway, Suite 200, Roswell, GA 30076.

2.     Fourth-Party Defendant, National Union, is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 175 Water Street, New York, NY 10038.

3.     Fourth-Party Defendant, GenStar, is an insurance company organized and existing under the laws of the State of Connecticut, with its principal place of business located at 695 Main Street, Stamford, CT 06901.

**B.    JURISDICTION AND VENUE**

4.    Jurisdiction is proper pursuant to 28 U.S.C. §1367 as the matter is already pending before this Honorable Court.  Jurisdiction is also founded upon the provisions of 28 U.S.C. §2201 for the entry of a Declaratory Judgment.  Venue in this district is proper pursuant to 28 U.S.C. §1409(a).

**C.    THE POLICIES**

***The 1999 Policies***

5.    Integrated Health Services, Inc. (hereinafter "IHS") was a health care corporation organized under the laws of Delaware and having its principle place of business is Maryland.  At the times relevant hereto, coverage was provided to IHS on a calendar year basis.

6.    From January 1, 1999 through January 1, 2000, IHS was insured at the primary level by Reliance National Insurance Company under a matching deductible Health Care Medical Professional Liability and General Liability policy No. NGB 0151564-00 (the "Reliance Policy").  A copy of the Reliance Policy is attached hereto as Exhibit "A".

7.    The Reliance National Insurance Company was obligated to defend and indemnify IHS for claims coming within the coverage afforded by the Reliance Policy from the first dollar.

8.    Shortly after the Reliance Policy began defending IHS, but prior to the Reliance Policy's exhaustion, Reliance National Insurance Company was placed into liquidation by the Insurance Commissioner for the Commonwealth of Pennsylvania.

9.      The limits and coverage available under the Reliance Policy are the subject of litigation between the Liquidator for Reliance National Insurance Company and IHS Liquidating LLC that is currently pending in Pennsylvania.

10.     Fourth-Party Plaintiff, IICNA, and Fourth-Party Defendants, National Union and GenStar, all issued policies of insurance to Integrated Health Services, Inc. ("IHS") in excess of the Reliance Policy for the period January 1, 1999 to January 1, 2000.

11.     The first layer of excess coverage was provided by National Union which issued two separate policies of insurance.  National Unions policies attach either (a) upon the exhaustion of the Reliance Policy; or, (b) upon the "insured" becoming "legally obligated to pay" claims in excess of the Reliance Policy's limits.

12.     The applicable National Union policies are:

a.      Commercial Umbrella Policy No. BE 357-43-43 (hereinafter the "1999 IHS Main Policy").  The Declarations to the 1999 IHS Main Policy identifies the "***insured***" as Integrated Health Services, Inc.  The policy limits are $25,000,000 each occurrence/aggregate;

b.      Commercial Umbrella Policy No. BE 357-43-44 (hereinafter the "1999 Lester Policy").  The Declarations to the 1999 Lester Policy identifies the "***insured***" as "Integrated Health Services of Lester, Inc." (hereinafter "IHS of Lester").  The policy limits as stated in the Declarations are $25,000,000 each occurrence/aggregate.  A true and correct copy of policy No. BE 357-43-44 as produced to IICNA by National Union is attached hereto as Exhibit "B" and incorporated herein by reference.

13.     Both the 1999 IHS Main Policy and the 1999 Lester Policy provide professional liability and general liability coverage.

14.     The 1999 Lester Policy contains Endorsement #17 which, purportedly, reduces the limits to $2 million each occurrence/aggregate.

15.     The 1999 Lester Policy also contains Endorsement #19 which places defense expenses within the limits of the coverage provided.  The 1999 IHS Main Policy does not contain such an endorsement.  Rather, pursuant to the 1999 IHS Main Policy, Section II. Defense, B 2, all expenses incurred by National Union "in the defense of any **suit** or claim are in addition to" the limits of insurance listed in the Declarations.

16.     On March 26, 2003, IHS filed an adversary proceeding in the United States Bankruptcy Court for the District of Delaware (hereinafter the "Bankruptcy Court") styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, Adv. Proc. No. 03-52081, in an effort to enforce coverage under the 1999 IHS Main Policy *only*. Through this action, IHS sought to compel National Union to assume administration and defense of any remaining open professional liability and general liability claims alleging residency or injury occurring during the 1999 calendar year ("1999 Claims").

17.     In connection with its claims to coverage, IHS filed a Motion for Summary Judgment which was granted in IHS's favor by order dated October 23, 2003.

