UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>Defendant. | Civil Action No. 05-376(GMS) |
| IHS LIQUIDATING LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA.,<br>GENERAL STAR INDEMNITY COMPANY,<br>and ACE INDEMNITY INSURANCE COMPANY f/k/a<br>INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>Third-Party Defendants. | |

**MEMORANDUM OF LAW FOR PLAINTIFF IHS LIQUIDATING LLC
IN OPPOSITION TO MOTION OF DEFENDANT INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA FOR LEAVE TO AMEND ITS
ANSWER TO THE THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

Page No.

Table of Authorities ....................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ............................................................................................4

    A.  The Chapter 11 Cases ......................................................................................4

    B.  The Plan and Briarwood......................................................................................4

    C.  The Plan and the Liquidating LLC ...................................................................6

    D.  The Reliance Liquidation and the Plan's Treatment
        of the 1999 Insured Tort Claims.......................................................................6

    E.  The 1999 National Union Policy.......................................................................7

    F.  The 1999 National Union Lester Policy .........................................................8

    G.  The 1999 GenStar Policy...................................................................................9

    H.  The 1999 IICNA Policy....................................................................................10

    I.  The Present Action ..........................................................................................11

    J.  The 2000 IICNA Policy and the Motion to Amend .......................................12

ARGUMENT

    THE MOTION TO AMEND SHOULD BE DENIED ....................................15

    A.  The motion should be denied because the proposed amendment is futile.................15

    B.  The motion should be denied because amendment would cause undue delay ..........16

CONCLUSION ..........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

Page No.

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993)................................................................................................15

*Poling v. K. Hovnanian Enterprises*,
    99 F. Supp.2d 502 (D.N.J. 2000) .................................................................................15

*Walsh v. Employers Insurance of Wassau*,
    1985 U.S. Dist. LEXIS 14027 (N.D. Ill. Nov. 8, 1985).......................................................15

## STATUTES

28 U.S.C. §157(d) ....................................................................................................................11, 13

28 U.S.C. § 2201 ...........................................................................................................................1

FED .R. CIV. P. 15(a)....................................................................................................................15

FED .R. CIV. P. 19(a)....................................................................................................................15

FED .R. CIV. P. 57.. .......................................................................................................................1

**MEMORANDUM OF LAW FOR PLAINTIFF IHS LIQUIDATING LLC
IN OPPOSITION TO MOTION OF DEFENDANT INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA FOR LEAVE TO AMEND ITS
ANSWER TO THE THIRD-PARTY COMPLAINT**

Plaintiff IHS Liquidating LLC (the "Liquidating LLC") respectfully submits this memorandum of law in opposition to the motion of defendant Indemnity Insurance Company of North America ("IICNA") for leave to amend its answer to the third-party complaint and the cross-claims contained therein.

### PRELIMINARY STATEMENT

Due to the bankruptcy of Integrated Health Services, Inc. ("IHS") and the other debtors in the above-captioned chapter 11 case (collectively, with IHS, the "Debtors") and the insolvency of Reliance Insurance Company ("Reliance"), the Debtors' primary liability insurer for tort claims arising during 1999, IICNA has denied coverage of personal injury claims against the Debtors under IICNA's $50 million excess liability policy covering personal injury claims for the policy year 1999 (the "1999 IICNA Policy"). The First Claim for Relief in the Liquidating LLC's Complaint seeks a declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE, that IICNA's denial of coverage is contrary to the terms of the 1999 IICNA policy. Plaintiff has moved for summary judgment on this First Claim, and the parties agree that the motion raises issues of law only and is ripe for adjudication. The motion, which will resolve the bulk of the dispute between plaintiff and IICNA has been fully briefed and is awaiting decision.

Until this Court determines the First Claim for Relief, the Liquidating LLC can make no further distributions to the holders of 1999 personal injury claims, who comprise a separate class of claimants under the Plan ("1999 Insured Tort Claims"). Many of the holders of these claims

1

entered into settlements in reliance on the recovery provided for in the IHS Debtors' Plan of Reorganization, and all of the holders of these claims have been waiting years for payment of their claims as provided for in the Plan.[1] Thus, time is of the essence in adjudicating the issues raised in the Liquidating LLC's First Claim for Relief, and this adjudication is critical to the implementation of the Debtors' chapter 11 Plan.

