**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | Case No. 00-389 (MFW) |
| Debtors. | (Jointly Administered) |
| IHS LIQUIDATING LLC, | |
| Plaintiff, | Civil Action No. 05-376 (GMS) |
| v. | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | |
| Defendant | |
| IHS LIQUIDATING LLC, | |
| Third-Party Plaintiff | |
| v. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, GENERAL STAR INDEMNITY COMPANY, and ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | |
| Third-Party Defendants | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT**
**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S**
**MOTION TO AMEND PLEADINGS**

## TABLE OF CONTENTS

**Page No.**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.    Procedural History for the 1999 Coverage Period . . . . . . . . . . . . . . . . . . . . . . . 8

     C.    Relationship of Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     D.    Insurance Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.    1999 Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          2.    2000 Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**THE MOTION TO AMEND SHOULD BE GRANTED** . . . . . . . . . . . . . . . . . . . . . . . . 14

     A.    Amendment Granted Freely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          1.    Undue Delay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          2.    Amendment is Not Futile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          3.    No Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

**TABLE OF AUTHORITIES**

**Page No.**

**CASES**

Foman v. Davis,
371 U.S. 178 (U.S. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 20

Lindquist v. Buckingham Twp.,
106 Fed. Appx. 768 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Koken v. GPC Int'l, Inc.,
443 F. Supp.2d 631 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

Lewis v. Foster,
2006 U.S. Dist. LEXIS 45819 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 17

Hamilton v. Civigenics,
2005 U.S. Dist. LEXIS 2625 (D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES**

28 U.S.C. §157(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Del.Bankr.L.R. 5011-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
MOTION TO AMEND PLEADINGS**

Defendant, Indemnity Insurance Company of North America (hereinafter "IICNA"), by and through its attorneys, respectfully submits this Memorandum of Law in support of its Motion to Amend IICNA's Answer to the Third-Party Complaint to assert Cross-Claims against Third-Party Defendants, National Union Fire Insurance Company of Pittsburgh, PA and General Star Indemnity Company.

**PRELIMINARY STATEMENT**

IICNA seeks to amend its Answer and Affirmative Defenses to IHS Liquidating LLC's Third-Party Complaint to assert Cross-Claims against the Co-Defendants, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") and General Star Indemnity Company (hereinafter "GenStar"). IICNA's Cross-Claims are divided according to the coverage period implicated.

All of the Defendants to IHS Liquidating LLC's Third-Party Complaint issued policies to Integrated Health Services, Inc. for the same, consecutive, two year period. The first coverage period commenced on January 1, 1999 and continued until January 1, 2000. The second coverage period commenced on January 1, 2000 and continued until January 1, 2001.

The rights, duties and obligations of each Defendant to respond to claims alleging residency or occurrence during the January 1, 1999 to January 1, 2000 have been placed at issue by the Plaintiff, IHS Liquidating LLC (hereinafter "Liquidating LLC"). IICNA's Cross-Claims addressing the period January 1, 1999 to January 1, 2000 both mirrors and supplements the allegations first raised in the Liquidating LLC's Third-Party Complaint against National Union

Page 1

and GenStar.

IICNA's Cross-Claim mirrors the Liquidating LLC's Third-Party Complaint against National Union and GenStar in that both the Liquidating LLC and IICNA seek a determination as to whether the underlying coverage limits were properly eroded by Defendant carriers, National Union and GenStar.

In its Third-Party Complaint, the Liquidating LLC seeks a determination as to whether National Union improperly eroded its policy limits by including the payment of claims and defense costs asserted against an entity known as Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester"), within the limits of a National Union policy issued to Integrated Health Services, Inc. (hereinafter "IHS") even though National Union had issued separate, stand-alone coverage to IHS of Lester. IICNA seeks an identical determination in its proposed Cross-Claim.

Similarly, IICNA's Cross-Claim relative to GenStar's coverage mirrors the Liquidating LLC's averments in its Third-Party Complaint. In its Third-Party Complaint, the Liquidating LLC avers that GenStar's coverage is "follow form" excess coverage, following form to the underlying coverage provided to IHS by National Union. The Liquidating LLC further seeks a determination as to whether the underlying coverage to which GenStar follows form expressly excludes coverage for IHS of Lester (the "Lester Exclusion"). To the extent that the Lester Exclusion applies, the Liquidating LLC seeks a determination as to whether GenStar has improperly paid claims against IHS of Lester under its policy. These allegations are identical to the averments made by IICNA in its proposed Cross-Claim.

