# EXHIBIT "G"

# 2000 GenStar Policy to IHS

Provided to us by
Hamlin & Burton



CERTIFICATE OF EXCESS INSURANCE
ISSUED BY
GENERAL STAR INDEMNITY COMPANY
Stamford, Connecticut 06904

DECLARATIONS

POLICY NUMBER:

ITEM 1 - NAME AND ADDRESS OF INSURED:

ITEM 2 - UNDERLYING INSURANCE:

ITEM 3 - LIMIT(S) OF COVERAGE HEREUNDER:

ITEM 4 - PREMIUM: $

ITEM 5 - PERIOD OF COVERAGE HEREUNDER:   to
Both days at 12:01 AM local standard time.

IN WITNESS WHEREOF the GENERAL STAR INDEMNITY COMPANY has caused this Certificate to be executed at   this

GENERAL STAR INDEMNITY COMPANY

GSI-02-1D (1/87)

_____
Authorized Signature

# GENERAL STAR INDEMNITY COMPANY

Excess Liability Policy
Policy Provisions — Pa



In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof ai subject to all the terms of this Policy, General Star Indemnity Company (herein called the Company) agrees with the Insure named in the Declarations as follows:

## INSURING AGREEMENTS

### I. COVERAGE

The Company shall indemnify the Insured for **ultimate net loss** in excess of the **underlying insurance** stated in Item 2 c the Declarations, but not in excess of the Company's limits of liability stated in Item 3 of the Declarations.

### II. APPLICATION OF UNDERLYING INSURANCE

Except for the limits of liability and any provisions in the underlying insurance policy which are inconsistent with this Policy including any endorsements attached hereto, the terms, conditions, agreements, definitions, exclusions and limitations o the **controlling underlying insurance policy** are incorporated by reference as a part of this Policy.

### III. INVESTIGATION, DEFENSE AND SETTLEMENT

The Company shall not be obligated to investigate, defend or settle any claim or suit against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or its underlying insurers, or both, in the investigation, defense or settlement of any claim or suit which, in the opinion of the Company, involves or appears reasonably likely to involve the Company. If the Company avails itself of such right and opportunity, the Insured, its insurers and the Company shall cooperate in such matters so as to effect a final determination thereof. The Insured shall not make or agree to any settlement for an amount in excess of **underlying insurance** without the approval of the Company.

Subject to the above provision, **costs** incurred by the Insured shall be borne as follows:

(a) all **costs** incurred by the Insured without the written consent of the Company shall be borne by the Insured;

(b) if a claim or suit is settled for not more than the limits of **underlying insurance**, no **costs** shall be payable by the Company;

(c) if the sum for which a claim or suit is settled exceeds the limits of **underlying insurance**, then the Company, if it approves such settlement or consents to the continuation of the proceedings, shall contribute to the costs incurred by the Insured in the proportion which the amount of **ultimate net loss** as finally determined to be payable by the Company bears to the total amount paid on such claim or suit by all interests;

(d) if the Insured elects not to appeal a judgment in excess of the limits of **underlying insurance**, the Company may elect to conduct such appeal at its cost and expense, and shall be liable for the taxable **costs** and disbursements and interest incidental thereto, but in no event shall the total liability of the Company exceed the limits of liability as stated in this Policy, plus the cost and expense of such appeal.

### IV. LIMITS OF LIABILITY

Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain injury or damage or (3) claims made or suits brought, the Company's liability is limited as follows:

(a) The limits of the Company's liability under this Policy apply only after the underlying insurers have paid or have been held legally liable to pay the full amount of their respective limits of liability as

GSI-02-1J (11/88)

stated in Item 2 of the Declarations; provided that:

(i) unless aggregate limits are specifically stated in both Items 2 and 3 of the Declarations of this Policy, the insurance afforded by this Policy applies with respect to each **occurrence** only for limits of liability in excess of the amounts afforded for each **occurrence** in the **underlying insurance** and does not apply over any reduced amount of **underlying insurance** in the event of the exhaustion or reduction of aggregate limits of liability, if any, in the **underlying insurance**; or

(ii) if aggregate limits of liability are specifically stated in both Items 2 and 3 of the Declarations, the insurance afforded by this Policy applies in excess of reduced **underlying insurance**, provided such reduction in the **underlying insurance** is solely the result the payment of claims because of occ rences taking place during the period of Policy.

