**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | | Case No. 00-389 (MFW) |
| Debtors. | | (Jointly Administered) |
| IHS LIQUIDATING LLC, | | |
| Plaintiff, | | Civil Action No. 05-376 (GMS) |
| v. | | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | | |
| Defendant | | |
| IHS LIQUIDATING LLC, | | |
| Third-Party Plaintiff | | |
| v. | | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, GENERAL STAR INDEMNITY COMPANY, and ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | | |
| Third-Party Defendants | | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | | |
| Third-Party Defendant and Fourth-Party Plaintiff | | |
| v. | | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and GENERAL STAR INDEMNITY COMPANY, | | |

**OPENING BRIEF  IN SUPPORT OF DEFENDANT
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page No.**

**Table of Authorities** ...................................................................................................................... ii

**PRELIMINARY STATEMENT** ..................................................................................................... 1

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

      A.     Procedural History ................................................................................................ 4

      B.     Procedural History for the 1999 Coverage Period ............................................ 4

      C.     Relationship of Defendants .................................................................................. 6

**SUMMARY OF ARGUMENT**

      A.     Motion for Summary Judgment should be granted because the "Non-Pyramiding of Limits" endorsement does not apply ............................................................................. 7

      B.     National Union's 2000 Lester Policy limits have not been paid and IICNA is entitled to reimbursement for amounts paid on behalf of IHS of Lester ...................................... 7

**ARGUMENT**

      A.     Undisputed Facts ................................................................................................... 8

            1.     1999 Policies ............................................................................................. 8

            2.     2000 Policies ........................................................................................... 11

      B.     Underwriting ....................................................................................................... 12

      C.     Legal Argument ................................................................................................. 14

            1.     Standard For Review ............................................................................. 14

            2.     "Non-Pyramiding of Limits" endorsement does not apply .................................. 15

            3.     IICNA is entitled to the limits of the 2000 Lester Policy .................................... 19

      **CONCLUSION** .................................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

### CASES

Celotex Corp. v. Catrett,
     477 U.S. 317 (U.S. 1986).................................................................................................. 14

Anderson v. Liberty Lobby, Inc.,
     477 U.S. 242 (U.S. 1986).................................................................................................. 15

Bensalem Twp. v. Coregis Indem. Co.,
     1995 U.S. Dist. Lexis 6329 (E. D. Pa. 1995).................................................................... 15

Frain v. Keystone Ins. Co.,
     433 Pa. Super. 462 (Pa. Super. 1994) .............................................................................. 15

American Cas. Co. v. Ricas,
     179 Md. 627 (Ct. App. Md. 1941) .................................................................................... 15

Bensalem Twp. v. International Surplus Lines Ins. Co.,
     38 F.3d 1303 (3d. Cir. 1993) ...................................................................................... 17, 21

Tonkovic v. State Farm Mut. Auto. Ins. Co.,
     513 Pa. 445 (Pa. 1987)...................................................................................................... 17

Chesapeake Physicians Professional Ass'n v. Home Ins. Co.,
     92 Md. 385 (Md. Ct. Spec. App. 1992) ............................................................... 18, 19, 21

Stancil v. Erie Ins. Co.,
     128 Md. App. 686 (Md. App. 1999)..................................................................... 18, 19, 20

### STATUTES

Fed. R. Civ. P. 56(c) ................................................................................................................... 14

**OPENING BRIEF IN SUPPORT OF DEFENDANT
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, Third-Party Defendant and Fourth-Party Plaintiff, Indemnity Insurance Company of North America (hereinafter "IICNA"), by and through its attorneys, respectfully submits this Opening Brief in support of its Motion For Summary Judgment.

## **PRELIMINARY STATEMENT**

This declaratory judgment action arose over questions related to the rights, duties and obligations owed under various policies of insurance issued by certain parties hereto to their mutual insured, Integrated Health Services, Inc. (hereinafter "IHS"). The policies were issued for two consecutive coverage periods, the first commencing on January 1, 1999 and ending on January 1, 2000 and the second commencing on January 1, 2000 and ending on January 1, 2001. Through discovery, it has become clear that the limits of separate policies of insurance issued to an IHS subsidiary, Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester") have not been paid by Third and Fourth-Party Defendant, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") despite the fact that claims falling within the coverage afforded to IHS of Lester by National Union had been made. IICNA seeks payment of policy limits improperly withheld by National Union.

Both Defendant, Third-Party Defendant and Fourth-Party Plaintiff, IICNA, and Third-Party Defendant and Fourth-Party Defendant, National Union, issued insurance policies IHS for a period of two consecutive calendar years. The first coverage period commenced on January 1, 1999 and continued until January 1, 2000. The second coverage period commenced on January 1, 2000 and continued until January 1, 2001.

