# 2000 IICNA Policy



# Binder
# Excess Catastrophe Liability

We are pleased to authorize this Binder as a Temporary Insurance Contract. This coverage is subject to all terms and conditions of this policy to be issued which, when delivered, replaces this binder. This Binder is valid for 30 days from effective date.

Company: Indemnity Insurance Company of North America
Policy Number: G20108034
Effective Date: 01/01/2000
Expiration Date: 01/01/2001

Insured Name & Address:
INTEGRATED HEALTH SERVICES, INC.

10065 RED RUN BOULEVARD
OWINGS MILLS, MD 21117

Producer:
TRI CITY INSURANCE BROKERS INC
110 WILLIAM STREET
26TH FLOOR
New York, NY 10038
JOHN JENNINGS

Coverage: Excess Catastrophe Liability

Limits: $50,000,000   each occurrence
       $50,000,000   aggregate (where applicable)

                IN EXCESS OF
       $50,000,000    each occurrence
       $50,000,000    aggregate (where applicable)

Advanced Premium : $55,000

Commission: 17.5 %

Basis of Premium: Flat

Annual Minimum Premium: $55,000

Conditions & Attachments:

This binder contemplates the issuance of policy form no. XS-4U19a.
(If a specimen copy of this form is desired, please advise.) Subject to its standard provisions plus the following attachments:

1. XS-1V24: Maryland Changes - Cancellation Non-Renewal & State Required ConditionsU‘

Subject to:

| Authorized by | New York | Date |
| --- | --- | --- |
| Bob Hogan | 195 Broadway | 12/27/1999 |
| | 7th Floor | |
| | New York, NY, 10007 | |
| | Phone: (212) 618-5054 Fax: | |

*Declarations*
*Excess Liability Catastrophe Policy*

ACE USA 

| PRODUCER CODE | OFFICE | PREVIOUS POLICY NUMBER | | COMMISSION |
|---|---|---|---|---|
| 228384 | New York | G19545507 | | 17.5 |
| AUDIT FREQUENCY | PRODUCER | | | |
| None | TRI CITY INSURANCE BROKERS INC | | | |
| NAMED INSURED IS: | BUSINESS OF INSURED | | | PIIC |
| Corporation | On file with company | | | 8093 |

Policy Number: XLX G20108034

Policy Period: From 01/01/2000 to 01/01/2001
12:01 A.M. Standard Time at the Address of the Named Insured as stated herein

NAMED INSURED AND ADDRESS | COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BELOW
INTEGRATED HEALTH SERVICES, INC. | Indemnity Insurance Company of North America
10065 RED RUN BOULEVARD
OWINGS MILLS, MD 21117

**Limits of Insurance**

$ 50,000,000    Each Occurrence     $ 50,000,000    Aggregate

**Underlying Insurance Limits**

$ 50,000,000    Each Occurrence     $ 50,000,000    Aggregate

Basis of Premium: Flat Charge.

**Premium**

$ 55,000    Advance Premium     $ 55,000    Annual Minimum Premium

**Schedule of Underlying Insurance**
First Policy of Underlying Insurance

Company Zurich Insurance Company                        Limits of Insurance
Policy Number  On file with Co.          $ 50,000,000   Each Occurrence
Expiration Date 01/01/2001               $ 50,000,000   Aggregate

Endorsements Attached to and forming a part of this Policy at Inception:

CC-1K11a  Signature Endorsement
XS-1V24   Maryland Changes - Cancellation Non-Renewal & State Required Conditions

| DATE OF ISSUE | SIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 02/23/2000 | |

XS-8U59 (12)

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA
195 BROADWAY, 7TH FLOOR
NEW YORK NY 10007

# NOTICE OF NONRENEWAL OF INSURANCE

Named Insured & Mailing Address:

INTEGRATED HEALTH SERVICES, INC.
10065 RED RUN BLVD
OWINGS MILLS MD 21117

Producer: 228384

TRI CITY INSURANCE BROKERS INC

150 MOTOR PARKWAY
SUITE 200
HAUPPAUGE NY 11788

Policy No.: XLX G20108034
Type of Policy: EXCESS LIABILITY OCCURRENCE
Date of Expiration: 01/01/2001 ; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We will not renew this policy when it expires. Your Insurance will cease on the Expiration Date shown above.

