# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., | ) | Case No. 00-389 (MFW) |
| *et al.*, | ) | Jointly Administered |
|     Debtors. | ) | |
| _____ | ) | |
| | ) | |
| IHS LIQUIDATING LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-376 (GMS) |
| | ) | |
| ACE INDEMNITY INSURANCE COMPANY | ) | |
| f/k/a INDEMNITY INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| IHS LIQUIDATING LLC, | ) | Civil Action No. 04-1262 (GMS) |
| | ) | |
|     Third Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | |
| GENERAL STAR INDEMNITY COMPANY | ) | |
| and ACE INDEMNITY INSURANCE | ) | |
| COMPANY f/k/a INDEMNITY INSURANCE | ) | |
| COMPANY OF NORTH AMERICA | ) | |
| | ) | |
|     Third-Party Defendants. | ) | |
| _____ | ) | |
| ACE INDEMNITY INSURANCE COMPANY | ) | |
| f/k/a INDEMNITY INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, | ) | |
| | ) | |
|     Third-Party Defendant and | ) | |
|     Fourth-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, and | ) | |
| GENERAL STAR INDEMNITY COMPANY, | ) | |
| | ) | |
|     Fourth-Party Defendants. | ) | |

_____

**CROSS-CLAIM DEFENDANT NATIONAL UNION'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT ON IICNA'S CROSS-CLAIM COMPLAINT**
_____

Christopher Page Simon (No. 3697)
CROSS & SIMON, LLC
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware  19801
Telephone:   (302) 777-4200
Facsimile:   (302) 777-4224

George G. Campion
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, NJ  07054-0438
Telephone:   (973) 403-1100
Facsimile:   (973) 403-0010

Gwynne A. Young
Florida Bar No. 185582
Frederick T. Hawkes
Florida Bar No. 307629
Carlton Fields, PA
P.O. Drawer 190
Tallahassee, FL  32302
Phone:   (850) 224-1585
Facsimile:   (850) 222-0398

Dated:  June 25, 2007
       Wilmington, DE

Counsel for Cross-Claim Defendant
National Union Fire Insurance Co. of
Pittsburgh, PA

# **TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................. ii

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ......................... 1

SUMMARY OF THE ARGUMENT ..................................................................... 4

STATEMENT OF FACTS ...................................................................................... 5

ARGUMENT:

   I. Standard For Summary Judgment ................................................................ 7

   II. National Union Is Entitled To Summary Judgment On The 1999
      Claims Which Have Been Withdrawn or Conceded by IICNA ......................... 8

   III. National Union Is Entitled To Summary Judgment On The 2000
       Claims Which Have Been Withdrawn or Conceded by IICNA ......................... 8

   IV. The Existing Cross-Claim Complaint Does Not Raise The Invalidity
       Of The Anti-Pyramiding Endorsements ........................................................... 10

CONCLUSION ...................................................................................................... 12

## TABLE OF CITATIONS

### FEDERAL CASES

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ............................................................................... 11

Elmer v. Tenneco Resins, Inc.,
    698 F.Supp. 535 (D. Del. 1988) ................................................................... 8

Goodman v. Mead Johnson & Co.,
    534 F.2d 566 (3d Cir. 1976) ......................................................................... 8

John Beaudette, Inc. v. Sentry Ins.,
    94 F. Supp. 2d 77 (D. Mass. 1999) .............................................................. 9

Marjac, LLC v. Trenk,
    2006 WL 3751395 (D. N.J. 2006) ............................................................. 11

Mata v. E.I. duPont DeNemours & Co.,
    456 F. Supp. 2d 612 (D. Del. 2006) ............................................................. 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ..................................................................................... 8

Thomas v. Independence Township,
    463 F.3d 285 (3d Cir. 2006) ....................................................................... 11

Reeves v. Sanderson Plumbing Prods, Inc.,
    530 U.S. 133 (2000) ..................................................................................... 8

### STATE CASES

Boyle v. Maryland State Fair,
    134 A. 124 (Md. Ct. Spec. App. 1926) ...................................................... 10

