# APPENDIX

# EXHIBIT "A"

# HECHT DEPOSITION
# PAGES 7 - 8, 48 - 50

# APRIL 17, 2007

```
            IN THE UNITED STATES DISTRICT COURT
                   DISTRICT OF DELAWARE
                        -  -  -


INTEGRATED HEALTH SERVICES, INC.,: Chapter 11
et al                            :  NO. 00-389(MFW)
                                    (JOINTLY ADMINISTERED)

----------------------------------------------------

IHS LIQUIDATION, LLC,                :  CIVIL ACTION
                Plaintiff            :
           vs.                       :
ACE INDEMNITY INSURANCE COMPANY      :
f/k/a INDEMNITY INSURANCE COMPANY    :
OF NORTH AMERICA,                    :
                Defendant            :  NO. 05-376(GMS)

----------------------------------------------------

IHS LIQUIDATING, LLC,                :
      Third-Party Plaintiff          :
           vs.                       :
NATIONAL UNION FIRE INSURANCE        :
COMPANY OF PITTSBURGH, PA; GENERAL   :
STAR INDEMNITY COMPANY; and ACE      :
INDEMNITY INSURANCE COMPANY f/k/a    :
INDEMNITY INSURANCE COMPANY OF       :
NORTH AMERICA,                       :
      Third-Party Defendants         :
----------------------------------------------------
ACE INDEMNITY INSURANCE COMPANY      :
f/k/a INDEMNITY INSURANCE COMPANY    :
OF NORTH AMERICA,                    :
   Third-Party and Fourth-Party      :
                Plaintiff            :
           vs.                       :
NATIONAL UNION FIRE INSURANCE        :
COMPANY OF PITTSBURGH, PA and        :
GENERAL STAR INDEMNITY COMPANY,      :
      Fourth-Party Defendants        :
----------------------------------------------------
```

Page 6

EXHIBITS (continued)

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Hecht-22 | Email chain starting 4/22/03 3:53 p.m., ending 4/25/03 11:47 a.m. | 215 |
| Hecht-23 | Email chain starting 2/26/03 10:23 a.m., ending 4/25/03 12:13 p.m. | 218 |
| Hecht-24 | Fax cover sheet dated 3/16/04 to Paul Hamlin from Ken Llano with attachment | 223 |

- - -

Page 7

1      - - -
2          PROCEEDINGS
3      - - -
4      (It is hereby stipulated and
5   agreed by and among counsel for the
6   respective parties that the filing,
7   sealing and certification of the
8   deposition are waived; and it is
9   agreed that all objections, except as
10  to form, are reserved until the time
11  of trial.)
12     - - -
13     DENNIS HECHT, after having been
14  first duly sworn, was examined and
15  testified as follows:
16     - - -
17     MR. FITZMAURICE: For the record,
18  my name is Daniel FitzMaurice. I
19  represent General Star, which is a
20  third-party defendant in the IHS
21  Liquidating ancillary matter in the
22  Delaware District Court.
23     Before we began today's
24  deposition after a long hiatus or a

Page 8

1   hiatus anyway where Mr. Valentino
2   [sic] met with his client, he came in
3   and advised us that they, ACE, will
4   be withdrawing certain claims in this
5   litigation. In particular -- and
6   Mr. Valentino [sic] can correct me if
7   I get this wrong -- they will
8   withdraw as to both General Star and
9   AIG, the Chapter 400 fees claimed and
10  all claims relating to Hamlin &
11  Burton fees.
12     Is that correct?
13     MR. VALENTINI: That is correct.
14  It's Valentini.
15     MR. FITZMAURICE: Valentini. I
16  apologize.
17     MR. VALENTINI: No problem.
18     MR. FITZMAURICE: And, in
19  addition, Mr. Valentini asserted that
20  he is producing Mr. Hecht as a
21  30(b)(6) designee. We have noticed
22  that deposition for tomorrow as has
23  AIG.
24     Mr. Valentini, if I get his

Page 9

1   comments correct, has indicated that
2   he will produce Mr. Hecht only once
3   for both notices, both the -- I
4   should be clear on that. There are
5   three notices: First, his personal
6   notice, which was noticed for today;
7   and then, secondly, two notices, our
8   30(b)(6) notice and the AIG 30(b)(6)
9   notice.
10     Is that correct, Mr. Valentini?
11     MR. VALENTINI: It is correct
12  with one caveat that I will place on
13  the record.
14     And, Gwynne, you may very well
15  have done this, that is, serve a
16  notice of that of AIG. I have not
17  seen it. Until you said it, I was
18  unaware that a Notice of Deposition
19  was served by your office. I will
20  take your word. I just haven't seen
21  it.
22     MS. YOUNG: We will get you a
23  copy of it. But it was served, and I
24  think Ward was aware of it.

