# APPENDIX

# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

In re:

Integrated Health Services, Inc., et al.,

       Debtors.

_____/

Case No. 00-389 (MFW)
Jointly Administered

IHS LIQUIDATING LLC,
       Plaintiff,

v.

ACE INDEMNITY INSURANCE COMPANY
f/k/a INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA,

       Defendant.

_____/

Civil Action No. 05-376
(GMS)

IHS LIQUIDATING LLC,

       Third Party Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, GENERAL STAR
INDEMNITY COMPANY and ACE INDEMNITY
INSURANCE COMPANY f/k/a INDEMNITY
INSURANCE COMPANY OF NORTH AMERICA

       Third-Party Defendants.

_____/

Civil Action No. 04-1262 (GMS)

ACE INDEMNITY INSURANCE COMPANY
f/k/a INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA,

       Third-Party Defendant and
       Fourth-Party Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, and
GENERAL STAR INDEMNITY COMPANY,

       Fourth-Party Defendants.

## AFFIDAVIT OF VIVIAN CARDAMONE

BEFORE ME appeared Vivian Cardamone, who after being first duly sworn, states as follows:

1. My name is Vivian Cardamone. I am over the age of 18 years and am otherwise competent to give this affidavit.

2. I am currently employed by American Home Assurance Company, a member company of American International Group, Inc., in the Excess Casualty Underwriting Division as an Underwriting Specialist. I have been employed in that capacity since May 30, 2000.

3. Part of my job as an Underwriting Specialist is to issue certified copies of insurance policies as they may be requested from time to time. In late 2004, we were asked by Lockton Insurance Brokers Inc.("Lockton"), the insured's broker, to produce certified copies of certain policies issued to Integrated Health Services Inc. and Integrated Health Services of Lester Inc. for the 1999 and 2000 Policy years. I was assigned to complete this task.

4. I reviewed the underwriting files and produced certified copies of those policies to David Jones of Lockton by letter dated January 24, 2005. A copy of that letter is attached to this Affidavit as Exhibit A.

6. A complete copy of IHS Policy # BE 3574384 effective1/1/00-02 ("2000 IHS Main Policy") is attached to this Affidavit as Exhibit B.

7. A complete copy of IHS of Lester Policy # BE 3574386 effective 1/1/00-02 ("2000 IHS of Lester Policy") is attached to this Affidavit as Exhibit C.

**[Signature on Following Page]**

This concludes my affidavit.

Vivian Cardamone

SWORN to and subscribed before me this 25th day of June, 2007, by Vivian

Cardamone.

Edward J. Kennelly

Notary Public, State of New York
Personally Known _____
Produced Identification _____
Type _____

EDWARD J. KENNELLY
Notary Public, State of New York
No. 02KE4946528
Qualified in Westchester County
Commission Expires Feb. 6, 2008

# EXHIBIT A

AMERICAN INTERNATIONAL GROUP
EXCESS CASUALTY DIVISION
175 WATER STREET, 21ST FL.
NEW YORK, NY 10038

VIVIAN CARDAMONE
UNDERWRITING SPECIALIST
PHONE: 212-458-3494
FAX: 212-458-5773



January 24, 2005

David Jones
Insurance and Risk Management Specialist
Lockton Insurance Brokers Inc.
725 South Figueroa  35 FL
Los Angeles, Ca  90017

Re: IHS Accounts
Integrated Health Services Inc  of Lester Policy # BE 3574344 Eff 1/1/99-00
Integrated Health Services Inc of Lester Policy #  BE 3574386 Eff 1/1/00-01
Integrated Health Services Inc Policy # BE 3574343 Eff 1/1/99-00
Integrated Health Services Inc Policy # BE 3574384 Eff 1/1/00-02

Dear David:

Attached are the certified copies of the IHS accounts requested by your office. I have issued one
certified copy for each of the accounts. We did not want to have too many certified copies out
there.

We amended the following policies as requested by Lockton and agreed to by AIG:

IHS Policy # BE 3574343 Eff 1/1/99-00
Added Endt # 16 correcting the Prof Liab Form # shown on the Form Schedule.

IHS Policy # BE 3574384 Eff 1/1/00-02
No changes. However we did not include endorsement # 27 which was sent by pur office. We did
not have any record of it in our file.

IHS of Lester -Policy # BE 3574344 Eff 1/1/99-00
Added Endorsement # 16 which amended the Prof Liab to be FF.
Added Endorsement # 17 which amended the limit of liability to 2,000,000.
Added Endorsement # 18 which deletes the claims made endorsements on the policy.
Added Endorsement # 19 which includes defense inside the limit.

NU-U/W 00471

<u>IHS of Lester -Policy # BE 3574386 Eff 1/1/00-02</u>
Added Endorsement # 21 which deletes the claims made endorsements on the policy
Added Endorsement # 22 which amends the NI
Added Endorsement # 23 amends the mailing address
Added Endorsement # 24 which includes defense inside the limit wording.
Added Endorsement # 25 which corrects the Retained Limit wording.

We amended the policy to reflect T & C as expiring for the BE 3574344 . We did not delete the
Non Pyramiding of Limits Endt and Retained Limit Endt as that was not agreed for both this
account and the Integrated Health Services BE 3574384.

Please review policies and let me know if you have any questions.

Sincerely,


Vivian Cardamone
Excess Casualty Division – National Accounts

NU-U/W 00472

# EXHIBIT B

## FORMS SCHEDULE

NAMED INSURED: INTEGRATED HEALTH SERVICES INC    EFFECTIVE DATE: 01/01/00

POLICY NO: BE 357-43-84

1. RETAINED LIMIT AMENDMENT ENDORSEMENT
2. RETAINED LIMIT
3. LIMITS OF INSURANCE
4. 64671 (3/96)
5. BROAD NAMED INSURED
6. 60417 (5/94)
7. 60434 (5/94)
8. 62222 (3/95)
9. 62224 (3/95)
10. 62662 (5/95)
11. CLUBS
12. CONTRACTUAL-AUTOMOBILE
13. INTENTIONAL INJURY-AMENDATORY
14. NOTICE OF OCCURRENCE
15. CLAIMS MADE-RETROSPECTION DATE
16. CLAIMS MADE-EXTENDED REPORTING PERIOD OPTION
17. LIMITS OF LIABILITY
18. 71762 (9/98)
19. 65581 (6/96)

BN054128.D00

NU-U/W 02091



# COMMERCIAL UMBRELLA DECLARATIONS

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

**POLICY NUMBER:** BE  357-43-84.

**RENEWAL OF:** BE  3574343

**PRODUCER NAME:** LOCKTON COMPANIES

**ADDRESS:**  P O BOX 419351

KANSAS CITY      MO  64141-6351

**ITEM 1.  NAMED INSURED:** INTEGRATED HEALTH SERVICES INC

**ADDRESS:**  10065 RED RUN BLVD

OWINGS MILLS    MD 21117-4827

**ITEM 2.  POLICY PERIOD: FROM:** January 01, 2000    **TO:** January 01, 2002    AT
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.  LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

A.    See Endorsement #3  Each Occurrence

B.    See Endorsement #3  General Aggregate (in accordance with Section III, Limits of Insurance)

C.    See Endorsement #3  Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance)

D.    N/A    Self Insured Retention

**ITEM 4.  PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE/ PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $1,900,000 | $1,900,000 |

**ITEM 5.  ENDORSEMENTS ATTACHED:  SEE ATTACHED SCHEDULE**

COUNTERSIGNED _____    BY _____
DATE                      AUTHORIZED REPRESENTATIVE

57696 (8/93)

NU-U/W 02092

## Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word "**Insured**" means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### Insuring Agreements

**I.    Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured**, then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

**II.   Defense**

**A.**   We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

**1.**   The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

**2.**   Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

**B.**   When we assume the defense of any claim or suit:

**1.**   We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

**2.**   We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured**:

**a.**   premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

**b.**   premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

**c.**   all costs taxed against the **Insured** in any claim or **suit** we defend;

    **d.**    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    **e.**    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    **f.**    the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## III.    Limits of Insurance

**A.**    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    **1.**    **Insureds;**

    **2.**    Claims made or **suits** brought; or

    **3.**    Persons or organizations making claims or bringing **suits**.

**B.**    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    **1.**    Damages included in the **Products-Completed Operations Hazard**; and

    **2.**    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

**D.**    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence**.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    **1.**    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    **2.**    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**NU-U/W 02094**

E.    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

## IV.    Definitions

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

C.    **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.    It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

2.    Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

1.    The **Named Insured,** meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

b.    any organization newly acquired, controlled or formed by you during the policy period but only:

1) as respects **Occurrences** taking place after you acquire, take control or form such organization;

2) if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3) if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4. Any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5. Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6. Any person, other than one of your employees, or organization while acting as your real estate manager.

7. Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

   a. liability arising out of operations conducted by you or on your behalf; or

   b. facilities owned or used by you.

8. Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your behalf and used with your permission.

   However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F. **Insured Contract** means any oral or written contract or agreement entered into by and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

   1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2. Vehicles maintained for use solely on or next to premises you own or rent;

3.    Vehicles that travel on crawler treads;

4.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.    power cranes, shovels, loaders, diggers or drills; or

    b.    road construction or resurfacing equipment such as graders, scrapers or rollers;

5.    Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.    cherry pickers and similar devices used to raise or lower workers;

6.    Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

    a.    equipment designed primarily for:

        1)    snow removal;

        2)    road maintenance, but not construction or resurfacing; or

        3)    street cleaning;

    b.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H.  **Occurrence** means:

1.    As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**;

2.    As respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3.    As respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I.  **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1.    False arrest, detention or imprisonment;                    **NU-U/W 02097**

2.    Malicious prosecution;

3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

J. 1. **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    **a.**    products that are still in your physical possession; or

    **b.**    work that has not yet been completed or abandoned.

2. **Your Work** will be deemed completed at the earliest of the following times:

    **a.**    When all of the work called for in your contract has been completed.

    **b.**    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **c.**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    **a.**    the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    **b.**    the existence of tools, uninstalled equipment or abandoned or unused materials.

K. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

L. **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

M. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **a.**    you;

    **NU-U/W 02098**

    **b.**    others trading under your name; or

    **c.**    a person or organization whose business or assets you have acquired; and

    2.    Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

    1.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

    2.    The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.**    **Your Work** means:

    1.    Work or operations performed by you or on your behalf; and

    2.    Materials, parts or equipment furnished in connection with such work or operations.

**O.**    **Your Work** includes:

    1.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

    2.    The providing of or failure to provide warnings or instructions.

**V.**    **Exclusions**

This insurance does not apply to:

**A.**    Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.**    Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.**    Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.**    **Property Damage** to :

    1.    Property you own, rent, occupy or use;

    2.    Personal property in the care, custody or control of the **Insured**.

**E.**    **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

    1.    A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

    2.    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.**    **Property Damage** to **Your Product** arising out of it or any part of it.

