# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

Integrated Health Services, Inc., *et al.*,                    Case No. 00-389 (MFW)
Jointly Administered

      Debtors.

_____/

IHS LIQUIDATING LLC,

      Plaintiff,

v.                                                             Civil Action No. 05-376 (GMS)

ACE INDEMNITY INSURANCE COMPANY
f/k/a INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA,

      Defendant.

_____/

IHS LIQUIDATING LLC,                                           Civil Action No. 04-1262 (GMS)

      Third Party Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, GENERAL STAR
INDEMNITY COMPANY and ACE INDEMNITY
INSURANCE COMPANY f/k/a INDEMNITY
INSURANCE COMPANY OF NORTH AMERICA

      Third-Party Defendants.

_____/

ACE INDEMNITY INSURANCE COMPANY
f/k/a INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA,

      Third-Party Defendant and
      Fourth-Party Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, and
GENERAL STAR INDEMNITY COMPANY,

      Fourth-Party Defendants.                          /

*Cover page cont. on next page.*

_____

**CROSS-CLAIM DEFENDANT NATIONAL UNION'S BRIEF IN
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF CROSS-
CLAIM PLAINTIFF INDEMNITY INSURANCE COMPANY OF NORTH
AMERICA**

_____

Dated: July 10, 2007

Christopher Page Simon (No. 3697)
Amy Evans (No. 3829)
CROSS & SIMON, LLC
913 N. Market Street, 11th Floor
Wilmington, Delaware  19801
Telephone:    (302) 777-4200
Facsimile:    (302) 777-4224

George G. Campion
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, NJ  07054-0438
Telephone:    (973) 403-1100
Facsimile:    (973) 403-0010

Gwynne A. Young
Florida Bar No. 185582
Frederick T. Hawkes
Florida Bar No. 307629
Carlton Fields, PA
P.O. Drawer 190
Tallahassee, FL  32302
Phone:        (850) 224-1585
Facsimile:    (850) 222-0398

*Counsel for Cross-Claim Defendant
National Union Fire Insurance Co. of
Pittsburgh, Pa.*

## TABLE OF CONTENTS

TABLE OF CITATIONS ........................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ........................ 3

STATEMENT OF FACTS ....................................................................... 6

ARGUMENT:

I.      Maryland Law Controls ............................................................. 10

II.     No Challenge To The Non-Pyramiding Of Limits Endorsements
        Has Been Pled in the Cross-Claim ............................................. 11

III.    Parol Evidence Cannot Alter An Unambiguous Policy Contract
        Absent Mutual Mistake, Fraud, or Duress .................................. 13

IV.     This Claim For Reformation Is Untimely .................................... 18


        CONCLUSION ......................................................................... 21

<u>**TABLE OF CITATIONS**</u>

**CASES**

American Cas. Co. v. Ricas,
    22 A.2d 484 (Md. 1941) ...........................................................................................20

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007)...........................................................................................12

Bensalem Township v. Int'l Surplus Lines Ins. Co.,
    38 F.3d 1303 (3d Cir. 1994) ..................................................................................16

Black v. Finantra Capital, Inc.,
    418 F.3d 203 (2d Cir. 2005)...................................................................................13

Boyle v. Maryland State Fair,
    134 A. 124 (Md. Ct. Spec. App. 1926)..................................................................12

Calhoun v. Yamaha Motor Corp., N.A.,
    216 F.3d 338 (3d Cir. 2000)..................................................................................10

Calomiris v. Woods,
    727 A.2d 358 (Md. 1999) ......................................................................................14

Campbell v. Emory Clinic,
    166 F.3d 1157 (11th Cir. 1999)............................................................................13

Carr v. Gillis Assoc. Indus., Inc.,
    2007 WL. 1115929 (3d Cir. April 16, 2007) .......................................................13

Castleman v. Du Val,
    43 A. 821 (Md. 1899)............................................................................................14

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..............................................................................................18

Cerny v. Cerny,
    31 A.2d 324 (Md. Ct. Spec. App. 1943)..............................................................12

Chambers v. Seghetti,
    668 A.2d 1006 (Md. Ct. Spec. App. 1996)...........................................................20

Cheney v. Bell Nat'l Life Ins.,
    556 A.2d 1135 (Md. 1989) ....................................................................................17

Chesapeake Physicians Professional Ass'n v. Home Ins. Co.,
    608 A.2d 822 (Md. Ct. Spec. App. 1992) .............................................................................17

Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,
    988 F.2d 386 (3d Cir. 1993) ..................................................................................................14

Core-Mark Int'l Corp. v. Commonwealth Ins. Co.,
    2006 WL. 2501885 (S.D.N.Y. Aug. 30, 2006) .....................................................................20

Fireman's Fund Ins. Co. v. Continental Ins. Co.,
    519 A.2d 202 (Md. 1987) .....................................................................................................19

Flester v. Ohio Cas. Ins. Co.,
    307 A.2d 663 (Md. 1973) .....................................................................................................15

G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co.,
    102 F. Supp. 2d 300 (D. Md. 2000) .....................................................................................14