18.     In response to IHS's Motion for Summary Judgment, National Union filed its own Cross-Motion for Summary Judgment and, in support thereof, filed a copy of its 1999 IHS Main Policy with the Bankruptcy Court.  A true and correct copy of the 1999 IHS Main Policy as

filed with the Bankruptcy Court is attached hereto as Exhibit "C" and incorporated herein by reference.

19.    The Schedule of Forms to the 1999 IHS Main Policy, as filed by National Union in support of its Motion for Summary Judgment with the Bankruptcy Court, identifies Endorsement #1 as Broad Named Insured which contains the following relevant provisions:

### BROAD NAMED INSURED-AMENDATORY

The definition of Named Insured (IV E1 a and b) is amended to include any partnership, interest in a joint venture[*], subsidiary controlled or proprietary company, corporations, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership interest or management control.

However, this policy shall exclude all coverage and limits for the exposure of **Integrated Health Services of Lester, Inc.** and its interests in other entities.

* See Joint Venture Endorsement for additional conditions.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(Emphasis in original).

20.    Upon IICNA's request, National Union provided a "certified copy" of the 1999 Lester Policy under cover letter dated February 7, 2005 (see Exhibit "B").  The 1999 Lester Policy contains an endorsement which does not bear any identifying number but contains the following provisions:

### AMENDATORY ENDORSEMENT

It is hereby understood and agreed that this policy shall not respond to any insureds, named insureds or additional insureds covered under policy BE 357-43-43 for Integrated Health Services, Inc.

Page 12

<u>ALL OTHER TERMS AND CONDITIONS REMAIN
UNCHANGED.</u>

21.    Pursuant to the foregoing endorsements, the 1999 IHS Main Policy and the 1999

Lester Policy provide mutually exclusive coverage.

22.    GenStar issued Excess Liability Policy No. IXG-347714B (hereinafter the "1999

GenStar Policy") to IHS for the period January 1, 1999 to January 1, 2000.  The Declarations to

the 1999 GenStar Policy identify the "insured" as Integrated Health Services, Inc.  A true and

correct copy of the 1999 GenStar Policy as provided to IICNA is attached hereto as Exhibit "D"

and incorporated herein by reference.

23.    The 1999 GenStar Policy provides coverage limits of "$25,000,000 each

occurrence Bodily Injury and/or Property Damage liability combined/$25,000,000 aggregate

(where applicable) in excess" of the underlying coverage.

24.    According to the Declarations to the 1999 GenStar Policy, the underlying

coverage is identified as a "Commercial Umbrella Liability" policy issued by "AIG Insurance

Company" with limits of "$25,000,000 each occurrence bodily injury and/or property damage

liability combined/$25,000,000 aggregate (where applicable) in excess of primary insurance of

self-insured retention."

25.    By its terms, the 1999 GenStar Policy applies on "ultimate net loss" basis.  The

term "ultimate net loss" is defined to included the amounts the insured becomes "legally

obligated to pay, whether by reason of adjudication or settlement" and is defined to include

"costs".  The term "costs" is further defined to include "investigation, adjustment and legal

expenses".

26.     The 1999 GenStar Policy contains the following relevant provision:

## II.  APPLICATION OF UNDERLYING INSURANCE

Except for the limits of liability and any provisions in the underlying insurance policy which are inconsistent with this Policy, including any endorsements attached hereto, the terms, conditions, agreements, definitions, exclusions and limitations of the controlling underlying insurance policy are incorporated by reference as part of this Policy.

27.     Pursuant to the foregoing, the 1999 GenStar Policy incorporates by reference all of the terms, conditions and exclusion of the underlying policy identified in the Declarations unless the 1999 GenStar Policy contains an express provision that is inconsistent with the underlying insurance policy.

28.     The *only* underlying policy identified in the Declarations to the 1999 GenStar Policy is the "Commercial Umbrella Liability" policy as described in Paragraph 21 above, which, upon information and belief, is intended to refer to the 1999 IHS Main Policy.  The Declarations Page to the 1999 GenStar Policy does not, in any way, identify the 1999 Lester Policy nor does the Declarations Page to the 1999 GenStar Policy indicate that the 1999 GenStar Policy applies in excess of the 1999 Lester Policy.  Moreover, nothing in the Declarations Page to the 1999 GenStar Policy identifies the IHS of 1999 Lester Policy as an underlying policy.