Plaintiff respectfully urges the Court to reject IICNA's effort to assert unrelated new claims in which neither the plaintiff nor the holders of 1999 Insured Tort Claims have any interest. The proposed new IICNA claims concern a different insurance policy, a different policy year and different real parties in interest, who previously have had no need to appear in this action and whose absence would render the proposed amendment futile.

It would make no sense to permit new and unrelated claims to be added to this action particularly when the basic dispute between plaintiff and IICNA concerning the 1999 IICNA Policy is ripe for summary judgment and plaintiff's summary judgment motion is *sub judice*. In its present motion, IICNA seeks leave to amend its Answer principally to assert a proposed cross-claim against other excess carriers and to raise issues concerning a year 2000 liability policy issued by IICNA to IHS (the "2000 IICNA Policy"), which policy has no bearing on any claims or defenses asserted in this action.

IICNA has already sought a declaration of its rights under the 2000 IICNA Policy in a separate action IICNA commenced in 2004, *Indemnity Insurance Company of America v. Integrated Health Services, Inc and Abe Briarwood Corp.*, Civil Action No 04-1262 (GMS) (the

---

[1]  By order dated May 12, 2003 (the "Confirmation Order"), the Bankruptcy Court confirmed the *Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code*, dated March 13, 2003 (as amended, modified or supplemented, including by the Confirmation Order, the "Plan"). The Plan became effective on September 9, 2003 (the "Effective Date").

"First Action"), and plaintiff herein has no interest whatsoever in the claims raised in the complaint in that action. The real parties in interest in the First Action, the defendants therein, are not parties in the present action, and IICNA can obtain any relief to which it may be entitled with respect to its claims concerning the 2000 IICNA Policy in the First Action and therefore will not be prejudiced by denial of its motion. Adjudication of these unrelated claims can only serve to delay the disposition of the present action to the prejudice of plaintiff and numerous 1999 Insured Tort Claimants. Accordingly, IICNA's the motion to amend should be denied.

## STATEMENT OF FACTS

**A.    The Chapter 11 Cases**

On February 2, 2000 (the "Filing Date"),  IHS and the other Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").

The Debtors had three principal business segments, one of which operated skilled nursing

and subacute care facilities.  As of the Filing Date, the Debtors operated 377 such facilities, with

a total of about 42,000 licensed beds and provided a wide range of basic medical and sub-acute

care services for the patients in their care.

Given the nature of the long term care industry and the magnitude of the Debtors'

operations, IHS maintained insurance programs to manage its exposure to personal injury and

malpractice claims arising from the Debtors' businesses.  This adversary proceeding concerns

the Debtors' primary and excess insurance policies covering such professional and general

liability claims ("PL/GL Claims") for the 1999 policy year.

**B.    The Plan and Briarwood**

The IHS Plan of Reorganization provided for the consummation of a stock purchase

agreement (the "SPA") between IHS and Abe Briarwood Corp. ("Briarwood").  Both the SPA

and the Plan contemplated the formation by IHS of two new wholly-owned subsidiaries named

IHS Long Term Care, Inc. (the "LTC Subsidiary") and IHS Therapy Care, Inc. (the "Therapy

Subsidiary" and, together with the LTC Subsidiary, the "Purchased Subsidiaries").  *See* Plan at

§5.9(b); SPA at p.1.  Section 5.9(b) of the Plan provided for the implementation of the SPA,

including the provision that IHS will "contribute and assign" to either the LTC Subsidiary or the

4

Therapy Subsidiary, as the case may be, all of IHS' assets and liabilities other than the Excluded

Assets and the Excluded Liabilities. *Id.*

The Bankruptcy Court specifically authorized IHS to assign these assets and liabilities

pursuant to the Confirmation Order at ¶37, which states, in relevant part:

> Simultaneously with the Closing, IHS shall be authorized to
> (i) **contribute and assign** to the LTC Subsidiary all of its assets
> and liabilities not described in clause (ii) below, including without
> limitation the capital stock of all of the Subsidiaries (as defined in
> the Sale Agreement) that conduct IHS's long-term care business
> **and any and all past, current and future PLGL Claims arising**
> **after the Commencement Date**, but excluding the Excluded
> Assets and the Excluded Liabilities, and (ii) contribute and assign
> to the Therapy Subsidiary all of its assets and liabilities that relate
> to IHS's contract rehabilitation therapy business and mobile x-ray
> services business, including without limitation the capital stock of
> all of the Subsidiaries that conduct IHS's contract rehabilitation
> therapy business, but in each case excluding the Excluded Assets
> and the Excluded Liabilities. [emphasis added].