IICNA supplements the allegations made by the Liquidating LLC by asserting additional

claims for improper exhaustion of both National Union and GenStar's underlying coverage by and through their respective improper payment of administrative fees to an agent retained for purposes of claims adjustment. Further, IICNA's Cross-Claim alleges improper exhaustion due to National Union and GenStar's agent's improper payment of Chapter 400 attorneys' fees in Florida cases, where such an award is not considered "insurable" under applicable state law.

IICNA's Cross-Claim raises nearly identical issues as were already raised in the Liquidating LLC's Third-Party Complaint. As these issues are already the subject of the instant litigation, IICNA should not be precluded from asserting its Cross-Claim.

The coverage provided by National Union and GenStar for the coverage period January 1, 2000 to January 1, 2001 is nearly identical to that provided by these Defendants in the coverage period January 1, 1999 to January 1, 2000. The identical coverage issues are applicable to the coverage period January 1, 2000 to January 1, 2001. The parties are also identical. As such, there are no issues of undue prejudice from the proposed amendment.

Moreover, the addition of these claims will not cause an undue delay. Discovery materials already provided by GenStar and by IHS's insurance brokers, Lockton Insurance Brokers, Inc. (by way of subpoena in an action filed in Florida but stayed in favor of the present action), relative to the placement of coverage for both periods includes documents related to both coverage periods. Any depositions necessitated by the Liquidating LLC's 1999 claims can easily be extended to include material relevant to the January 1, 2000 to January 1, 2001 coverage period without incurring significant additional costs.

With regard to the Liquidating LLC's argument that it has no interest in IICNA's Cross-Claims, IICNA respectfully notes that IHS did not file its voluntary petition for bankruptcy until

Page 3

February 2, 2000, which is after the inception of insurance coverage in 2000. IICNA also respectfully notes that the Liquidating LLC was established pursuant to the *Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code* (hereinafter the "Plan") for the benefit of Class 4 Membership Interests and Class 6 Membership Interest. <u>See</u>, Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code, Definition 1.103, pg. 13. Class 6 Members include holders of Insured Claims other than 1999 Insured Tort Claims. Pursuant to the Plan, holders of Insured Claims have an Allowed General Unsecured Claim to the extent that any applicable insurance policy does not pay *any portion* of the claim. There remain open claims implicating the January 1, 2000 to February 2, 2000 pre-petition period. IICNA's coverage for the period January 1, 2000 to January 1, 2001 is "burning coverage", in that defense costs are included in the limits. IICNA's January 1, 2000 to January 1, 2001 policy limits have been substantially eroded. As such, there remains a significant risk that one or more of these open claims could result in an Allowed General Unsecured Claim adding additional Class 6 Members. Nothing in the identification of Class 6 Members precludes the uninsured portion of professional liability or general liability claims (defined in the Plan as "PLGL Claims") from becoming a Class 6 claim.

Despite the fact that IICNA's Cross-Claim, if successful, would partially replenish the limits of insurance available to pay claims occurring during the coverage period January 1, 2000 to January 1, 2001 and despite the remaining open claims implicating the pre-petition period, the Liquidating LLC claims that it has no "interest whatsoever" in IICNA's Cross-Claim. <u>See</u>, Liquidating LLC's Memorandum of Law in Opposition to Motion of Defendant Indemnity

Page 4

Insurance Company of North America For Leave to Amend Its Answer to the Third-Party

Complaint, Preliminary Statement, pg. 3.

　　　IICNA notes that the Liquidating LLC's arguments misrepresent the terms of the

coverage purchased by IHS. IHS' primary coverage was provided by Reliance National

Indemnity Company. Pursuant to that policy, Reliance National Indemnity Company was

obligated to defend any and all "suits" seeking "damages" for "bodily injury" or "property

damage".[1] It is undisputed that Reliance National Indemnity Company was placed in liquidation

by the Insurance Commissioner of the Commonwealth of Pennsylvania prior to the exhaustion of

its coverage limits. IICNA's policy attaches only upon the exhaustion of all of the applicable

underlying limits by payment.