(b) If the limits of liability stated in Item 3 of the Dec rations are on a Contributing Excess Basis, t limits of the Company's liability shall be the p rata percentage so stated of all **ultimate net lo** to which this Policy applies which is in excess **underlying insurance**, up to the limits so state

(c) If the limits of liability stated in Item 3 of the Decl rations are on an Excess of Loss Basis, the limi of the Company's liability shall be the amount of **ultimate net loss** to which this Policy applie which is in excess of **underlying insurance**, up the limits so stated.

## NUCLEAR ENERGY LIABILITY EXCLUSION
## (BROAD FORM)

It is agreed that the Policy shall not apply:

I. Under any Liability Coverage, to **bodily injury** or **property damage**

(a) with respect to which an **Insured** under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability, or

(b) resulting from the **hazardous properties** of **nuclear material** and with respect to which

(1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

(2) the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or an agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person o organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

III. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of nuclear material, if

(a) the **nuclear material**

(1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **Insured** or

(2) has been discharged or dispersed therefrom;

(b) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

(c) the **bodily injury** or **property damage** arises out of the furnishing by an **Insured** of service, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to **property damage** at such **nuclear facility** and any property thereat.

IV. As used herein:

**hazardous properties** include radioactive, toxic or explosive properties;

**nuclear material** means **source material**, **special nuclear material** or **by-product material**;

**source material, special nuclear material, and by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**waste** means any waste material (1) containing **by-product material** (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under the first two paragraphs of the definition of **nuclear facility**.

**nuclear facility** means

(a) any **nuclear reactor**,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**.

(c) any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**property damage** includes all forms of radioactive contamination of property.

## DEFINITIONS

When used in this Policy, including endorsements forming a part hereof:

1. **Controlling Underlying Insurance Policy**

   The term "Controlling Underlying Insurance Policy" means the insurance policy designated as such in Item 2 of the Declarations.

2. **Costs**

   The term "Costs" means

   (a) interest on judgments,

   (b) investigation, adjustment and legal expenses including taxed court costs and premiums on bonds,

   (c) costs incurred by the Insured with the consent of the Company but excluding

   (i) all expenses for salaried employees and counsel on general retainer.

   (ii) all office expenses of the Insured, and

   (iii) regular fees paid to counsel on general retainer.

3. **First Named Insured**

   The term "First Named Insured" means the person or organization first named in Item 1 of the Declarations of this Policy, which person or organization is authorized to act as sole agent on behalf of all Insureds with respect to giving or receiving notice of cancellation, receiving unearned premium, and agreeing to any changes in this Policy.

4. **Occurrence**

   The term "Occurrence" means an accident or occurrence as defined in and covered by the **controlling underlying insurance policy**.

5. **Ultimate Net Loss**

   The term "Ultimate Net Loss" means the total of all sums which the Insured, or any organization as its insurer, or both, shall become legally obligated to pay, whether by reason of adjudication or settlement, because of an occurrence covered under the terms of the **controlling underlying insurance policy** and to which this Policy applies; **ultimate net loss shall include costs**, but shall not include recoveries, salvages or other insurance except underlying insurance or insurance written specifically to apply in excess of this policy, whether collectible or not.

6. **Underlying Insurance**

   The term "Underlying Insurance" means the primary or excess insurance policies contributing to

the limit stated in Item 2 of the Declarations, including any deductible amount, insured's participation or self insured retention beneath any such policy, and includes any renewals or replacements thereof. The limits of such policies shall be deemed to be applicable regardless of

(1) any defense which the underlying insu assert,

(2) the Insured's failure to comply with any tion of any such policy or

(3) the insolvency of the underlying insure.