The rights, duties and obligations of both IICNA and National Union to respond to claims alleging residency or occurrence during the January 1, 1999 to January 1, 2000 were, initially, placed at issue by the Plaintiff, IHS Liquidating LLC (hereinafter "Liquidating LLC"). On February 20, 2007, this Honorable Court granted IICNA's Motion to Amend, which enable IICNA to assert cross-claims

Page 1

addressing the period January 1, 1999 to January 1, 2000 directly against National Union.  As the issues arising during the January 1, 1999 to January 1, 2000 coverage period were substantially similar to the same issues arising during the January 1, 2000 to January 1, 2001 coverage period, this Honorable Court further permitted IICNA to assert the same cross-claims against National Union for the January 1, 2000 to January 1, 2001.  IICNA's cross-claims both mirrored and supplemented the allegations first raised in the Liquidating LLC's Third-Party Complaint against National Union.[1]

Since this Honorable Court granted IICNA's Motion to Amend, the parties have engaged in extensive discovery.  The information exchanged has led to the resolution of a number of the IICNA's claims.  Few issues remain and the parties have engaged in numerous discussions related to the settlement of those issues.  National Union has indicated that, with respect to its coverage for the period January 1, 2000 to January 1, 2001, its coverage limits are exhausted.  IICNA respectfully disagrees.  It is IICNA's contention that National Union's policies for the period January 1, 2000 to January 1, 2001 improperly contain a "Non-Pyramiding of Limits" endorsement, which was not bargained for or agreed between National Union and IHS or IHS of Lester.  As such, the inclusion of the "Non-Pyramiding of Limits" endorsement by National Union constitutes a unilateral change in the coverage which is not in keeping with the binder issued by National Union.

Documents addressing the coverage provided by National Union which have come to light throughout the course of discovery detail the numerous errors made in the issuance of National Union's coverage.  Errors as basic as whether the coverage applies on an occurrence or claims-made basis abound.  According to National Union's own documents, obtained by IICNA through discovery, the coverage provided by National Union for the period January 1, 2000 to January 1, 2001 is supposed to be identical to that provided by these National Union in the coverage period January 1, 1999 to January 1, 2000.  National Union's own binder for this coverage period expressly states that the "forms, terms and

---

[1] The Liquidating LLC's Third-Party Complaint also raised certain allegations against General Star Indemnity Company (hereinafter "GenStar"), as did IICNA's Amended Answer and Affirmative Defenses to the Third-Party Complaint.  IICNA and GenStar have resolved their differences, therefore, only the allegations against National Union are included herein.

conditions" of coverage are to be as expiring.  At some point, after the issuance of the binder National Union unilaterally inserted a "Non-Pyramiding of Limits" endorsement into its coverage.  National Union's intention to do so was never communicated to IHS or IHS of Lester and the "Non-Pyramiding of Limits" endorsement was not disclosed on the binder of coverage.  See Motion for Summary Judgment, Exhibit "M".

In settling claims and in providing for the defense of IHS and IHS of Lester, National Union has elected to enforce the "Non-Pyramiding of Limits" endorsement, thereby depriving its insured of an additional $2,000,000.00 in coverage despite the fact that its insured paid a premium for this coverage.

Because National Union has elected to give effect to an endorsement that was not bargained for between IHS and National Union, coverage available to IHS of Lester "exhausted" prematurely.  Excess carriers, including IICNA, have taken on the defense of IHS of Lester despite the fact that the limits of coverage available to IHS of Lester have not been exhausted.  Moreover, the excess carriers, including IICNA, have entered into settlements on behalf of IHS of Lester despite the fact that the limits of coverage available to IHS of Lester have not been exhausted.  IICNA continues to defend lawsuits filed against IHS of Lester under reservation of rights even though National Union's coverage limits remain available and have not been eroded.

For the reasons that follow, IICNA's Motion for Summary Judgment should be granted.

## STATEMENT OF THE NATURE
## AND STAGE OF THE PROCEEDING

**A.      Procedural History**

On February 2, 2000 (the "Filing Date"), Integrated Health Services, Inc. (hereinafter "IHS") and

a number of its subsidiaries filed voluntary petitions for bankruptcy relief under Chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court").

Under the auspices of the Bankruptcy Court, IHS and its counsel developed a "plan of

reorganization" which contemplated the sale of IHS' on-going operations to the highest bidder.  The

winning bid was made by Abe Briarwood Corporation, a Nevada corporation with its principle place of

business in New York, New York.  The finalized Plan, called for the establishment of three new

corporations to facilitate the sale of IHS' assets and the protection of the creditors.  IHS Liquidating LLC

was charged with the resolution of all pre-petition matters, including the resolution of all professional

liability and general liability claims ("PLGL Claims").

Upon being advised of the terms the Plan and being provided with a copy of that certain Stock

Purchase Agreement of January 28, 2003, made by and between IHS and ABE Briarwood Corporation,

(hereinafter "SPA"), IICNA filed timely objections.  In one such objection, IICNA objected to the

assignment of its January 1, 2000 through January 1, 2001 policy to ABE Briarwood Corporation

(hereinafter "Briarwood") without IICNA's prior written endorsement as required by the express written

terms of its policy.  The Bankruptcy Court approved the Plan and the SPA, however, in so doing, it

preserved IICNA's objections.  IICNA then filed a Complaint for Declaratory Judgment regarding the

assignment.  Named as Defendants to IICNA's Complaint for Declaratory Judgment are IHS (the

Liquidating LLC's predecessor-in-interest) and Briarwood.