The reason for nonrenewal is COMPANY PURCHASED/UNDERGOING REORGANIZATION

Named Insured

INTEGRATED HEALTH SERVICES, INC.
10065 RED RUN BLVD
OWINGS MILLS MD 21117

Copy for Named Insured

Date Mailed:
16th day of November, 2000

Authorized Company Representative

MDCN12NONE APP
10192000M
Page 1 of 1

DDEN3.0.00.06a
FORM# CN9697MD51995

*Declarations*
*Excess Liability Catastrophe Policy*

ACE USA


| PRODUCER CODE | OFFICE | PREVIOUS POLICY NUMBER |
|---|---|---|
| 228384 | New York | G19545507 |
| AUDIT FREQUENCY | PRODUCER | |
| None | TRI CITY INSURANCE BROKERS, INC | |
| NAMED INSURED IS: | BUSINESS OF INSURED | |
| Corporation | On file with company | PIIC 8093 |

Policy Number: XLX G20108034

Policy Period: From 01/01/2000 to 01/01/2001
12:01 A.M. Standard Time at the Address of the Named Insured as stated herein

NAMED INSURED AND ADDRESS
INTEGRATED HEALTH SERVICES, INC.
10065 RED RUN BOULEVARD
OWINGS MILLS, MD 21117

COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BELOW
Indemnity Insurance Company of North America

Limits of Insurance
$ 50,000,000  Each Occurrence      $ 50,000,000  Aggregate

Underlying Insurance Limits
$ 50,000,000  Each Occurrence      $ 50,000,000  Aggregate

Premium
$ 55,000  Advance Premium      _____  Annual Minimum Premium

Basis of Premium: Flat Charge.

Schedule of Underlying Insurance
First Policy of Underlying Insurance

Company Zurich Insurance Company                  Limits of Insurance
Policy Number  On file with Co.         $ 50,000,000  Each Occurrence
Expiration Date 01/01/2001              $ 50,000,000  Aggregate

Endorsements Attached to and forming a part of this Policy at inception:

CC-1K11a   Signature Endorsement
XS-1V24    Maryland Changes - Cancellation Non-Renewal & State Required Conditions

DATE OF ISSUE              SIGNATURE OF AUTHORIZED AGENT
02/23/2000
XS-8U59 (12/

*Declarations*
*Excess Liability Catastrophe Policy*

ACE USA

| PRODUCER CODE | OFFICE | PREVIOUS POLICY NUMBER | | COMMISSION |
|---|---|---|---|---|
| 228384 | New York | G19545507 | | 17.5 |
| AUDIT FREQUENCY | PRODUCER | | | |
| None | TRI CITY INSURANCE BROKERS INC | | | |
| NAMED INSURED IS: | BUSINESS OF INSURED | | PHC | |
| Corporation | On file with company | | 8093 | |

Policy Number: XLX G20108034

NAMED INSURED AND ADDRESS

INTEGRATED HEALTH SERVICES, INC.
10065 RED RUN BOULEVARD
OWINGS MILLS, MD 21117

Policy Period:   From 01/01/2000 to 01/01/2001
12:01 A.M. Standard Time at the Address of the Named Insured as stated herein

COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BELOW
Indemnity Insurance Company of North America

**Limits of Insurance**

$ 50,000,000   Each Occurrence   $ 50,000,000   Aggregate

**Underlying Insurance Limits**

$ 50,000,000   Each Occurrence   $ 50,000,000   Aggregate

Basis of Premium: Flat Charge.