Cerny v. Cerny,
    31 A.2d 324 (Md. Ct. Spec. App. 1943) .................................................... 10

Greater New York Mut. Ins. Co. v. U.S. Underwriters Ins. Co.,
    36 A.D. 3d 441 (N.Y. App. Div. 2007) ..................................................... 10

Higgins v. Higgins,
    530 A.2d 724 (Md. 1987) .......................................................................... 10

INA of Texas v. Leonard,
    714 S.W. 2d 414 (Tex. Ct. App. 1986)............................................................... 9

Maryland Port Admin. v. John W. Brawner Contracting Co., Inc.
    492 A.2d 281 (Md. Ct. Spec. App. 1985)....................................................... 10

Minutemen Int'l, Inc. v. Great American Ins. Co.,
    2004 WL 603482 (M.D. Ill. 2004) .................................................................. 8

Surlak v. Surlak,
    95 A.D. 2d 371 (N.Y. App. Div. 1983) ......................................................... 10

## **STATUTES**

Fed. R. Civ. P. 56 ................................................................................................ 4, 5, 7, 8, 9

**STATEMENT OF NATURE AND STAGE OF PROCEEDINGS**

Integrated Health Services, Inc. ("IHS"), a national nursing home chain, filed for Chapter 11 bankruptcy protection in February 2, 2000. [Bankr. D.I. No. 1.][1] As part of the Amended Plan of Reorganization, IHS Liquidating, LLC ("IHS Liquidating") was created to, among other things, administer pre-petition claims against IHS that were covered by its insurance policies for claims arising in 1999.

During the period January 1, 1999 to January 1, 2000, IHS's first layer of professional/general liability insurance coverage was with Reliance National Indemnity Company. The first layer of excess coverage was with National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). The second layer of excess coverage was with General Star Indemnity Company ("GenStar"). The third layer of excess coverage was with Indemnity Insurance Company of North America ("IICNA"). On May 6, 2005, IHS Liquidating filed a complaint against IICNA seeking a declaration regarding IICNA's rights and obligations under IHS's 1999 IICNA policy. [Bankr. Adv. D.I. No. 1.] IICNA answered and filed a counterclaim against IHS Liquidating. [Bankr. Adv. D.I. No. 19.] IHS Liquidating answered and filed a Third-Party Complaint against National Union, GenStar, and IICNA. [Bankr. Adv. D.I. No. 20.] National Union, GenStar, and IICNA answered the Third-Party Complaint. [D.I. No. 10; D.I. No. 12; and Bankr. Adv. D.I. No. 22.] No cross-claims were filed at this time. None of these claims involved the 2000 IHS policies.

---

[1] References to the docket in the main bankruptcy case no. 00-389 (MFW) shall hereafter be designated "Bankr. D.I. No. ___." References to the docket in the bankruptcy adversary proceeding case no. 05-51318 (MFW) shall hereafter be designated "Bankr. Adv. D.I. No. ___" References to the docket in this district court action shall hereafter be designated as "D.I. No. ___."

1

On June 8, 2005, IICNA filed a Motion to Withdraw Reference. [D.I. No. 1.] On March 14, 2006, this Court granted that Motion. [D.I. No. 5.] On October 31, 2006, IICNA filed a Motion to Amend its Answer to the Third-Party Complaint and to Assert a Cross-Claim for Declaratory Judgment against National Union and GenStar for improper exhaustion of IHS's insurance policies for the 1999 policy year, and for the first time IICNA asserted claims involving the separate insurance policies of National Union and GenStar for the 2000 policy year and asserted that National Union and GenStar had improperly exhausted those policies as well. [D.I. No. 29.] On February 21, 2007, this Court orally granted the Motion to Amend. On February 28, 2007, the Amended Answer and Fourth-Party Complaint/Cross-claim were filed. [D. I. No. 57.] All claims against GenStar were dismissed by stipulation and Order of this Court on May 15, 2007.