3 (Pages 6 to 9)

Dennis Hecth-1                                                                     IHS v. Ace

April 17, 2007

Page 46

1  system?
2  A.  Yes.
3  Q.  Is there someone at ACE who is
4  responsible for monitoring the litigation that is
5  pending in the District Court in Delaware?
6  A.  I am.
7  Q.  And have you had that responsibility
8  from the outset of that litigation?
9  A.  Yes.
10 Q.  And were you also responsible for the
11 litigation that was brought in Florida, relating to
12 IHS and involving AIG and General Star?
13 A.  Not solely, no.
14 Q.  Who else was responsible for that?
15 A.  Dennis Madea was aware of that,
16 certainly. I believe our corporate counsel was as
17 well.
18 Q.  Who is your corporate counsel?
19 A.  Kathleen Morrison, two Rs.
20 Q.  And does Kathleen Morrison have any
21 responsibility for the litigation in Delaware?
22 A.  She is aware of it.
23 Q.  At the outset of this deposition,
24 your counsel advised us that, among other things,

Page 47

1  IICNA was dropping claims relating to the Chapter
2  400 fees.
3         Are you familiar with that?
4  A.  Am I familiar with --
5  Q.  The fact that IICNA is dropping those
6  claims.
7  A.  I am.
8  Q.  Are you the person who made that
9  decision to drop those claims?
10 A.  I am.
11 Q.  Why did you decide to drop those
12 claims?
13        MR. VALENTINI: Well, let me
14     just object here. I am going to
15     object and instruct the witness not
16     to answer particularly to extent that
17     it calls for him to reveal
18     attorney-client communications.
19 BY MR. FITZMAURICE:
20 Q.  Aside from anything that your
21 attorneys advised you with respect to the Chapter
22 400 fees, why did you drop that claim?
23 A.  I am not sure I can answer that.
24 Q.  So we are clear on the record, what

Page 48

1  did you understand Chapter 400 to refer to?
2  A.  The Chapter 400, my understanding of
3  it at any rate, is a statute in Florida that deals
4  with nursing homes in general, regulates or
5  purports to regulate their responsibilities with
6  respect to residents in nursing homes and
7  establishes levels of, I guess, behavior and
8  penalties for violating those statutory
9  requirements.
10 Q.  Are you aware of any claim in which
11 General Star paid indemnity on behalf of IHS for a
12 Chapter 400 fee penalty?
13        MR. VALENTINI: I am going to
14     object, Dan. I am not sure I
15     understand the relevance of the
16     question given that we are dropping
17     the claim.
18 BY MR. FITZMAURICE:
19 Q.  You can answer.
20        MR. VALENTINI: Go ahead. You
21     can answer.
22        THE WITNESS: Okay. At this
23     point, I can't identify a specific
24     claim, and we haven't completed our

Page 49

1      review of all of the files, either,
2      so...
3          MR. FITZMAURICE: I should have
4      asked this before, Jerry. When you
5      say you are dropping those claims,
6      are you dismissing them with
7      prejudice?
8          MR. VALENTINI: Yes. As I
9      just -- for the record, since I think
10     we had this discussion before we went
11     on the record, I will state it for
12     the record that we will be
13     withdrawing our claims with prejudice
14     with respect to the allegedly
15     improper erosion based on the payment
16     of Chapter 400 fees and all claims
17     with respect to the payment of Hamlin
18     Burton, the administrative fees.
19         MR. FITZMAURICE: Good.
20         MR. VALENTINI: And I will state
21     further that what I said earlier off
22     the record, I will now state on the
23     record, that we are in the process of
24     formulating a stipulation to that