**G.**    **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

NU-U/W 02099

57697 (5/93)

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  **Your Product;**

2.  **Your Work;** or

3.  **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J. **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K. **Personal Injury** or **Advertising Injury:**

1.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

2.  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

3.  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

4.  For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

**NU-U/W 02100**

L. **Advertising Injury** arising out of:

1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

2.  The failure of goods, products or services to conform with advertised quality or performance;

3.  The wrong description of the price of goods, products or services; or

4.  An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

57697 (6/93)

**M.  1.  Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

a.  Heat, smoke or fumes from a hostile fire;

b.  The upset, overturn or collision of a motor vehicle; or

c.  The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

a.  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

b.  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.  Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.  Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.**

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.  1.  Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.  Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

NU-U/W 02101

57697 (6/93)

**Q.**   **Bodily Injury** or **Personal Injury** to:

    **1.**   A person arising out of any:

        **a.**   Refusal to employ that person;

        **b.**   Termination of that person's employment; or

        **c.**   Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **2.**   The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b., or c. above is directed.

This exclusion applies:

    **1.**   Whether the **Insured** may be liable as an employer or in any other capacity; and

    **2.**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.**   **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    **1.**   The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    **2.**   Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    **3.**   Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.**   **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    **1.**   Causing or contributing to the intoxication of any person;

    **2.**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **3.**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.**   This exclusion shall not apply; and

    **2.**   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.**   **Bodily Injury** or **Property Damage:**                         **NU-U/W 02102**

    **1. a.**   with respect to which the **Insured** is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

1. b.      resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.    **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

    a.    the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

    b.    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

    c.    the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.    As used in this exclusion:

    a.    "hazardous properties" includes radioactive, toxic or explosive properties;

    b.    "nuclear material" means source material, special nuclear material or by-product material;

    c.    "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

    d.    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.    "nuclear facility" means:

        NU-U/W 02103

        1)    any nuclear reactor;

        2)    any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

        3)    any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        4)    any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    g)    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h)    **Property Damage** includes all forms of radioactive contamination of property.

## VI.  Conditions

### A.  Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

### B.  Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C.  Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

### D.  Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason , we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**NU-U/W 02104**

**E.**   Charges

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.**   Duties In The Event Of An **Occurrence**, Claim Or **Suit**

1.   You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy.  To the extent possible, notice should include:

   a.   how, when and where the **Occurrence** took place;

   b.   the names and addresses of any injured persons and witnesses; and

   c.   the nature and location of any injury or damage arising out of the **Occurrence**.

2.   If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.   You and any other involved **Insured** must:

   a.   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

   b.   authorize us to obtain records and other information;

   c.   cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

   d.   assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.   No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.**   Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions we find.  We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.**   Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.   You have complied with all the terms of this policy; and

2.   The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.**   Maintenance of Underlying Insurance

**NU-U/W 02105**

During the period of this policy, you agree:

1.   To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4. That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.** Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.** Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.** Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.** Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. As if each **Named Insured** were the only **Named Insured**; and

2. Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.** Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

**NU-U/W 02106**

1. Any interests, including the **Insured**, that have paid an amount in excess of our payment under this policy will be reimbursed first;

2.      We then will be reimbursed up to the amount we have paid; and

3.      Lastly, any interests, including the **Insured**, over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.**    Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.**    When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured**.

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.


SECRETARY                                            PRESIDENT


**NU-U/W 02107**

**(15)**

57697 (6/93)

## SCHEDULE OF RETAINED LIMITS

Issued To:   INTEGRATED HEALTH SERVICES INC          Policy Number:  BE 357-43-84

| TYPE OF COVERAGE | INSURER<br>POLICY NUMBER<br>POLICY PERIOD | | RETAINED LIMIT |
|---|---|---|---|
| AUTOMOBILE LIABILITY<br>ALL OTHER STATES | AMERICAN HOME<br>534-7665<br>JANUARY 01, 2000<br>JANUARY 01, 2001 | $1,000,000 | COMBINED SINGLE LIMIT |
| TEXAS | AMERICAN HOME<br>534-7664<br>JANUARY 01, 2000<br>JANUARY 01, 2001 | $1,000,000 | COMBINED SINGLE LIMIT |
| GENERAL AND PROFESSIONAL LIABILITY | SELF INSURED<br>NO NUMBER<br>JANUARY 01, 2000<br>JANUARY 01, 2001 | $1,000,000<br>$5,000,000<br>$5,000,000 | NON PROFESSIONAL LIABILITY<br>EACH OCCURRENCE<br>GENERAL AGGREGATE<br>PRODUCTS/COMPLETED<br>OPERATIONS AGGREGATE |
| | SELF INSURED<br>NO NUMBER<br>JANUARY 01, 2000<br>JANUARY 01, 2001 | $2,000,000<br>$12,000,000 | PROFESSIONAL LIABILITY<br>EACH MEDICAL INCIDENT<br>AGGREGATE |
| STANDARD WORKERS COMPENSATION AND EMPLOYERS LIABILITY | ACE<br>TBD<br>JANUARY 01, 2000<br>JANUARY 01, 2001 | $1,000,000<br>$1,000,000<br>$1,000,000 | INSURED STATES<br>EACH ACCIDENT<br>DISEASE POLICY LIMIT<br>DISEASE EACH EMPLOYEE |
| | ACE<br>TBD<br>JANUARY 01, 2000<br>JANUARY 01, 2001 | $1,000,000<br>$1,000,000 | SELF INSURED STATES OF<br>NV, OH, WV, WA, WY AND ND. ALSO TEXAS<br>EXCESS OF SELF INSURED RETENTION:<br>EACH ACCIDENT<br>AGGREGATE FOR DISEASE |
| MISCELLANEOUS LIABILITY | N/A | | |

NU-U/W 02108

PAT1.D00

Authorized Representative _____

## ENDORSEMENT #1

**THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.    01/01/00    FORMS A PART OF**

**POLICY NO:** BE 357-43-84          **ISSUED TO:**  INTEGRATED HEALTH SERVICES, INC.

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

<u>RETAINED LIMIT AMENDMENT ENDORSEMENT</u>

1.   In Section III, Limits of Insurance, Paragraph E, Retained Limit, is deleted in its entirety and replaced by the following:

   E.    Retained Limit

   We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits attached to this policy and then up to an amount not exceeding the Each Occurrence Limits as stated in the Declarations. The Retained Limits shown in the attached Schedule shall apply whether or not the Insured maintains applicable underlying insurance.

   Coverage is limited to apply only in excess of the Retained Limits shown in the attached Schedule and only for those coverages for which a Retained Limit is shown; these Retained Limits shall not include "Defense Expenses".

2.   Section II, Defense, is hereby deleted in its entirety and replaced by the following:

   II.    Defense

   A.    We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when the applicable Limits shown in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

   B.    When we assume the defense of any claim or suit:

   1.    We will defend any suit against the Insured seeking damages on account of Bodily Injury, Property Damage, Personal Injury or Advertising Injury even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

   2.    We will pay the following:

   a.    premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

   b.    premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish such bond;

   c.    all costs taxed against the Insured in any claim or suit we defend;

   d.    pre-judgment interest awarded against the Insured on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

   e.    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

**NU-U/W 02109**

    f.     the Insured's expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of a suit or claim are in addition to our Limits of Insurance.

    C.    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

3.    Additional Definition

"Defense Expenses" means a payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including, but not limited to:

    a.    attorneys' fees and all other investigation, loss adjustment and litigation expenses;
    b.    premiums on bonds to release attachments;
    c.    premiums on appeal bonds required by law to appeal any claim or suit;
    d.    costs taxed against the Insured in any claim or suit;
    e.    pre-judgment interest awarded against the Insured;
    f.    interest that accrues after entry of judgment.

4.    In addition to our duties in the event of an Occurrence, claim or suit, as set forth in the conditions section of the policy, you must:

    a.    Notify us in writing as soon as practicable, but not later than sixty (60) days after you receive notice of any Occurrence, claim or suit involving:

        1.    a fatality;
        2     dismemberment or amputation
        3     paraplegia or quadriplegia;
        4.    loss or impairment of eyesight or hearing;
        5.    a sexual assault or battery, including, but not limited to, rape, molestation or sexual abuse; or
        6.    which in your reasonable judgment, taking into account past or anticipated "defense expenses" in connection with such Occurrence, claim or suit may result in payments equal to or exceeding 25% of the Retained Limit.

With respect to any claim or suit, you must notify us of any settlement demands by a claimant which exceeds 50% of your Retained Limit and any settlement offers in any amount made by you or on your behalf.

    b.    With respect to any claim or suit as set forth in paragraph (a) above, you must forward us, as soon as practicable:
        1.    all reports prepared by your loss adjustment representative;
        2.    all reports prepared by your defense counsel if the matter is in suit;

**NU-U/W 02110**

3.    any other information pertaining to the claim or suit __.ch we request from you, your loss adjustment representative or your defense counsel.

c.   On a quarterly basis, you or your loss adjustment representative must provide us with a written summary of all Occurrences, Claims or suits which have or may result in payments within the Retained Limit. This written summary must show:

1.    the date of Occurrence

2.    the name(s) of the injured person(s) or identification of the damaged property;

3.    a description of the injury or damage; and

4.    the amount paid or set aside as a reserve, including "defense expenses" on account of the Occurrence, claim or suit.

The duty to provide the information set forth above shall continue until you have paid the full amount of the Self Insured Retention for the claim or suit.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02111**

ENDORSEMENT #2

**THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.**   01/01/00      **FORMS A PART OF**

**POLICY NO:** BE 357-43-84            **ISSUED TO:** INTEGRATED HEALTH SERVICES, INC.

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**RETAINED LIMIT**

The Retained Limit for Comprehensive General Liability including Professional Liability shall be determined by the policy addendum entitled "Health Care Medical Professional Liability & General Liability".

The Retained Limits for Automobile Liability and Employers Liability shall be determined by the respective policies listed on the Schedule of RetainedLimits.

All other terms and conditions of this policy remain unchanged.

**NU-U/W 02112**

_____

AUTHORIZED REPRESENTATIVE

ENDORSEMENT #3

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.    01/01/00    FORMS A PART OF

POLICY NO: BE 357-43-84            ISSUED TO:  INTEGRATED HEALTH SERVICES, INC.

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

<u>Item #3-Limits of Insurance</u>

The Limits of Insurance:

| | | |
|---|---|---|
| A. | $25,000,000 | Each Occurrence |
| B. | $25,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $25,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | See Schedule of Retained Limits | Self Insured Retention |
| E. | $25,000,000 | Each Medical Incident-Professional |
| F. | $25,000,000 | Aggregate Medical -Professional |

All other terms and conditions of this policy remain unchanged.

NU-U/W 02113

AUTHORIZED REPRESENTATIVE

ENDORSEMENT #4

**THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.**   01/01/00     **FORMS A PART OF**

**POLICY NO:** BE 357-43-84              **ISSUED TO:**  INTEGRATED HEALTH SERVICES, INC.

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## NON-PYRAMIDING OF LIMITS ENDORSEMENT

If damages covered by this policy are also covered in whole or part by Policy Numbers 357-43-86 and
357-43-88, our total Limits of Insurance under all policies combined shall be:

| | |
|---|---|
| $25,000,000 | Each Occurrence Limit |
| $25,000,000 | Each Medical Incident Limit |
| $25,000,000 | Products Completed Operations Aggregate Limit |
| $25,000,000 | Medical Professional Aggregate Limit |
| $25,000,000 | General Aggregate Limit |

All other terms and conditions of this policy remain unchanged.