Greater New York Mut. Ins. Co. v. U.S. Underwriters Ins. Co.,
    36 A.D.3d 441 (N.Y. App. Div. 2007) .................................................................................12

Grossberg v.  Grossberg,
    104 A.D.2d 439 (N.Y. 1984) ...............................................................................................11

Hesson v. Hesson,
    89 A. 107 (Md. 1913) ...........................................................................................................14

Higgins v. Barnes,
    530 A.2d 724 (Md. 1987) ............................................................................... 12, 13, 14, 17

Iko Monroe, Inc. v. Royal & Sun Alliance Ins. Co.,
    2001 WL. 1568674 (D. Del. 2001) ......................................................................................10

Indemnity Insurance Company of North America v. Integrated Health Services,
    Inc. and Abe Briarwood Corp., Civil Action No. 04-1262 (GMS)........................................ 2

Inge v. Rock Financial Corp.,
    388 F.3d 930 (6th Cir. 2004) ...............................................................................................13

Interstate Fire & Cas. Co. v. Pacific Indem. Co.,
    568 F. Supp. 633 (D. Md. 1983) ..........................................................................................19

Liggett Group, Inc. v. Affiliated FM Ins. Co.,
    788 A.2d 134 (Del. Super. Ct. 2001) ...................................................................................10

Madison Ave. Leasehold, LLC v. Madison Bentley Assoc., Ltd.,
    861 N.E.2d 69 (N.Y. 2006)...................................................................................12

Marjac, LLC v. Trenk,
    2006 WL. 3751395 (D. N.J. 2006)......................................................................13

Maryland Ins. Guaranty Ass'n. v. Muhl,
    504 A.2d 637 (Md. Ct. Spec. App. 1986).............................................................19

Maryland Port Admin. v. John W. Brawner Contracting Co., Inc.,
    492 A.2d 281 (Md. Ct. Spec. App. 1985).............................................................12

Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.,
    815 A.2d 1109 (Pa. Super. 2003).........................................................................16

Pacific Indem. Co. v. Interstate Fire & Cas. Co.,
    488 A.2d 486 (Md. 1985).....................................................................................17

Pamintuan v. Nanticoke Memorial Hosp.,
    192 F.3d 378 (3d Cir. 1999).................................................................................16

Pfizer, Inc. v. Elan Pharmaceutical Research Corp.,
    812 F. Supp. 1352 (D. Del. 1993) .......................................................................10

Poe v. Philadelphia Cas. Co.,
    84 A. 476 (Md. 1912)..........................................................................................19

Sallie v. Tax Sale Investors, Inc.,
    814 A.2d 572 (Md. Ct. Spec. App. 2002)............................................................14

Springer v. Allstate Life Ins. Co. of N.Y.,
    731 N.E.2d 1106 (N.Y. 2000)..............................................................................15

Surlak v. Surlak,
    95 A.D.2d 371 (N.Y. App. Div. 1983) ................................................................12

The Brickman Group, Ltd. v. CGU Ins. Co.,
    865 A.2d 918 (Pa. Super. 2004)...........................................................................20

Thomas v. Independence Township,
    463 F.3d 285 (3d Cir. 2006).................................................................................12

Williams v. N.Y. Life Ins. Co.,
    89 A. 97 (Md. 1913)............................................................................................13

Williams v. Nationwide Mut. Ins. Co.,
    750 A.2d 881 (Pa.Super.2000).........................................................................................16

Young v. Verson Allsteel Press Co.,
    539 F. Supp. 193 (D. Pa. 1982)........................................................................................ 9

**OTHER**

Fed. R. Evid. 408............................................................................................................... 9

Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2007).....................................................................19

## INTRODUCTION AND SUMMARY OF ARGUMENT

IICNA's motion for summary judgment asserts that National Union wrongfully exhausted the 2000 IHS policies by applying their non-pyramiding endorsements, which IICNA asserts were mistakenly included in the policies. Because those policies expressly contain the non-pyramiding endorsements, there can be no argument that National Union improperly exhausted those policies <u>as written</u> when it applied those endorsements. Rather, IICNA would have to obtain reformation of the policies to delete those endorsements. IICNA's motion should be denied because (1) this claim was not pled, (2) the endorsements are unambiguous and cannot be altered by parol evidence, and (3) the claim is untimely.

First, no claim for reformation or otherwise challenging the endorsements was ever pled. IICNA's motion for summary judgment on a newly-raised claim asserting the alleged invalidity of the non-pyramiding endorsements as a "unilateral change" in coverage should be denied for this reason alone. IICNA had the opportunity to seek leave to amend to assert this claim, but did not do so. Summary judgment cannot be granted on an unpled claim.

Second, the non-pyramiding endorsements are unambiguous on their face, and IICNA makes no suggestion to the contrary. Hence, absent mutual mistake, fraud, or duress, the endorsements cannot be altered on the basis of parol evidence, as IICNA seeks by its motion. No mutual mistake, fraud, or duress is shown here, much less pled in the cross-claim. To the contrary, these endorsements were specifically addressed by the parties after their issuance, and they were not deleted, unlike <u>other</u> endorsements that were by agreement deleted.