29.     Nothing contained in the 1999 GenStar Policy is inconsistent with the limitation on coverage set forth in the Broad Named Insured-Amendatory endorsement made part of the 1999 IHS Main Policy.

30.     The last known layer of insurance available to IHS for the period January 1, 1999 to January 1, 2000 was provided by IICNA.  IICNA issued Excess Liability Catastrophe Policy

No. XLXG1 9524139, with limits of $50,000,000 each occurrence/$50,000,000 aggregate (the "1999 IICNA Policy").

31.    The 1999 IICNA Policy provides, in part, as follows:

**SECTION I**
**INSURING AGREEMENTS**

A.    COVERAGE

WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE and (2) ***only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance*** for losses arising out of OCCURRENCES that take place during OUR policy period and are insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE.  If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance then WE shall not pay such loss.  (Emphasis added).

The Definitions, Terms, Conditions, Limitations and Exclusions of the "first policy of UNDERLYING INSURANCE", in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

**SECTION III**
**DEFINITIONS**

ULTIMATE NET LOSS means the amount paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with OUR written consent, after making proper deduction for all recoveries and salvages.

32.    The "first policy of UNDERLYING INSURANCE" to the 1999 IICNA Policy was the 1999 IHS Main Policy.

33.     As the 1999 IHS Main Policy excludes coverage for IHS of Lester, the 1999

IICNA Policy also excludes coverage for IHS of Lester.

### *The 2000 Policies*

34.     National Union issued Commercial Umbrella Policy No. BE 357-43-84 for the

policy period January 1, 2000 to January 1, 2002 (hereinafter the "2000 IHS Main Policy").  The

"*insured*" identified in the Declarations is Integrated Health Services, Inc.

35.     Pursuant to III, Limits of Insurance, D., third paragraph:

> The Limits of Insurance of this policy apply separately to each
> consecutive annual period and to any remaining period of less than
> 12 months, starting with the beginning of the policy period shown
> in the Declarations, unless the policy period is extended after
> issuance for an additional period of less than 12 months.  In that
> case, the additional period will be deemed part of the last
> preceding period for purposes of determining the Limits of
> Insurance.

36.     Pursuant to Endorsement #3 to the 2000 IHS Main Policy, the Limits of Insurance

applicable to the period January 1, 2000 to January 1, 2001 are $25,000,000 each

occurrence/$25,000,000 aggregate in excess of a $1,000,000 each occurrence/$5,000,000 general

liability self-insured retention and a $2,000,000 each medical incident/$14,000,000 aggregate

professional liability self-insured retention.

37.     National Union contracted with Hamlin & Burton Liability Management, Inc.

("Hamlin & Burton"), a Florida corporation located at 111 West Magnolia Avenue, Suite 1000,

Longwood, FL 32750, to act as its agent for the purpose of adjusting claims asserted against IHS

and administrating National Union's 1999 and 2000 policies.

38.     In the course of adjusting claims asserted against IHS, National Union and its

agents have delivered three different versions of the 2000 IHS Main Policy to IICNA.  On each

occasion, these agents have represented that the document delivered to IICNA was a "true and correct copy" of the 2000 IHS Main Policy.

39.    The copy of the 2000 IHS Main Policy attached hereto as Exhibit "E" is a true and correct copy of the 2000 IHS Main Policy, as delivered to IICNA by Hamlin & Burton. Said policy was delivered to IICNA when, on behalf of the underlying carriers National Union and GenStar, Hamlin & Burton tendered the open 2000 tort claims to IICNA upon the purported exhaustion of the underlying limits.

40.    The 2000 IHS Main Policy, as produced by Hamlin & Burton, contains a Broad Named Insured-Amendatory endorsement which states:

### BROAD NAMED INSURED-AMENDATORY

The definition of Named Insured (IV E1 a and b) is amended to include any partnership, interest in a joint venture[*], subsidiary controlled or proprietary company, corporations, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership interest or management control.

However, this policy shall exclude all coverage and limits for the exposure of **Integrated Health Services of Lester, Inc.** and its interests in other entities.

* See Joint Venture Endorsement for additional conditions.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(Emphasis in original).

41.    National Union also issued Commercial Umbrella Policy No. BE 357-43-86 for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 Lester Policy"). The Declarations to the 2000 Lester Policy identifies the "*insured*" as "Integrated Health Services of

Lester". Pursuant to Endorsement #3, the applicable limits are $2,000,000 each occurrence/$2,000,000 aggregate in excess of the underlying self-insured retention. A true and correct copy of the 2000 Lester Policy as provided by National Union to IICNA is attached hereto as Exhibit "F" and incorporated herein by reference.