Effective August 31, 2002, in accordance with the SPA, the Plan and the Confirmation

Order, IHS transferred to the LTC Subsidiary all of IHS's assets and liabilities relating to IHS's

long-term care business, other than "Excluded Assets" and "Excluded Liabilities" (each as

defined under the SPA) and transferred to the Therapy Subsidiary all of IHS's assets and

liabilities relating to IHS's contract rehabilitation therapy business, again other than Excluded

Assets and Excluded Liabilities.

At the closing under the SPA, Briarwood purchased from IHS all of the outstanding

shares of the Purchased Subsidiaries. As a result, the LTC Subsidiary, owned by Briarwood

post-closing, is liable for all liabilities of IHS concerning PL/GL Claims arising on and after the

Filing Date, and the Reorganized Debtors, indirectly owned by Briarwood through the LTC

Subsidiary, remain liable for PL/GL Claims against them arising on and after the Filing Date.

It follows that while Briarwood (which is not a party to the present action) has a stake in the outcome of IICNA's claims concerning the 2000 IICNA Policy, the Liquidating LLC does not.

**C.     The Plan and the Liquidating LLC**

In addition to implementing the SPA, the Plan provided for the formation of plaintiff Liquidating LLC, a Delaware limited liability company, to implement certain aspects of the Plan after the Effective Date. In accordance with section 5.9 of the Plan, upon the closing under the SPA, all remaining assets and liabilities of IHS were transferred to the Liquidating LLC. The Liquidating LLC's responsibilities under the Plan include administration of disputed prepetition claims against the Debtors, including, the approximately 325 PL/GL Claims that arose during calendar year 1999 (as previously defined, the "1999 Insured Tort Claims"). The Plan established a separate class for the 1999 Insured Tort Claims because the Debtors' PL/GL insurance coverage for the 1999 Insured Tort Claims presented a number of unique and complex issues requiring an equitable resolution under the Plan.

**D.     The Reliance Liquidation and the Plan's
           Treatment of the 1999 Insured Tort Claims**

The Debtors' primary PL/GL insurance carrier for 1999 was Reliance. On October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance insolvent and entered an order of liquidation (the "Liquidation Order"). M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, was named as the Reliance Liquidator.

Since entry of the Liquidation Order, the Reliance Liquidator has paid no claims or defense costs covered by the primary policy issued by Reliance (the "Reliance Policy"). The Liquidating LLC has a claim against the Reliance liquidation estate for any part of the coverage available under the Reliance Policy that was not exhausted prior to the Reliance liquidation. The

6

value of the claim cannot be determined until both the allowed amount of the claim and the likely percentage recovery of creditors is determined. It is not disputed that, given the insolvency of both IHS and Reliance, the coverage provided for in the Reliance Policy will never be paid in full in cash.

Thus, the Reliance liquidation created a risk that some holders of 1999 Insured Tort Claims whose claims were liquidated within the Reliance coverage limits would be partially or completely deprived of access to insurance proceeds, while other holders would receive the full benefit of coverage under the excess policies. The Debtors addressed this problem by establishing the class of 1999 Insured Tort Claims in the Plan.

Under the Plan, all holders of allowed 1999 Insured Tort Claims are entitled to share *pro rata* in the total insurance proceeds available under the Debtors' primary and excess liability insurance policies for 1999. As of the Effective Date, most of the 1999 Insured Tort Claims were unliquidated. To administer this class of Claims, the Liquidating LLC must collect all insurance proceeds that become payable upon the settlement or adjudication of each such Claim, and make appropriate distributions to the holders of allowed Claims from the pool of insurance proceeds collected in this manner.