　　　In its Motion For Partial Summary Judgment, its Rely Brief to IICNA's Brief in

Opposition to Plaintiff's Motion for Partial Summary Judgment on Count I of Their Complaint

and Cross Motion for Summary Judgment, and in its Preliminary Statement to its Brief In

Opposition, the Liquidating LLC has asserted that the resolution of a similar issue arising under

National Union's coverage should be dispositive to IICNA coverage. In so doing, the

Liquidating LLC conveniently ignores the fact that National Union's policy and IICNA's policy

are two completely different contracts issued by two separate and distinct entities with different

language and different terms of coverage. Moreover, the Liquidating LLC also conveniently

ignores the fact that IICNA was not a party to the Liquidating LLC's dispute with National

---

[1] As that term those terms are defined in the Reliance National Indemnity Company policy. Reliance National Indemnity Company's policy, Section I – Coverages, Coverage A. Bodily Injury and Property Damage Liability, 1. Insuring Agreement provides "We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the **_right and duty to defend_** the Insured against any 'suit' seeking those damages."

Page 5

Union.

       The Liquidation LLC's arguments unnecessarily complicate what should be a simple issue. It is undisputed that Reliance National Indemnity Company did not pay its full limits prior to being placed in liquidation. It is clear that the Plan makes no provision for payment of the remaining limits of the Reliance National Indemnity Company policy in any form. Rather, the Plan seeks to fill the gap in insurance limits by pro rata allocation. For the alleged purpose of "facilitating the Plan", the Liquidating LLC's Motion for Summary Judgment seeks this Court's permission to re-write the express terms and conditions of IICNA's policy to comply with the Liquidating LLC's "understanding" of IHS' coverage in order to facilitate its "understanding" of the provisions of the Plan.

       The Liquidating LLC argues that the Plan calls for it to make distributions to 1999 Insured Tort Claimants and that it cannot do so as long as there is a question as to IICNA's coverage. The Liquidating LLC also argues that the allowance of IICNA's Cross-Claim will preclude this Honorable Court from deciding the Cross-Motions For Summary Judgment. Nothing is further from the truth. The Cross-Motions For Summary Judgment are fully briefed. The Liquidating LLC has argued that the Reliance National Indemnity Company issues raised in the Cross Motions for Summary Judgment are ripe for determination. IICNA agrees.

       Nothing in IICNA's Cross-Claims involves the coverage provided by Reliance National Indemnity Company. Nothing in the Liquidating LLC Brief in Opposition supports the Liquidating LLC's contention that discovery on the issues raised by IICNA in its Cross-Claims would impact or delay this Honorable Court's ruling on the Cross-Motions For Partial Summary Judgment. As such, IICNA's Motion to Amend should be granted.

## STATEMENT OF FACTS

A.    **Procedural History**

On February 2, 2000 (the "Filing Date"), Integrated Health Services, Inc. (hereinafter "IHS") and a number of its subsidiaries filed voluntary petitions for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

IHS and its counsel developed a "plan of reorganization" which contemplated the sale of IHS' on-going operations to the highest bidder.  The winning bid was made by Abe Briarwood Corporation, a Nevada corporation with its principle place of business in New York, New York. The finalized Plan, called for the establishment of three new corporations to facilitate the sale of IHS' assets and the protection of the creditors.  IHS Liquidating LLC created pursuant to the Plan and was charged with the resolution of all pre-petition matters, including the resolution of all professional liability and general liability claims ("PLGL Claims").

One provision of the Plan, included in that certain Stock Purchase Agreement of January 28, 2003, made by and between IHS and Abe Briarwood Corporation, (hereinafter "SPA"), provided for the assignment of IICNA's January 1, 2000 through January 1, 2001 policy to Abe Briarwood Corporation (hereinafter "Briarwood").  IICNA filed timely objections which were preserved by the Bankruptcy Court in its approval of the Plan and the SPA.  Subsequently, IICNA filed a Complaint for Declaratory Judgment regarding the assignment and naming as defendants IHS (the Liquidating LLC's predecessor-in-interest) and Briarwood.