## CONDITIONS

(A) **Premium And Audit**

If the premium is stated in Item 4 as a flat charge, such premium is applicable to the stated policy period. If the premium is stated in Item 4 as other than a flat charge, such premium is an advance premium only and earned premium shall be computed at the end of the period during which the Policy is in force at the rate applicable thereto, subject to the Minimum Premium stated in Item 4.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.

(B) **Insured's Duties In The Event Of Occurrence, Claim or Suit**

(1) In the event of an **occurrence** covered hereunder, involving injuries or damages which, without regard to legal liability, appears likely to involve this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

(2) If a claim is made or suit is brought against the Insured because of an **occurrence** which, without regard to legal liability, appears likely to involve this Policy, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(3) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of damages with respect to which insurance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own **costs**, voluntarily make any payment, assume any obligation or incur any expense; however, in the event that the amount of **ultimate net loss** becomes certain either through trial court judgment or agreement among the Insured, the claimant and the pany, then, the Insured may pay the amo **ultimate net loss** to the claimant to effect ment and upon submission of due proof th the Company shall indemnify the Insured f part of such payment which is in excess o **underlying insurance**, or the Company will, request of the Insured, make such payment claimant on behalf of the Insured.

(C) **Other Insurance**

If other valid and collectible insurance with any insurer is available to the Insured covering a loss covered by this Policy, other than insurance that excess of the insurance afforded by this Policy insurance afforded by this Policy shall be in exce: and shall not contribute with such other insura Nothing herein shall be construed to make this P. subject to the terms, conditions, and limitations of o insurance, reinsurance or indemnity.

(D) **Subrogation**

The Company shall be subrogated to the extent of payment hereunder to all the Insured's rights of rec ery therefor, and the Insured shall do nothing after to prejudice such rights and shall do everyth necessary to secure such rights. Any amount so covered shall be apportioned as follows:

Any interest, including the Insured's having paid amount in excess of the underlying limit plus limit of liability hereunder shall be reimbursed f to the extent of actual payment. The Compa shall be reimbursed next to the extent of its act payment hereunder. If any balance then rema unpaid, it shall be applied to reimburse the Insur or any underlying insurer, as their interest m appear. The expenses of all such recovery p ceedings shall be apportioned in the ratio of r spective recoveries. If there is no recovery proceedings conducted solely by the Company, shall bear the expenses thereof.

(E) **Maintenance of Underlying Insurances**

It is a condition of this Policy that the policy or policie referred to in Item 2 of the Declarations, including re newal or replacements thereof not more restrictiv shall be maintained, without alteration of terms or con ditions, in full effect during the currency of this Polic except for any reduction or exhaustion of the aggre gate limit contained therein solely by payment c claims that arise out of **occurrences** which take plac

during the period of this Policy. Failure of the Insured to comply with the foregoing shall not invalidate this Policy, but in the event of such failure the Company shall be liable hereunder only to the extent that it would have been liable had the Insured complied therewith.

In the event there is no recovery available to the Insured as a result of insolvency of the underlying insurer or by reason of the Insured having breached the contract of **underlying insurance**, the coverage hereunder shall apply in excess of the applicable limit of liability specified in Item 2 of the Declarations.

The **First Named Insured** shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any **underlying insurance**, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(F) **Cancellation**

This Policy may be cancelled by the **First Named Insured** by mailing or delivering to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing or delivering to the **First Named Insured** at the address shown in this Policy written notice stating when, not less than thirty (30) days thereafter or, if the Insured has failed to pay the premium when due, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period.

If cancellation is at the request of the **First Named Insured**, only 90% of the unearned paid premium shall be returned. If the Company cancels, earned premium shall be computed pro-rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

---

IN WITNESS WHEREOF the GENERAL STAR INDEMNITY COMPANY has caused this Policy to be signed by its President and Secretary at Stamford, Connecticut, but the same shall not be binding upon the Company unless countersigned on the Declarations Page by an authorized representative of the Company.