**B.      Procedural History for the 1999 Coverage Period**

In early 2005, IICNA was informed that the aggregate limits to the policy directly underlying

IICNA's Excess Catastrophe Liability policy No. XLX G1952413, effective January 1, 1999 to January 1, 2000 (hereinafter the "1999 IICNA Policy"), were nearing exhaustion.  IICNA investigated the status of the underlying aggregate erosion and informed counsel for the Liquidating LLC that IICNA's coverage may not be triggered due to Reliance National Indemnity Company's failure to exhaust the underlying limits by payment.  IICNA further informed counsel for the Liquidating LLC that it intended to file a Declaratory Judgment action to have IICNA's rights and obligations under the 1999 IICNA Policy judicially determined.  IICNA then sought the Liquidating LLC's permission to add the Reliance National Indemnity Company exhaustion coverage questions to IICNA's already pending lawsuit.  The Liquidating LLC objected to both the venue and the additional requests for relief; therefore, it filed the instant Declaratory Judgment action in the Bankruptcy Court.  IICNA responded by filing a Motion to Withdraw the Reference and a Motion For Determination Pursuant to 28 U.S.C. §157(d) and Del.Bankr.L.R. 5011-1 for Determination Whether Proceeding Is Core.  Separately, IICNA filed an Answer to the Liquidating LLC's Complaint and Counter-Claim.

The Liquidating LLC answered IICNA's Counter-Claim and filed a Third-Party Complaint against IICNA, National Union and GenStar.  In joining National Union and GenStar, the Liquidating LLC brought into this litigation all of the parties against which IICNA is seeking to assert cross-claims. IICNA has not sought leave to amend to add additional parties and does not see any need to bring in additional parties.

IICNA, National Union and GenStar filed Answers to the Liquidating LLC's Third-Party Complaint.  Shortly thereafter, the Liquidating LLC filed a Motion for Partial Summary Judgment, to which IICNA responded.  The Liquidating LLC then filed a Reply Brief and Request for Oral Argument.

On March 16, 2006 this Honorable Court granted IICNA's Motion to Withdraw the Reference. On information and belief, all documents related to the Cross-Motions for Summary Judgment have been filed with this Honorable Court.

Defendants National Union, GenStar and IICNA are all insurance companies.  During the

coverage period January 1, 1999 to January 1, 2000 each of the Defendants issued a policy of insurance to IHS. Each carrier's policy, issued for this coverage period, is unique with different coverage, limits, terms, definitions, exclusions and endorsements.

During the coverage period January 1, 2000 to January 1, 2001 each of the Defendants issued a policy of insurance to IHS. Each carrier's policy, issued for this coverage period, is unique with different coverage, limits, terms, definitions, exclusions and endorsements.

National Union, GenStar and IICNA were all brought into the instant litigation by the Liquidating LLC due to questions concerning the nature and extent of each carrier's coverage.

**C.**    **Relationship of Defendants**

Both IICNA and National Union are insurance carriers which issued policies to IHS for two consecutive coverage periods, the first commencing on January 1, 1999 and ending on January 1, 2000 and the second commencing on January 1, 2000 and ending on January 1, 2001. During the two consecutive periods identified, National Union issued a Commercial Umbrella policy to IHS and a separate Commercial Umbrella policy to an IHS subsidiary, IHS of Lester. IICNA issued follow-form excess coverage which applies in excess of and follows-form to National Union's coverage. As an excess carrier, IICNA is entitled to all of the benefits and protections available in the underlying coverage. Moreover, the proper exhaustion of the underlying limits is a condition precedent to the attachment of IICNA's coverage.

## SUMMARY OF ARGUMENT

## THE MOTION FOR SUMMARY JUDGMEN SHOULD BE GRANTED

**A.    Motion for Summary Judgment should be granted because the "Non-Pyramiding of Limits" endorsement does not apply**

The undisputed evidence discloses that National Union contracted to provide insurance for the period January 1, 1999 to January 1, 2000.  During that period of time, National Union issued two separate policies; one providing coverage to IHS of Lester only and the other providing coverage to both IHS of Lester and IHS.  The forms, terms and conditions of coverage for IHS of Lester only were set forth in the 1999 Lester Policy.  The forms, terms and conditions of coverage for both IHS of Lester and IHS were set forth in the 1999 Main Policy.  National Union has acknowledged that the limits of the IHS of Lester Policy should have first been used for the defense and settlement of 1999 Claims alleging a residency or injury at an IHS of Lester facility.  After the exhaustion of the 1999 Lester Policy, the limits of the 1999 Main Policy would have been available to defend 1999 Claims alleging residency or injury at an IHS of Lester facility.

Further, the undisputed evidence shows that the coverage bound for the period January 1, 2000 to January 1, 2001 was to be bound upon the same forms, terms and conditions as the expiring.  Nothing in National Union's binder indicates that the limits of its coverage will be reduced by a "Non-Pyramiding of Limits" endorsement.  Moreover, IHS's broker notified National Union that the "Non-Pyramiding of Limits" endorsement was not in keeping with the terms of the renewal upon receipt of the policy.

**B.    National Union's 2000 Lester Policy limits have not been paid and IICNA is entitled to be reimbursed for any amounts paid on behalf of IHS of Lester.**

Since the purported exhaustion of the underlying coverage and the tender of professional liability claims to IICNA, IICNA has provided for the defense of IHS of Lester under IICNA's 2000 IICNA Policy.  In so doing, IICNA has expended a significant amount of the policy's corpus for such defense as well as for settlements IICNA paid on IHS of Lester's behalf.