Premium

$ 55,000   Advance Premium   $ 55,000   Annual Minimum Premium

**Schedule of Underlying Insurance**
First Policy of Underlying Insurance

Company  Zurich Insurance Company                        Limits of Insurance
Policy Number   On file with Co.              $  50,000,000   Each Occurrence
Expiration Date 01/01/2001                    $  50,000,000   Aggregate

Endorsements Attached to and forming a part of this Policy at Inception:

CC-1X11a    Signature Endorsement
XS-1V24     Maryland Changes - Cancellation Non-Renewal & State Required Conditions

| DATE OF ISSUE | SIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 02/23/200_ | |

XS-BUS9 (1)

# SIGNATURES

| Named Insured | | Endorsement Number |
|---|---|---|
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| | G20108034 | | |
| Issued By (Name of Insurance Company) | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

*George D. Mulligan*                                          *Dennis B. Reding*
GEORGE D. MULLIGAN, Secretary                                 Dennis B. Reding, President

BANKERS STANDARD FIRE AND MARINE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

BANKERS STANDARD INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

ACE INDEMNITY INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

ACE AMERICAN INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

ACE PROPERTY AND CASUALTY INSURANCE COMPANY
900 Cottage Grove Road, Bloomfield, Connecticut 06002

INSURANCE COMPANY OF NORTH AMERICA
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

PACIFIC EMPLOYERS INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

ACE FIRE UNDERWRITERS INSURANCE COMPANY
1601 Chestnut Street, P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484

*George D. Mulligan*                                          *Dennis B. Reding*
GEORGE D. MULLIGAN, Secretary                                 Dennis B. Reding, President

_____
Authorized Agent

CC-1K11a (8/00), in U.S.A.

# MARYLAND CHANGES — CANCELLATION, NONRENEWAL AND STATE REQUIRED CONDITIONS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

    COMMERCIAL UMBRELLA LIABILITY POLICY
    EXCESS LIABILITY POLICY
    EXCESS LIABILITY CATASTROPHE POLICY

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| | G20108034 | | |
| Issued By: (Name of Insurance Company) | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

I. The following is added to SECTION IV - CONDITIONS:

**NONRENEWAL**

If we decide not to renew this Policy we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 45 days before the expiration date. Even if we do not comply with these terms, this Policy will terminate:

(1) On the expiration date, if:

  (a) You fail to perform any of your obligations in connection with the payment of premium for the Policy or the renewal of the Policy or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan, or extension of credit;

  (b) We have indicated our willingness to renew this Policy to you or your representative;

  (c) You have notified us or our agent that you do not want to renew this Policy; or

(2) On the effective date of any other insurance policy issued as a replacement for any insurance afforded by this policy, with respect to insurance to which both policies apply.

Authorized Agent

XS-1V24 (1/95) Printed in U.S.A.

# POLICY CANCELLATION ENDORSEMENT

| Named Insured<br>INTEGRATED HEALTH SERVICES, INC. | | | Endorsement Number<br>1 |
|---|---|---|---|
| Policy Symbol<br>XLX | Policy Number<br>G20108034 | Policy Period<br>01/01/2000 to 01/01/2001 | Effective Date of Endorsement<br>04/14/2000 |
| Issued By (Name of Insurance Company)<br>Indemnity Insurance Company of North America | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Excess Liability Catastrophe Policy**

In consideration of a returned premium of $39,372 it is agreed that this policy is cancelled effective:
04/14/2000

CC1E15



| Item Description | Item Value |
|---|---|
| Coverage Description | First Policy of Underlying Insurance |
| Company | Zurich Insurance Company |
| Policy Number | On file with Co. |
| Expiration Date | 01/01/2001 |
| Limits (each occurrence) | 50,000,000 |
| Aggregate Limit | 50,000,000 |

**Registration**

**Submission**
- Registration Date: 02/22/2000 - Completed
- GL Primary Limit: 1,000,000
- Auto Primary Limit: 1,000,000
- Excess Primary Limit: 50,000,000
- Policy Limit: 50,000,000
- Policy Effective Date: 01/01/2000
- Policy Expiration Date: 01/01/2001