Count I of IICNA's Cross-claim is captioned "Cross-claim for Improper Exhaustion for the 1999 Policies." In Count I, ICNA asserts four grounds for the alleged improper exhaustion of the 1999 Policies:

1. Improper payment of expenses incurred by National Union "in the defense of any suit or claims" asserted against IHS and allocated to the exhaustion of the 1999 IHS Main Policy's limits of liability [D.I. No. 57, ¶¶ 76, 90, prayer for relief (a).]

2. Improper payment of expenses and settlement amounts by National Union in defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 1999 IHS Main Policy's limits of liability. [D.I. No. 57, ¶¶ 76, 91, 92, 93, 94, prayer for relief (b).]

3. Improper payment of fees and expenses by National Union to Hamlin and Burton for administration of the 1999 IHS Main Policy [D.I. No. 57, ¶¶ 76, 95, prayer for relief (d).]

4. Improper payment by National Union in of Chapter 400 fees [D.I. No. 57, ¶ 76, prayer for relief (e).]

Count II of IICNA's Cross-claim is captioned "Cross-claim for Improper Exhaustion of the 2000 Policies." IICNA asserts three grounds for the alleged improper exhaustion of the 2000 Policies:

1. Improper payment of expenses and settlement amounts by National Union in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 2000 IHS Main Policy's limits of liability. [D.I. No. 57, ¶¶ 81, 82, 86, 101, 102, 103, prayer for relief (a).]

2. Improper payment of all amounts spent by National Union of fees and expenses to Hamlin and Burton for administration of the 2000 IHS Main Policy [D.I. No. 57, ¶ 86, prayer for relief (c).]

3. Improper payment by National Union of Chapter 400 fees [D.I. No. 57, ¶ 86, prayer for relief (d).]

IICNA has withdrawn its claims related to Hamlin and Burton fees and Chapter 400 fees as to both the 1999 and 2000 policies. (Hecht Depo. at 7-8, 48-50 (April 17, 2007); Appendix Filed With Opening Brief in Support of Motion for Summary Judgment at A.)[2]  IICNA, through its counsel, has also agreed to withdraw its claim that National

---

[2] References to National Union's appendix filed with its brief in support of motion for summary judgment shall hereafter be designated as "App. at ___."

Union improperly paid defense costs out of the policy limits of the 1999 IHS Main Policy. National Union has acknowledged that it owes additional coverage to IHS under the 1999 IHS of Lester Policy.[3] Thus all existing claims as between National Union and IICNA regarding the 1999 policy year have been withdrawn or otherwise resolved.

IICNA has also withdrawn its claim that personal injury claims against Lester facilities cannot be paid out of the 2000 IHS Main Policy. (Hecht Depo. at 34 (June 5, 2007); App. at A.) IICNA asserts that its only remaining claim for the 2000 policy year is that the anti-pyramiding endorsements should be invalidated, a claim which is not pled in IICNA's existing cross-claim. Discovery has closed and the deadline for filing dispositive motions is today, June 25, 2007.

## SUMMARY OF THE ARGUMENT

National Union moves for summary judgment, pursuant to Fed. R. Civ. P. 56, on IICNA's existing declaratory judgment cross-claim complaint [Doc. No. 57]. IICNA has conceded on its claims in Count I of its existing complaint that National Union improperly exhausted its policy limits by paying Hamlin and Burton administrative fees and Chapter 400 attorney's fees from the policy limits of the 1999 IHS Main Policy. IICNA has withdrawn through counsel its claim that National Union improperly exhausted its policy limits by paying defense costs from the policy limits of the 1999 IHS Main Policy. Accordingly, National Union is entitled to Final Summary Judgment in its favor and against IICNA on these three claims for the 1999 Policy period.