Page 50

1  effect which we will certainly
2  circulate to you. If I can get it
3  done today -- my associate is in the
4  process of drafting that, as we
5  speak, and finalizing it. And if we
6  can get it here today, I will do
7  that, and we will file the record
8  with the court.
9       MS. YOUNG: Just for the record,
10  that is dismissing these claims as to
11  both General Star and National Union?
12       MR. VALENTINI: That is correct.
13       MR. FITZMAURICE: Why don't we
14  take a short break.
15       (There was a break at this time.)
16       MR. FITZMAURICE: Back on the
17  record.
18  BY MR. FITZMAURICE:
19  Q.    We were talking about the world of
20  files and records a minute ago. You have talked
21  about the underwriting files and the claim files.
22       Do you know if IICNA maintains any
23  other types of files in relationship to the IHS
24  policies it underwrote?

Page 51

1  A.    I am not sure I understand the
2  question.
3  Q.    Okay.
4  A.    With respect to the policies or the
5  claims or --
6  Q.    Sure. Let me broaden that and just
7  say with respect to IHS.
8       MR. VALENTINI: So the question
9       is what's the universe of files that
10       IICNA maintains?
11       MR. FITZMAURICE: Yes.
12  BY MR. FITZMAURICE:
13  Q.    You have described underwriting
14  files; you have described claim files. Are there
15  any other records that you are aware of that IICNA
16  has with respect to IHS?
17  A.    I believe --
18       MR. VALENTINI: Just note my
19       objection to the form. I am really
20       not sure whatever records there are.
21       But go ahead.
22       THE WITNESS: I am sure my boss
23       has his own file. I don't know how
24       extensive that is or what it

Page 52

1  contains. Who else might have a file
2  on the claims or underwriting, I
3  don't know.
4  BY MR. FITZMAURICE:
5  Q.    Okay. Have you ever communicated
6  personally with any of IICNA's reinsurers with
7  respect to IHS?
8  A.    I have.
9  Q.    Okay. And have you communicated in
10  writing or email, some form other than verbally?
11  A.    I have.
12  Q.    Do you keep records of those
13  communications?
14  A.    If there is a transfer of specific
15  information, generally I do. If it's just, you
16  know, I am going to be in the office to look at the
17  file, no, I don't.
18  Q.    Okay. Where would you keep any
19  correspondence or emails you might have had with
20  reinsurers about IHS?
21  A.    To the extent there are any, they
22  would be in the master file.
23  Q.    Okay. And what else is in the master
24  file?

Page 53

1       MR. VALENTINI: Well, I think
2       he's already testified.
3       THE WITNESS: I thought I already
4       answered that.
5       MR. VALENTINI: About --
6       MR. FITZMAURICE: I may have
7       misunderstood.
8  BY MR. FITZMAURICE:
9  Q.    Is the master file also what you
10  referred to as the aggregate?
11  A.    I am sorry. Yes. That's my error.
12  I use them interchangeably. Let's just stick with
13  aggregate file. And the reinsurer communications
14  would be in the aggregate file.
15  Q.    And without telling me any of the
16  content, where would be located your communications
17  with your counsel about IHS?
18  A.    They could be or certainly would be
19  in the aggregate file. There may be some
20  communications -- in fact, there are some
21  communications in specific resident files.
22  Q.    Let me be specific. I am referring
23  in particular to the monitoring counsel. Where do
24  you keep those communications?

# HECHT DEPOSITION
# PAGES 34 - 36

# JUNE 5, 2007

Page 1

```
         UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE
             CASE NO.: 00-389 (MFW)
```

In re:
Integrated Health Services, Inc., et al.
       Debtors.
_____/
IHS LIQUIDATING LLC,
       Plaintiff,
v.
ACE INDEMNITY INSURANCE COMPANY
f/k/a INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA,
       Defendant.
_____/
HIS LIQUIDATING LLC,
       Third-Party Plaintiff
v.
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, GENERAL STAR INDEMNITY
COMPANY and ACE INDEMNITY INSURANCE
COMPANY f/k/a INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA
       Third-Party Defendants.
_____/
ACE INDEMNITY INSURANCE COMPANY
f/k/a INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA,
       Third-Pary Defendant and