NU-U/W 02114

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT NO. 5

**THIS ENDORSEMENT IS EFFECTIVE 12:01 A.M.**      January 1, 2000

**FORMS A PART OF POLICY NO.:**      BE 3574384

**ISSUED TO:**    INTEGRATED HEALTH SERVICES INC.

**BY:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### BROAD NAME INSURED-AMENDATORY

The definition of Named Insured (IV El a and b) is amended to include any partnership, interest in a joint venture\*, subsidiary controlled or propriety company, corporation, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership or management control.

\*See Joint Venture Endorsement for additional conditions.

All other terms and conditions of this policy remain unchanged.

**NU-U/W 02115**

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT #6

This endorsement, effective 12:01 A.M.  01/01/2000        forms a part of

policy No. BE     357-43-84       issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### WAIVER OF SUBROGATION

In the event of any payment under this policy for a loss for which you have waived the right of recovery in a written contract entered into prior to the loss, we hereby agree to also waive our right of recovery.  This waiver shall only apply with respect to a loss occurring due to operations undertaken as per the specific contract in which you waived the right of recovery.

**NU-U/W 02116**

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

60417 (5/94)

## ENDORSEMENT #7

This endorsement, effective 12:01 A.M.  01/01/2000          forms a part of

policy No. BE      357-43-84      issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### JOINT VENTURE ENDORSEMENT

In the event of any **Occurrence** caused by or arising out of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter joint venture) in which the **Insured** has an interest, our Limits of Insurance under this policy shall be limited to the product of:

1.     The percentage interest of the **Insured** in the said joint venture; and

2.     The total liability coverage afforded the **Insured** by this policy.

Where the percentage interest of the **Insured** in said joint venture is not set forth in writing the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture.  Such percentage shall not be increased by the insolvency of others' interest in the said joint venture.

It is further agreed that where the limits of insurance of the underlying insurance(s) have been reduced by an endorsement similar to the paragraph above, our liability under this Schedule as limited by the paragraph above shall be excess of the sum of:

1.     Such reduced limits of underlying insurance(s), and

2.     The limits of any underlying insurance not reduced.

**NU-U/W 02117**

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

60434 (5/94)

ENDORSEMENT # 8

This endorsement, effective 12:01 A.M.   01/01/2000          forms a part of

policy No. BE      357-43-84        issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### UNINTENTIONAL ERRORS OR OMISSIONS ENDORSEMENT

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.

**NU-U/W 02118**

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**62222 (03/95)**

## ENDORSEMENT #9

This endorsement, effective 12:01 A.M.   01/01/2000       forms a part of

policy No. BE     357-43-84     issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### KNOWLEDGE OF OCCURRENCE ENDORSEMENT

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

NU-U/W 02119

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

62224 (03/95)

## ENDORSEMENT #10

**THIS ENDORSEMENT, EFFECTIVE** 12:01 A.M. 01/01/00  **FORMS A PART OF**

**POLICY NO.** BE 357-43-84     **ISSUED TO:** INTEGRATED HEALTH SERVICES, INC.

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### FOLLOW-FORM ENDORSEMENT

### (CLAIMS MADE VERSION)

### PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:

### PROFESSIONAL HEALTH CARE LIABILITY

However, if insurance for a negligent act, error or omission in the performance of the Insured's professional services as Healthcare Providers is provided by a policy listed in the Schedule of Retained Limits:

1.    This exclusion shall not apply;

2.    The insurance provided by our policy will follow form to such policy but will not be broader than the insurance coverage provided by the policy listed in the Schedule of Retained Limits; and

3.    Solely as respects this endorsement, we will only provide coverage for a claim made against the **Insured** during our policy period.

All Other Terms And Conditions Of This Policy Remain Unchanged.

62662 (5/95)

_____
AUTHORIZED REPRESENTATIVE

**NU-U/W 02120**

## ENDORSEMENT #11

**THIS ENDORSEMENT, EFFECTIVE** 12:01 A.M. 01/01/00    **FORMS A PART OF**

**POLICY NO:** BE357-43-84    **ISSUED TO:** INTEGRATED HEALTH SERVICES INC

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### <u>CLUBS</u>

"Insured" includes any association, club or other organizaion and employees who are members thereof provided such
entity is formed for or by employees for social or recreational purposes with knowledge and consent.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22302A.D00

_____
AUTHORIZED REPRESENTATIVE

**NU-U/W 02121**

ENDORSEMENT #12

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.    01/01/00    FORMS A PART OF

POLICY NO: BE 357-43-84              ISSUED TO:  INTEGRATED HEALTH SERVICES INC

BY  NATOIAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## CONTRACTUAL-AUTOMOBILE

Insured contract, policy definitions IV F is amended to provide coverage for automobile contracts on a follow form basis.

Policy Definition IVF, Insured Contract, is clarified to include automobiles and mobile equipment.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02122**

**ENDORSEMENT #13**

**THIS ENDORSEMENT, EFFECTIVE** 12:01 A.M.    01/01/00    **FORMS A PART OF**

**POLICY NO:** BE 357-43-84              **ISSUED TO:**  INTEGRATED HEALTH SERVICES INC

**BY**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**INTENTIONAL INJURY-AMENDATORY**

Exclusion O of the policy is amended as follows:

> Bodily Injury or Property Damage expected or intended from the standpoint of the Insured.
> However, this exclusion does not apply to Bodily Injury or Property Damage resulting from
> the use of reasonable force to protect persons or property.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02123**

**ENDORSEMENT #14**

**THIS ENDORSEMENT, EFFECTIVE**   12:01 A.M.   01/01/00   **FORMS A PART OF**

**POLICY NO:** BE 357-43-84      **ISSUED TO:**   INTEGRATED HEALTH SERVICES, INC.

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**NOTICE OF OCCURRENCE**

The Company shall not deny coverage as the result of an unintentional failure to give notice as respects to any occurrence, provided notice is given as soon as practicable after becoming aware that this policy may apply to such occurrence.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02124**

## ENDORSEMENT #15

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00    FORMS A PART OF

POLICY NO. BE 357-43-84          ISSUED TO.   INTEGRATED HEALTH SERVICES ,INC.

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## AMENDED INSURING AGREEMENT AND RETROSPECTIVE DATE
### (CLAIMS MADE ONLY)

The first paragraph of the insuring agreements Coverage is amended as follows:

We will pay on behalf of the insured those sums in excess of the Retained Limit that the Insured becomes legally Obligated to pay by reason of liability imposed by law because of injury to which this insurance applies. The injury must be caused by a "medical incident" that takes place after the Retrospective Date, but before the expiration date on the policy, and for which a claim is first made during our policy period.

Medical incident shall mean that definition found in the underlying policy.

| ENTITY | RETRO DATE |
|---|---|
| Bay Area Partners | 07/26/86 |
| Lithotripsy Partners of Cinncinnati | 01/01/93 |
| Lithotripsy Management Services | 01/01/93 |
| Service Trends | 09/11/93 |
| North Georgia Lithotripsy Partners of Atlanta | 06/12/90 |
| North Georgia Lithotripsy, LP | 06/12/90 |
| North Georgia Lithotripsy Associates, Inc. | 12/12/94 |
| North Georgia Lithotripsy Partners of Augusta | 02/11/91 |
| Cobb Regional Lithotripsy Partners | 06/25/90 |
| Midwest Urologic Stone Limited Partnership | 04/01/93 |
| Mobile Lithotripter of Indiana, Inc. | 02/01/93 |
| Mobile Lithotripter of Indiana, LTD | 02/01/93 |
| Mobile Lithotripter of Indiana Limited Partnership | 02/01/93 |
| New Jersey Litho, LP | 09/14/90 |
| Northeast Indiana Stonecare, LLC | 03/01/94 |
| Southwest Lithotripter Partners, Ltd. | 12/31/93 |
| Gulf South Lithotripsy | 12/01/90 |
| Gulf South Cyrogenics | 12/01/90 |

This policy does not apply to any claim for injury arising from a "medical incident";

1.      That was first made to any insurer prior to the effective date of acquisition;

2.      That is made against this policy because of the limits of liability under any previous policy, whether issued by us or any
        other insurer, are insufficient or have been exhausted due to the payment of claims arising from a "medical incident";

3.      That is made against this policy because of the insolvency or bankruptcy of any insurer; __ __ _.

**NU-U/W 02125**

4.  That was known by or reported to, prior to the effective date of the acquisition, any "Insured", prior insurer or its agents and that arose from a "medical incident" that occurred subsequent to the retroactive date of our policy.

5.  That is covered by any other insurance, including any coverage afforded by any "extended reporting peroid" provisions;or

6.  For which any other insurance does not apply because the amount of the claim is solely within a deductible or self-insured retention.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NU-U/W 02126

**ENDORSEMENT #16**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.    01/01/00    FORMS A PART OF

POLICY NO. BE 357-43-84                ISSUED TO.  INTEGRATED HEALTH SERVICES INC

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## EXTENDED REPORTING PERIOD OPTION
### (CLAIMS MADE ONLY)

1.  We will provide an Extended Reporting Period only if the policy is either cancelled or not renewed by the Insured or by us for any reason except non-payment of premium. Non-renewal shall mean the refusal by us to renew the policy on any terms. Non-renewal shall not mean change in premium, retained amounts, or any other terms and conditions.

2.  A Claim first made, in writing, during the Extended Reporting Period will be deemed to have been made on the last day of the policy period, provided that the Claim is for damages because of Personal Injury or Property Damage or Advertising Injury that occurred before the end of the policy period but not before any applicable retroactive date.

3.  The Extended Reporting Period will not reinstate or increase the limits of liability or extend the policy period.

4.  The Extended Reporting Period will be as set forth below:

    a.  If no other insurance the Insured purchases to repalce this policy applies to the Claim or would apply but for the exhaustion of its applicable limits of liability, an Extended Reporting Period of 60 days from the end of the policy period will apply. This Etended Reporting Period may not be cancelled and requires no additional premium.

    b.  If the Insured makes a written request for an Extended Reporting Period within 30 days after the expiration of the policy period and pays additional premium within 30 days after said request, we will issue an Extended Reporting Endorsement for a period of twelve (12) months from the end of the policy period.

        The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be cancelled.

        The Extended Reporting Period Endorsement will also amend the Other Insurance condition so that the insurance provided will be excess over any other valid and collectible insurance available to the insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

5.  The premium for the Extended Reporting Period Endorsement (Section 4b above) will not exceed 200% if the annual premium for this policy and will be fully earned when the endorsement takes effect.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**NU-U/W 02127**

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT #17

**THIS ENDORSEMENT, EFFECTIVE** 12:01 A.M.  01/01/00      **FORMS A PART OF**

**POLICY NO.** BE 357-43-84          **ISSUED TO:** INTEGRATED HEALTH SERVICES, INC.

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### LIMITS OF LIABILITY

It is understood and agreed that the inclusion of claims made coverage to this policy shall not act to increase the limits of liability stated on the policy declarations page.