1

Third, the motion also should be denied because any such claim is barred by the statute of limitations. The Insured – in whose shoes IICNA stands – knew, through its agent, that these endorsements had been included in the policies at the time the policies were issued to it. National Union subsequently refused to delete these endorsements, although it acceded to IHS's request to correct other endorsements. Thereafter, IHS accepted the benefits of the policies as written – payment of $25 million in claims – and thereby acquiesced in the issuance of these endorsements. IICNA's effort to reform the policies now, by deleting the endorsements to them, is not only unpled and legally insufficient, it is untimely.

IICNA's motion for summary judgment should be denied.

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Contrary to the procedural history set forth by IICNA, the declaratory judgment action filed by IICNA against IHS and Abe Briarwood was commenced as an adversary proceeding in Bankruptcy Court on August 15, 2003. [Bankr. Adv. 03-55550-MFW D.I. No. 1.] The reference was later withdrawn. [Civil Action No. 04-1262(GMS) D.I. No. 11 .][1]  National Union is not a party to that action, and the issues involved there are not the same as those alleged in the instant case.[2]  The declaratory judgment complaint filed by IHS Liquidating against IICNA seeking a declaration regarding IICNA's rights and obligations under IHS's 1999 policy was not filed until May 6, 2005. [Bankr. Adv. D.I. No. 1.]

On June 8, 2005, IICNA filed a Motion to Withdraw Reference. [D.I. No. 1.]  On March 14, 2006, this Court granted IICNA's Motion to Withdraw Reference. [D.I. No. 5.]  Thereafter, on October 31, 2006, IICNA filed a Motion to Amend its Answer to the Third-Party Complaint and to Assert a Cross-Claim for Declaratory Judgment against National Union and GenStar for improper exhaustion of IHS's insurance policies for the 1999 and 2000 policy years. [D.I. No. 29.]  On February 21, 2007, this Court orally granted the Motion to Amend.  On February 28, 2007, the Amended Answer and Fourth-Party Complaint/Cross-claim were filed. [D.I. No. 57.]

---

[1] References to the docket in the main bankruptcy case no. 00-389 (MFW) shall hereafter be designated "Bankr. D.I. No. ___." References to the docket in the bankruptcy adversary proceeding case no. 05-51318 (MFW) shall hereafter be designated "Bankr. Adv. D.I. No. ___" References to the docket in this district court action shall hereafter be designated as "D.I. No. ___."

[2] The Briarwood case was consolidated with the instant case for discovery only [D.I. No. 55].

The amendment brought the 2000 policies into the action for the first time, but only in one specific, limited respect. Count II of IICNA's cross-claim is captioned "Cross-claim for Improper Exhaustion of the 2000 Policies." IICNA alleged three grounds for its claim of improper exhaustion of those 2000 Policies:

1. Improper payment of expenses and settlement amounts by National Union in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 2000 IHS Main Policy's limits of liability [D.I. No. 57, ¶¶ 81, 82, 86, 101, 102, 103, prayer for relief (a)];

2. Improper payment of all amounts spent by National Union of fees and expenses to Hamlin and Burton for administration of the 2000 IHS Main Policy [D.I. No. 57, ¶ 86, prayer for relief (c)]; and

3. Improper payment by National Union of Chapter 400 fees [D.I. No. 57, ¶ 86, prayer for relief (d)].

As shown in National Union's Brief in Support of Its Motion for Summary Judgment filed June 25, 2007, each of those asserted grounds has now been withdrawn by IICNA or otherwise resolved. [D.I. No. 97.]

Although IICNA previously told this Court that it would be seeking leave to amend its cross-claim complaint to add a claim challenging the non-pyramiding of limits endorsements in the 2000 policies, IICNA subsequently elected not to do so. Instead, it simply filed a motion for summary judgment on that claim that was never pled. In its Motion for Summary Judgment, IICNA asks this Court to declare as follows:

The Non-Pyramiding of Limits endorsements as contained in National Union's 2000 Main Policy and 2000 Lester Policy are not applicable as the "Non-Pyramiding of Limits" endorsements constitute a unilateral change in coverage issued by National Union after the issuance of its binder [and] are not part of the policies….

Nowhere in its cross-claim is this relief requested, however, nor are any allegations made asserting that those endorsements constitute an impermissible "unilateral change" in the coverage, provided by the binders.

## STATEMENT OF FACTS

National Union issued a Commercial Umbrella Policy (357-43-84), for January 1, 2000 to January 1, 2002 ("2000 IHS Main Policy"), to Integrated Health Services, Inc., ("IHS" or "the Insured"), which contained limits of $25 million (per occurrence and aggregate), in excess of IHS's self-insured retention of $2 million/$14 million (occurrence/aggregate) limits. This Policy is attached to Vivian Cardamone's affidavit as Exhibit B [D.I. No. 98].

National Union also issued a Commercial Umbrella Policy (357-43-86), for January 1, 2000 to January 1, 2001, to IHS of Lester, Inc., a subsidiary of IHS, (2000 Lester Policy), with a $2 million (occurrence/aggregate) limit. The Lester Policy is attached to Vivian Cardamone's affidavit as Exhibit C [D.I. No. 98]. As IICNA acknowledges, the Lester Policy was issued separately as an accommodation to IHS at its request. See IICNA Brief In Support of Motion for Summary Judgment at 13-14 [D.I. No. 95].