42.    GenStar issued Excess Liability Policy IXG-347714C to Integrated Health Services, Inc. for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 GenStar Policy"). The 2000 GenStar Policy provides limits of $25,000,0000 each occurrence Bodily Injury and/or Property Damage liability combined/$25,000,000 aggregate (where applicable) in excess of underlying limits.

43.    The underlying limits identified in the 2000 GenStar Policy are $25,000,000 each occurrence bodily injury and/or property damage liability combined/$25,000,000 aggregate (where applicable) in excess of primary insurance or self insured retention.

44.    The underlying coverage to the 2000 GenStar Policy is identified as a "Commercial Umbrella Liability" policy issued by "AIG Insurance Company", which, upon information and belief, is intended to refer to the 2000 IHS Main Policy.

45.    Nothing contained in the 2000 GenStar Policy identifies the 2000 Lester Policy as an underlying policy, nor does the 2000 GenStar Policy Declarations Page indicate that the 2000 GenStar Policy applies in excess of the 2000 Lester Policy.

46.    Section II. to the 2000 GenStar policy entitled "Application of Underlying Insurance", provides:

> Except for the limits of liability and any provisions in the underlying insurance policy which are inconsistent with this Policy, including any endorsements attached hereto, the terms, conditions, agreements, definitions, exclusions and limitations of

Page 18

the controlling underlying insurance policy are incorporated by reference as part of this Policy.

47.    Nothing contained in the 2000 GenStar Policy is inconsistent with the limitation on coverage set forth in the Broad Named Insured-Amendatory endorsement made part of the 2000 IHS Main Policy.

48.    GenStar also contracted with Hamlin & Burton to act as its agent for the purpose of adjusting claims asserted against IHS and administrating GenStar's 1999 and 2000 policies. A true and correct copy of the 2000 GenStar Policy, as delivered to IICNA by Hamlin & Burton is attached hereto as "Exhibit "G" and incorporated herein by reference.  Said policy was delivered to IICNA when, on behalf of the underlying carriers National Union and GenStar, Hamlin & Burton tendered the open 2000 tort claims to IICNA upon the purported exhaustion of the underlying limits.

49.    IICNA issued Excess Catastrophe Liability Policy No. XLXG20108034 to IHS for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 IICNA Policy").  The 2000 IICNA Policy provides limits of $50,000,000 each occurrence/$50,000,000 aggregate in excess of underlying coverage.

50.    The 2000 IICNA Policy provides, in part, as follows:

**SECTION I**
**INSURING AGREEMENTS**

A.    COVERAGE

WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy period and are insured by all of the policies designated in the Declarations as

Page 19

UNDERLYING INSURANCE.  If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance then WE shall not pay such loss.

The Definitions, Terms, Conditions, Limitations and Exclusion of the "first policy of UNDERLYING INSURANCE", in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

51.     The "first policy of UNDERLYING INSURANCE" to the 2000 IICNA Policy was the 2000 IHS Main Policy.

52.     As the 2000 IHS Main Policy excludes coverage for IHS of Lester, the 2000 IICNA Policy also excludes coverage for IHS of Lester.

### ***Hamlin & Burton***

53.     On information and belief, National Union paid a lump sum administrative fee to Hamlin & Burton for the purposes of administrating the 1999 IHS Main Policy.

54.     On information and belief, National Union also paid a lump sum administrative fee to Hamlin & Burton for the purposes of administrating the 2000 IHS Main Policy.

55.     The Section II., Defense, Paragraph B – When we assume the defense of any claim or suit, provision 2, as included in the 1999 IHS Main Policy states:

We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **insured**:

a.     premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

Page 20

       b.      premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish such bond;

       c.      all costs taxed against the **insured** in any claim or **suit** we defend;

       d.      pre-judgment interest awarded against the **insured** on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

       e.      all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limits of Insurance;

       f.      the **insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

56.     On information and belief, National Union improperly exhausted the 1999 IHS Main Policy by including the administrative fee paid to Hamlin & Burton as a charge against the policy's limits.

57.     Nothing contained in the foregoing Defense provision permits an administrative fee to be considered as a component of National Union's defense costs.