### E.    The 1999 National Union Policy

National Union Fire Insurance Company of Pittsburgh ("National Union") issued an excess insurance policy providing both professional liability and general liability coverage for IHS for the 1999 calendar year (the "National Union Policy"). The National Union Policy provides the first layer of $25 million per occurrence and in the aggregate in excess in the Reliance Policy.

Shortly before the Bankruptcy Court confirmed the Plan, National Union took the position that the Debtors could not look to National Union for *any* liability insurance coverage until the $9 million primary layer of coverage was exhausted by the *actual cash payment* of $9 million in claims and expenses. Because both IHS and Reliance were in insolvency proceedings, it was most unlikely that IHS or Reliance would ever actually pay the $9 million obligation in full. The position taken by National Union therefore amounted to a complete denial of coverage.

On March 26, 2003, IHS commenced an adversary proceeding in the Bankruptcy Court, *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, Adv. Proc. No. 03-52081, to enforce coverage under the National Union Policy (the "National Union Adversary Proceeding"). By order dated October 23, 2003 (the "Summary Judgment Order"), the Bankruptcy Court granted partial summary judgment in favor of IHS. The Summary Judgment Order determined, *inter alia*, that coverage under the National Union Policy was triggered upon IHS becoming *liable* for losses relating to 1999 Insured Tort Claims in excess of $9 million, whether by settlement or judgment, *regardless of whether IHS or Reliance paid the first $9 million of losses in cash.*

The 1999 Insured Tort Claims that have to date been liquidated in amount by judgments or settlement agreements constituting binding legal obligations aggregate to an amount in excess of the limits of the Reliance Policy and the National Union Policy. In accordance with the Plan, National Union has made payments to the Liquidating LLC for 1999 Insured Tort Claims within National Union's layer of coverage.

## F.    The 1999 National Union Lester Policy

A Landlord of IHS of Lester, Inc. (the "Lester Landlord" and "IHS of Lester") one of IHS's operating subsidiaries, demanded that IHS of Lester obtain separate excess coverage for

8

1999. Accordingly, claims against IHS of Lester were excluded from coverage under the National Union Policy, and IHS obtained a second National Union Commercial Umbrella Policy, BE 357-43-44, (the "National Union Lester Policy," together with the National Union Policy, the "National Union Policies"). The National Union Lester Policy (Exhibit B to the Third-Party Complaint) provides IHS of Lester with a separate first layer of excess coverage. National Union has confirmed that the National Union Policy provides coverage excess to the National Union Lester Policy.

**G.      The 1999 GenStar Policy**

General Star Indemnity Company ("GenStar") issued an excess insurance policy providing both professional liability and general liability coverage for IHS for the 1999 calendar year (the "GenStar Policy"). The GenStar Policy provides the second layer of excess coverage with limits of $25 million per occurrence or in the aggregate in excess of the Reliance Policy and National Union Policy. In accordance with the Plan, and consistent with the Bankruptcy Court's ruling in the National Union Adversary Proceeding, GenStar has paid the Liquidating LLC for 1999 Insured Tort Claims within GenStar's layer of coverage.

By September 2004, the Liquidating LLC had collected sufficient insurance proceeds under the National Union Policy and the GenStar Policy to make an initial 70% distribution to the holders of approximately eighty-eight 1999 Insured Tort Claims that had by that time been fixed in amount. Thereafter, as additional 1999 Insured Tort Claims were liquidated and the applicable insurance proceeds collected, the Liquidating LLC made 70% distributions to such claimants. By April 2005, the Liquidating LLC had made an initial 70% distribution to approximately 126 of the 1999 Insured Tort Claimants.

9

H.    **The 1999 IICNA Policy**

IICNA issued an excess insurance policy, Excess Liability Catastrophe Policy, No. XLX G19545507, providing both professional liability and general liability coverage for IHS for the 1999 calendar year (previously defined as the "1999 IICNA Policy"). The 1999 IICNA Policy provides excess coverage of $50 million per occurrence or in the aggregate.