While the Liquidating LLC correctly points out that the issue of improper assignment is still pending, it incorrectly reasons that because the issue of improper assignment remains

Page 7

unresolved, IICNA should be precluded from asserting cross-claims against IICNA's Co-Defendants in the instant action. Nothing in IICNA's cross-claims has any direct or indirect impact on its claim that its January 1, 2000 to January 1, 2001 policy was improperly assigned.

**B.**    **Procedural History for the 1999 Coverage Period**

In early 2005, IICNA was informed that the aggregate limits to the policy directly underlying IICNA's Excess Catastrophe Liability policy No. XLX G1952413, effective January 1, 1999 to January 1, 2000 (hereinafter the "1999 IICNA Policy"), were nearing exhaustion. IICNA investigated the status of the underlying aggregate erosion and informed counsel for the Liquidating LLC that IICNA's coverage may not be triggered due to Reliance National Indemnity Company's failure to exhaust the underlying limits by payment. IICNA further informed counsel for the Liquidating LLC that it intended to file a Declaratory Judgment action to have IICNA's rights and obligations under the 1999 IICNA Policy judicially determined. IICNA then sought the Liquidating LLC's permission to add the Reliance National Indemnity Company exhaustion coverage questions to IICNA's already pending lawsuit. The Liquidating LLC objected to both the venue and the additional requests for relief; therefore, it filed the instant Declaratory Judgment action in the Bankruptcy Court. IICNA responded by filing a Motion to Withdraw the Reference and a Motion For Determination Pursuant to 28 U.S.C. §157(d) and Del.Bankr.L.R. 5011-1 for Determination Whether Proceeding Is Core. Separately, IICNA filed an Answer to the Liquidating LLC's Complaint and Counter-Claim.

The Liquidating LLC answered IICNA's Counter-Claim and filed a Third-Party Complaint against IICNA, National Union and GenStar. In joining National Union and GenStar, the Liquidating LLC brought into this litigation all of the parties against which IICNA is seeking

Page 8

to assert cross-claims. IICNA has not sought leave to amend to add additional parties and does not see any need to bring in additional parties.

### C.     Relationship of Defendants

The Defendants against which IICNA seeks leave to assert cross-claims are all insurance carriers which issued policies to Integrated Health Services, Inc. Each Defendant against which IICNA seeks to assert a cross-claim issued a policy which is underlying to IICNA's coverage. The proper exhaustion of the underlying limits is a condition precedent to the attachment of IICNA's coverage. All of the Defendants, National Union, GenStar and IICNA were brought into the instant litigation by the Liquidating LLC due to questions concerning the nature and extent of each carriers coverage.

### D.     Insurance Coverage

#### 1.     *1999 Policies*

At the times relevant hereto, coverage was provided to IHS on a calendar year basis. From January 1, 1999 through January 1, 2000, IHS was insured at the primary level by Reliance National Indemnity Company under a Health Care Medical Professional Liability and General Liability policy No. NGB 0151564-00 (the "Reliance Policy").

The next layer of coverage was provided by National Union under Commercial Umbrella policy No. BE 357-43-43 (hereinafter the "1999 Main Policy") , which provided $25 million per occurrence/aggregate both professional liability and general liability coverage in excess of the underlying Reliance Policy.

GenStar issued Excess Liability policy No. IXG-347714B to IHS with limits of $25 million per occurrence/aggregate in excess of the National Union Commercial Umbrella policy.

Page 9

The GenStar policy is a follow-form excess policy incorporating, generally, all of the terms, conditions, definitions and exclusions contained in the 1999 Main Policy.

IICNA issued the 1999 IICNA Policy providing excess coverage limits to IHS of $50,000,000.00 (five million dollars) per occurrence/aggregate in excess of the underlying. The IICNA policy is also a follow-form policy extent that of the terms, conditions, definitions and exclusions contained in the 1999 Main Policy are not inconsistent with the provisions of the IICNA policy.