*[signature]*
Secretary

**GENERAL STAR INDEMNITY COMPANY**

*[signature]*
President

```
                CERTIFICATE OF EXCESS INSURANCE      IXG-347714C
                           ISSUED BY
                 GENERAL STAR INDEMNITY COMPANY
                    Stamford, Connecticut 06904

                           DECLARATIONS

                 POLICY NUMBER:  IXG-347714C
```

ITEM 1 - NAME AND ADDRESS OF INSURED:

    INTEGRATED HEALTH SERVICES, INC.
    910 RIDGEBROOK ROAD
    SPARKS, MD 21152

ITEM 2 - UNDERLYING INSURANCE:

  A)  INSURER  -  AIG INSURANCE COMPANY

      COVERAGE -  COMMERCIAL UMBRELLA LIABILITY

      LIMITS  -  $25,000,000 each occurrence bodily injury and/or property damage liability combined/$25,000,000 aggregate (where applicable) in excess of primary insurance or self-insured retention

ITEM 3 - LIMIT(S) OF COVERAGE HEREUNDER:

$25,000,000 each occurrence Bodily Injury and/or Property Damage liability combined/$25,000,000 aggregate (where applicable) in excess of the limits stated in Item 2 above

ITEM 4 - PREMIUM:  $150,000.00  ANNUAL

ITEM 5 - PERIOD OF COVERAGE HEREUNDER:  01/01/00 to 01/01/01
Both days at 12:01 AM local standard time.

IN WITNESS WHEREOF the GENERAL STAR INDEMNITY COMPANY has caused this Certificate to be executed at New York, New York this 11 day of January, 2000

                          GENERAL STAR INDEMNITY COMPANY

GSI-02-1D (1/87)          *OK CFI FOR EPS 1/13/00*
BRANCH OFFICE                _____
                          Authorized Signature

POLICY NUMBER: IXG-347714C

## TOTAL POLLUTION EXCLUSION

This policy does not apply to any damages for which the Insured is legally liable, or costs or expenses arising out of, resulting from, caused or contributed to by, or is aggravated by:

I. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

II. Any loss, cost or expense arising out of any:

   (a) Request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way to respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including, but not limited to, oil, petroleum substances or derivatives (including any oil refuse or oil mixed with wastes), smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste materials. Waste materials includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 001                    GENERAL STAR INDEMNITY COMPANY

E189  (06/98)                              _____
BRANCH OFFICE                              Authorized Signature

POLICY NUMBER:  IXG-347714C

## ASBESTOS EXCLUSION

This policy does not apply to:

A) Bodily injury, property damage, personal injury or advertising injury arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos; or

B) The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes:

1) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

2) Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

NAME OF INSURED:  INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement:  01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 002                GENERAL STAR INDEMNITY COMPANY

CE500 (1/87)
BRANCH OFFICE                          _____
                                       Authorized Signature

POLICY NUMBER: IXG-347714C

CARE, CUSTODY OR CONTROL EXCLUSION ENDORSEMENT

This policy does not apply to property damage:

(a) to property occupied by or leased to the Insured; or

(b) except with respect to liability under sidetrack agreements, property used by the Insured; or

(c) except with respect to liability under sidetrack agreements, or the use of elevators or escalators at premises owned by, rented to or controlled by the Insured, property in the care, custody or control of the Insured or property over which the Insured for any purpose is exercising physical control.

---

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 003           GENERAL STAR INDEMNITY COMPANY

CE013 (1/87)
BRANCH OFFICE                    _____
                                 Authorized Signature

POLICY NUMBER: IXG-347714C

CROSS SUITS EXCLUSION ENDORSEMENT

This policy does not apply to personal injury, bodily injury, property damage or advertising offense caused by an Insured covered by this policy to any other Insured under this policy.

---

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 004               GENERAL STAR INDEMNITY COMPANY

CE018 (10/93)                        _____
BRANCH OFFICE                        Authorized Signature

POLICY NUMBER: IXG-347714C

EMPLOYMENT - RELATED PRACTICES EXCLUSION ENDORSEMENT

This policy does not apply to ultimate net loss or any other damages for which the insured is legally liable, or costs or expenses arising out of, resulting from, caused or contributed to by any:

(a) Refusal to employ;
(b) Termination of employment;
(c) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
(d) Consequential damages, costs or expenses as a result of (a) through (c) above.