Through discovery, it has become clear that the limits of the available underlying coverage have

not been paid.  IICNA is, therefore, entitled to be reimbursed for amounts IICNA has spent in the defense or settlement of claims asserted against IHS of Lester or IHS of Lester facilities.  Further, there remain a number of open claims alleging residency or injury at an IHS of Lester facility for which IICNA is providing a defense.  IICNA anticipates that the combined cost of defense and potential settlements will exhaust the limits of coverage available under the 2000 Lester Policy.  As such, IICNA is entitled to the full limits of the 2000 Lester Policy.

**ARGUMENT**

**A.**     **Undisputed Facts**

      1.     ***1999 Policies***

IHS was a healthcare corporation organized under the laws of Delaware and having its principle place of business is Maryland.  At the times relevant hereto, coverage was provided to IHS on a calendar year basis.  From January 1, 1999 through January 1, 2000, IHS was insured at the primary level by Reliance National Indemnity Company under a Health Care Medical Professional Liability and General Liability policy No. NGB 0151564-00 (the "Reliance Policy").

During the period January 1, 1999 to January 1, 2000, the next layer of coverage was provided by National Union under Commercial Umbrella policy No. BE 357-43-43 (hereinafter the "1999 Main Policy") , which provided both professional liability and general liability coverage in excess of the underlying Reliance Policy.  The National Union policy contains limits of $25,000,000.00 per occurrence/aggregate in excess of the Reliance Policy.

GenStar issued Excess Liability policy No. IXG-347714B to IHS with limits of $25,000,000.00 per occurrence/aggregate in excess of the National Union Commercial Umbrella policy.  The GenStar policy is a follow-form excess policy incorporating, generally, all of the terms, conditions, definitions and exclusions contained in the 1999 Main Policy.

IICNA issued its Excess Catastrophe Liability Policy No. XLX G19524139 (herein after the "1999 IICNA Policy") providing excess coverage limits to IHS of $50,000,000.00 per

Page 8

occurrence/aggregate in excess of the underlying.  The IICNA policy is a third layer excess policy providing coverage in excess of the Reliance Policy, the Main Policy and GenStar's Excess Liability policy.

On March 26, 2003, IHS filed an adversary proceeding in the Bankruptcy Court styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, Adv. Proc. No. 03-52081, in an effort to enforce coverage under the 1999 Main Policy (the "National Union Adversary"). Through this action, IHS sought to compel National Union to assume administration and defense of any remaining open professional liability claims alleging residency or injury occurring during the 1999 calendar year ("1999 Claims").  IHS further alleged in the National Union Adversary that the settlement value of the open 1999 Claims was in excess of the limits of the National Union Policy and would reach, at a minimum, the next layer of coverage which is provided by GenStar.

The Bankruptcy Court entered partial summary judgment in favor of IHS by Order Granting Debtors' Motion for Partial Summary Judgment dated October 23, 2003 (the "Summary Judgment Order").  The Summary Judgment Order held, *inter alia*, that National Union's 1999 Main Policy No.: BE 357-43-43, was triggered because IHS had entered into Settlement Agreements in excess of the Reliance Policy limits.  The Court held that such settlements constituted a "legal obligation to pay", which satisfied the conditions precedent to coverage under the National Union policy regardless of whether underlying insurance or IHS' own funds were actually paid for such claims.[2]

The copy of the 1999 Main Policy No. BE 357-43-43, which National Union filed with the Bankruptcy Court in support of its Motion For Summary Judgment clearly states that it does not apply to IHS of Lester.  The certified copy of Commercial Umbrella policy No. BE 357-43-44, which National

---

[2] We note that, neither the Liquidating LLC nor National Union placed in issue the attachment of another National Union Commercial Umbrella policy No. BE 357-43-44, issued to IHS of Lester despite the fact that it, too, was potentially triggered on a "legally obligated to pay" standard.  We also note that despite its acknowledged responsibility for 1999 Insured Tort Claims, the Liquidating LLC was unaware of National Union Commercial Umbrella policy No. BE 357-43-44 until such time as IICNA informed the Liquidating LLC of this additional coverage.

Union has made available to IICNA, clearly states that it does not apply to IHS. As such, the policies are mutually exclusive.

National Union did not appeal from the Summary Judgment Order. On information and belief, after the issuance of the Summary Judgment Order, National Union assumed the administration and defense of the 1999 Claims under the 1999 Main Policy.

At some point, National Union tendered the administration and defense of the 1999 Claims to GenStar. GenStar assumed the administration and defense of the 1999 Claims.

In or about May 2005, GenStar tendered the administration and defense of the 1999 Claims to IICNA. Upon learning that the underlying GenStar policy was nearing exhaustion, IICNA commenced a review of the payment records of National Union and GenStar purporting to support the exhaustion of the underlying policies. That information was maintained and provided by National Union and GenStar's agent, Hamlin & Burton Liabilities Management, Inc. (hereinafter "Hamlin & Burton"). During IICNA's review it became aware that payments made by National Union and GenStar in the settlement of lawsuits filed against IHS of Lester were included within the limits of the 1999 Main Policy, and GenStar's policy. However, no payments of any kind were made under National Union's policy BE 357-43-44, issued to IHS of Lester, the 1999 Lester Policy.

Coverage under IICNA's Excess Catastrophe Liability policy differs significantly from that provided by National Union under its Commercial Umbrella policy in that coverage under the IICNA's Excess Catastrophe Liability policy is triggered ***only by actual payment*** of underlying insurance coverage and not simply upon the insured becoming "legally obligated to pay" a liability. Since the Reliance Policy was not exhausted by actual payment of policy proceeds, the 1999 IICNA Policy is not triggered.