**Rating Premiums**
- General Liability: $300,000
- Auto Liability: $29,350
- EPLI Coverage: $
- Other Liability: $

## POLICY REINSTATEMENT ENDORSEMENT

| Named Insured<br>INTEGRATED HEALTH SERVICES, INC. | | | Endorsement Number<br>2 |
|---|---|---|---|
| Policy Symbol<br>XLX | Policy Number<br>G20108034 | Policy Period<br>01/01/2000 to 01/01/2001 | Effective Date of Endorsement<br>04/14/2000 |
| Issued By (Name of Insurance Company)<br>Indemnity Insurance Company of North America | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

Excess Liability Catastrophe Policy

In consideration of an additional premium of $39,372 it is agreed that this policy is reinstated effective:

04/14/2000

CC1E15

## *Excess Liability Catastrophe Policy*

CIGNA Property & Casualty 

WE, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of UNDERLYING INSURANCE attached to this policy, and in return for the payment of the premium and subject to the terms, conditions, exclusions, and limits of insurance of this policy, agree with YOU as follows:

### SECTION I
### INSURING AGREEMENTS

#### A. COVERAGE

WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy period and are insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

The Definitions, Terms, Conditions, Limitations, and Exclusions of the "first policy of UNDERLYING INSURANCE", in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

#### B. LIMITS OF INSURANCE

The Limit of Insurance stated in the Declarations as applicable to "each OCCURRENCE" shall be the total limit of OUR liability for all covered damages sustained as the result of any one OCCURRENCE.

The Limit of Insurance stated in the Declarations as "aggregate" shall be the total limit of OUR liability for all covered damages sustained during each annual period of this policy; and for which any UNDERLYING INSURANCE provides coverage that is subject to an aggregate limit. If the UNDERLYING INSURANCE limit has been reduced or exhausted solely by reason of losses paid thereunder arising out of OCCURRENCES which take place during OUR policy period, then this policy shall:

1. in the event of reduction, pay the excess of the reduced underlying limit;

2. in the event of exhaustion continue in force as UNDERLYING INSURANCE.

The aggregate limit in this policy shall apply separately for each coverage as to which all underlying policies provide an aggregate limit.

#### C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

1. DEFENSE PROVISIONS

When insurance is available to YOU in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any occurrence which, in OUR opinion, may create liability on the part of US under the terms of this policy.

We will assume charge of the settlement or defense of any SUIT brought against YOU to which this policy applies and to which no UNDERLYING INSURANCE applies because of the exhaustion of aggregate limits of insurance.

If WE assume any right, opportunity or obligation, WE shall not be obligated to defend any SUIT after the applicable limits of this policy have been exhausted.

2. SUPPLEMENTAL PAYMENTS

The only Supplemental Payments and expenses that WE shall pay under this policy are as follows:

a. All expenses incurred by US;

b. All interest on that part of any judgement which accrues after entry of the judgement and before WE have paid, offered to pay, or deposited in court that part of the judgement which does not exceed the limit of liability, and to which this policy applies;

c. If all UNDERLYING INSURANCE pays pre-judgement interest, then WE will pay related pre-judgement interest awarded against YOU on that part of the judgement WE pay. If WE make an offer to pay the applicable limit of insurance, WE will not pay any pre-judgement interest based on that period of time after the offer.

3. Subject to all of the foregoing:

a. If Defense and/or Supplemental payment expenses are included within the limit of Insurance of any UNDERLYING INSURANCE, then any such expense payment WE make shall reduce the limit of insurance of this policy

XS-4U192 (3/96)

Page 1 of 5

SPECIMEN FORM
From SSU

b. If none of the policies of UNDERLYING INSURANCE include Defense and/or Supplemental payment expenses within the limit of insurance, then any such expense payment WE make shall not reduce the limit of insurance of this policy.

## SECTION II (EXCLUSIONS)
## WHAT IS NOT COVERED BY THIS POLICY

This insurance does not apply:

A. To any injury, damage, expense, cost, loss, liability, or legal obligation arising out of or in any way related to asbestos or asbestos-containing materials.