IICNA has also conceded that every claim in its existing crossclaim related to the 2000 IHS Main Policy and the 2000 Lester Policy has been "withdrawn," except that it

---

[3] The parties are close to resolving the mechanism for resolution of this issue and reducing the agreement to writing. This requires approval and consent by IHS Liquidating.

contends it has a claim challenging the validity of anti-pyramiding endorsements in the 2000 IHS Policies. These endorsements prevent the combining of the limits under the Main and Lester Policies. An examination of the existing cross-claim complaint demonstrates that this claim has not been pled. National Union is entitled to Final Summary Judgment in its favor and against IICNA on all claims asserted by IICNA in Count II of its existing cross-claim complaint related to the 2000 policy period.

## STATEMENT OF FACTS

The facts in this case at this juncture are not in dispute. National Union issued a Commercial Umbrella Policy (357-43-84), for January 1, 2000 to January 1, 2002 ("2000 IHS Main Policy"), to Integrated Health Services Inc., ("HIS")which contained limits of $25 million (per occurrence and aggregate), in excess of IHS' self-insured retention of $2 million/$14 million (occurrence/aggregate) limits. This Policy is attached to Vivian Cardamone's affidavit as Exhibit B. (App. at B.)

National Union also issued a Commercial Umbrella Policy (357-43-86), for January 1, 2000 to January 1, 2001, to IHS of Lester, Inc., a subsidiary of IHS, (2000 Lester Policy), with a $2 million (occurrence/aggregate) limit. The Policy is attached to Vivian Cardamone's affidavit as Exhibit C. (App. at B.)

The 2000 IHS Main Policy contains an anti-pyramiding endorsement (Endorsement #4), which provides:

> Non-Pyramiding of Limits Endorsement
>
> If damages covered by this policy are also covered in whole or in part by Policy Numbers 357-43-86 [2000 Lester Policy] and 357-43-88, our total Limits of Insurance under all policies combined shall be:
>
> $25,000,000        Each Occurrence Limit

5

|  |  |
|---|---|
| $25,000,000 | Each Medical Incident Limit |
| $25,000,000 | Products Completed Operations Aggregate Limit |
| $25,000,000 | Medical Professional Aggregate Limit |
| $25,000,000 | General Aggregate Limit |

The 2000 Lester Policy also contains an anti-pyramiding endorsement (also Endorsement #4) that is identical, except that it refers to the IHS 2000 Main Policy number. Thus, Endorsement #4 to each Policy on its face expressly limits <u>all</u> combined coverage for <u>all</u> IHS entities to $25 million for the 2000 policy period. Relying on these anti-pyramiding endorsements, National Union tendered to GenStar, the next excess carrier, the defense of the remaining IHS claims for 2000 upon exhaustion of National Union's $25 million limits.

In Count I of its existing cross-claim, IICNA has pled that National Union improperly paid Hamlin and Burton fees and expenses and Chapter 400 fees out of the limits of the 1999 IHS Main Policy (D.I. No. 57 at ¶¶ 76, 95 prayer for relief (d) and (e)). In Count II, IICNA has made identical allegations as to the 2000 IHS Main Policy (D.I. No. 57 ¶ 86, prayer for relief (c) and (d)). IICNA has withdrawn its claims related to Hamlin and Burton fees and Chapter 400 fees as to both the 1999 and 2000 policies. (Hecht Depo. at 7-8, 48-50 (April 17, 2007) ; App. at A.)

In Count II of its existing cross-claim, IICNA has pled that National Union improperly exhausted its policy limits by paying defense costs and settlements for Lester facilities out of the $25 million limits of the 2000 IHS Main Policy. (D.I. No. 57 at ¶94; 103). This claim is based on an earlier version of the Policy containing a Broad Named Insured endorsement, which incorrectly contained an exclusion for Lester claims. [D.I. No. 57, Exhibit E]. Discovery revealed that National Union issued a corrective Broad

6

Named Insured Amendatory endorsement to the IHS Main Policy, which deleted the Lester exclusion. (Cardamone Affidavit Exhibit B, Endorsement 5; App. at B.) Given that endorsement, it was entirely proper for National Union to pay Lester claims out of the 2000 IHS Main Policy. Neither the insured or GenStar have disputed this issue.