       Fourth-Party Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY

OF PITTSBURGH, PA, and GENERAL STAR

INDEMNITY COMPANY,

       Fourth-Party Defendants



            DEPOSITION OF DENNIS HECHT

217e0e8f-2259-4af9-ace6-39dc00042cf7

Page 2

DEPOSITION OF DENNIS HECHT

The deposition of DENNIS HECHT, taken on behalf of Third-Party Defendant/Fourth-Party Defendant, National Union Fire Insurance Co. of Pittsburgh, PA (National Union), at 500 colonial Center Parkway, Suite 200, Roswell, Georgia 30076, commencing at 10:22 a.m. and ending at 11:31 a.m., on Tuesday, June 5, 2007, before Tina Henry, CCR, and Notary Public in and for the State of Georgia at Large, Georgia CCR No. B-2385.

Reported by:
Tina Henry, CCR
State of Georgia
Esquire Deposition Services
Atlanta Office   Job #424213
Phone - 800.787.5302
        404.872.7890

217e0e8f-2259-4af9-ace6-39dc00042cf7

1    A.    I'm sorry, I don't recall the

2    Q.    If there was a amendatory endorsement, you know, as indicated by Lockton and in Lockton's files which has been produced to you by both Lockton and AIG which shows that the Lester exclusion was deleted from the broad named insured, on what basis does your company continue to take the position that IHS of Lester claims were not properly payable from the 2000 AIG main policy?

10   A.    I believe it came to our attention at some --

12   MR. DEASEY:  Before you answer, you mean as we sit here today?

14   MS. YOUNG:  As we sit here today, you know, knowing that there had been issued an amendatory endorsement in 2002 that deleted the Lester exclusion on what does he base his position that claims for IHS of Lester are not payable under the main policy?

20   MR. DEASEY:  I can let him answer, but as counsel for IICNA, that claim is no longer a valid claim.  Every claim has been withdrawn except the claim with respect to the non pyramiding of limits.  Is that what you're getting at?

217e0e8f-2259-4af9-ace6-39dc00042cf7

1       MS. YOUNG: Yeah, that's what I'm getting
2   at. Because I had not been advised that you had
3   withdrawn that claim.
4       MR. DEASEY: Yeah. I sent you an e-mail.
5   At your request I sent you an e-mail that the
6   only issue left is the IHS of Lester non
7   pyramiding of limits endorsement for 2000. But,
8   anyway, I mean, having said that, you can answer.
9 BY MS. YOUNG: (Resuming)
10      Q. So this is -- Just, you know, on the record,
11  if I'm understanding what your counsel has stated on
12  the record, your position today is you now acknowledge
13  that IHS of Lester claims were properly payable under
14  the IHS main policy for the year 2000?
15      A. With respect -- well, with the exception
16  that IHS of Lester has separate coverage and has its
17  own policy separate and apart from the -- from the IHS
18  policies. I mean, that's still an issue, whether or
19  not -- as I understand it, whether or not the claims
20  should be payable from that policy or from the --
21  directly from the main column of policies for IHS.
22      Q. Okay.
23      MR. DEASEY: Let's go off the record for a
24  second.
25      (Whereupon, an off-the-record discussion

1      took place outside the presence of the deponent,
2      and a brief break was taken.)
3  BY MS. YOUNG:   (Resuming)
4      Q.   We may have just short-circuited the balance
5  of this deposition.  But as I understand it, just so
6  we can confirm it for the record, you, Mr. Hecht, and
7  your counsel have advised me that at this point ACE
8  will acknowledge that IHS of Lester claims can be paid
9  under the IHS 2000 main policy.  And I'm going to ask
10 you a follow-up question, so just answer that one, if
11 you would.
12     A.   That's -- That's certainly a possibility,
13 yes.
14     Q.   Okay. And that, you know, that at this
15 point your -- you still, however, contend that there
16 should be additional coverage available under the
17 separate 2000 IHS of Lester policy for IHS of Lester
18 claims?
19     A.   I believe our contention is that there's --
20 I think everyone's acknowledged that there is a
21 separate IHS of Lester policy.  Our contention is that
22 that policy is a stand-alone policy and should be
23 exhausted before there's any consideration for a
24 payment of any IHS of Lester claims under the IHS --
25 or I guess the IHS main column of insurance.