All Other Terms And Conditions Of This Policy Remain Unchanged.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02128**

## ENDORSEMENT #18

**This endorsement, effective 12:01 AM** 01/01/2000

**Forms a part of policy no.:** BE       357-43-84

**Issued to:** INTEGRATED HEALTH SERVICES INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### EXCESS/UMBRELLA DATE RECOGNITION ENDORSEMENT
### AUTO LIABILITY AND EMPLOYERS' LIABILITY NOT EXCLUDED

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising directly or indirectly out of:

A.   Any actual or alleged failure, malfunction or inadequacy of:

    (1)   Any of the following, whether belonging to any **Insured** or to others:

        (a)   Computer hardware, including microprocessors;

        (b)   Computer application software;

        (c)   Computer operating systems and related software;

        (d)   Computer networks;

        (e)   Microprocessors (computer chips) not part of any computer system; or

        (f)   Any other computerized or electronic equipment or components; or

    (2)   Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1. of this endorsement.

    due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B.   Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for any potential or actual problems described in paragraph A. of this endorsement.

    However, this endorsement does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading, or unloading of any **auto.**

    Further, this endorsement does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured.**

All other terms and conditions of this policy remain unchanged.

**NU-U/W 02129**

AUTHORIZED REPRESENTATIVE

71762 (9/98)

# ENDORSEMENT #19

**This endorsement, effective**        01/01/00      **forms a part of**

**Policy No:** BE 357-43-84 **Issued to:** INTEGRATED HEALTH SERVICES, INC.

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT
**(Defense Expenses Outside Retained Limit, Version 2)**

Exclusion M of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1.  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.  Any loss, cost or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

1.  Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage;

2.  The **Products – Completed Operations Hazard**; or
3.  Any discharge dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:

    a. It was accidental and neither expected nor intended by the **Named Insured**. This condition would not serve to deny coverage for a

specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury**, **Property Damage** or **Personal Injury** could occur; and

b. It was demonstrable as having commenced on a specific date during the term of this policy; and

c. Its commencement became known to the **Named Insured** within seven (7 0) calendar days and was further reported to the Risk Management Department within a reasonable time frame; and

d. Its commencement was reported in writing to us within forty (40) calendar days of becoming known to the Risk Management Department; and

e. Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision 3. shall operate to provide any coverage with respect to:

a. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

b. Any fines or penalties;

c. Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion **3**. shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

d. Acid rain;

e. Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants; or

f. Water pollution caused by oil or its derivatives.

It is further agreed that solely as respects any coverage granted by this endorsement:

1. We shall only be liable for damages in excess of the Named Peril and Time Element Pollution retained limit as on the Schedule Retained Limits described.

**NU-U/W 02131**

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

Authorized Representative
_____

**NU-U/W 02132**

65581 (06/96)                              Page 3 of 3

**ENDORSEMENT #20**

This endorsement, effective 12:01 A.M. 07/02/2000

Forms a part of policy no.:. BE 3574384

Issued to: INTEGRATED HEALTH SERVICES INC.

BY  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**NAMED INSURED AMENDATORY**

In consideration of an additional premium (prepaid until 1/1/2002) of $150,000, it is understood and agreed the following is added to the policy:

Preferred Care, Inc.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**NU-U/W 02133**

**ENDORSEMENT #21**

**This endorsement, effective 12:01 A.M. 07/03/2000**

**Forms a part of policy no.:. BE 3574384**

**Issued to: INTEGRATED HEALTH SERVICES INC.**

**BY  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**

**NAMED INSURED AMENDATORY**

In consideration of an additional premium (prepaid until 1/1/2002) of $12,000, it is understood and agreed the following is added to the policy:

Dunns Creek Limited d/b/a Lanier Manor

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**NU-U/W 02134**

ENDORSEMENT NO. 22

THIS ENDORSEMENT IS EFFECTIVE 12:01 A.M.        January 1, 2000

FORMS A PART OF POLICY NO.:        BE 3574384

ISSUED TO:    INTEGRATED HEALTH SERVICES INC.

BY: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

AMENDATORY ENDORSEMENT

It is agreed that Endorsements 1, 10,15, 16 & 17 are deleted in their entirety.

All other terms and conditions of this policy remain unchanged.

NU-U/W 02135

Authorized Representative

2c0ce37d4c342f5e

### ENDORSEMENT NO. 23

**THIS ENDORSEMENT IS EFFECTIVE 12:01 A.M.**    January 1, 2000

**FORMS A PART OF POLICY NO.:**    BE 3574384

**ISSUED TO:**    INTEGRATED HEALTH SERVICES INC.

**BY:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### RETAINED LIMIT AMENDMENT ENDORSEMENT

1.  In Section III, Limits of Insurance Paragraph E., Retained Limit, is deleted in its entirety and replaced by the following:

    E.    Retained Limit

    We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits attached to this policy and then up to an amount not exceeding the Each Occurrence Limits as stated in the Declarations. The Retained Limits shown in the attached Schedule shall apply whether or not the Insured maintains applicable underlying insurance.

    Coverage is limited to apply only in excess of the Retained Limits shown in the attached Schedule and only for those coverages for which a Retained Limit is shown; these Retained limits shall include "Defense Expenses."

2.  Section II, Defense, is hereby deleted in its entirety and replaced by the following:

    II.    Defense

    A.    We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy until the applicable Limits shown in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

    B.    When we assume the defense of any claim or suit:

        1.    We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

        2.    We will pay for the following:

            a.    premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

**NU-U/W 02136**

b. premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish any such bond;

c. all costs taxed against the **Insured** in any claim or suit we defend;

d. pre-judgement interest awarded against the **Insured** on that part of the judgement we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgement interest based on that period of time after the offer;

e. all interest that accrues after entry of judgement and before we have paid, offered to pay or deposited in court the part of the judgement that is within our applicable Limit of Insurance;

f. the **Insured's** expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgements or settlements.

All expenses we incur in the defense of suit or claim are in addition to our Limits of Insurance.

C. In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

3. Additional Definition

"Defense Expenses" means a payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including but not limited to:

a. attorneys' fees and all other investigation, loss adjustment and litigation expenses;

b. premiums on bonds to release attachments;

c. premiums on appeal bonds required by law to appeal any claim or suit;

d. costs taxed against the **Insured** in any claim or suit;

e. pre-judgement interest awarded against the **Insured**;

f. interest that accrues after entry of judgement.

4. In addition to our duties in the event of an Occurrence, claim or suit, as set forth in the conditions section of the policy, you must:

A.  Notify us in writing as soon as practicable, but not later than sixty (60) days after you receive notice of any Occurrence, claim or suit involving:

   1.  A fatality;
   2.  Dismemberment or amputation
   3.  Paraplegia or quadriplegia;
   4.  Loss or impairment of eyesight or hearing'
   5.  A sexual assault or battery, including, but not limited to, rape, molestation or sexual abuse; or
   6.  Which in your reasonable judgement, taking into account past anticipated "Defense Expenses" in connection with such Occurrence, claim or suit may result in payments equal to or exceeding 25% of the Retained Limit.

With respect to any claim or suit, you must notify us of any settlement demands by a claimant which exceeds 50% of your Retained Limit and any settlement offers in any amount made by you or on your behalf.

B.  With respect to any claim or suit as set forth in paragraph (a) above, you must forward us, as soon as practicable:

   1.  all reports prepared by your loss adjustment representative;
   2.  all reports prepared by your defense counsel if the matter is in suit;
   3.  any other information pertaining to the claim or suit which we request from you, your loss adjustment representative or your defense counsel.

C.  On a quarterly basis, you or your loss adjustment representative must Provide us with a written summary of all Occurrences, claims or suits which have or may result in payments within the Retained Limit. This written summary must show:

   1.  the date of Occurrence
   2.  the name(s) of the injured person(s) or identification of the damaged property;
   3.  a description of the injury or damage; and
   4.  the amount paid or set aside as a reserve, including "Defense Expenses" on account of the Occurrence, claim or suit.

The duty to provide the information set forth above shall continue until you have paid the full amount of the Self Insured Retention for the claim or suit.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

NU-U/W 02138

## ENDORSEMENT NO. 24

**THIS ENDORSEMENT IS EFFECTIVE 12:01 A.M.**    January 1, 2000

**FORMS A PART OF POLICY NO.:**    BE 3574384

**ISSUED TO:**    INTEGRATED HEALTH SERVICES INC.

**BY:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### DEFENSE IN LIMIT ENDORSEMENT

In Section II, Defense, the last paragraph in provision B. is hereby deleted in its entirety and replaced by the following:

All expenses we incur in the defense of any suit or claim are included within our Limits of Insurance.

Provision C of Section II, Defense, is hereby deleted in its entirety and replaced by the following:

C.    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

All other terms and conditions of this policy shall remain unchanged.

_____
Authorized Representative

60416 (05/94)

**NU-U/W 02139**

### ENDORSEMENT NO. 25

**THIS ENDORSEMENT IS EFFECTIVE 12:01 A.M.**    January 1, 2000

**FORMS A PART OF POLICY NO.:**    BE 3574384

**ISSUED TO:**    INTEGRATED HEALTH SERVICES INC.

**BY:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:.

### PROFESSIONAL HEALTH CARE LIABILITY

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Retained Limits:

1.    This exclusion shall not apply; and

2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the
policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

60427(5/94

**NU-U/W 02140**

**ENDORSEMENT NO. 26**

**THIS ENDORSEMENT IS EFFECTIVE 12:01 A.M.**     January 1, 2000

**FORMS A PART OF POLICY NO.:**     BE 3574384

**ISSUED TO:**    INTEGRATED HEALTH SERVICES INC.

**BY: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

It is agreed that the Mailing Address of Item 1. listed on the Declarations Page is amended to read as follows:

**910 Ridgebrook Road
Sparks, MD  21152**

All other terms and conditions of this policy remain unchanged.