The 2000 IHS Main Policy contains a non-pyramiding endorsement (Endorsement #4), which provides:

### Non-Pyramiding of Limits Endorsement

If damages covered by this policy are also covered in whole or in part by Policy Numbers 357-43-86 [2000 Lester Policy] and 357-43-88, our total Limits of Insurance under all policies combined shall be:

| | |
|---|---|
| $25,000,000 | Each Occurrence Limit |
| $25,000,000 | Each Medical Incident Limit |
| $25,000,000 | Products Completed Operations Aggregate Limit |
| $25,000,000 | Medical Professional Aggregate Limit |
| $25,000,000 | General Aggregate Limit |

The 2000 Lester Policy also contains a non-pyramiding endorsement (also Endorsement #4) that is identical, except that it refers to the IHS 2000 Main Policy number.

As can be seen from the face of those documents, Endorsement #4 to each Policy expressly limits all combined coverage for all IHS entities to $25 million for the 2000 policy period. These non-pyramiding endorsements have been part of the 2000 policies since they were first issued.

Specifically, the policies were issued in February 2000 and the original and copies were forwarded to Jennie Wu at Lockton Insurance Brokers, Inc. ("Lockton"), the Insured's agent, with a request that Lockton review the policies and advise National Union of any corrections. [Lockton 0603 App. At B1]. As IICNA acknowledges, Jennie Wu then sent a memo to National Union on April 12, 2000, requesting certain corrections. Among the requested corrections was that the Non-Pyramiding of Limits endorsement should be deleted from both the policies. She also requested that Lester facilities be included under the Main Policy, by deleting a Lester exclusion. No corrections were made at that time. Accordingly, as IICNA again acknowledges, on January 17, 2002, Mike Christian of Risk Strategies, another agent for the Insured, again requested certain corrections to the policies, attaching a copy of the earlier Wu memo. [D.I. No. 95, Exhibit L.]

A meeting then was held between Christian and National Union representatives in April, 2002 [Chiacchio Depo. Exh. NU 7 (March 27, 2007), App. At B3; Lockton 0601, App. At B6]. A follow-up meeting was held with National Union claims representatives in July, 2002. Following these meetings, National Union issued certain specific corrective endorsements to the 2000 policies, including the correction to endorsements of

7

the IHS Main Policy that deleted the Lester exclusion.  No corrective endorsements were ever issued, however, deleting the non-pyramiding endorsements.  There were no subsequent requests from the Insured or Lockton to delete the non-pyramiding endorsements.

In October 2004, Lockton requested certified copies of all 1999 and 2000 policies. Vivian Cardamone, an underwriting specialist, reviewed the underwriting files and issued certified copies of all the 1999 and 2000 policies.  Her transmittal letter of January 24, 2005, to Lockton indicates that she made certain corrections to the policies, but she specifically declined to delete the non-pyramiding endorsements.  See affidavit of Vivian Cardamone Exh. A [D.I. No. 98].

Thus, IHS, through its agents, has known about the allegedly incorrect inclusion of the non-pyramiding endorsements since the policies were first issued in February, 2000.  In April, 2000, its agents expressly addressed the inclusion of these endorsements, and requested their deletion, which National Union declined to do.  Thereafter, IHS accepted the benefits of the policies as written (payment by National Union of $25 million in claims against the Insured), without seeking to reform the 2000 policies to delete the non-pyramiding endorsements.

National Union administered these policies in reliance on the non-pyramiding endorsements and exhausted the limits of the policies as written.  National Union, upon exhaustion of its $25 million limits, then tendered to GenStar, the next excess carrier, the defense of the remaining IHS claims for 2000.  GenStar accepted the tender without challenge.

It should be finally noted that the resolution of the 1999 policy issues, which IICNA cites at length as evidence that National Union must make further payment under the 2000 policies, was a direct consequence of settlement negotiations. IICNA's reference to the settlement of the 1999 policy issues is a violation of Fed. R. Evid. 408, which prohibits using evidence of settlement negotiations or offers to prove liability for or invalidity of a claim. If a partial settlement could be used against a party as to remaining claims, that would obviously discourage any partial settlement efforts. See Young v. Verson Allsteel Press Co., 539 F. Supp. 193 (D. Pa. 1982) (explaining fundamental importance of enforcing Fed. R. Evid. 408's exclusion of any evidence relating to settlement). This Court should not consider IICNA's arguments regarding the settlement negotiations of the 1999 policies.

# ARGUMENT

## I.      Maryland Law Controls.

IHS, a national nursing home chain, was a Delaware corporation with its principal place of business in Maryland.  Applying either Delaware's choice-of-law rule under diversity jurisdiction or the Third Circuit's federal question choice-of-law rule results in application of the same state's law: Maryland.  In a diversity case, this Court should follow Delaware's choice-of-law rule, which accords the insured's principal place of business, under the Restatement (Second) of Conflicts of Law, as being the most significant contact, where there are multiple risks in many states, as IHS had here with nursing homes in many states.  See Liggett Group, Inc. v. Affiliated FM Ins. Co., 788 A.2d 134 (Del. Super. Ct. 2001); Iko Monroe, Inc. v. Royal & Sun Alliance Ins. Co., 2001 WL 1568674 (D. Del. 2001) (J. Sleet opinion, following Delaware's choice-of-law rule).