58.     Moreover, all costs incurred by National Union are in addition to the Limits of Insurance.

59.     Pursuant to Endorsement #1 to the 2000 IHS Main Policy, the 2000 IHS Main Policy contains an "Additional Definition" of the term "Defense Expenses". "Defense Expenses" are defined as:

> a payment allocated to a ***specific loss***, claim or suit for its investigation, settlement or defense, including but not limited to:
>
> a.     attorneys' fees and all other investigation, loss adjustment and litigation expenses;
>
> b.     premiums on bonds to release attachments;
>
> c.     premiums on appeals bonds required by law to appeal any claim or suit;
>
> d.     costs taxed against the insured in any claim or suit;
>
> e.     pre-judgment interest awarded against the Insured;
>
> f.     interest that accrues after entry of judgment.

(Emphasis added).

60.     On information and belief, National Union improperly exhausted the 2000 IHS Main Policy by including the administrative fee paid to Hamlin & Burton as a charge against the policy's limits.

61.     Nothing contained in the "Additional Definition" of "Defense Expenses" permits an administrative fee to be considered as a component of National Union's defense costs.

62.    Moreover, "Defense Expenses" must be allocable to a specific file and cannot be charged against the policy as a lump sum charge.

63.    On information and belief, GenStar improperly exhausted the 1999 GenStar Policy and the 2000 GenStar Policy by including the administrative fee paid to Hamlin & Burton as a charge against the policy's limits.

64.    On information and belief, GenStar's payments to Hamlin & Burton duplicate fees already paid for the administration of open IHS claim files.

### *Chapter 400 fees*

65.    A significant number of tort claims relating to both th 1999 and 2000 policy years were asserted in Florida.  During some of the relevant time, Florida law authorized the imposition of a nursing home plaintiff's attorneys' fees on the defendants per the terms of the then applicable Florida statute ("Chapter 400 fees").

66.    Under the terms of the 1999 IHS Main Policy, the 1999 Lester Policy, the 1999 GenStar Policy, the 2000 IHS Main Policy, the 2000 Lester Policy and the 2000 GenStar Policy, there is no coverage available for fee awards or attorneys' fees paid to a claimant's counsel.

67.    Upon information and belief, the payment of Chapter 400 fees was a component of the amounts paid by National Union and GenStar to settle both 1999 Insured Tort Claims and 2000 tort claims in Florida cases.

68.    By considering Chapter 400 fees, the limits of the 1999 IHS Main Policy, the 1999 GenStar Policy, the 2000 IHS Main Policy, and the 2000 GenStar Policy were improperly eroded, reducing the coverage limits available to IHS and otherwise causing harm to IHS and IICNA.

## D.    GENERAL ALLEGATIONS

### *1999 Allegations*

69.    Pursuant to the Bankruptcy Court's order, in or about October 2003, National Union commenced defending IHS and IHS of Lester under the 1999 IHS Main Policy.

70.    Upon information and belief, National Union contracted with Hamlin & Burton to act as its agent for the purpose of adjusting claims asserted against IHS and IHS of Lester, and administrating the 1999 IHS Main Policy.

71.    On behalf of National Union, Hamlin & Burton entered into an unknown number of compromise settlement agreements on behalf of IHS and IHS of Lester which were funded from the 1999 IHS Main Policy.

72.    Upon the purported exhaustion of the 1999 IHS Main Policy, on behalf of National Union, Hamlin & Burton tendered the defense of IHS and IHS of Lester to GenStar, which agreed to take over the defense of all of the pending lawsuits.

73.    Upon information and belief, GenStar also contracted with Hamlin & Burton to act as its agent for the purpose of adjusting claims asserted against IHS and administrating the 1999 GenStar Policy.

74.    On behalf of GenStar, Hamlin & Burton entered into an unknown number of compromise settlement agreements on behalf of IHS and IHS of Lester which were funded from the 1999 GenStar Policy.

75.    Upon the purported exhaustion of the 1999 GenStar Policy, in or about June 2005 Hamlin & Burton, acting on behalf of GenStar, tendered the defense of IHS and IHS of Lester

Page 24

open tort claims (alleging residency or injury occurring during the 1999 calendar year) to IICNA for defense.

76.    National Union permitted the improper erosion of the limits of the 1999 IHS Main Policy by:

a.    including defense costs within the policy's limits;

b.    including payments of defense costs and settlements made on behalf of IHS of Lester within the policy's limits;

c.    including Hamlin & Burton's administrative fee within the policy's limits; and

d.    including Chapter 400 fees within the policy's limits.