In May 2005, as the GenStar layer of coverage was nearing exhaustion and GenStar was preparing to turn over the open claim files to IICNA, the issuer of the Debtors' third and final layer of 1999 excess coverage, IICNA disclaimed coverage based upon the same argument made unsuccessfully by National Union two years earlier. Specifically, IICNA disclaimed all coverage under the IICNA Policy unless and until all underlying policy limits were paid out *in cash*, even though the Bankruptcy Court rejected this position when National Union asserted it in 2003. IICNA's disclaimer, like the disclaimer made by National Union two years earlier, is a complete repudiation of IICNA's coverage obligations under its Policy. If IICNA's position is sustained, the Debtors will be deprived of $50 million in insurance coverage that IHS purchased and paid for prepetition.

While IICNA issued further disclaimers under various other theories, its resurrection of the discredited National Union argument is the only disclaimer that puts at issue the entirety of the IICNA Policy. There remain at least one-hundred-fifty-eight 1999 Insured Tort Claims that have not yet been liquidated and for which no distributions have been made. The Liquidating LLC estimates that these claims, when liquidated, will total several million dollars. In addition, more than forty 1999 Insured Tort Claims have been liquidated in amount by settlements totaling in excess of $8,600,000, for which the Liquidating LLC has collected insurance proceeds but has not made a distribution to the holders of the claim due to the IICNA disclaimer.

Given IICNA's position on coverage, the Liquidating LLC can no longer assume that future claim settlements or judgments will result in collection of the corresponding insurance proceeds. As a result, until the First Claim for Relief is finally adjudicated, the Liquidating LLC is unable to determine what, if any, distribution can properly be made to claimants who have recently settled or may hereafter settle their claims, consistent with the Plan's requirement that all 1999 Insured Tort Claimants share *pro rata* in available insurance proceeds. The Liquidating LLC has therefore suspended all distributions to holders of allowed 1999 Insured Tort Claims.

This moratorium may be causing great hardship to claimants who have already been waiting years for a recovery on their claims and may be in dire need of funds. Unfortunately, the IICNA disclaimer has required that, to protect the interests of the entire class of 1999 Insured Tort Claims under the Plan, no further distributions be made until this Court grants declaratory relief.

## I.    **The Present Action**

On May 6, 2005, the Liquidating LLC commenced the present action as an adversary proceeding in the Bankruptcy Court, *Integrated Health Services, Inc. v. Ace Insurance Company, f/k/a Indemnity Insurance Co. of North America, Inc.*, Adv. Proc. No. 05-51318, by which it sought declaratory relief to enforce coverage under the 1999 IICNA Policy (the "1999 Policy Proceeding").

On June 8, 2005, IICNA moved pursuant to 28 U.S.C. §157(d) to withdraw the automatic reference of the present action to the Bankruptcy Court. By Order dated December 2, 2004, this Court withdrew the reference.

On July 26, 2005, IICNA filed its Answer to the Complaint and a Counterclaim seeking a declaration that:

> Unless and until the limits of the underlying Reliance Policy, as well as the limits of all other underlying insurance, have been exhausted by the actual payment of covered claims against IHS during the relevant policy period, IICNA owes no duty under its 1999 IICNA Policy to indemnify and/or defend IHS for the 1999 Insured Tort Claims or any other claims otherwise occurring within the relevant policy period.

Counterclaim at page16.  In addition, the Counterclaim, at Paragraphs 48 and 49, alleges: (i) that the National Union Policy and the GenStar Policy are "improperly exhausted" because these insurers made improper charges – for defense costs and for coverage of claims arising at IHS of Lester – against their Policies; (ii) that National Union and GenStar are therefore further liable to plaintiff under their insurance policies; and (iii) that IICNA is therefore excused from performing under the IICNA Policy until and unless the alleged liability of National Union and GenStar under their insurance policies is satisfied.

The stated position of both National Union and GenStar is that their excess insurance policies are exhausted, that no improper charges have been made against those policies, and that neither National Union nor GenStar has any remaining liability to their insureds or to the Liquidating LLC thereunder.

In response to the Counterclaim, the Liquidating LLC has asserted a Third-Party Claim against all three excess carriers, joining National Union and GenStar, to permit a determination binding on all.

## J.     The 2000 IICNA Policy and the Motion to Amend

Separate and apart from the 1999 IICNA Policy, IICNA also provided the Debtors with insurance coverage for claims arising during the year 2000.  That insurance is provided pursuant to Excess Liability Catastrophe Policy, No.XLXG20108034 (previously defined as the "2000 IICNA Policy").  After confirmation of the Plan but prior to the consummation of the SPA,

Briarwood requested a declaration from the Bankruptcy Court that the 2000 IICNA Policy, which primarily covered PL/GL Claims arising *after* the Filing Date, would be in full force and effect upon consummation of the SPA.