On March 26, 2003, IHS filed an adversary proceeding in the Bankruptcy Court styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, Adv. Proc. No. 03-52081, in an effort to enforce coverage under the 1999 Main Policy (the "National Union Adversary"). The Bankruptcy Court entered partial summary judgment in favor of IHS by Order Granting Debtors' Motion for Partial Summary Judgment dated October 23, 2003 (the "Summary Judgment Order"). The Summary Judgment Order held, *inter alia*, that National Union's 1999 Main Policy, No.: BE 357-43-43, was triggered because settlements by IHS in excess of the Reliance Policy limits constituted a "legal obligation to pay", satisfying the conditions precedent to coverage under the 1999 Main Policy[2] regardless of whether the settlement could ever be paid.

The copy of the 1999 Main Policy, No. BE 357-43-43, filed by National Union with the Bankruptcy Court in support of its Motion For Summary Judgment clearly states that it does not

---

[2] Coverage under IICNA's Excess Catastrophe Liability policy differs significantly from that provided by National Union under its Commercial Umbrella policy in that coverage under the IICNA's Excess Catastrophe Liability policy is triggered **only by actual payment** of underlying insurance coverage and not simply upon the insured becoming "legally obligated to pay" a liability. Since the Reliance Policy was not exhausted by actual payment of policy proceeds, the 1999 IICNA Policy is not triggered.

apply to IHS of Lester. The certified copy of Commercial Umbrella policy No. BE 357-43-44, issued to IHS of Lester [3] (hereinafter the "1999 Lester Policy) and produced to IICNA, clearly states that it does not apply to IHS. As such, the policies are mutually exclusive.

In or about May 2005, GenStar tendered the administration and defense of the 1999 PLGL Claims to IICNA. At that time, IICNA commenced a review of the payment records of National Union and GenStar maintained by National Union and GenStar's agent, Hamlin & Burton Liabilities Management, Inc. (hereinafter "Hamlin & Burton"). IICNA's disclosed that payments made by National Union and GenStar in the settlement of lawsuits filed against IHS of Lester were included within the limits of the 1999 Main Policy, and GenStar's policy. Also included within the limits of the 1999 Main Policy were expenses incurred in the defense of both IHS and IHS of Lester facilities. However, no payments of any kind were made under the 1999 IHS Lester Policy.

The payments used to exhaust the underlying coverage must be appropriate under the policies. National Union's payment of settlements of lawsuits filed against IHS of Lester under the 1999 Main Policy despite an express exclusion to the contrary, is not appropriate. Similarly, the payment of expenses incurred in the defense of IHS which National Union allocated toward the exhaustion of the limits, despite an express provision to the contrary, is not appropriate. As such, the 1999 Main Policy has not been exhausted by actual payment of the policy proceeds.

GenStar, like National Union, permitted its coverage limits to be eroded by the payment

---

[3] We note that, neither the Liquidating LLC nor National Union placed in issue the attachment of another National Union Commercial Umbrella policy No. BE 357-43-44, issued to IHS of Lester despite the fact that it, too, was potentially triggered on a "legally obligated to pay" standard. We also note that despite its acknowledged responsibility for 1999 Insured Tort Claims, the Liquidating LLC was unaware of National Union Commercial Umbrella policy No. BE 357-43-44 until such time as IICNA informed the Liquidating LLC of this additional coverage.

of settlements of lawsuits against IHS of Lester. GenStar's Excess Liability policy is a follow-form policy, which incorporates by reference the terms, conditions and exclusion contained in the 1999 Main Policy. Because coverage for IHS of Lester is expressly excluded by the 1999 Main Policy, coverage for IHS of Lester is expressly excluded under GenStar's policy. Payment of such settlements is inappropriate and does not contribute to the erosion of the underlying limits.

The Liquidating LLC argues that the Plan entitles 1999 Insured Tort Claims to a pro rata share in the total insurance proceeds available under the policies for 1999. It does not. Rather, the Plan grants 1999 Insured Tort Claims a right to a pro rata share of the Available 1999 Insurance Proceeds. The Plan defines Available 1999 Insurance Proceeds as the amount of proceeds "*recovered* at any given time under the Debtor's insurance policies". See, Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code, Definitions, 1.19, pg. 4. (Emphasis added). Nothing contained in the Plan precludes a carrier from enforcing all of the terms, conditions, definitions, endorsements and exclusions contained in the policies.