This exclusion applies:

(1) Whether the Insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages, costs or expenses with or repay someone else who must pay damages, costs or expenses because of (a) through (d) above.

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 005                GENERAL STAR INDEMNITY COMPANY

E504  (03/98)
BRANCH OFFICE                          _____
                                       Authorized Signature

POLICY NUMBER: IXG-347714C

LEAD EXCLUSION ENDORSEMENT

This policy does not apply to:

(1) Bodily injury, property damage, personal injury or advertising injury arising out of, resulting from, caused by or contributed to by the toxic or pathological properties of lead, lead compounds or lead contained in any materials;

(2) Any cost or expense to abate, mitigate, remove or dispose of lead, lead compounds or materials containing lead;

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts (1) or (2) above; or

(4) Any obligation to share damages with or repay someone else who must pay damages in connection with parts (1), (2) or (3) above.

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 006           GENERAL STAR INDEMNITY COMPANY

E274  (4/92)
BRANCH OFFICE                    _____
                                 Authorized Signature

POLICY NUMBER: IXG-347714C

YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS EXCLUSION
ENDORSEMENT

This policy does not apply to any damages for which the Insured is legally liable, or costs or expenses, arising out of, resulting from, caused by or contributed to by:

a. Any actual or alleged failure, malfunction or inadequacy of:

   1. Any of the following, whether belonging to any Insured or to others:
      (a) computer hardware, including microprocessors;
      (b) computer application software;
      (c) computer operating systems and related software;
      (d) computer networks;
      (e) microprocessors (computer chips) not part of any computer system; or
      (f) any other computerized or electronic equipment or components; or

   2. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph a. 1. of this endorsement

   due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by the Insured or for the Insured to determine, rectify, or test for, any potential or actual problems described in Paragraph a. of this endorsement.

NAME OF INSURED:   INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement:  01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 007                GENERAL STAR INDEMNITY COMPANY

E190   (08/98)
BRANCH OFFICE                         _____
                                      Authorized Signature

POLICY NUMBER: IXG-347714C

SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefor the Company hereby designates the Commissioner, Superintendent or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Corporate Secretary of General Star Indemnity Company, General Star Indemnity Company, Financial Centre, P.O. Box 10354, Stamford, Connecticut 06904-2354, as the entity to whom said officer is authorized to mail such process or a true copy thereof.

---

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 008             GENERAL STAR INDEMNITY COMPANY

CE140 (1/87)
BRANCH OFFICE                      _____
                                   Authorized Signature

POLICY NUMBER: IXG-347714C

### GENERAL CHANGE ENDORSEMENT

In consideration of the premium charged, it is agreed that coverages afforded by this policy are not applicable to the following:

Integrated Health Service Hospital at Houston
6160 South Loop East
Houston, TX 77087

---

NAME OF INSURED: INTEGRATED HEALTH SERVICES, INC.

Effective date of this Endorsement: 01/01/00

Nothing herein contained shall vary, alter or extend any agreement, provision, general condition or declaration of the Policy other than as above stated.

In Witness Whereof, the GENERAL STAR INDEMNITY COMPANY has caused this Endorsement to be issued, but the same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

Countersigned at New York, New York this 11 day of January, 2000

ENDORSEMENT NUMBER 009                GENERAL STAR INDEMNITY COMPANY

FF001
BRANCH OFFICE                          _____
                                       Authorized Signature

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,<br><br>        Defendant | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC,<br><br>        Third-Party Plaintiff<br><br>        v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, GENERAL STAR INDEMNITY COMPANY, and ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA<br><br>        Third-Party Defendants | |

## **ORDER**

**AND NOW,** this _____ day of _____, 2006, upon consideration of Defendant Indemnity Insurance Company of North America's Motion to Amend its Answer to the Third-Party Complaint and any opposition thereto,

**IT IS HEREBY ORDERED** that Defendant Indemnity Insurance Company of North America's Motion to Amend is GRANTED. Defendant Indemnity Insurance Company of North America shall file its amended pleading in the form attached to its motion within ten days from the date of this Order.

_____
The Honorable Gregory M. Sleet