The payments used to exhaust the underlying coverage must be appropriate under the policies. National Union's payment of settlements of lawsuits filed against IHS of Lester under the 1999 Main Policy despite having issued a separate policy with limits available solely for the benefit of IHS of Lester, is not appropriate. As such, the 1999 Main Policy has not been exhausted by actual payment of the

policy proceeds.  Therefore the 1999 IICNA Policy is not triggered.

As has come to light through discovery, the 1999 Lester Policy is to be considered an underlying policy to the 1999 Main Policy.  The coverage available under the 1999 Lester Policy is, however, solely for the benefit of IHS of Lester.  The 1999 Main Policy provides coverage to IHS of Lester, but only upon the proper exhaustion of the 1999 Lester Policy.

IICNA has averred that the limits of the 1999 Lester Policy have not been exhausted.  National Union has acknowledged that the limits of the 1999 Lester Policy have not been paid and has begun providing for the defense of IHS of Lester under the 1999 Lester Policy.

    2.   ***2000 Policies***

As stated previously, Defendant IICNA issued a policy of insurance to IHS for the period January 1, 2000 through January 1, 2001.  Defendant National Union issued two separate policies during the relevant coverage period.  One policy Commercial Umbrella Policy No. BE 357-43-86, issued for the period January 1, 2000 through January 1, 2001 was issued by National Union to IHS of Lester.  In its proposed amended pleading, IICNA has referred to this policy as the 2000 Lester Policy.

A separate policy, Commercial Umbrella Policy No. BE 357-43-84 (hereinafter the "2000 Main Policy"), was issued for the period January 1, 2000 to January 1, 2002 by National Union to IHS. Although the coverage period identified in the Declarations of the 2000 Main Policy indicates coverage was provided to IHS for two successive calendar years, the cross-claims contemplated in IICNA's Answer to the Third-Party Complaint address the coverage provided by National Union during the period January 1, 2000 to January 1, 2001.  Both GenStar's 2000 policy and IICNA's 2000 policy are in excess of the 2000 Main Policy for the period January 1, 2000 to January 1, 2001.  The limits of the 2000 Main Policy for the period January 1, 2000 to January 1, 2001 are $25,000,000.00 each occurrence/aggregate in excess of a $1,000,000.00 each occurrence/ $5,000,000.00 general liability self-insured retention and a $2,000,000.00 each medical incident/ $14,000,000.00 aggregate professional liability self-insured retention.

GenStar issued Excess Liability Policy IXG-347714C to IHS for the period January 1, 2000 to January 1, 2001, with limits of $25,000,000.00 each occurrence Bodily Injury and/or Property Damage liability combined/ $25,000,000.00 aggregate (where applicable) in excess of underlying limits.

Upon the purported exhaustion of GenStar's coverage for the period January 1, 2000 to January 1, 2001, IICNA was provided with a copy of National Union's 2000 Main Policy by National Union and GenStar's agent, Hamlin & Burton. That policy contains an express exclusion of coverage for IHS of Lester.

Subsequent to IICNA's taking on the defense of IHS, IICNA has determined that payment of settlements of lawsuits against IHS of Lester have been used to exhaust the limits of coverage under National Union's 2000 Main Policy.

A substantial portion of IICNA's coverage for the period January 1, 2000 to January 1, 2001 has already been paid. Moreover, IICNA's coverage for the period January 1, 2000 to January 1, 2001 is a burning cover, meaning that its limits are eroded by the payment of defense costs. Many of the claims for which IICNA provided a defense identified IHS of Lester or an IHS of Lester facility as a defendant.

IICNA's Motion For Summary Judgment addressing the coverage period January 1, 2000 to January 1, 2001, if successful, will replenish a portion of the coverage limits.

**B.    Underwriting**

As set forth more fully above, IHS was a health care corporation organized under the laws of Delaware with its principal place of business in Maryland. At all times relevant hereto, IHS employed two insurance brokers for the purposes of procuring and placement of its professional liability and general liability insurance coverage. The brokers were Lockton Insurance Services (hereinafter "Lockton") and Risk Strategies, Inc. (hereinafter "Risk Strategies").

In 1998, Lockton approached National Union with a request for quotation of coverage for the coverage period January 1, 1999 to January 1, 2000. Coverage was to be in an "umbrella" form and was to be in excess of coverage provided by an underlying carrier. National Union quoted coverage which

resulting in the placement of the 1999 Main Policy. IHS paid $725,000.00 for $25,000,000.00 in coverage.

In addition, Lockton requested a separate policy of insurance for some 41 "Lester facilities". National Union quoted and bound coverage for IHS of Lester pursuant to Lockton's request. The resulting policy, the 1999 Lester Policy, provided $2,000,000.00 in coverage for $16,000.00.

Immediately upon issuing the policies, Lockton informed National Union that the policies, as issued, were not in keeping with the quotes or binders. Lockton memorialized the problems with the coverage in a "fax memo" dated May 28, 1999. See Exhibit "C" to the Motion for Summary Judgment.