B. 1. To any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.

   2. To any loss, cost or expense arising out of any:

      a. directive, request, demand or order that YOU or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

      b. claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of pollutants.

Except insofar as coverage is available to YOU in the UNDERLYING INSURANCE and for the full limits of liability shown therein, subparagraph 1 above does not apply to heat, smoke or fumes from a hostile fire:

   a. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to YOU; or

   b. at or from any premises, site or location on which YOU or any contractors or subcontractors working directly or indirectly on YOUR behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance, including pollutants, if such substance has or is alleged to have the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

Pollutants include any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

C. To any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances. This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

D. To any claim or claims arising out of the Employee Retirement Income Security Act (ERISA) of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, including any amendments or revisions thereto.

E. To any liability for injury or damages due to war, whether or not declared, or any act or condition incident to war. War includes civil war, acts of terrorism, insurrection, rebellion or revolution.

F. To any liability:

   1. With respect to which the insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability; or

   2. Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any aggreement entered into by the United States of America, or any agency thereof, with any person or organization; or

   3. Resulting from the hazardous properties of nuclear material, if:

      a. The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of the insured or (b) has been discharged or dispersed therefrom;

      b. The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the insured; or

XS-4U19a (3/96)

SPECIMEN FORM From SSU

Page 2 of 5

c. The injury or damage arises out of the furnishing by the insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to any property at the nuclear facility.

As used in this exclusion:

a. Hazardous properties include radioactive, toxic, or explosive properties;

b. Nuclear material means source material, special nuclear material, or byproduct material;

c. Source material, special nuclear material, and byproduct material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

d. Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e. Waste means any waste material (1) containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

f. Nuclear facility means:

   1. Any nuclear reactor;

   2. Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packaging waste;

   3. Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   4. Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste; and

   5. The site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. Property damage includes all forms of radioactive contamination of property.

We shall have no duty or obligation to provide or pay for the investigation or defense of any suit excluded in this section, and in connection therewith Defense Provisions and Supplemental Payments shall not apply.

SECTION III
DEFINITIONS

A. OCCURRENCE means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

B. OTHER INSURANCE means insurance, other than UNDERLYING INSURANCE, which has been provided to YOU and affords coverage with respect to injury or damage to which this policy also applies.

C. ULTIMATE NET LOSS means the amount paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with OUR written consent, after making proper deduction for all recoveries and salvages.

Defense expense payments shall be included within the ULTIMATE NET LOSS, provided that such expenses are included within the terms, conditions, and limits of insurance of any UNDERLYING INSURANCE.

D. UNDERLYING INSURANCE means the policy or policies of insurance as described in the Declarations and Schedule of Underlying Insurance forming a part of this policy.

E. WE, US and OUR means the company shown in the Declarations as providing this insurance.

F. YOU and YOUR means a person or organization who qualifies as an insured in all of the underlying policies.

SECTION IV
CONDITIONS

A. APPEALS

If YOU or any of the underlying insurers elect not to appeal a judgement in excess of the limits of liability afforded by the UNDERLYING INSURANCE, or any OTHER INSURANCE available to YOU, WE may elect to appeal. OUR limit of liability shall not be increased because of the appeal, except that WE will make the appeal at OUR cost and expense.

B. ASSIGNMENT

Interest in this policy may not be transferred to another, except by an endorsement issued by US which gives OUR consent. If YOU are bankrupt or insolvent or if YOU die, this policy shall cover YOUR legal representative(s), but only while acting within the scope of their duties as such.

C. BANKRUPTCY AND INSOLVENCY

Bankruptcy and insolvency of YOU, or YOUR estate will not relieve US of OUR obligations under this policy.

D. CANCELLATION

This policy may be cancelled by the first Named Insured by mailing to US written notice stating when such cancellation shall be effective.

This policy may be cancelled by US by mailing to the first Named Insured at YOUR last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the policy period.