At his June 5, 2007, deposition, Dennis Hecht, IICNA's corporate representative, and IICNA's counsel both directly conceded on the record that all claims in IICNA's existing action had been withdrawn, and that its only remaining claim was a challenge to the validity of the anti-pyramiding endorsements:

> Mr. Deasey: [A]s counsel for IICNA, that claim [whether Lester facility claims could be paid from the main IHS Policy] is no longer a valid claim. Every claim has been withdrawn except the claim with respect to the non-pyramiding of limits.

Hecht Depo. at 34 (June 5, 2007). (App. at A.) Mr. Hecht similarly acknowledged that claims against Lester facilities were properly paid out of the Main IHS Policy. Id. at 35-36. (June 5, 2007).

## ARGUMENT

### I. Standard For Summary Judgment

Pursuant to Fed. R. Civ. P. 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether there is a triable dispute of material fact, a court reviews the evidence and construes all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).

To defeat a motion for summary judgment, Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal citations omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c); see Mata v. E.I. duPont DeNemours & Co., 456 F.Supp. 2d 612, 617-18 (D. Del. 2006).

## II. National Union Is Entitled To Summary Judgment On The 1999 Claims That Have Been Withdrawn Or Conceded by IICNA

IICNA has conceded and withdrawn its claims for Hamlin and Burton fees and Chapter 400 fees for the 1999 Policy Year. (Hecht Depo. 7-8, 48-49 (April 17, 2007); App. at A.) IICNA is withdrawing its claim that National Union improperly paid defense costs and settlement amounts out of the 1999 IHS Main Policy limits. For this reason, National Union is entitled to summary judgment in its favor and against IICNA on each of these three claims in Count I of the existing cross-claim. See Elmer v. Tenneco Resins, Inc., 698 F.Supp. 535, 538 (D. Del. 1988) (granting summary judgment on claim conceded by plaintiff).

## III. National Union is Entitled To Summary Judgment On the 2000 Claims Which Have Been Withdrawn Or Conceded by IICNA

In Count I of its existing cross-claim, IICNA has pled that National Union improperly paid Hamlin and Burton fees and expenses and Chapter 400 fees out of the limits of the 1999 IHS Main Policy. [D.I. No. 57 at ¶ 76, 95, prayer for relief (d) and (e).] In Count II, IICNA has made identical allegations as to the 2000 IHS Main Policy. [D.I. No. 57, ¶ 86, prayer for relief (c) and (d).] IICNA has withdrawn its 1999 and 2000

8

claims related to Hamlin and Burton fees and Chapter 400 fees. (Hecht Depo at 7-8, 48-50 (April 17, 2007); App. at A.)

The only other claim pled in Count II of IICNA's existing cross-claim is that National Union improperly exhausted the 2000 Policies by making payments for defense costs and settlements for Lester facilities within the IHS Main Policy $25 million limits. See IICNA's Cross-claim ¶¶ 76(b); 86(b); 94; 103. [D.I. No. 57.] This claim is based on the original version of the Policy which contained a Lester exclusion. It is undisputed, however, that a corrective endorsement was subsequently issued that deleted the Lester exclusion. (Cardamone Affidavit Exhibit B, Endorsement 5; App. at B.)

As a matter of law, the later endorsement controls over the earlier endorsement. Case law, as well as treatises, consistently determine that an endorsement later in time controls over an earlier inconsistent endorsement. See Minutemen Int'l, Inc. v. Great American Ins. Co., 2004 WL 603482 (M.D. Ill. 2004) ("If there are two inconsistent endorsements and one endorsement is subsequent to the other endorsement, the later endorsement generally will control."); INA of Texas v. Leonard, 714 S.W.2d 414 (Tex. Ct. App. 1986) (noting that while cases generally involve conflicts between initial policy and later endorsements, where the conflict is between endorsements, this distinction makes no difference, and the later in time will supersede the earlier endorsement); J. Appleman, 13A INSURANCE LAW AND PRACTICE, §7535 (rev. ed. 1976); COUCH ON INSURANCE, §21:21 (3d ed. 2006); John Beaudette, Inc. v. Sentry Ins. Co., 94 F. Supp. 2d 77, 142 n. 90 (D. Mass. 1999) (quoting Appleman's Insurance Law to the effect that, "The last in point of time is controlling," where there are several endorsements).