**NU-U/W 02141**

AUTHORIZED REPRESENTATIVE

## SCHEDULE OF RETAINED LIMITS (Revised)

Issued To:     **INTEGRATED HEALTH SERVICES INC.**        **Policy Number: BE 357-43-84**
Effective:     **January 1, 2001**

| Type of Coverage | Insurer Policy Number Policy Period | Retained Limits |
|---|---|---|
| AUTOMOBILE LIABILITY ALL OTHER STATES | AMERICAN HOME 5348336 JANUARY 01, 2001 JANUARY 01, 2002 | $1,000,000 COMBINED SINGLE LIMIT |
| TEXAS | AMERICAN HOME 5348337 JANUARY 01, 2001 JANUARY 01, 2002 | $1,000,000 COMBINED SINGLE LIMIT |
| **GENERAL AND PROFESSIONAL LIABILITY** | | **NON PROFESSIONAL LIABILITY** |
| | SELF INSURED NO NUMBER JANUARY 01, 2001 JANUARY 01, 2002 | $1,000,000 EACH OCCURRENCE $5,000,000 GENERAL AGGREGATE $5,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE |
| | SELF INSURED NO NUMBER JANUARY 01, 2001 JANUARY 01, 2002 | **PROFESSIONAL LIABILITY** $2,000,000 EACH MEDICAL INCIDENT $12,000,000 AGGREGATE DEFENSE IN LIMITS |
| **STANDARD WORKERS COMPENSATION AND EMPLOYERS LIABILITY** | ACE WLRC430907-4 JANUARY 01, 2001 JANUARY 01, 2002 | **INSURED STATES** $1,000,000 EACH ACCIDENT $1,000,000 DISEASE POLICY LIMIT $1,000,000 DISEASE EACH EMPLOYEE |
| | ACE SCFC430900-5 JANUARY 01, 2001 JANUARY 01, 2002 | **SELF INSURED STATES OF** NV, OH, WV, WA, WY AND ND. ALSO TX **EXCESS OF SELF INSURED RETENTION:** $1,000,000 EACH ACCIDENT $1,000,000 AGGREGATE FOR DISEASE |

MISCELLANEOUS LIABILITY    N/A

**NU-U/W 02142**

_____
AUTHORIZED REPRESENTATIVE

## SCHEDULE OF RETAINED LIMITS

**Issued To:**    **INTEGRATED HEALTH SERVICES INC.**      **Policy Number: BE 357-43-84**

| Type of Coverage | Insurer Policy Number Policy Period | Retained Limits |
|---|---|---|
| AUTOMOBILE LIABILITY ALL OTHER STATES | AMERICAN HOME 534-7665 JANUARY 01, 2000 JANUARY 01, 2001 | $1,000,000 COMBINED SINGLE LIMIT |
| TEXAS | AMERICAN HOME 534-7664 JANUARY 01, 2000 JANUARY 01, 2001 | $1,000,000 COMBINED SINGLE LIMIT |
| GENERAL AND PROFESSIONAL LIABILITY | | **NON PROFESSIONAL LIABILITY** |
| | SELF INSURED NO NUMBER JANUARY 01, 2000 JANUARY 01, 2001 | $1,000,000 EACH OCCURRENCE $5,000,000 GENERAL AGGREGATE $5,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE |
| | SELF INSURED NO NUMBER JANUARY 01, 2000 JANUARY 01, 2001 | **PROFESSIONAL LIABILITY** $2,000,000 EACH MEDICAL INCIDENT $14,000,000 AGGREGATE DEFENSE IN LIMITS |
| STANDARD WORKERS COMPENSATION AND EMPLOYERS LIABILITY | ACE TBD JANUARY 01, 2000 JANUARY 01, 2001 | **INSURED STATES** $1,000,000 EACH ACCIDENT $1,000,000 DISEASE POLICY LIMIT $1,000,000 DISEASE EACH EMPLOYEE |
| | ACE TBD JANUARY 01, 2000 JANUARY 01, 2001 | **SELF INSURED STATES OF** NV, OH, WV, WA, WY AND ND. ALSO TX **EXCESS OF SELF INSURED RETENTION:** $1,000,000 EACH ACCIDENT $1,000,000 AGGREGATE FOR DISEASE |
| MISCELLANEOUS LIABILITY | N/A | |

**NU-U/W 02143**

AUTHORIZED REPRESENTATIVE

# EXHIBIT C

I HS  CESTRM

See attached

Thanks
Vivian

## ENDORSEMENT NO. 25

**This endorsement, effective**      12:01 A.M.,    January 1, 2000 **forms a part of**

**policy number**      357 43 86

**issued to**    INTEGRATED HEALTH SERVICES INC

**By:**    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

It is agreed that Endorsement No. 1, Retained Limit Amendment Endorsement, shall be declared null and void and replaced with the following:

### RETAINED LIMIT AMENDMENT ENDORSEMENT

1.    In Section III, Limits of Insurance Paragraph E., Retained Limit, is deleted in its entirety and replaced by the following:

E.    Retained Limit

We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits attached to this policy and then up to an amount not exceeding the Each Occurrence Limits as stated in the Declarations.  The Retained Limits shown in the attached Schedule shall apply whether or not the Insured maintains applicable underlying insurance.

Coverage is limited to apply only in excess of the Retained Limits shown in the attached Schedule and only for those coverages for which a Retained Limit is shown; these Retained limits shall include "Defense Expenses".

2.    Section II, Defense, is hereby deleted in its entirety and replaced by the following:

II.    Defense

A.    We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when the applicable Limits shown in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

B.    When we assume the defense of any claim or suit:

1.    We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fradulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

2.    We will pay for the following:

a.    premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

**NU-U/W 02927**

b. premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish any such bond;

c. all costs taxed against the **Insured** in any claim or suit we defend;

d. pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our Limits of Insurance;

f. the **Insured's** expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of suit or claim are in addition to our Limits of Insurance.

C. In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any **suit** or claim are included within our Limits of Insurance.

3. Additional Definition

"Defense Expenses" means payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including but not limited to:

a. attorneys' fees and all other investigation, loss adjustment and litigation expenses;

b. premiums on bonds to release attachments;

c. premiums on appeal bonds required by law to appeal any claim or suit;

d. costs taxed against the **Insured** in any claim or suit;

e. pre-judgment interest awarded against the **Insured**;

f. interest that accrues after entry of judgment.

**NU-U/W 02928**

4.    In addition to our ___ ies in the event of an Occurrence, clai___: suit, as set forth in the conditions section of policy, you must:

A.    Notify us in writing as soon as practicable, but no later than sixty (60) days after you receive notice of any Occurrence, claim or suit involving:

1.    A fatality;
2.    Dismemberment or amputation
3.    Paraplegia or quadriplegia;
4.    Loss or impairment of eyesight or hearing;
5.    A sexual assault or batter, including, but not limited to, rape, molestation or sexual abuse; or
6.    Which in your reasonable judgment, taking into account past anticipated "Defense Expenses" in connection with such Occurrence, claim or suit may result in payments equal to or exceeding 25% of the Retained Limit.

With respect to any claim or suit, you must notify us of any settlement demands by a claimant which exceeds 50% of your Retained Limit and any settlement offers in any amount made by you or on your behalf.

B.    With respect to any claim or suit as set forth in paragraph (a) above, you must forward us, as soon as practicable:

1.    all reports prepared by your loss adjustment representative;
2.    all reports prepared by your defense counsel if the matter is in suit;
3.    any other information pertaining to the claim or suit which we request from you, your loss adjustment representative or your defense counsel.

C.    On a quarterly basis, you or your loss adjustment representative must provide us with a written summary of all Occurrences, claims or suits which have or may result in payments within the Retained Limit.  This written summary must show:

1.    the date of Occurrence
2.    the name(s) of the injured person(s) or identification of the damaged property;
3.    a description of the injury or damage; and
4.    the amount paid or set aside as a reserve, including "Defense Expenses" on account of the Occurrence, claim or suit.

The duty to provide the information set forth above shall continue until you have paid the full amount of the Self Insured Retention for the claim or suit.

All other terms and conditions remain unchanged.                    **NU-U/W 02929**

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT NO. 24

This endorsement, effective          12:01 A.M.,    January 1, 2000 forms a part of

policy number          357 43 86

issued to      INTEGRATED HEALTH SERVICES INC

By:    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### DEFENSE IN LIMIT ENDORSEMENT

In Section II, Defense, the last paragraph in provision B, is hereby deleted in its entirety and replaced by the following:

All expenses we incur in the defense of any suit or claim are included within our Limits of Insurance.

Provision C of Section II, Defense, is hereby deleted in its entirety and replaced by the following:

C.      In all other instances excerpt A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits, or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, any expenses we incur in the defense of any suit or claim are included within our Limits of Insurance.

**NU-U/W 02926**

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT NO. 23**

This endorsement, effective          12:01 A.M.,    January 1, 2000 **forms a part of**

**policy number**          357 43 86

**issued to**          INTEGRATED HEALTH SERVICES INC

**By:**    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## AMENDATORY ENDORSEMENT

It is hereby agreed that the Mailing Address of **Item 1.** Listed on the Declarations Page is amended to read as follows:

> **910 Ridgebrook Road**
> **Sparks, MD 21152**

**NU-U/W 02925**

All other terms and conditions of this policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT NO. 22**

This endorsement, effective        12:01 A.M.,   January 1, 2000 forms a part of

policy number        357 43 86

issued to        INTEGRATED HEALTH SERVICES INC

By:    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA


It is agreed that Endorsement No. 5 shall be declared null and void and replaced with the following:


### BROAD NAME INSURED – AMENDATORY

The definition of Named Insured (IV EI a and b) is amended to include any partnership, interest in a joint venture*, subsidiary controlled or propriety company, corporation, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership interest or management control.


*See Joint Venture Endorsement for additional conditions.


**NU-U/W 02924**

All other terms and conditions remain unchanged.


AUTHORIZED REPRESENTATIVE

## ENDORSEMENT NO. 21

This endorsement, effective          12:01 A.M.,    January 1, 2000 forms a part of

policy number            357 43 86

issued to       INTEGRATED HEALTH SERVICES INC

By:    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## AMENDATORY ENDORSEMENT

It is agreed that Endorsements 10, 14, 15 & 16 are deleted in their entirety.

**NU-U/W 02923**

All other terms and conditions of this policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE



# COMMERCIAL UMBRELLA DECLARATIONS

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

**POLICY NUMBER:** BE    357-43-86.                **RENEWAL OF:** BE    3574344

**PRODUCER NAME:** LOCKTON COMPANIES

**ADDRESS:**      P O BOX 419351

              KANSAS CITY        MO  64141-6351

**ITEM 1.  NAMED INSURED:** INTEGRATED HEALTH SERVICES OF LESTER

**ADDRESS:**      10065 RED RUN BLVD

              OWINGS MILLS        MD 21117-4827

**ITEM 2.  POLICY PERIOD: FROM:** January 01, 2000    **TO:** January 01, 2001    AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.  LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

A.    SEE ENDORSEMENT #3        Each Occurrence

B.    SEE ENDORSEMENT #3        General Aggregate (in accordance with Section III, Limits of Insurance)

C.    SEE ENDORSEMENT #3        Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance)

D.             N/A              Self Insured Retention

**ITEM 4.  PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE/ PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $19,000 | $19,000 |

**ITEM 5.  ENDORSEMENTS ATTACHED:    SEE ATTACHED SCHEDULE**

COUNTERSIGNED _____        BY _____
            **DATE**                        **AUTHORIZED REPRESENTATIVE**

57696 (6/93)

NU-U/W 02930

# FORMS SCHEDULE

**NAMED INSURED:** INTEGRATED HEALTH SERVICES OF LESTER **EFFECTIVE DATE:** 01/01/00

**POLICY NO:** BE 357-43-86

---

1.  RETAINED LIMIT AMENDMENT ENDORSEMENT
2.  RETAINED LIMIT
3.  LIMITS OF INSURANCE
4.  64671 (3/96)
5.  BROAD NAMED INSURED
6.  60417 (5/94)
7.  60434 (5/94)
8.  62222 (3/95)
9.  62224 (3/95)
10. 62662 (5/95)
11. CLUBS
12. INTENTIONAL INJURY-AMENDATORY
13. NOTICE OF OCCURRENCE
14. CLAIMS MADE-RETROSPECTION DATE
15. CLAIMS MADE-EXTENDED REPORTING PERIOD OPTION
16. LIMITS OF LIABILITY
17. 71762 (9/98)
18. 65581 (6/96)
19. AUTOMOBILE LIABILITY EXCLUSION
20. 62279 (3/95)