The Third Circuit also follows the Restatement (Second) Conflicts of Law and its most significant relationship test when determining choice-of-law under federal question jurisdiction.  See  Calhoun v. Yamaha Motor Corp., N.A., 216 F.3d 338 (3d Cir. 2000); Pfizer, Inc. v. Elan Pharmaceutical Research Corp., 812 F. Supp. 1352 (D. Del. 1993) (in federal question cases, federal choice-of-law analysis follows Restatement (Second) of Conflicts of Law).  This results in choosing the law of the insured's principal place of business – Maryland.

Thus, regardless of the jurisdictional basis, Maryland controls.  Indeed, IICNA has never disputed that Maryland law controls.

## II.    No Challenge To The Non-Pyramiding Of Limits Endorsements Has Been Pled In The Cross-Claim.

As discussed above, IICNA's cross-claim alleged very specific grounds as to why the 2000 policies allegedly were improperly exhausted.    The non-pyramiding endorsements are <u>not</u> alleged to have resulted in an improper exhaustion of the policies; in fact, these endorsements are not even mentioned in the cross-claim.    Nonetheless, in its Motion for Summary Judgment, IICNA asks this Court to declare that:

> The Non-Pyramiding of Limits endorsements as contained in National Union's 2000 Main Policy and 2000 Lester Policy are not applicable as the "Non-Pyramiding of Limits" endorsements constitute a unilateral change in coverage issued by National Union after the issuance of its binder [and] are not part of the policies….

No request for such relief nor any facts supporting that relief is pled in the cross-claim. The cross-claim contains no allegation about the non-pyramiding endorsements, a "unilateral change" in coverage, and no allegations about the binders.

IICNA nonetheless appears to suggest that its motion for this relief falls within its claim that the 2000 IHS Main Policy has been improperly exhausted.  As pled, however, that claim was expressly based on an entirely different endorsement (Endorsement #5) that excluded Lester facilities claims from the Main Policy.  IICNA's motion for summary judgment is <u>not</u> based on <u>that</u> claim or <u>that</u> endorsement.

Nor is IICNA's motion based on a claim that National Union improperly exhausted the 2000 policies <u>as written</u>.  Rather, IICNA now asserts improper exhaustion of the policies based on a belated claim that the non-pyramiding endorsements constitute a supposedly "unilateral change in coverage" after issuance of the binders.  But, the Court could not make such a determination that the policies were improperly exhausted on that

basis without first reforming the policies to delete the non-pyramiding endorsements. As such, although artfully worded to avoid the nature of this claim, IICNA's present assertion that the non-pyramiding endorsements are invalid and cannot be applied is of necessity a claim for reformation. However, no such claim for reformation was ever pled in IICNA's cross-claim.

In order to state a cause of action for reformation of a written document, the ground for reformation must be alleged in clear and positive terms. <u>Boyle v. Maryland State Fair</u>, 134 A. 124 (Md. Ct. Spec. App. 1926). A pleading that fails to allege any recognized ground for reformation fails to state a cause of action for reformation. <u>See</u> <u>Higgins v. Barnes</u>, 530 A.2d 724 (Md. 1987); <u>Maryland Port Admin. v. John W. Brawner Contracting Co., Inc.</u>, 492 A.2d 281 (Md. Ct. Spec. App. 1985); <u>Cerny v. Cerny</u>, 31 A.2d 324 (Md. Ct. Spec. App. 1943); <u>Greater New York Mut. Ins. Co. v. U.S. Underwriters Ins. Co.</u>, 36 A.D.3d 441 (N.Y. App. Div. 2007); <u>Surlak v. Surlak</u>, 95 A.D.2d 371 (N.Y. App. Div. 1983). Moreover, a specific request for relief by reformation must be made and requires "proof of the highest order" establishing the claim "clearly and beyond doubt," well in excess of a preponderance standard. <u>Higgins</u>, 530 A.2d at 726-28. Nowhere in its cross-claims, however, does IICNA mention these particular non-pyramiding endorsements or their purported invalidity as a "unilateral change" from the coverage under the binders. Nor does it ask for these endorsements to be invalidated.

Under the pleading standards established by <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), IICNA must allege "enough facts to state a claim for relief that is plausible on its face." <u>Id.</u> at 1974. Notice of the basic facts and circumstances underlying a claim must be given. <u>See</u> <u>also</u> <u>Thomas v. Independence Township</u>, 463 F.3d

285 (3d Cir. 2006); Marjac, LLC v. Trenk, 2006 WL 3751395 (D. N.J. 2006).  Because IICNA's cross-claim states no facts to show why the non-pyramiding endorsements are invalid nor seeks a declaration of their invalidity by reforming the policies to delete them, IICNA has not met the pleading standards required in Twombly.