77.    GenStar permitted improper erosion of the limits of the 1999 GenStar Policy by:

a.    including duplicate administrative fees paid by GenStar within the policy's limits;

b.    including payments of defense costs and settlements made on behalf of IHS of Lester within the policy's limits; and

c.    including Chapter 400 fees within the policy's limits.

### *2000 Allegations*

78.    In or about May 2003, on behalf of National Union and GenStar, Hamlin & Burton tendered the defense of all of the open tort claims alleging residence or injury occurring during the 2000 calendar year to IICNA (i.e., the "2000 policy year claims").

79.    At the time of the tender, there were approximately 255 open claims which alleged residence or injury occurring during the 2000 IICNA Policy period.

80.     To date, IICNA has adjusted and closed a substantial number of the 2000 policy year claims tendered to it.

81.     Upon information and belief, the 2000 IHS Main Policy excludes coverage for "**Integrated Health Services of Lester, Inc.** and its interests in other entities."

82.     Upon information and belief, despite National Union's tender of coverage to GenStar, National Union had not properly exhausted its 2000 Lester Policy prior to such tender.

83.     Upon information and belief, the 2000 GenStar Policy excludes coverage for the exposure of IHS of Lester, Inc. and its interests in other entities.

84.     The exclusion of coverage for IHS of Lester, Inc. contained within the 2000 IHS Main Policy is incorporated by reference into the 2000 GenStar Policy.

85.     On information and belief, despite the incorporation of the exclusion, Hamlin & Burton, on behalf of GenStar, has defended and settled IHS of Lester claims under the 2000 GenStar Policy.

86.     National Union permitted the improper erosion of the limits of the 2000 IHS Main Policy by:

        a.     including defense costs within the policy's limits;

        b.     including payments of defense costs and settlements made on behalf of IHS of Lester within the policy's limits;

        c.     including Hamlin & Burton's administrative fee within the policy's limits; and

        d.     including Chapter 400 fees within the policy's limits.

87.     GenStar permitted the improper erosion of the limits of the 2000 GenStar Policy by:

a.     including duplicate administrative fees paid by GenStar within the policy's limits;

b.     including payments of defense costs and settlements made on behalf of IHS of Lester within the policy's limits; and

c.     including Chapter 400 fees within the policy's limits.

**COUNT I
CROSS-CLAIM FOR IMPROPER EXHAUSTION OF THE 1999 POLICIES**

88.     Paragraphs 1 through 87 above are incorporated herein by reference as if more fully set forth at length.

89.     Pursuant to the Insuring Agreement of the 1999 IICNA Policy, there is no coverage available under the 1999 IICNA Policy unless and until the underlying insurance has been exhausted by the payment of the limits of such insurance.

90.     National Union has improperly allocated the defense costs paid in connection with the handling and disposition of lawsuits and claims asserted against IHS and alleging residency or injury occurring during the term of the 1999 IHS Main Policy toward the exhaustion of the 1999 IHS Main Policy's Limits of Liability, despite a provision in the policy to the contrary, to wit, "All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance."  See 1999 IHS Main Policy, Section II. B.

91.     The 1999 IHS Main Policy filed by National Union as part of its Motion For Summary Judgment in the Bankruptcy Court expressly excludes coverage for "**Integrated Health Services of Lester, Inc.** and its interests in other entities."

92.     Despite this express exclusion, National Union has improperly allocated the defense costs and settlement amounts spent in connection with the handling and disposition of lawsuits and claims asserted against IHS of Lester and alleging residency or injury occurring during the term of the 1999 Lester Policy toward the exhaustion of the Limits of Liability available under the 1999 IHS Main Policy.

93.     National Union violated its obligations to IHS and to its excess carriers, including IICNA, by allocating amounts it spent in connection with the defense of lawsuits and claims asserted against IHS and alleging residency or injury occurring during the term of the 1999 IHS Main Policy's coverage period toward the exhaustion of the Limits of Liability.

94.     In addition, National Union violated its obligations to IHS and to its excess carriers, including IICNA, by allocating amounts spent in connection with the defense of lawsuits and claims asserted against IHS of Lester toward the exhaustion of the Limits of Liability available under the 1999 IHS Main Policy, despite an express exclusion of coverage for IHS of Lester under the 1999 IHS Main Policy.