Thereafter, on August 15, 2003, IICNA commenced the First Action as an adversary proceeding in the Bankruptcy Court, naming Briarwood and IHS, but not the Liquidating LLC as defendants. IICNA's complaint in the First Action (the "IICNA Complaint") seeks a declaratory judgment: (i) that Briarwood and the Purchased Subsidiaries are not insureds under the 2000 IICNA Policy; (ii) in the alternative, that Briarwood and the Purchased Subsidiaries are subject to the same obligations as the named insureds under the 2000 IICNA Policy; and (iii) that IICNA is entitled to defend and settle the PL/GL Claims covered by the 2000 IICNA Policy under a complete reservation of rights.

At the time the IICNA Complaint was filed in the First Action, the Plan was not effective, the SPA was not consummated, and the Liquidating LLC was not yet in existence. Within a month, as a result of the consummation of the Plan, IHS was divested of all its assets and liabilities, and Briarwood as the real party in interest assumed the defense of the First Action.

On September 3, 2004, IICNA moved pursuant to 28 U.S.C. §157(d) to withdraw the automatic reference of the First Action to the Bankruptcy Court. Briarwood did not oppose the motion, and by Order dated December 2, 2004, this Court withdrew the reference.

On April 18, 2005, IICNA moved to amend the IICNA Complaint in the First Action, seeking, among other things, to add a claim for declaratory relief relating to the 1999 IICNA Policy (the "Proposed 1999 Count"). Specifically, the Proposed 1999 Count seeks a declaration that unless and until the underlying limits of the Reliance Policy, the National Union Policy and the GenStar Policy have all been exhausted by the actual *payment* of claims against IHS during

the policy period, IICNA owes no duty under the 1999 IICNA Policy to indemnify and defend the Debtors' estates against 1999 Insured Tort Claims or any other claims occurring within the policy period.  In other words, notwithstanding the Plan's contemplation that the proceeds of the insurance policies covering 1999 Insured Tort Claims are to be paid to the Liquidating LLC for *pro rata* distribution to creditors, *and* notwithstanding the Bankruptcy Court's coverage determination in the National Union Adversary Proceeding, IICNA belatedly sought a ruling – not from the Bankruptcy Court, which is already familiar with the underlying issues, but from this Court – that as a result of the bankruptcy of the Debtors and the liquidation of Reliance, IICNA will never have any obligation to defend the Debtors' estates against 1999 Insured Tort Claims or to contribute funds to the 1999 Insured Tort Claims Escrow.

In its present motion, IICNA seeks leave to amend its answer, principally to graft some new claims concerning the 2000 IICNA Policy claims onto its Cross-Claim against National Union and Genstar.  IICNA has previously moved in the First Action to combine 1999 IICNA Policy claims with the unrelated 2000 IICNA Policy claims.  Now, IICNA moves in the present action to combine new 2000 IICNA Policy claims with unrelated IICNA 1999 Policy claims.

Time is of the essence in adjudicating the claims already raised in the present action. This is because until the Court determines the legitimacy of IICNA's denial of coverage under the 1999 IICNA Policy, the Liquidating LLC can make no further distributions pursuant to the Plan to the holders of 1999 Insured Tort Claims who have waited years to be compensated for injuries they suffered in 1999.  Indeed, many such claimants have entered into binding settlements with the Liquidating LLC, but are nevertheless still waiting for an initial distribution under the Plan.  Injecting new claims, in which the Liquidating LLC has no interest, into the

14

present case will serve to unnecessarily complicate the issues and delay adjudication to the

prejudice of the holders of 1999 Insured Tort Claims

**ARGUMENT**

**THE MOTION TO AMEND SHOULD BE DENIED**

IICNA does not have the unfettered right to amend its complaint at this stage of the action. Rather, under Rule 15(a) of the FEDERAL RULES OF CIVIL PROCEDURE, IICNA is permitted to amend only with written consent of the adverse party or with leave of court. The court may deny a motion for leave to amend based on bad faith, dilatory motive, undue delay, or futility. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993) (affirming lower court's denial of motion to amend where two-year delay by the movant was unreasonable and additional facts would not "breathe life" into her claim.).