Moreover, the very same facts, policy terms and conditions as set forth above prompted the Liquidating LLC to file its Third-Party Complaint. IICNA's cross-claim recognizes IICNA's interest in the proper erosion of the underlying coverage. As such, IICNA's Motion to Amend should be granted.

2.    ***2000 Policies***

As stated previously, Defendants GenStar and IICNA issued policies of insurance to IHS for the period January 1, 2000 through January 1, 2001. Defendant National Union issued two separate policies during the relevant coverage period. One policy Commercial Umbrella Policy

No. BE 357-43-86, issued for the period January 1, 2000 through January 1, 2001 was issued by National Union to IHS of Lester (hereinafter the "2000 Lester Policy"). A separate policy, Commercial Umbrella Policy No. BE 357-43-84 (hereinafter the "2000 Main Policy"), was issued for the period January 1, 2000 to January 1, 2002 by National Union to IHS. Although the coverage period identified in the Declarations of the 2000 Main Policy indicates coverage was provided to IHS for two successive calendar years, the cross-claims contemplated in IICNA's Answer to the Third-Party Complaint address the coverage provided by National Union during the period January 1, 2000 to January 1, 2001.

The limits of coverage provided by the defendant carriers to IHS for the period January 1, 2000 to January 1, 2001 are identical to the limits provided to IHS for the prior period with one exception. Instead of purchasing a primary policy, IHS elected to self-insure at the primary level. The self-insured limits are not at issue in this litigation.

GenStar issued follow-form Excess Liability Policy IXG-347714C to IHS for the period January 1, 2000 to January 1, 2001 in excess of the 2000 Main Policy. Upon the purported exhaustion of GenStar's coverage for the period January 1, 2000 to January 1, 2001, IICNA was provided with a copy of National Union's 2000 Main Policy by National Union and GenStar's agent, Hamlin & Burton. That policy contains an express exclusion of coverage for IHS of Lester. Because coverage for IHS of Lester is expressly excluded by National Union's 2000 Main Policy, coverage for IHS of Lester is expressly excluded under GenStar's policy.

Subsequent to IICNA's taking on the defense of IHS, IICNA has determined that payment of settlements of lawsuits against IHS of Lester have been used to exhaust the limits of coverage under both National Union 2000 Main Policy and GenStar policy No. IXG-347714C.

Page 13

## ARGUMENT

## THE MOTION TO AMEND SHOULD BE GRANTED

IICNA has properly petitioned this Honorable Court for leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, IICNA is permitted to petition the Court for leave to amend, which leave "shall be given freely when justice so requires". F.R.C.P. 15(a).

### A.    Amendment Granted Freely

It is well established that amendments to pleadings are granted freely. "Rule 15 (a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962).

"In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the Movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id.

Courts have limited a parties ability to amend. The test is whether the proposed amendment is (1) the moving party has demonstrated undue delay, bad faith or dilatory motives,

or (2) the amendment would be futile, or (3) the amendment would prejudice the other party. None of the conditions are met here. _Koken v. GPC Int'l, Inc.,_443 F.Supp.2d 631, 633-634 (D.Del.2006).

      1.    *Undue Delay*

      As set forth more fully above, the cross-claims which IICNA wishes to add to its pleading are nearly identical for both periods of coverage.  In addition, a substantial portion of the issues contained in IICNA's cross-claims are already at issue in this litigation.  IICNA's Amended Complaint asserts cross-claims for improper exhaustion against parties that are already Defendants to the instant action.

      With regard to the coverage period January 1, 1999 to January 1, 2000, the issue of improper exhaustion was already placed before this Honorable Court by and through the Liquidating LLC's Third-Party Complaint.  Defendants National Union and GenStar were brought into this litigation by the Liquidating LLC.  IICNA's amendment would permit it to assert nearly identical claims as the Liquidating LLC on its own behalf.