One of the issues addressed in the May 28, 1999 "fax memo" is the relationship between the 1999 Lester Policy and the 1999 Main Policy. Pursuant to the May 28, 1999 "fax memo" the 1999 Lester Policy is to be included as an underlying policy in the Schedule of Underlying Insurance made part of the 1999 Main Policy. Provisions in both the 1999 Lester Policy and the 1999 Main Policy excluding coverage for IHS of Lester and "its interests in other entities" were to be removed. The 1999 Lester Policy was to provide coverage to IHS of Lester up to its $2,000,000.00 limits, after which IHS of Lester was covered under the 1999 Main Policy.

Upon tender of the 1999 Claims to IICNA, IICNA declined coverage to IHS of Lester based on the exclusion of coverage for IHS of Lester which Lockton had identified as being improperly made part of the 1999 Main Policy by "fax memo" dated May 28, 1999. IICNA, therefore, tendered the claims back to National Union for coverage under the 1999 Lester Policy. National Union has accepted the tendered 1999 Claims alleging residence or injury occurring at an IHS of Lester facility and is actively defending these claims. In so doing, National Union has acknowledged that it had not exhausted the limits of its 1999 Lester Policy and that the coverage available to IHS and IHS of Lester in 1999 did not include a "Non-Pyramiding of Limits" endorsement.

On December 14, 1999, National Union quoted coverage for IHS on "forms, terms and conditions" as expiring. See Exhibit "I" to the Motion For Summary Judgment. Nothing in the quote

Page 13

indicates that National Union was contemplating the removal of $2,000,000.00 worth of coverage by and through the inclusion of a "Non-Pyramiding of Limits" endorsement. On December 27, 1999, broker Risk Strategies requested that National Union bind coverage for IHS on the terms discussed. See Exhibit "J" to the Motion For Summary Judgment. That same day, National Union issued its binder (Exhibit "K" to the Motion For Summary Judgment). The binder expressly provides that "forms, terms and conditions" are to be as expiring. Again, National Union fails to notify IHS that it was intending to remove $2,000,000.00 in coverage through the inclusion of a "Non-Pyramiding of Limits" endorsement. National Union did, however, inform IHS that it was charging $1,900,000.00 in premium for two years of coverage under its renewal policy.

On January 29, 2000 National Union had an opportunity to address the reduction in coverage. See Exhibit "H" to IICNA's Motion For Summary Judgment. By letter dated January 29, 2000 National Union confirmed binding of coverage for IHS of Lester on terms and conditions as expiring. The January 29, 2000 letter mirrors the request for binder issued by Lockton on December 29, 1999. National Union did not notify IHS of the reduction in coverage despite having had its coverage in effect for nearly a month. Rather, National Union informed IHS's broker that National Union had agreed to bind coverage for IHS of Lester on the "forms, terms and conditions" as expiring. National Union confirms that $2,000,000.00 coverage will be on a renewal basis and will cost $19,000.00.

    **C.**    *Legal Argument*

        **1.**    <u>**Standard For Review**</u>

Summary judgment is appropriate where the moving party has established that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law". <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S. Ct. 2505

(1986). By its very terms, this standard provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact. <u>Id</u>. A factual dispute is only "material"

only if it might affect the outcome of the suit under governing law. <u>Bensalem Township v. Coregis</u>

<u>Indemnity Co.</u>, 1995 U.S. Dist. LEXIS 6329 (E.D. PA 1995).

"Generally, the proper construction of a policy of insurance is a matter of law which may

properly be resolved by a court pursuant to a motion for summary judgment." <u>Frain v. Keystone</u>

<u>Ins. Co.</u>, 433 Pa. Super. 462,466 (Pa. Super. 1994).

### "Non-Pyramiding of Limits" endorsement does not apply

In the negotiation of an insurance policy, IHS employed the services of two insurance brokers,

Lockton and Risk Strategies, to procure IHS's insurance coverage for the relevant periods, January 1,

1999 to January 1, 2000 and January 1, 2000 to January 1, 2001. An insurance broker so employed is

"the agent of the insured, and not the insurer, in all matters connected with such procurement." <u>American</u>

<u>Cas. Co. v. Ricas</u>, 179 Md. 627, 632, 22 A.2d 484, 487 (Ct. App. Md. 1941).

On behalf of IHS, Lockton and Risk Strategies requested coverage for the period January 1, 1999

to January 1, 2000. The coverage that National Union bound and issued was comprised of two

Commercial Umbrella policies as set forth more fully above. On May 28, 1999, Lockton, on behalf of its

client and as agent for IHS, informed National Union of numerous errors in the coverage. National

Union, apparently, took no action to correct the changes during the policy period.

As set out more fully above, pursuant to an Order from the United States Bankruptcy Court for

the District of Delaware, National Union's coverage was deemed triggered based upon the fact that IHS

had become "legally obligated to pay" settlements for professional liability claims negotiated with

numerous plaintiffs alleging injury or residency at an IHS facility in 1999. National Union provided for

the defense of IHS and IHS of Lester under the 1999 Main Policy only. Upon the exhaustion of the 1999

Main Policy, National Union tendered the remaining open 1999 Claims to the next layer carrier, GenStar. Upon the exhaustion of GenStar's coverage, GenStar tendered the open 1999 Claims to IICNA.

IICNA declined coverage for 1999 Claims asserted against IHS of Lester or alleging injury or residency in an IHS of Lester facility. IICNA tendered these claims back to National Union, which acknowledged that the separate limits available to IHS of Lester through the 1999 Lester Policy were not exhausted. In doing so, National Union has acknowledged that its coverage limits are a combined total of $27,000,000.00 and that the limits of the 1999 Main Policy and the limits of the 1999 Lester Policy exhaust independently and are not subject to a "Non-Pyramiding of Limits" endorsement.