If YOU cancel, earned premium shall be computed in accordance with the applicable short rate table or procedure. If WE cancel, earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation becomes effective. OUR check or the check of OUR representative mailed to YOU shall be sufficient proof of any refund or premium due YOU.

E. CHANGES

This policy may be changed only by an endorsement issued by US to form a part of the policy.

F. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

1. YOU must see to it that WE receive prompt written notice of an OCCURRENCE or an offense which may result in a claim. Notice should include:

   a. How, when and where the OCCURRENCE or offense took place;
   b. The names and addresses of any injured persons and witnesses.

2. If a claim is made or suit brought against YOU, YOU must see to it that WE receive written notice of the claim or suit as soon as practicable.

3. YOU and any other Involved Insured must:

   a. Immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or suit.
   b. Authorize US to obtain records and other information;
   c. Cooperate with US in the investigation, settlement or defense of the claim or suit;
   d. Assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to YOU because of injury or damage to which this policy may also apply.

4. YOU shall not make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or suit without OUR written consent.

G. INSPECTION AND AUDIT

WE shall be permitted but not obligated to inspect YOUR property and operations. Neither OUR right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of YOU or others, to determine or warrant that such property or operations are safe.

WE may examine and audit YOUR books and records during this policy period and extensions thereof and within three (3) years after the final termination of this policy.

H. LEGAL ACTION AGAINST US

No person or organization has a right under this policy to:

1. Join US as a party or otherwise bring US into a SUIT asking for damages from YOU;
2. Sue US, unless all of the terms of this policy have been fully complied with.

A person or organization may sue US to recover on an agreed settlement or on a final judgement against YOU obtained after trial. WE will not be liable for damages that are not payable under the terms of

XS-4U19a (3/96)

this policy or that are in excess of the applicable limit of this policy. An agreed settlement means a settlement and release of liability signed by US, YOU, and the claimant or the claimant's legal representative.

I. MAINTENANCE OF UNDERLYING INSURANCE

The policy or policies referred to in the Declarations and schedule of UNDERLYING INSURANCE or renewals or replacements thereof not more restrictive in coverage shall be maintained in full effect during this policy period, except for any reduction in the aggregate limits solely by payment of covered claims and/or claims expense.

If such UNDERLYING INSURANCE is not maintained in full effect, or if any limits of liability of UNDERLYING INSURANCE are:

1. less than as stated in the schedule of UNDERLYING INSURANCE; or
2. unavailable due to bankruptcy or insolvency of an underlying insurer; or
3. if there is any material change in the coverage of any UNDERLYING INSURANCE;

then the insurance afforded by this policy shall apply in the same manner as if such UNDERLYING INSURANCE and limits of liability had been in effect, available, so maintained and unchanged.

J. OTHER INSURANCE

If OTHER INSURANCE, whether collectible or not, is available to YOU covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such OTHER INSURANCE.

K. PREMIUM

Unless otherwise provided, the premium for this policy is a flat premium and is not subject to adjustment except as provided herein or amended by endorsement.

L. YOUR REPRESENTATIONS

By accepting this policy, YOU agree that:

1. The statements in the Declarations, Schedule of UNDERLYING INSURANCE, and Application for this policy are accurate and complete;
2. Those statements are based upon representations YOU made to US;
3. This policy has been issued in reliance upon YOUR representations.

M. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, this policy applies:

1. As if each insured were the only insured;
2. Separately to each insured against whom claim is made or suit brought.

N. SUBROGATION

In the event of any payment under this policy by US, WE shall be subrogated to all of YOUR rights of recovery against any person or organization, and YOU shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. YOU shall do nothing after loss to prejudice such rights.

The amount recovered through subrogation shall be apportioned in the inverse order of payment of the ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all recovery proceedings shall be apportioned in the ratio of respective recoveries.

WE have no duty to provide coverage under this policy unless YOU and any other involved insureds have fully complied with the conditions of this policy.

IN WITNESS WHEREOF, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.