9

Understandably, IICNA has now candidly conceded that personal injury claims against Lester facilities were properly paid out of the IHS Main Policy $25 million limits. (See Hecht Depo. at 34-36 (June 5, 2007); App. at A.) Since there is no disputed issue as to whether Lester facility claims could be paid out of the Main IHS Policy, National Union is entitled to summary judgment on this issue. In fact, IICNA concedes these claims are all "withdrawn." See Elmer.

### IV. The Existing Cross-Claim Complaint Does Not Raise The Invaliditity Of The Anti-Pyramiding Endorsements

Count II of the existing cross-claim complaint pleads no facts to show any reason why the anti-pyramiding endorsements should be invalidated, nor is any such relief sought. In fact, the existing cross-claim contains no reference to the anti-pyramiding provisions at all.

IICNA's unpled claim that the anti-pyramiding provision is invalid is of necessity a reformation claim. In order to state a cause of action for reformation of a written document, the mutual mistake relied on as the ground for reformation must be alleged in clear and positive terms. Boyle v. Maryland State Fair, 134 A. 124 (Md. Ct. Spec. App. 1926). A pleading that fails to allege any recognized ground for reformation fails to state a cause of action for reformation. See Greater New York Mut. Ins. Co. v. U.S. Underwriters Ins. Co., 36 A.D.3d 441 (N.Y. App. Div. 2007); Higgins v. Barnes, 530 A.2d 724 (Md. 1987); Surlak v. Surlak, 95 A.D.2d 371 (N.Y. App. Div. 1983); Maryland Port Admin. v. John W. Brawner Contracting Co., Inc., 492 A.2d 281 (Md. Ct. Spec. App. 1985); Cerny v. Cerny, 31 A.2d 324 (Md. Ct. Spec. App. 1943). A specific request for relief by reformation must be made and requires "proof of the highest order" establishing the claim "clearly and beyond doubt," well in excess of a preponderance

10

standard.  Higgins, 530 A.2d at 726-28.  Nowhere does IICNA mention, even in passing, these endorsements or their invalidity.

Under the pleading standards now established by Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), IICNA must allege "enough facts to state a claim for relief that is plausible on its face." Id. at 1974. Notice of the basic facts and circumstances underlying a claim must be given.  See also Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006); Marjac, LLC v. Trenk, 2006 WL 3751395 (D. N.J. 2006).

Because IICNA's existing cross-claim complaint states no facts to show any reason why the anti-pyramiding endorsements are invalid nor seeks such relief, IICNA has not met the pleading standards established in Twombly.  Without an amendment of its cross-claim complaint by IICNA, National Union is entitled to Final Summary Judgment on Count II of the existing cross-claim in its entirety, and entry of final judgment in its favor denying all IICNA's requests for relief in Count II.

## **CONCLUSION**

Based on the foregoing, Final Summary Judgment should be entered in National Union's favor on IICNA's cross-claim complaint.

Dated: June 25, 2007  
       Wilmington, Delaware

CROSS & SIMON, LLC

By: /s/ Christopher P. Simon  
    Christopher Page Simon (No. 3697)  
    913 N. Market Street, 11th Floor  
    P.O. Box 1380  
    Wilmington, Delaware  19801  
    Telephone:   (302) 777-4200  
    Facsimile:    (302) 777-4224

    -and-

    George G. Campion  
    Weiner Lesniak, LLP  
    629 Parsippany Road  
    Parsippany, NJ  07054-0438  
    Telephone:   (973) 403-1100  
    Facsimile:    (973) 403-0010

    -and-

    Gwynne A. Young (FBN: 185582)  
    Frederick T. Hawkes (FBN: 307629)  
    Carlton Fields, PA  
    P.O. Drawer 190  
    Tallahassee, FL  32302  
    Phone:         850-224-1585  
    Facsimile:    850-222-0398