BN054128.D00

NU-U/W 02931

## AMERICAN INTERNATIONAL GROUP, INC.

### 70 PINE STREET
### NEW YORK, N.Y. 10970

**THOMAS R. TIZZIO**
SENIOR VICE CHAIRMAN

June 8, 1998

To Our Insureds:

I am writing to call your attention to a situation that has the potential to cause unprecedented dislocation to businesses in the United States and throughout the world. As many of you know, thousands, perhaps millions, of computers and devices with embedded microchips record only the last two digits of a year. As a result, they may not be able to recognize that January 1, 2000 (or subsequent dates) comes *after* December 31, 1999. As soon as dates in the Year 2000 become relevant to the operation of products or business transactions - a process that has already begun-computers and microchips containing the "millennium bug" may produce erroneous calculations or cease to function, causing problems that can range from the merely inconvenient to the potentially disastrous. Inventory and accounting systems will be affected; so will credit-card validation, electronic data interchange, automated banking reports, pension benefit payments, drug distribution systems for pharmacies and hospitals, and mechanical systems operating everything from office building environmental controls and elevator banks to telephone switches and oil refineries. The cost of fixing the problem in the United States alone has been estimated at more than $600 billion.

Whether the dislocation resulting from this "bug" will be crippling or merely extraordinarily expensive, we at AIG believe that any business that uses or is affected by computers – in other words, every business in the country – must respond immediately, proactively, and aggressively. Most Year 2000 problems *can* be averted, given sufficient foresight, resources, and will. Companies will be judged – and, in some cases, will succeed or fail – depending on how they address these issues.

At AIG, we have identified those of our systems that are subject to Year 2000 risk, and we are well on the way to ensuring that all of our systems will be Year 2000-compliant in time to prevent any significant disruption or dislocation in our business or in the services we provide to our insureds. We are also communicating with the third-party brokers, agents, and administrators with whom we deal to alert them to these issues and encourage them to take similar actions. Every process to address Year 2000 should include backup and contingency plans to ensure that any incidents that do occur have minimal impact on operations.

The principal purpose of this letter is to encourage you, in the strongest possible terms, to do what is necessary to ensure that you have the same degree of comfort about the operation of your business in the face of potential Year 2000 problems as we have about ours. The Year 2000 bug is, first and foremost, a business and technical problem that must be addressed on that basis. It cannot be too strongly emphasized that a company's most important response to the Year 2000 problem is to take all feasible steps to eliminate the problem on a *technical* basis—or, to the extent the problem cannot be eliminated, to minimize its impact. Resources must be assembled and managed; the board of directors should take an active and ongoing role in ensuring that management has identified, addressed, and resolved problems on a timely basis.

Y2KLetter
Y00001

**NU-U/W 02932**

What, then, should your organization do? There is obviously no single general solution to a problem that will have as many different manifestations as there are addressees of this letter, but a few common sense guideposts may be helpful:

- If you have not yet evaluated your Year 2000 exposure, do it now. Assemble whatever resources are needed to get a handle on the scope of the problem at your organization *now*, so that remedial efforts can be started without further delay. Most public companies will already have started this process in response to SEC disclosure requirements, but *everyone* should take a good, hard look at their compliance efforts to ensure that nothing has been overlooked.

- Set priorities. What is critical and what merely important? What can be fixed and what should be junked?

- Be practical. Many "Year 2000 questionnaires" seem designed as much to transfer potential blame as to solve the problem. If there is a truly crucial third party – your payroll services vendor, for example, or the sole supplier of an indispensable raw material – don't just send a questionnaire. Instead, give serious consideration to direct testing and evaluation of the vendor or supplier's systems. If there is a crippling Year 2000 problem, a later breach of warranty claim against the supplier's trustee in bankruptcy will not provide you a great deal of comfort.

- Test, test, and then test some more. Expect and plan for the unexpected.

As I said at the outset of this letter, the potential for dislocation from Year 2000 problems is unprecedented. But so is the level of knowledge concerning the problem and the technical ability to solve it. I urge all of our insureds to address their Year 2000 issues promptly and aggressively.

Senior Vice Chairman
Thomas R. Tizzio

NU-U/W 02933

Y2KLetter
Y00001

## Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word **"Insured"** means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### Insuring Agreements

**I.    Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured**, then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

**II.    Defense**

    **A.**    We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

        **1.**    The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

        **2.**    Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

    **B.**    When we assume the defense of any claim or suit:

        **1.**    We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

        **2.**    We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

            **a.**    premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

            **b.**    premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

            **c.**    all costs taxed against the **Insured** in any claim or **suit** we defend;    **NU-U/W 02934**

**d.** pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

**e.** all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

**f.** the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.** In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy.  If we exercise such right, we will do so at our own expense.

**III.   Limits of Insurance**

**A.** The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    **1.** **Insureds;**

    **2.** Claims made or **suits** brought; or

    **3.** Persons or organizations making claims or bringing **suits**.

**B.** The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    **1.** Damages included in the **Products-Completed Operations Hazard;** and

    **2.** Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.** The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.** Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence**.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    **1.** In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    **2.** In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**NU-U/W 02935**

E.    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured**;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

IV.   **Definitions**

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment.**

C.    **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

1.    It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

2.    Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

NU-U/W 02936

1.    The **Named Insured,** meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

b.    any organization newly acquired, controlled or formed by you during the policy period but only:

     1)    as respects **Occurrences** taking place after you acquire, take control or form such organization;

     2)    if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

     3)    if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

**2.**    If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

**3.**    If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

**4.**    Any person or organization, other than the **Named Insured,** included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

**5.**    Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

**6.**    Any person, other than one of your employees, or organization while acting as your real estate manager.

**7.**    Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

     a.    liability arising out of operations conducted by you or on your behalf; or

     b.    facilities owned or used by you.

**8.**    Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

**F.**    **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**G.**    **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

     1.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

     2.    Vehicles maintained for use solely on or next to premises you own or rent;

NU-U/W 02937

(4)

57697 (6/93)

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. equipment designed primarily for:

      1) snow removal;

      2) road maintenance, but not construction or resurfacing; or

      3) street cleaning;

   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H. **Occurrence** means:

1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**;

2. As respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3. As respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I. **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**NU-U/W 02938**

(5)

57697 (6/93)

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

**J. 1. Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    **a.**    products that are still in your physical possession; or

    **b.**    work that has not yet been completed or abandoned.

**2.** **Your Work** will be deemed completed at the earliest of the following times:

    **a.**    When all of the work called for in your contract has been completed.

    **b.**    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **c.**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**3.** This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    **a.**    the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    **b.**    the existence of tools, uninstalled equipment or abandoned or unused materials.

**K.** **Property Damage** means:

    **1.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **2.**    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**L.** **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

    **1.**    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    **2.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**M.** **Your Product** means:

    **1.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **a.**    you;

**NU-U/W 02939**

        **b.**    others trading under your name; or

        **c.**    a person or organization whose business or assets you have acquired; and

57697 (6/93)

2.  Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.  The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.**  **Your Work** means:

1.  Work or operations performed by you or on your behalf; and

2.  Materials, parts or equipment furnished in connection with such work or operations.

**O.**  **Your Work** includes:

1.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.  The providing of or failure to provide warnings or instructions.

**V.**  **Exclusions**

This insurance does not apply to:

**A.**  Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.**  Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.**  Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.**  **Property Damage** to :

1.  Property you own, rent, occupy or use;

2.  Personal property in the care, custody or control of the **Insured**.

**E.**  **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.**  **Property Damage** to **Your Product** arising out of it or any part of it.

**G.**  **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

NU-U/W 02940

57697 (6/93)

H.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   1.  **Your Product;**

   2.  **Your Work;** or

   3.  **Impaired Property**

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.  Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

   However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

   1.  This exclusion shall not apply; and

   2.  The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.  **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

   However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

   1.  This exclusion shall not apply; and

   2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.  **Personal Injury** or **Advertising Injury:**

   1.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

   2.  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   3.  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

   4.  For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.  **Advertising Injury** arising out of:

   1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   2.  The failure of goods, products or services to conform with advertised quality or performance;

   3.  The wrong description of the price of goods, products or services; or

   4.  An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

NU-U/W 02941

57697 (6/93)

**M.**  **1.**  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

  **2.**  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

  **3.**  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

  This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

  **a.**  Heat, smoke or fumes from a hostile fire;

  **b.**  The upset, overturn or collision of a motor vehicle; or

  **c.**  The **Products-Completed Operations Hazard;**

  if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

  As used in this exclusion:

  **a.**  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

  **b.**  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**  **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**  **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.**

  However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**  **1.**  **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

  **2.**  Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

  **3.**  Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**NU-U/W 02942**

57697 (6/93)

**Q.** **Bodily Injury** or **Personal Injury** to:

    **1.** A person arising out of any:

        **a.** Refusal to employ that person;

        **b.** Termination of that person's employment; or

        **c.** Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **2.** The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    **1.** Whether the **Insured** may be liable as an employer or in any other capacity; and

    **2.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.** **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    **1.** The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    **2.** Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    **3.** Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

**S.** **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    **1.** Causing or contributing to the intoxication of any person;

    **2.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **3.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    **1.** This exclusion shall not apply; and

    **2.** The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**T.** **Bodily Injury** or **Property Damage:**

    **NU-U/W 02943**

    **1. a.** with respect to which the **Insured** is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

1. b.   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.   **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

   a.   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

   b.   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   c.   the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.   As used in this exclusion:

   a.   "hazardous properties" includes radioactive, toxic or explosive properties;

   b.   "nuclear material" means source material, special nuclear material or by-product material;

   c.   "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f.   "nuclear facility" means:

   **NU-U/W 02944**

      1)   any nuclear reactor;

      2)   any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

      3)   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

      4)   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   g)   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

57697 (6/93)

h)  **Property Damage** includes all forms of radioactive contamination of property.

**VI.  Conditions**

**A.**  Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

**B.**  Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

**C.**  Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

**D.**  Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason , we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**NU-U/W 02945**

57697 (6/93)

**E.    Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.    Duties In The Event Of An Occurrence, Claim Or Suit**

1.    You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

    a.    how, when and where the **Occurrence** took place;

    b.    the names and addresses of any injured persons and witnesses; and

    c.    the nature and location of any injury or damage arising out of the **Occurrence**.