Since IICNA elected not to seek an amendment, it is left with only the allegations in its existing cross-claim.  The Court should not permit IICNA's motion for summary judgment to act as a motion for leave to amend.  Leave to amend after discovery is closed and after dispositive motions are due is inherently prejudicial.  See Carr v. Gillis Assoc. Indus., Inc., 2007 WL 1115929 (3d Cir. April 16, 2007) (affirming rejection of addendum report filed at the eleventh hour); Black v. Finantra Capital, Inc., 418 F.3d 203 (2d Cir. 2005) (affirming district court's ruling refusing to grant leave to amend after close of discovery); Inge v. Rock Financial Corp., 388 F.3d 930 (6th Cir. 2004) (holding that leave to amend would be prejudicial where all significant discovery had been completed and after the dispositive motion cut-off date); Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) ("prejudice is inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed and decided").  And, summary judgment cannot be granted on an unpled claim.

### III.  Parol Evidence Cannot Alter An Unambiguous Contract, Absent Mutual Mistake, Fraud Or Duress.

Maryland law is settled that parol evidence is inadmissible to vary an unambiguous contract.   See Higgins v. Barnes, 530 A.2d 724, 726 (Md. 1987) (parol evidence is inadmissible to vary, alter, or contradict unambiguous contract); Williams v. N.Y. Life Ins. Co., 89 A. 97, 98 (Md. 1913) (parol evidence is inadmissible to confirm

the terms of a written insurance policy where no ambiguity is alleged); <u>Castleman v. Du Val</u>, 43 A. 821, 822 (Md. 1899) ("The general and well-established rule undoubtedly is that, where no fraud or mistake is alleged, parol evidence will not be admitted to aid in the construction of a sealed instrument").

Moreover, Maryland law is equally clear that parol evidence cannot be used to <u>create</u> an ambiguity in a contract that is not, on its face, ambiguous. <u>G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co.</u>, 102 F. Supp. 2d 300 (D. Md. 2000) (under Maryland law, only if insurance policy is ambiguous is parol evidence admissible to illustrate parties' intent); <u>Calomiris v. Woods</u>, 727 A.2d 358 (Md. 1999) (admission of extrinsic evidence of contractual intent is barred when written language is unambiguous); <u>Sallie v. Tax Sale Investors, Inc.</u>, 814 A.2d 572 (Md. Ct. Spec. App. 2002).

Although parol evidence can be used to establish mutual mistake, fraud, or duress in support of reformation, IICNA has not alleged any of these grounds, even in its belated effort to invalidate the non-pyramiding endorsements. It offers no evidence that National Union did not intend to include these non-pyramiding endorsements as part of the 2000 policies.[3] <u>See Higgins v. Barnes</u>, 530 A.2d at 726 (reformation claim must be based on mutual mistake, fraud, or duress; mutual mistake must be shown by proving exact agreement parties intended "beyond a reasonable doubt"). Rather, IICNA, at best, asserts a <u>unilateral</u> mistake on the part of IHS, which is not a basis for admitting parol evidence to support a reformation claim. <u>See Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.</u>, 988 F.2d 386 (3d Cir. 1993); <u>Hesson v. Hesson</u>, 89 A. 107 (Md. 1913).

---

[3] At a minimum, National Union's evidence shows that it never intended to delete these endorsements, so summary judgment is improper based on this factual dispute.

IICNA repeatedly asserts that the 2000 policies had to conform to the binders of interim coverage. To the contrary, case law makes clear that the binder to an insurance policy ceases to have any validity or effect once a policy is actually issued. See Flester v. Ohio Cas. Ins. Co., 307 A.2d 663, 666-68 (Md. 1973) (insurance binder is temporary contract which expires and has no effect after policy is issued). As the court in Springer v. Allstate Life Ins. Co. of N.Y., 73 N.E. 2d 1106, 1108 (N.Y. 2000), explained:

> It has long been settled in this State that an insurance binder is a temporary or interim policy until a formal policy is issued (citations omitted). A binder provides interim insurance, usually effective as of the date of application, which terminates when a policy is either issued or refused (citations omitted). A binder does not constitute part of an insurance policy, nor does it create any rights for the insured other than during its effective period (citation omitted). Thus, a binder is limited in time until an assessment of risk is completed by the carrier.

Further, even if this earlier binder could be considered in determining coverage under the 2000 policies themselves, (which it cannot), it shows nothing inconsistent with the non-pyramiding endorsements, since the binder shows on its face that it was only providing $25 million in total, temporary coverage, not $27 million in coverage that IICNA asserts should have been provided under the 2000 policies. The binders do not establish any mutual mistake.

IICNA likewise does not demonstrate that the policies are ambiguous as to coverage limits, or that the non-pyramiding endorsements are ambiguous. In fact, these endorsements are perfectly clear that the Main Policy limits of $25 million cannot be added to the Lester Policy limits of $2 million, to produce $27 million in total coverage as IICNA now seeks. Because the evidence associated with the parties' negotiations, binders, prior years' policies, the broker's request to delete the non-pyramiding

endorsements, and Wu's assertion that these should have been deleted are all <u>extrinsic</u> to the policies, they cannot be considered by the Court in interpreting policies that are clear and unambiguous on their face. A court cannot consider on summary judgment evidence that would not be admissible at trial. <u>See</u> <u>Pamintuan v. Nanticoke Memorial Hosp.</u>, 192 F.3d 378, 387 n.12 (3d Cir. 1999).