95.     National Union violated its obligations to IHS and to its excess carriers, including IICNA, by including administrative fees paid to Hamlin & Burton during the term of the 1999 IHS Main Policy's coverage period toward the exhaustion of the Limits of Liability.

96.     As set forth more fully above, the 1999 GenStar Policy incorporates by reference the exclusion of coverage for IHS of Lester made part of the 1999 IHS Main Policy.

97.     GenStar violated its obligations to IHS and its excess carrier, IICNA, by deducting amounts it spent in connection with the defense of lawsuits and claims asserted against IHS of Lester from the Limits of Liability available under the 1999 GenStar Policy.

98.    In addition, GenStar violated its obligations to IHS and its excess carrier, IICNA, by allocating duplicate administrative fees toward the exhaustion of the 1999 GenStar Policy.

WHEREFORE, IICNA prays that National Union and GenStar be required to replenish the underlying policies in amounts equal to:

(a)    all expenses incurred by National Union "in the defense of any **suit** or claim" asserted against IHS and allocated toward the exhaustion of the 1999 IHS Main Policy's Limits of Liability, according to proof;

(b)    all amounts spent by National Union in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 1999 IHS Main Policy's Limits of Liability according to proof;

(c)    all amounts spent by GenStar in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 1999 GenStar Policy's Limits of Liability, according to proof;

(d)    all amounts spent by National Union and GenStar for Hamlin & Burton's administration of the 1999 IHS Main Policy and the 1999 GenStar Policy; and

(e)    all amounts spent by National Union and GenStar in payment of Chapter 400 fees.

## COUNT II
## CROSS-CLAIM FOR IMPROPER EXHAUSTION OF THE 2000 POLICIES

99.    Paragraphs 1 through 98 above are incorporated herein by reference as if more fully set forth at length.

100.     There is no coverage available under the 2000 IICNA Policy unless and until the underlying insurance has been exhausted by the payment of the limits of such insurance.

101.     The 2000 IHS Main Policy provided to IICNA in conjunction with the tender of the defense of some 255 open claims by National Union's agent, Hamlin & Burton, expressly excludes coverage for "**Integrated Health Services of Lester, Inc.** and its interests in other entities."

102.     Despite this express exclusion, National Union has improperly allocated the defense costs and settlement amounts spent in connection with the handling and disposition of lawsuits and claims asserted against IHS of Lester and alleging residency or injury occurring during the term of the 2000 Lester Policy toward the exhaustion of the Limits of Liability available under the 2000 IHS Main Policy.

103.     National Union violated its obligations to IHS and to its excess carriers, including IICNA, by allocating amounts spent in connection with the defense of lawsuits and claims asserted against IHS of Lester from the Limits of Liability available under the 1999 IHS Main Policy despite an express exclusion of such coverage.

104.     As set forth more fully above, the 2000 GenStar Policy incorporates by reference the exclusion of coverage for IHS of Lester made part of the 2000 IHS Main Policy.

105.     GenStar violated its obligations to IHS and its excess carrier by deducting amounts it spent in connection with the defense of lawsuits and claims asserted against IHS of Lester from the Limits of Liability available under the 2000 GenStar Policy.

WHEREFORE, IICNA prays that National Union and GenStar be required to replenish the underlying policies in amounts equal to:

Page 30

(a)    all amounts spent by National Union in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 2000 IHS Main Policy's Limits of Liability;

(b)    all amounts spent by GenStar in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 2000 GenStar Policy's Limits of Liability;

(c)    all amounts spent by National Union and GenStar for Hamlin & Burton's administration of the 2000 IHS Main Policy and the 2000 GenStar Policy; and

(d)    all amounts spent by National Union and GenStar in payment of Chapter 400 fees.

WETZEL & ASSOCIATES, P.A.

/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III, ID No. 985
Natalie M. Ippolito, ID No. 3845
The Carriage House, Suite 201
1100 North Grant Avenue
Wilmington, DE 19805
nippolito@wetzellaw.com
(302) 652-1200
*Attorney for Defendant ACE Indemnity Insurance Company f/k/a Indemnity Insurance Company of North America*

DATED:  October 31, 2006

cc:    Francis J. Deasey, Esq.
        Gerald J. Valentini, Esq.
        Ward A. Rivers, Esq.
        Deasey, Mahoney & Bender, Ltd.
        1800 John F. Kennedy Blvd.
        Suite 1300
        Philadelphia, PA 19103
        (215) 587-9400