A.    **The motion should be denied because the proposed amendment is futile.**

The present declaratory judgment action concerns the 1999 IICNA Policy, and the Liquidating LLC, as successor to the insured, is the real party in interest. The proposed amendment concerns a *different policy*, the 2000 IICNA Policy, and a *different real party in interest*. Briarwood is the successor to the insured with respect to the 2000 IICNA Policy, and Briarwood is not a party here because it has no interest in the 1999 IICNA Policy. Certainly, under Rule 19(a) of the FEDERAL RULES OF CIVIL PROCEDURE, Briarwood would be a necessary party to any litigation seeking a declaration of its rights under its insurance policy. *See Walsh v. Employers Insurance of Wassau*, 1985 U.S. Dist. Lexis 14027, *5 (N.D. Ill. Nov. 8, 1985) (beneficiary under a liability insurance policy is a real party in interest to the liability insurance contract and a necessary party to a declaratory judgment action brought by the insurer to determine the scope of the policy). Thus, the present motion to amend should be denied as futile. *See Poling v. K. Hovnanian Enterprises*, 99 F. Supp.2d 502, 516 (D.N.J. 2000) ("Although leave

16

to replead is generally freely given, such an amendment would be futile here because this Court agrees with defendants that plaintiffs have failed to join four necessary parties to this action …").

**B.    The motion should be denied because amendment would cause undue delay.**

The motion to amend should also be denied on the ground that it would cause undue delay. IICNA's motion to amend to add 2000 IICNA Policy issues, if granted, would expand this case to include complex new issues that concern: (i) a different policy period from the one at issue here; (ii) different insurance policy from the one at issue here; and (iii) a different real party in interest – Briarwood – which is not party to this action. Indeed, IICNA and Briarwood are already litigating issues concerning the 2000 IICNA Policy in a separate lawsuit. The Liquidating LLC has no interest in the claims raised in the pleadings in that action, and Briarwood has no interest in the claims raised in the pleadings in the present case. IICNA, by its motions to amend in the First Action and the present action, seeks to change all that. In both cases, IICNA seeks to amend to litigate new claims without joining the parties interested in them.

The new issues IICNA seeks permission to raise in this action would add unnecessary complexity and a new real party in interest, and thereby unnecessarily delay distributions under the Debtor's Plan much to the prejudice to the holders of 1999 Insured Tort Claims. *See* pp. 2-3, 10-11 above. IICNA, on the other hand, will not be prejudiced by denial of its motion since it is already litigating the 2000 IICNA Policy with Briarwood in the First Action. *See* pp. 3-4, 13-14 above.

Moreover, considerations of judicial economy weigh squarely in favor of denying amendment. An action in which this Court has already been asked to interpret the 2000 IICNA

Policy is already pending and unlike the present action, both IICNA and Briarwood, the real party in interest with respect to *that* policy, have appeared.

In sum, the 2000 IICNA Policy issues do not belong in this action. They are related to the First Action between IICNA and Briarwood, and litigating them in this action would be futile. If litigated in the present action, these new issues would unnecessarily increase the cost of administration of the Plan and delay distributions to the 1999 Insured Tort Claimants.

## CONCLUSION

The Court should deny IICNA's motion to amend.

Dated: Wilmington, Delaware
November 21, 2006

BIFFERATO GENTILOTTI BIDEN & BALICK LLC

_____
Ian Connor Bifferato (No. 3273)
Garvan F. McDaniel (No. 4167)
1308 Delaware Avenue
Wilmington, DE 19806
(302) 429-1900
(302) 429-8600

KAYE SCHOLER LLP
Arthur Steinberg
Marc D. Rosenberg
Hilary Lane
Ana M. Alfonso
425 Park Avenue
New York, NY 10022-3598
(212) 836-8000

- and–

TROUTMAN SANDERS LLP
Lee W. Stremba
Clement H. Berne
The Chrysler building
405 Lexington Avenue
New York, NY 10174
(212) 704-6000

Attorneys for IHS Liquidating LLC

19