      As set forth more fully above, the issues related to improper exhaustion are nearly identical in the coverage period January 1, 2000 to January 1, 2001.  Discovery on the issue of improper exhaustion during the entire coverage period at issue, from January 1, 1999 to January 1, 2001, has already commenced by and through records subpoenaed in a, now stayed, Declaratory Judgment action originally filed in Florida.  Although a significant amount of discovery needs to be completed, the discovery related to the coverage period January 1, 2000 to January 1, 2001 can readily be completed in conjunction with discovery related to the coverage period January 1, 1999 to January 1, 2000 without significant additional time.

The Liquidating LLC has argued vigorously that permitting IICNA to amend its pleadings will unnecessarily delay a decision on the Cross-Motions for Summary Judgment. This is simply not true. The determination of the whether the failure to exhaust the limits of the Reliance National Indemnity Company policy by "payment" precludes coverage under IICNA's policy is separate and distinct from any issues of improper exhaustion. Moreover, all discovery on that issue has been completed. The Liquidating LLC has admitted that the limits of the Reliance National Indemnity Company policy have not been paid. No other discovery is necessary.

"The Supreme Court has stated that the Rule 15(a) mandate that leave to amend 'shall be freely given when justice so requires' is to be heeded. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Lindquist v. Buckingham Twp., 106 Fed. Appx. 768, 775 (3d Cir. 2004), citing to Foman, *supra*.

As no undue delay will result from granting IICNA leave to amend, IICNA's Motion to Amend should be granted.

###    2.    *Amendment is Not Futile*

This Honorable Court has held:

> Futility of an amendment occurs when the Complaint, as amended, does not state a claim upon which relief can be granted. If the proposed amendment 'is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend'." Koken v. GPC Int'l, Inc., 443 F. Supp. 2d 631,

634 (D. Del. 2006).  (Internal citations omitted).

"Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the Amended Complaint fails to state a claim upon which relief may be granted.  In other words, 'the Court should apply the same standards as are applied to Rule 12(b)(6) Motions to Dismiss'".  Lewis v. Foster, 2006 U.S. Dist. LEXIS 45819, 30-31 (D. Del. 2006).  (Internal citations omitted).  See also, Hamilton v. Civigenics, 2005 U.S. Dist. LEXIS 2625 (D. Del. 2005).

Applying the above standards to the instant matter, IICNA's amendment could be considered futile only if the Liquidating LLC's Third-Party Complaint failed to state a claim for which relief could be granted.  The Liquidating LLC has not dismissed its Third-Party Complaint, nor has it argued that its own Third-Party Complaint fails to state a claim for which relief could be granted.  Rather, the Liquidating LLC avers that because Briarwood is the only real party in interest and is not party to this litigation, IICNA's amendment is futile.  We disagree.

IICNA's original Complaint, filed in the Bankruptcy Court on August 15, 2003. (Bankruptcy Adversary Docket No. 1), named both Integrated Health Services, Inc. *and* Abe Briarwood Corporation as Defendants.  That action arose out of IHS' improper assignment of IICNA's policy to Briarwood.  IICNA's policy precludes assignment without an express written endorsement to the policy which gives IICNA's consent to the assignment.  Neither IHS nor Briarwood sought IICNA's consent.  IHS, through the SPA, sold off all of the assets and post-petition liabilities of its on-going operations but it could not and did not assign the rights in

IICNA's policy.  Briarwood is simply not an insured under the IICNA policy.  IICNA filed its adversary in order to receive this Honorable Court's approval of its coverage position.  That is the only issue between IICNA and Briarwood which is currently pending before this Honorable Court.

As previously pointed out, IHS' pre-petition liabilities include PLGL Claims wherein a residency or occurrence took place between January 1, 2000 and February 2, 2000.  As such, the Liquidating LLC has a substantial interest in the outcome of IICNA's cross-claims despite its insistence that it does not.  There remain a number of pending lawsuits which allege injury commencing in or before 1999 and continuing up to or beyond the Filing Date.  Moreover, a substantial portion of IICNA's limits for the period January 1, 2000 to January 1, 2001 have already been paid in defense or settlement of actions brought against IHS and any insured IHS subsidiary alleging residence or injury occurring during the January 1, 2000 to January 1, 2001 coverage period under reservation of rights.  IICNA's cross-claims, if successful, will partially replenish its coverage limits and will extend the time period for IICNA's on-going defense of its insureds inuring to the benefit of both the Liquidating LLC and Briarwood.