On December 17, 1999, Lockton sent a request for a renewal quotation for coverage for IHS of Lester. The quote expressly states that a copy of the Lockton's May 28, 1999 memo are attached and that the corrections previously outlined had not been made to the current policy.

On December 14, 1999, National Union issued a quote for coverage to IHS for the period January 1, 2000 to January 1, 2002. That quote states that the "forms, terms and conditions" are to be as expiring. By exchange of fax documents on December 27, 1999 the broker and National Union confirmed the binding of coverage on a "renewal" basis for IHS for the January 1, 2000 to January 1, 2002 period on "forms, terms and conditions" as expiring. Premium for the coverage was $1,900,000.00. The limits of coverage were $25,000,000.00 and applied separately to each policy year.

Similarly, by exchange of fax documents on December 30, 1999 and January 29, 2000 the broker and National Union confirmed the binding of coverage for IHS of Lester for the period January 1, 2000 to January 1, 2001. Coverage was on a "renewal" basis with "forms, terms and conditions" as expiring. The limits of coverage were purported to be as $2,000,000.00 and the premium charged was $19,000.00. The premium charged represented an increase of $3,000.00.

On April 12, 2000 IHS's broker informed National Union that the coverage was not as agreed. Rather, National Union had inserted a "Non-Pyramiding of Limits" endorsement into both the 2000 Main Policy and the 2000 Lester Policy. Lockton further informed National Union that the 2000 Lester Policy

Page 16

was to be an underlying policy just as it had been in 1999.

Although there are no Delaware or Maryland cases directly on point, the case of <u>Bensalem Twp.</u> <u>v. International Surplus Lines Ins. Co.</u>, 38 F.3d 1303 (3d Cir. 1993) is instructive. Here, the insured purchased a professional liability insurance policy from defendant. The agreement included an exclusion clause which barred coverage of claims arising from pre-policy litigation. This exclusion was later expanded whereby only claims completely unrelated to any prior matter were covered. Thereafter plaintiff was sued in a federal action. Defendants denied coverage and plaintiff sued for coverage under the policy. The district court granted defendants' motion to dismiss, concluding that because the federal suit against plaintiff involved the same underlying facts and circumstances as some pre-policy state disputes, plaintiff's suit fell within the express terms of the policy's exclusion clause. Plaintiff appealed, asserting defendants' expansion of the exclusionary clause was inconsistent with the parties' reasonable expectations. The Court held that where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." <u>Bensalem Township</u>, at 1311. In <u>Tonkovic v. State Farm Mut. Auto. Ins. Co.</u>, 513 Pa. 445, 521 A.2d 920 (Pa. 1987) the Supreme Court of Pennsylvania held that there is a "crucial distinction between cases where one applies for a specific coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested." <u>Tonkovic</u>, at 454.

Here, the coverage was quoted as a "renewal" with "forms, terms and conditions" as expiring. Nothing in the binders notifies IHS or IHS or Lester that, despite paying higher premiums, it would receive reduced coverage. More importantly, upon receipt of the policies which contained National Union's unilateral changes the broker notified National Union that the unilateral change was not in keeping with the quote and binder by "fax memo" dated April 12, 2000. Nearly two years later, on January 17, 2002, the broker again notified National Union that the policies as issued were not in keeping

with National Union's quote and binder.

In settlement discussions with counsel for National Union, National Union has averred that IICNA is seeking reformation of the National Union policies.  Moreover, National Union has averred that Maryland law governs the policies.

Assuming that National Union is correct that Maryland law applies, under Maryland law "[a]n insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby.  To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole.  Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution."  Chesapeake Physicians Professional Ass'n v. Home Ins. Co., 92 Md. App. 385, 393 (Md. Ct. Spec. App. 1992).  Moreover, "an insurer is subrogated the claims of its insured against others, whether ex contractu or ex delicto, once the insurer has insurer has indemnified the insured for his loss." Stancil v. Erie Ins. Co., 128 Md. App. 686, 693, 740 A.2d 46, 49 (Md. App. 1999).  "The rights to which the insurer is subrogated have been broadly described as 'all rights of recovery of the insured of every nature, whatsoever.'"  Stancil, 69, 50.

In the instant matter there clear evidence discloses that National Union bound for coverage for the coverage period January 1, 2000 to January 1, 2001 on the same "forms, terms and conditions" as expiring.  It is also clear, from National Union's conduct, that the expiring coverage did not contain a "Non-Pyramiding of Limits" endorsement.  National Union's decision to include the "Non-Pyramiding of Limits" endorsement constitutes a unilateral change to the coverage after National Union had issued its binders.  Note that one of the binders, the binder for the 2000 Lester Policy, was issued nearly one month into the renewal term.  Nothing in the binder for the 2000 Lester Policy places IHS of Lester on notice of National Union's intent to reduce the limits of coverage available to IHS and IHS of Lester despite charging substantially higher premium.

As agent for the insured, Lockton immediately notified National Union that the inclusion of the

Page 18

"Non-Pyramiding of Limits" endorsement was not in keeping with the coverage as bound.  National

Union has inferred that issues related to coverage were resolved at a July 2, 2002 meeting in which, by its

own admission, National Union's underwriting staff was not represented.  Moreover, the Agenda for the

meeting clearly discloses that the subject matter was claims not the terms and conditions of coverage.