2.    If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.    You and any other involved **Insured** must:

    a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

    b.    authorize us to obtain records and other information;

    c.    cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

    d.    assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.    No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.    Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.    Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

1.    You have complied with all the terms of this policy; and

2.    The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

**I.    Maintenance of Underlying Insurance**

**NU-U/W 02946**

During the period of this policy, you agree:

1.    To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

57697 (6/93)

2.    That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3.    That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4.    That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.    Other Insurance**

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.    Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.    Prior Insurance**

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.    Separation of Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.    As if each **Named Insured** were the only **Named Insured;** and

2.    Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.    Subrogation**

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

**NU-U/W 02947**

Any recoveries shall be applied as follows:

1.    Any interests, including the **Insured,** that have paid an amount in excess of our payment under this policy will be reimbursed first;

2.     We then will be reimbursed up to the amount we have paid; and

3.     Lastly, any interests, including the **Insured**, over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.**     Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.**     When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

*Elizabeth M. Tuck*
SECRETARY

*J— P. Caussus*
PRESIDENT

**NU-U/W 02948**

57697 (6/93)

## SCHEDULE OF RETAINED LIMITS

Issued To:    INTEGRATED HEALTH SERVICES OF LESTER          Policy Number:    BE 357-43-86

| TYPE OF COVERAGE | INSURER POLICY NUMBER POLICY PERIOD | | RETAINED LIMIT |
|---|---|---|---|
| GENERAL AND PROFESSIONAL LIABILITY | SELF INSURED NO NUMBER JANUARY 01, 2000 JANUARY 01, 2001 | $1,000,000 $5,000,000 $5,000,000 | **NON PROFESSIONAL LIABILITY** EACH OCCURRENCE GENERAL AGGREGATE PRODUCTS/COMPLETED OPERATIONS AGGREGATE |
| | SELF INSURED NO NUMBER JANUARY 01, 2000 JANUARY 01, 2001 | $2,000,000 $12,000,000 | **PROFESSIONAL LIABILITY** EACH MEDICAL INCIDENT AGGREGATE |

**NU-U/W 02949**

Authorized Representative

## ENDORSEMENT #1

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00    FORMS A PART OF

POLICY NO: BE 357-43-86          ISSUED TO:  INTEGRATED HEALTH SERVICES OF LESTER

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### RETAINED LIMIT AMENDMENT ENDORSEMENT

1.  In Section III, Limits of Insurance, Paragraph E, Retained Limit, is deleted in its entirety and replaced by the following:

    E.   Retained Limit

    We will be liable only for that portion of damages in excess of the Limits stated in the Schedule of Retained Limits attached to this policy and then up to an amount not exceeding the Each Occurrence Limits as stated in the Declarations. The Retained Limits shown in the attached Schedule shall apply whether or not the Insured maintains applicable underlying insurance.

    Coverage is limited to apply only in excess of the Retained Limits shown in the attached Schedule and only for those coverages for which a Retained Limit is shown; these Retained Limits shall not include "Defense Expenses".

2.  Section II, Defense, is hereby deleted in its entirety and replaced by the following:

    II.   Defense

    A.   We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when the applicable Limits shown in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

    B.   When we assume the defense of any claim or suit:
        1.   We will defend any suit against the Insured seeking damages on account of Bodily Injury, Property Damage, Personal Injury or Advertising Injury even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

**NU-U/W 02950**

        2.   We will pay the following:
            a.   premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;
            b.   premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish such bond;
            c.   all costs taxed against the Insured in any claim or suit we defend;
            d.   pre-judgment interest awarded against the Insured on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;
            e.   all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

f.     the Insured's expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of a suit or claim are in addition to our Limits of Insurance.

C.     In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

3.     Additional Definition

"Defense Expenses" means a payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including, but not limited to:

a.     attorneys' fees and all other investigation, loss adjustment and litigation expenses;
b.     premiums on bonds to release attachments;
c.     premiums on appeal bonds required by law to appeal any claim or suit;
d.     costs taxed against the Insured in any claim or suit;
e.     pre-judgment interest awarded against the Insured;
f.     interest that accrues after entry of judgment.

4.     In addition to our duties in the event of an Occurrence, claim or suit, as set forth in the conditions section of the policy, you must:

a.     Notify us in writing as soon as practicable, but not later than sixty (60) days after you receive notice of any Occurrence, claim or suit involving:

1.     a fatality;
2.     dismemberment or amputation
3.     paraplegia or quadriplegia;
4.     loss or impairment of eyesight or hearing;
5.     a sexual assault or battery, including, but not limited to, rape, molestation or sexual abuse; or
6.     which in your reasonable judgment, taking into account past or anticipated "defense expenses" in connection with such Occurrence, claim or suit may result in payments equal to or exceeding 25% of the Retained Limit.

With respect to any claim or suit, you must notify us of any settlement demands by a claimant which exceeds 50% of your Retained Limit and any settlement offers in any amount made by you or on your behalf.

b.     With respect to any claim or suit as set forth in paragraph (a) above, you must forward us, as soon as practicable:

1.     all reports prepared by your loss adjustment representative;
2.     all reports prepared by your defense counsel if the matter is in suit;

NU-U/W 02951

3.  any other ___rmation pertaining to the claim or suit w___ we request from you, your loss adjustment representative or your defense counsel.

c.  On a quarterly basis, you or your loss adjustment representative must provide us with a written summary of all Occurrences, Claims or suits which have or may result in payments within the Retained Limit. This written summary must show:

1.  the date of Occurrence
2.  the name(s) of the injured person(s) or identification of the damaged property;
3.  a description of the injury or damage; and
4.  the amount paid or set aside as a reserve, including "defense expenses" on account of the Occurrence, claim or suit.

The duty to provide the information set forth above shall continue until you have paid the full amount of the Self Insured Retention for the claim or suit.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02952**

## ENDORSEMENT #2

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.    01/01/00      FORMS A PART OF

POLICY NO: BE 357-43-84              ISSUED TO:  INTEGRATED HEALTH SERVICESOF LESTER.

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### RETAINED LIMIT

The Retained Limit for Comprehensive General Liability including Professional Liability shall be determined by the policy addendum entitled "Health Care Medical Professional Liability & General Liability".

The Retained Limits for Automobile Liability and Employers Liability shall be determined by the respective policies listed on the Schedule of RetainedLimits.

All other terms and conditions of this policy remain unchanged.

NU-U/W 02953

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT #3**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00   FORMS A PART OF

POLICY NO: BE 357-43-86          ISSUED TO:  INTEGRATED HEALTH SERVICES OF LESTER.

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## Item #3-Limits of Insurance

The Limits of Insurance:

| | | |
|---|---|---|
| A. | $2,000,000 | Each Occurrence |
| B. | $2,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $2,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | See Schedule of Retained Limits | Self Insured Retention |
| E. | $2,000,000 | Each Medical Incident-Professional |
| F. | $2,000,000 | Aggregate Medical -Professional |

All other terms and conditions of this policy remain unchanged.

**NU-U/W 02954**

AUTHORIZED REPRESENTATIVE

ENDORSEMENT #4

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00      FORMS A PART OF

POLICY NO: BE 357-43-86          ISSUED TO:  INTEGRATED HEALTH SERVICES OF LESTER

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## NON-PYRAMIDING OF LIMITS ENDORSEMENT

If damages covered by this policy are also covered in whole or part by Policy Numbers 357-43-84 and 357-43-88, our total Limits of Insurance under all policies combined shall be:

| | |
|---|---|
| $25,000,000 | Each Occurrence Limit |
| $25,000,000 | Each Medical Incident Limit |
| $25,000,000 | Products Completed Operations Aggregate Limit |
| $25,000,000 | Medical Professional Aggregate Limit |
| $25,000,000 | General Aggregate Limit |

All other terms and conditions of this policy remain unchanged.

NU-U/W 02955

AUTHORIZED REPRESENTATIVE

ENDORSEMENT #5

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00    FORMS A PART OF

POLICY NO: BE 357-43-86              ISSUED TO:  INTEGRATED HEALTH SERVICES OF LESTER

BY  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## BROAD NAME INSURED-AMENDATORY

The definition of Named Insured (IV El a and b) is amended to include any partnership, interest in a joint venture*, subsidiary controlled or propriety company, corporation, firm, organization or other entity as now exists or may hereafter be constituted, formed or aquired where the Named Insured has at least 50% ownership interest or management control.

However, this policy shall exclude all coverage and limits for the exposure of **Integrated Health Services of Lester**, Inc. and its interests in other entitites.

*See Joint Venture Endorsement for additional conditions.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22303A.DOO

AUTHORIZED REPRESENTATIVE

NU-U/W 02956

## ENDORSEMENT # 6

This endorsement, effective 12:01 A.M.  01/01/2000          forms a part of

policy No. BE    357-43-86      issued to INTEGRATED HEALTH SERVICES OF LESTER

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### WAIVER OF SUBROGATION

In the event of any payment under this policy for a loss for which you have waived the right of recovery in a written contract entered into prior to the loss, we hereby agree to also waive our right of recovery.  This waiver shall only apply with respect to a loss occurring due to operations undertaken as per the specific contract in which you waived the right of recovery.

NU-U/W 02957

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

60417 (5/94)

ENDORSEMENT # 7

This endorsement, effective 12:01 A.M.  01/01/2000          forms a part of

policy No. BE      357-43-86      issued to INTEGRATED HEALTH SERVICES OF LESTER

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## JOINT VENTURE ENDORSEMENT

In the event of any **Occurrence** caused by or arising out of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter joint venture) in which the **Insured** has an interest, our Limits of Insurance under this policy shall be limited to the product of:

1.    The percentage interest of the **Insured** in the said joint venture; and

2.    The total liability coverage afforded the **Insured** by this policy.

Where the percentage interest of the **Insured** in said joint venture is not set forth in writing the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture.  Such percentage shall not be increased by the insolvency of others' interest in the said joint venture.

It is further agreed that where the limits of insurance of the underlying insurance(s) have been reduced by an endorsement similar to the paragraph above, our liability under this Schedule as limited by the paragraph above shall be excess of the sum of:

1.    Such reduced limits of underlying insurance(s), and

2.    The limits of any underlying insurance not reduced.

**NU-U/W 02958**

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

60434 (5/94)

## ENDORSEMENT # 8

This endorsement, effective 12:01 A.M.  01/01/2000                forms a part of

policy No. BE        357-43-86          issued to INTEGRATED HEALTH SERVICES OF LESTER

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### UNINTENTIONAL ERRORS OR OMISSIONS ENDORSEMENT

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.

NU-U/W 02959

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

62222 (03/95)

ENDORSEMENT # 9

This endorsement, effective 12:01 A.M.  01/01/2000               forms a part of

policy No. BE      357-43-86        issued to INTEGRATED HEALTH SERVICES OF LESTER

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

*NU-U/W 02960*

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

62224 (03/95)

### ENDORSEMENT #10

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M. 01/01/00        FORMS A PART OF

POLICY NO.  BE 357-43-86        ISSUED TO: INTEGRATED HEALTH SERVICES OF LESTER

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### FOLLOW-FORM ENDORSEMENT

### (CLAIMS MADE VERSION)

### PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:

### PROFESSIONAL HEALTH CARE LIABILITY

However, if insurance for a negligent act, error or omission in the performance of the Insured's professional services as Healthcare Providers is provided by a policy listed in the Schedule of Retained Limits:

1.    This exclusion shall not apply;

2.    The insurance provided by our policy will follow form to such policy but will not be broader than the insurance coverage provided by the policy listed in the Schedule of Retained Limits; and

3.    Solely as respects this endorsement, we will only provide coverage for a claim made against the **Insured** during our policy period.