In an obvious effort to avoid Maryland's well-established law against considering extrinsic evidence for interpreting unambiguous insurance contracts, IICNA relies on a case decided under Pennsylvania law, <u>Bensalem Township v. Int'l Surplus Lines Ins. Co.</u>, 38 F.3d 1303 (3d Cir. 1994). IICNA cites this case to support its position that extrinsic evidence can be used to create ambiguity by showing the insured's reasonable expectation of coverage in certain cases where the new terms of a replacement policy are not adequately disclosed to the insured. <u>Bensalem</u> has no bearing on controlling Maryland law. Furthermore, its exception to the prohibition against using parol evidence to interpret clear policies is very narrow even in Pennsylvania, and does not apply to commercial insureds or where the new policy terms are apparent:

> This Court has noted that, generally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous. *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 886 (Pa.Super.2000). Our Supreme Court has identified only two limited exceptions to this principle: (1) protecting non-commercial insureds from policy terms which are not readily apparent; and (2) protecting non-commercial insureds from deception by insurance agents.

<u>Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.</u>, 815 A.2d 1109, 1114 (Pa. Super. 2003).

Since IHS was a national nursing home chain, it is clearly a "commercial" insured. Further, the terms of the 2000 policies were readily apparent since the Insured's

sophisticated New York broker directly addressed the non-pyramiding endorsements. Thus, this narrow exception would not apply even under Pennsylvania law. IICNA has wholly failed to show that Maryland would allow extrinsic evidence to create ambiguity in an otherwise clear insurance policy.

IICNA also selectively quotes from a Maryland case that sets forth general principles for interpreting insurance contracts, under which the court "examine[s] the character of the contract, it purpose, and the facts and circumstances of the parties at the time of execution." Chesapeake Physicians Professional Ass'n v. Home Ins. Co., 608 A.2d 822, 826 (Md. Ct. Spec. App. 1992). However, this case did not consider parol evidence of the parties' negotiations; rather, it interpreted the policies as a matter of law. In the case cited for this general proposition by the Chesapeake court, Pacific Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486 (Md. 1985), the Maryland high court specifically noted that "the inquiry is confined to analysis of the language used." Id. at 486.

Thus, this general phrasing of the Maryland rule is not an open invitation to consider parol evidence, as IICNA argues. See Higgins, 530 A.2d at 726 (parol evidence cannot vary unambiguous contract); Pacific Indem., 488 A.2d at 497 (when terms in insurance contract were found ambiguous, at that point extrinsic evidence could be considered to show parties' intent). IICNA points to no ambiguity in the policies or the challenged endorsements; hence, its extrinsic evidence cannot be considered, and the clear terms of the non-pyramiding endorsements control. Higgins, 530 A.2d at 726; see also Cheney v. Bell Nat'l Life Ins., 556 A.2d 1135, 1138 (Md. 1989) (Maryland does not

follow rule, adopted in most jurisdictions, that an insurance policy is construed most strongly against the insurer).

Finally, the small premium IHS paid for the Lester Policy means nothing standing alone, as Lester facilities unquestionably received valuable insurance coverage in 2000. The Lester Policy was broken out from the Main Policy at the Insured's request, as IICNA acknowledges. This premium structure, which was agreed to by IHS, simply has no bearing on whether the non-pyramiding endorsements are valid on their faces, the sole issue IICNA now raises in its motion for summary judgment.

In sum, even if the Court considers IICNA's new claim for reformation that was never pled, the record shows IICNA is not entitled to summary judgment. Instead, summary judgment should be entered for National Union because IICNA can offer no admissible evidence to show that the non-pyramiding endorsements are invalid. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (district court has power to enter summary judgment for nonmovant as long moving party presented all its evidence). At a minimum, the record reflects that National Union intended to include these endorsements, and summary judgment cannot be entered for IICNA in light of this factual dispute. See Affidavit of Vivian Cardamone, Exh. B. [D.I. No. 98.]

## IV. <u>This Claim For Reformation Is Untimely</u>.

In all events, this belated claim is barred by Maryland's statute of limitations.[4] Summary judgment for IICNA should be denied for this reason as well.

---

[4] National Union has never been given the chance to raise its affirmative defenses to a reformation, as this claim has never been pled. If the Court considers this new claim, it must likewise consider potential affirmative defenses.

IICNA stands in the shoes of IHS for purposes of the statute of limitations.  Under Maryland law, an excess insurer has the right to sue a primary insurer, as if the excess insurer were the insured.  See Fireman's Fund Ins. Co. v. Continental Ins. Co., 519 A.2d 202 (Md. 1987).  However, the excess carrier is limited to the rights the insured would have in asserting a cause of action against the primary insurer or underlying insurer (in this case National Union).  The excess insurer has a similar cause of action as the insured, based on the doctrine of equitable subrogation.  See Interstate Fire & Cas. Co. v. Pacific Indem. Co., 568 F. Supp. 633 (D. Md. 1983) (where excess insurer was required to pay on behalf of insured amount that primary insurer should have paid, excess insurer's payment was not a voluntary payment and excess insurer had standing to sue primary insurer on the ground the primary insurer was actually liable for payment).