The allegations asserted in the Liquidating LLC's Third-Party Complaint and IICNA's proposed cross-claims simply do not involve the allegations of improper assignment, or otherwise seek to limit any rights that Briarwood may have under IICNA's policy.  As such, Briarwood is not a necessary party to the cross-claim and IICNA's amendment is not "futile".  Moreover, IICNA's cross-claims do assert claims for relief – in the form of a declaration of rights, duties and obligations – which can be granted.  Paragraph 45 of the Liquidating LLC's Third-Party Complaint wherein the Liquidating LLC states:

Page 18

An actual controversy exists between IICNA, on the one hand, and
National Union and GenStar, on the other, as to whether National
Union and GenStar have exhausted coverage under their Policies
and whether IICNA's coverage under its Policy has been triggered.

IICNA's cross-claims are not, therefore, futile. IICNA's Motion to Amend should be
granted.

### 3.    *No Prejudice*

In order to deny leave based on prejudice to the Plaintiff, the prejudice must be

"substantial or undue," and "there must be some showing that Plaintiff's ability to present its

case would be seriously impaired were amendment allowed. <u>Koken</u>, 443 F. Supp. 2d 631, 634

(D. Del. 2006).

As stated previously, all of the Defendants named in IICNA's cross-claims are already

defendants to the Liquidating LLC's Third-Party Complaint. IICNA has not sought to make part

of this action parties that are not already part of the instant action. There is, therefore, no

prejudice to National Union and GenStar. Moreover, to the extent that IICNA is successful, the

underlying policy limits available to defend and indemnify PLGL Claims will be partially

replenished. Rather than prejudice the Liquidating LLC, the replenishing of the underlying limits

benefits the Liquidating LLC.

In addition, discovery has only just begun. The Liquidating LLC has averred, in

paragraph 49 of its Third-Party Complaint that it is entitled to a declaration as to whether

National Union and GenStar made improper charges against their respective limits. Permitting

IICNA's amendment will have no impact whatsoever of the Liquidating LLC's ability to take

discovery and to present its case.

## CONCLUSION

Plaintiff, IHS Liquidating LLC, has misconstrued the *Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code*, the terms of the insurance policies issued to Integrated Health Services, Inc., and the nature and scope of the pleadings filed by defendant Indemnity Insurance Company of North America in arguing against Indemnity Insurance Company of North America's Motion for Leave to Amend.  Plaintiff's arguments obscure the issue.

Pursuant to Foman, *supra*, leave to amend should be granted freely.  As set forth above, because granting Indemnity Insurance Company of North America permission to amend its pleadings will not result in undue delay, or raise a claim for which relief cannot be granted (futile) and will not result in prejudice to any other party, defendant and third-party defendant, Indemnity Insurance Company of North America's Motion for Leave to Amend should be granted.

Page 20

**WETZEL & ASSOCIATES, P.C.**

/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III
ID No. 985
The Carriage House, Suite 201
1100 North Grant Avenue
Wilmington, DE 19805
(302) 652-1200
*Attorney for Indemnity Insurance*
*Company of North America*

## CERTIFICATION OF SERVICE

I certify that on this 6th day of December, 2006, I electronically filed the within Reply Brief in Support of Defendant Indemnity Insurance Company of North American's Motion to Amend Pleadings with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Garven F. McDaniel, Esquire
Bifferato Gentilotti Biden & Balick
P.O. Box 2165
Wilmington, DE 19899

James F. Harker, Esquire
Cohen, Seglias, Pallas, Greenhill & Furman, P.C.
Nemours Building, Suite 1130
1007 Orange Street
Wilmington, DE 19801

Christopher P. Simon, Esquire
Cross & Simon, LLC
913 N. Market Street, 11th Floor
Wilmington, DE 19801

WETZEL & ASSOCIATES, P.A.

/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III
ID No. 985
The Carriage House, Suite 201
1100 North Grant Avenue
Wilmington, DE 19805
(302) 652-1200
*Attorney for Defendant ACE Indemnity*
*Insurance Company f/k/a Indemnity*
*Insurance Company of North America*