Further, the only notes available from after the meeting, dated July 12, 2002, continue to show that the

coverage was to be "as expiring".  See Exhibit "N".

      IICNA has defended and continues to defend IHS of Lester under the 2000 IICNA Policy.

IICNA has settled several claims asserting injury or residency at an IHS of Lester facility.  In so doing,

IICNA has paid a substantial portion of the corpus of its policy on behalf of IHS of Lester despite the fact

that there is addition coverage available from National Union, which has not been paid.  As such, IICNA

has indemnified on behalf of its insured and may enforce its rights of subrogation against the limits of the

2000 Lester Policy.

### IICNA is entitled to the limits of the 2000 Lester Policy

      National Union has acknowledged that it has paid $25,000,000.00 to settle claims asserted against

IHS and IHS of Lester under the 2000 Main Policy.  National Union further acknowledged that it has not

paid any amounts under the 2000 Lester Policy.

      Under Maryland law "[a]n insurance contract, like any other contract, is measured by its terms

unless a statute, a regulation, or public policy is violated thereby.  To determine the intention of the

parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a

whole.  Maryland courts should examine the character of the contract, its purpose, and the facts and

circumstances of the parties at the time of execution."  Chesapeake Physicians Professional Ass'n v.

Home Ins. Co., 92 Md. App. 385, 393 (Md. Ct. Spec. App. 1992).  Moreover, "an insurer is subrogated

the claims of its insured against others, whether ex contractu or ex delicto, once the insurer has insurer has

indemnified the insured for his loss."  Stancil v. Erie Ins. Co., 128 Md. App. 686, 693, 740 A.2d 46, 49

(Md. App. 1999).  "The rights to which the insurer is subrogated have been broadly described as 'all

Page 19

rights of recovery of the insured of every nature, whatsoever.'" <u>Stancil</u>, 69, 50.

In the instant matter there clear evidence discloses that National Union bound for coverage for the coverage period January 1, 2000 to January 1, 2001 on the same "forms, terms and conditions" as expiring.  It is also clear, from National Union's conduct, that the expiring coverage did not contain a "Non-Pyramiding of Limits" endorsement.  National Union's decision to include the "Non-Pyramiding of Limits" endorsement constitutes a unilateral change to the coverage after National Union had issued its binders.  Note that one of the binders, the binder for the 2000 Lester Policy, was issued nearly one month into the renewal term.  Nothing in the binder for the 2000 Lester Policy places IHS of Lester on notice of National Union's intent to reduce the limits of coverage available to IHS and IHS of Lester despite charging substantially higher premium.

As agent for the insured, Lockton immediately notified National Union that the inclusion of the "Non-Pyramiding of Limits" endorsement was not in keeping with the coverage as bound.  National Union has inferred that issues related to coverage were resolved at a July 2, 2002 meeting in which, by its own admission, National Union's underwriting staff was not represented.  Moreover, the Agenda for the meeting clearly discloses that the subject matter was claims not the terms and conditions of coverage.  Further, the only notes available from after the meeting, dated July 12, 2002, continue to show that the coverage was to be "as expiring".  See Exhibit "N".

IICNA has defended and continues to defend IHS of Lester under the 2000 IICNA Policy.  IICNA has settled several claims asserting injury or residency at an IHS of Lester facility.  In so doing, IICNA has paid a substantial portion of the corpus of its policy on behalf of IHS of Lester despite the fact that there is addition coverage available from National Union, which has not been paid.  As such, IICNA has indemnified on behalf of its insured and may enforce its rights of subrogation against the limits of the 2000 Lester Policy.

**<u>CONCLUSION</u>**

Pursuant to <u>Bensalem v. International Surplus Lines</u>, *supra*, a unilateral change to an insurance policy is not given force or effect.  The clear evidence discloses that National Union elected to reduce the limits of its coverage after it had issued binders of coverage stating that the "forms, terms and conditions" of coverage were to be as expiring.  Pursuant to <u>Chesapeake</u>, *supra*, the Courts examine the "character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution."  Here, the facts and circumstances support that National Union's coverage for IHS of Lester was bound separately from the coverage for IHS.  At no time did the parties discuss or agree to a limitation on the separate coverages provided by the 2000 Lester Policy and the 2000 Main Policy by the inclusion of the "Non-Pyramiding of Limits" endorsement.

IICNA, by virtue of its defense and settlement of claims asserted against IHS of Lester is entitled to enforce its rights of subrogation with regard to the 2000 Lester Policy.  For the reasons set forth above, Indemnity Insurance Company of North America's Motion For Summary Judgment should be granted.

Respectfully submitted,

WETZEL & ASSOCIATES, P.A.

/s/Benjamin C. Wetzel, III
BENJAMIN C. WETZEL, III (ID No. 985)
NATALIE M. IPPOLITO (ID No. 3845)
1100 North Grant Avenue, Suite 201
Wilmington, DE  19805
(302) 652-1200
*Attorney for Ace Indemnity Insurance*
*Company f/k/a Indemnity Insurance*
*Company of North America*

Of Counsel:
Ward A. Rivers, Esquire
Deasey, Mahoney & Bender, Ltd.
1800 John F. Kennedy Blvd., Suite 1300
Philadelphia, PA  19103-2978

Date:  June 25, 2007

Page 21