All Other Terms And Conditions Of This Policy Remain Unchanged.

62662 (5/95)

AUTHORIZED REPRESENTATIVE

NU-U/W 02961

ENDORSEMENT #11

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M. 01/01/00     FORMS A PART OF

POLICY NO: BE357-43-86     ISSUED TO:  INTEGRATED HEALTH SERVICES OF LESTER

BY  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

<u>CLUBS</u>

"Insured" includes any association, club or other organizaion and employees who are members thereof provided such
entity is formed for or by employees for social or recreational purposes with knowledge and consent.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22302A.DOC

AUTHORIZED REPRESENTATIVE

NU-U/W 02962

ENDORSEMENT #12

**THIS ENDORSEMENT, EFFECTIVE** 12:01 A.M.   01/01/00   **FORMS A PART OF**

**POLICY NO:** BE 357-43-86            **ISSUED TO:**  INTEGRATED HEALTH SERVICES OF LESTER

**BY**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## INTENTIONAL INJURY-AMENDATORY

Exclusion O of the policy is amended as follows:

Bodily Injury or Property Damage expected or intended from the standpoint of the Insured. However, this exclusion does not apply to Bodily Injury or Property Damage resulting from the use of reasonable force to protect persons or property.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02963**

**ENDORSEMENT #13**

**THIS ENDORSEMENT, EFFECTIVE**   12:01 A.M.  01/01/00   **FORMS A PART OF**

**POLICY NC:** BE 357-43-86        **ISSUED TO:**  INTEGRATED HEALTH SERVICES OF LESTER

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA


**<u>NOTICE OF OCCURRENCE</u>**


The Company shall not deny coverage as the result of an unintentional failure to give notice as respects to any occurrence, provided notice is given as soon as practicable after becoming aware that this policy may apply to such occurrence.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

NU-U/W 02964

ENDORSEMENT #14

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00     **FORMS A PART OF**

POLICY NO. BE 357-43-86              ISSUED TO.  INTEGRATED HEALTH SERVICES OF LESTER

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## AMENDED INSURING AGREEMENT AND RETROSPECTIVE DATE
### (CLAIMS MADE ONLY)

The first paragraph of the insuring agreements Coverage is amended as follows:

We will pay on behalf of the insured those sums in excess of the Retained Limit that the Insured becomes legally Obligated to pay by reason of liability imposed by law because of injury to which this insurance applies.  The Injury must be caused by a "medical incident" that takes place after the Retrospective Date, but before the expiration date on the policy, and for which a claim is first made during our policy period.

Medical incident shall mean that definition found in the underlying policy.

| ENTITY | RETRO DATE |
|---|---|
| INTEGRATED HEALTH SERVICES OF LESTER | 01/01/99 |

This policy does not apply to any claim for injury arising from a "medical incident";

1.  That was first made to any insurer prior to the effective date of acquisition;

2.  That is made against this policy because of the limits of liability under any previous policy, whether issued by us or any
    other Insurer, are insufficient or have been exhausted due to the payment of claims arising from a "medical incident";

3.  That is made against this policy because of the insolvency or bankruptcy of any insurer;

4.  That was known by or reported to, prior to the effective date of the acquisition, any "Insured", prior insurer or its agents and that arose from a "medical incident" that occurred subsequent to the retroactive date of our policy.

5.  That is covered by any other insurance, including any coverage afforded by any "extended reporting peroid" provisions;or

6.  For which any other insurance does not apply because the amount of the claim is solely within a deductible or self-insured retention.

**NU-U/W 02965**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**ENDORSEMENT #15**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/00   **FORMS A PART OF**

POLICY NO. BE 357-43-86         **ISSUED TO**.  INTEGRATED HEALTH SERVICES OF LESTER

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## EXTENDED REPORTING PERIOD OPTION
### (CLAIMS MADE ONLY)

1.    We will provide an Extended Reporting Period only if the policy is either cancelled or not renewed by the Insured or by us for any reason except non-payment of premium.  Non-renewal shall mean the refusal by us to renew the policy on any terms.  Non-renewal shall not mean change in premium, retained amounts, or any other terms and conditions.

2.    A Claim first made, in writing, during the Extended Reporting Period will be deemed to have been made on the last day of the policy period, provided that the Claim is for damages because of Personal Injury or Property Damage or Advertising Injury that occurred before the end of the policy period but not before any applicable retroactive date.

3.    The Extended Reporting Period will not reinstate or increase the limits of liability or extend the policy period.

4.    The Extended Reporting Period will be as set forth below:

   a.    If no other insurance the Insured purchases to replace this policy applies to the Claim or would apply but for the exhaustion of its applicable limits of liability, an Extended Reporting Period of 60 days from the end of the policy period will apply. This Etended Reporting Period may not be cancelled and requires no additional premium.

   b.    If the Insured makes a written request for an Extended Reporting Period within 30 days after the expiration of the policy period and pays additional premium within 30 days after said request, we will issue an Extended Reporting Endorsement for a period of twelve (12) months from the end of the policy period.

   The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due.  If that premium is paid when due, the endorsement may not be cancelled.

   The Extended Reporting Period Endorsement will also amend the Other Insurance condition so that the insurance provided will be excess over any other valid and collectible insurance available to the insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

5.    The premium for the Extended Reporting Period Endorsement (Section 4b above) will not exceed 200% if the annual premium for this policy and will be fully earned when the endorsement takes effect.

**NU-U/W 02966**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT #16

**THIS ENDORSEMENT, EFFECTIVE** 12:01 A.M. 01/01/00    **FORMS A PART OF**

**POLICY NO.** BE 357-43-86        **ISSUED TO:** INTEGRATED HEALTH SERVICES OF LESTER

**BY** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### LIMITS OF LIABILITY

It is understood and agreed that the inclusion of claims made coverage to this policy shall not act to increase the limits of liability stated on the policy declarations page.

All Other Terms And Conditions Of This Policy Remain Unchanged.

AUTHORIZED REPRESENTATIVE

**NU-U/W 02967**

## ENDORSEMENT #17

**THIS ENDORSEMENT, EFFECTIVE 12:01 A.M**  01/01/00                        **FORMS A PART OF**

**POLICY NO:**   BE 357-43-86   **ISSUED TO:**  INTEGRATED HEALTH SERVICES OF LESTER

**BY:**   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### EXCESS/UMBRELLA DATE RECOGNITION ENDORSEMENT

This insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of:

A.    Any actual or alleged failure, malfunction or inadequacy of:

1.    Any of the following, whether belonging to any Insured or to others:

       a.    Computer hardware, including microprocessors;
       b.    Computer application software;
       c.    Computer operating systems and related software;
       d.    Computer networks;
       e.    Microprocessors (computer chips) not part of any computer system; or
       f.    Any other computerized or electronic equipment or components; or

2.    Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph A.1. of this endorsement.

       Due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B.    Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair replacement or supervision provided or done by you or for you to determine, rectify or test for any potential or actual problems described in paragraph A. of this endorsement.

ALL OTHER TERMS AND CONDITONS OF THIS POLICY REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

71762 (9/98)

**NU-U/W 02968**

# ENDORSEMENT #18

This endorsement, effective          01/01/00      forms a part of

Policy No: BE 357-43-86 Issued to:INTEGRATED HEALTH SERVICES OF
LESTER

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT
(Defense Expenses Outside Retained Limit, Version 2)

Exclusion M of this policy is hereby deleted in its entirety and replaced by
the following:

This insurance does not apply to:

1.   **Bodily Injury, Property Damage** or **Personal Injury** arising out of
     the actual or threatened discharge, dispersal, seepage, migration,
     release or escape of pollutants anywhere in the world;

2.   Any loss, cost or expense arising out of any governmental direction
     or request that we, the **Insured** or any other person or organization
     test for, monitor, clean-up, remove, contain, treat, detoxify,
     neutralize or assess the effects of pollutants; or

3.   Any loss, cost or expense, including but not limited to costs of
     investigation or attorneys' fees, incurred by a governmental unit or
     any other person or organization to test for, monitor, clean-up,
     remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or
thermal irritant or contaminant, including smoke, vapor, soot, fumes,
acids, alkalis, chemicals and waste material.  Waste material includes
materials which are intended to be or have been recycled, reconditioned
or reclaimed.

However, this exclusion does not apply to **Bodily Injury, Property
Damage** or **Personal Injury** arising out of:

1. Any discharge, dispersal, seepage, migration, release or escape
   directly or indirectly caused by fire, explosion, lightning, windstorm,
   vandalism or malicious mischief, riot and civil commotion, flood,
   earthquake, collision or upset of a motor vehicle, mobile equipment or
   aircraft, automatic sprinkler leakage;

2. The **Products – Completed Operations Hazard**; or
3. Any discharge dispersal, seepage, migration, release or escape of
   pollutants that meets all of the following conditions:

**NU-U/W 02969**

65581 (06/96)                          Page 1 of 3

a. It was accidental and neither expected nor intended by the **Named Insured**. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury**, **Property Damage**, or **Personal Injury** could occur; and

b. It was demonstrable as having commenced on a specific date during the term of this policy; and

c. Its commencement became known to the **Named Insured** within seven (10) calendar days and was further reported to the Risk Management Department within a reasonable time frame; and

d. Its commencement was reported in writing to us within forty (40) calendar days of becoming known to the Risk Management Department; and

e. Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision 3. shall operate to provide any coverage with respect to:

a. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

b. Any fines or penalties;

c. Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion 3. shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

d. Acid rain;

e. Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants; or

f. Water pollution caused by oil or its derivatives.

It is further agreed that solely as respects any coverage granted by this endorsement:

1.  We shall only be liable for damages in excess of the Named Peril and Time Element Pollution retained limit as on the Schedule Retained Limits described.

**NU-U/W 02970**

65581 (06/96)                            Page 2 of 3

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly and equally share with the other the expense of the third arbitrator and of the arbitration.

The arbitration proceedings shall take place in the state shown in Item 1 of the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

**NU-U/W 02971**

65581 (06/96)                                                Page 3 of 3

**ENDORSEMENT #19**

**THIS ENDORSEMENT, EFFECTIVE**    12:01 A.M.   01/01/99    **FORMS A PART OF**

**POLICY NO:  357-43-46**          **ISSUED TO:   INTEGRATED HEALTH SERVICES OF LESTER**

**BY**  NAITONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**AUTOMOBILE LIABILITY EXCLUSION**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership,
maintenance, operation, use, loading or unloading of any **auto**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22302A.D00

AUTHORIZED REPRESENTATIVE

**NU-U/W 02972**

# ENDORSEMENT # 20

This endorsement, effective 12:01 A.M.  01/01/2000            forms a part of

policy No. BE        357-43-86         issued to INTEGRATED HEALTH SERVICES OF LESTER

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## EMPLOYERS' LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured.**

NU-U/W 02973

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

62279 (03/95)