The statute of limitations that would apply to the insured's claim if he had brought the claim binds the insurer who becomes subrogated to the insured's rights.  See Maryland Ins. Guaranty Ass'n v. Muhl, 504 A.2d 637 (Md. Ct. Spec. App. 1986) (when statute of limitations had run as to insured who had not filed timely claim, insurer seeking subrogation was "out of luck"); Poe v. Philadelphia Cas. Co., 84 A. 476 (Md. 1912).  The rationale underlying these cases is that the subrogated insurer stands in the shoes of its insured, taking no rights other than what its insured had.

Under Maryland law, a general 3-year statute of limitations applies to all contract actions.  See Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2007).  At least by April 12, 2000, the date on which IHS's agent sent a memo to National Union requesting that the non-pyramiding endorsements be deleted, IHS certainly knew or was on notice of the

alleged mistaken inclusion of non-pyramiding endorsements in the 2000 policies.[5] National Union did not agree to delete the endorsements. IHS knew that the policies contained the endorsements and no corrective endorsements were ever issued, as was done with respect to <u>other</u> endorsements, at the request of IHS's broker.

Any action to reform or otherwise correct the policies would have to have been filed at the very latest on April 12, 2003. No such action was filed by that date, and hence this claim is barred by Maryland's three year statute of limitations. Because IICNA stands in the shoes of IHS, its insured, IICNA is bound by the same expiration of the statute of limitations.

Nor does the doctrine of relation back save IICNA. IICNA's motion to amend its cross-claim to allege improper exhaustion of the 2000 IHS Main Policy was not filed until October 31, 2006. Thus, even if the new reformation claim were assumed to relate back to that date on which IICNA first sued National Union on the 2000 policies, [6] the claim still would be barred.

---

[5]  Lockton, the insurance broker, acted as an agent for IHS, since the broker was authorized to secure insurance for it. IICNA concedes that Lockton acted as IHS's agent with respect to these policies. <u>See</u> IICNA Brief In Support Of Motion For Summary Judgment at 12, 15 [D.I. No. 95]. Accordingly, all knowledge of the broker is imputed to IHS. <u>See</u>, <u>e.g.</u>, <u>American Cas. Co. v. Ricas</u>, 22 A.2d 484 (Md. 1941) (broker is agent of insured, and broker's acts bind insured); <u>Core-Mark Int'l Corp. v. Commonwealth Ins. Co.</u>, 2006 WL 2501885 (S.D.N.Y. Aug. 30, 2006) (knowledge of insurance broker is imputed to the insured); <u>The Brickman Group, Ltd. v. CGU Ins. Co.</u>, 865 A.2d 918 (Pa. Super. 2004) (insurance broker's knowledge imputed to insured where insured authorized broker to secure insurance).

[6]  Under Maryland law, a new cause of action does not relate back to the original filing date when it relies on "different operative facts from those supporting" the original claim. <u>See</u> <u>Chambers v. Seghetti</u>, 668 A.2d 1006, 1008 (Md. Ct. Spec. App. 1996). The new claim IICNA asserts in its summary judgment motion relies on different facts – namely, the purported improper inclusion of the non-pyramiding endorsements and the broker's request to delete these. None of these operative facts was involved in the original claim, so relation back does not apply to either the original action or the amendment challenging

## CONCLUSION

IICNA's motion for summary judgment should be denied because no claim challenging the non-pyramiding endorsements was ever pled. If the Court nonetheless addresses this new claim, it should be rejected as a matter of law, because it is barred by the Maryland rule prohibiting parol evidence from being used to interpret a clear policy, as well as the statute of limitations. Since the record demonstrates that, as a matter of law, IICNA cannot prevail on this new claim, summary judgment should be granted to National Union. At a minimum, summary judgment must be denied because National Union sharply disputes that issuance of the non-pyramiding endorsements was a mistake on its part.

Respectfully submitted,

Dated: July 10, 2007
      Wilmington, DE                 CROSS & SIMON, LLC


    /s/ Amy E. Evans
Christopher Page Simon (No. 3697)
Amy Evans (No. 3829)
913 N. Market Street, 11th Floor
Wilmington, Delaware  19801
Telephone:     (302) 777-4200
Facsimile:     (302) 777-4224

-and-

George G. Campion
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, NJ  07054-0438
Telephone:     (973) 403-1100
Facsimile:     (973) 403-0010

---

the exhaustion of the 2000 policies on other grounds. Moreover, as shown above, even if there were relation back to the first claim about the 2000 policies, this reformation claim still is untimely.

-and-

Gwynne A. Young (FBN:  185582)
Frederick T. Hawkes (FBN: 307629)
Carlton Fields, PA
P.O. Drawer 190
Tallahassee, FL  32302
Phone:          850-224-1585
Facsimile:       850-222-0398