**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>          Debtors. | | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>          Plaintiff,<br><br>          v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>          Defendant | | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC,<br><br>          Third-Party Plaintiff<br><br>          v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA,<br>GENERAL STAR INDEMNITY COMPANY,<br>and ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA<br><br>          Third-Party Defendants | | |
| ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA<br><br>          Third-Party Defendant and<br>          Fourth-Party Plaintiff<br><br>          v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA, and<br>GENERAL STAR INDEMNITY COMPANY, | | |

**THIRD-PARTY DEFENDANT AND FOURTH PARTY PLAINTIFF,
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Defendant–Third Party Defendant, ACE Indemnity Insurance Company, f/k/a
Indemnity Insurance Company of North America ("IICNA"), by its attorneys, sets forth
its Answer and Affirmative Defenses to the Third-Party Complaint filed by IHS
Liquidating LLC, as follows:

## THIRD-PARTY COMPLAINT

Defendant-Third Party Defendant, Indemnity Insurance Company of North
America ("IICNA"), improperly identified as "ACE Indemnity Insurance Company, f/k/a
Indemnity Insurance Company of North America", by its attorneys, sets forth its Answer
and Affirmative Defenses and Cross-Claims for Declaratory Judgment to the Third-Party
Complaint filed by IHS Liquidating LLC, as follows:

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Denied.

5.      Admitted.

6.      Admitted.

7.      Denied to the extent that paragraph 7 attempts to characterize the Plan
which is a document that speaks for itself.

8.      Denied to the extent that paragraph 8 attempts to characterize the Plan
which is a document that speaks for itself.

9.      Denied to the extent that paragraph 9 attempts to characterize the Plan which is a document that speaks for itself.

10.     Denied to the extent that paragraph 10 attempts to characterize the Plan which is a document that speaks for itself.

11.     Admitted, except to the extent that paragraph 11 attempts to characterize the National Union Policy which is a document that speaks for itself.  Moreover, as to the authenticity of Exhibit A, strict proof thereof is demanded.

12.     Denied.  By way of further answer, upon information and belief, Exhibit B is not a true, correct and complete copy of the National Union policy issued to IHS of Lester, Inc.

13.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 13, and strict proof thereof is demanded.

14.     Admitted, except to the extent that paragraph 14 attempts to characterize paragraphs 48 and 49 of the Counterclaim which is a document that speaks for itself.

15.     Admitted.

16.     Admitted.

17.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 17, and strict proof thereof is demanded.

18.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 18, and strict proof thereof is demanded.

19.    Paragraph 19 sets forth conclusions of law to which no responsive pleading is required.

20.    Paragraph 20 sets forth conclusions of law to which no responsive pleading is required.

21.    Denied to the extent that paragraph 21 attempts to characterize the letter which is a document that speaks for itself.

22.    Admitted, except to the extent that paragraph 22 attempts to characterize the letter which is a document that speaks for itself.

23.    IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 23, and strict proof thereof is demanded.

24.    Admitted, except to the extent that paragraph 24 attempts to characterize the letter which is a document that speaks for itself.

25.    IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 25, and strict proof thereof is demanded.

26.    Admitted; however, the letter is a document that speaks for itself.

27.    Denied to the extent that paragraph 27 attempts to characterize the letters which are documents that speak for themselves.

28.    Denied.

29.    Admitted.

30.    Admitted.

31.    Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied to the extent that paragraph 35 attempts to characterize the policies referred to, which are documents that speak for themselves, and/or attempts to characterize any coverage afforded thereby.

36.     Denied to the extent that paragraph 36 attempts to characterize the IICNA Policy which is a document that speaks for itself.

37.     Denied to the extent that paragraph 37 attempts to characterize any coverage provided by IICNA.

38.     Denied to the extent that paragraph 38 attempts to characterize any coverage provided by IICNA.

39.     Denied to the extent that paragraph 39 attempts to characterize any coverage provided by IICNA.

40.     Denied to the extent that paragraph 40 attempts to characterize any coverage provided by IICNA.

41.     IICNA is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41, and strict proof thereof is demanded.

42.     Denied.

43.     Denied.

**<u>First Claim For Relief</u>**

44. Paragraphs 1 through 43 are hereby incorporated by reference as if more fully set forth at length.

45. Paragraph 45 sets forth a conclusion of law to which no responsive pleading is required.

46. Admitted.

47. It is admitted that these controversies impact the 1999 Insured Tort Claims; it is denied that they impact the Plan and the proceedings related thereto.

48. Denied to the extent that the declaratory relief sought is the subject matter of a prior pending action.

49. Paragraph 49 sets forth a conclusion of law to which no responsive pleading is required.

50. Denied to the extent that the declaratory relief sough is the subject matter of a prior pending action.

51. Denied.  To the extent that paragraph 51 sets forth a conclusion of law, no responsive pleading is required.

## Second Claim For Relief

52. Paragraphs 1 through 51 hereof are hereby incorporated by reference as if more fully set forth at length.

53. Denied. To the extent that paragraph 53 sets forth a conclusion of law, no responsive pleading is required.

## Third Claim For Relief

54. Paragraphs 1 through 53 hereof are hereby incorporated by reference as if more fully set forth at length.

55.     Denied.  To the extent that paragraph 54 55 sets forth a conclusion of law, no responsive pleading is required.

### Fourth Claim For Relief

56.     Paragraphs 1 through 55 hereof are hereby incorporated by reference as if more fully set forth at length.

57.     Denied.

58.     Denied.  To the extent that paragraph 58 sets forth a conclusion of law, no responsive pleading is required.

### Affirmative Defenses

59.     The Third-Party Complaint fails to state a claim upon which relief can be granted.

60.     The relief requested by this Third-Party Complaint is barred by the doctrines of waiver and estoppel.

61.     This Court should abstain in favor of the prior pending action in the district court styled *Indemnity Insurance Company of North America v. Integrated Health Services, Inc. and Abe Briarwood Corporation*, C.A. No. 04-1262-GMS, into which Liquidating LLC has moved to intervene without opposition from IICNA.

62.     The Third-Party Complaint misstates the extent and nature of the insurance coverage provided, and is without any basis in fact or in law.

63.     Liquidating LLC has suffered no prejudice by IICNA's failure to join National Union and GenStar; and this Court lacks jurisdiction over any claim that IICNA may have against National Union and/or GenStar.

64.     Liquidating LLC's Sixth Affirmative Defense is without any basis in fact or in law.

65.     IICNA incorporates by reference its Answer, Affirmative Defenses and Counterclaim to the Complaint, along with its Motion for Withdrawal of Reference, that have been previously filed in this adversary proceeding.

WHEREFORE, IICNA respectfully requests that the Third-Party Complaint be dismissed with prejudice; and for such other and further relief as is just.

### IICNA'S AMENDED CROSS-CLAIM AGAINST NATIONAL UNION PURSUANT TO F.R.C.P. 13 AND F.R.C.P. 15(a)

Defendant-Third Party Defendant and Fourth-Party Plaintiff, Indemnity Insurance Company of North America ("IICNA"), by and through its undersigned counsel of record, files this Fourth-Party Cross-Claim for Declaratory Judgment against co-defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and in support thereof respectfully alleges:

**A.     THE PARTIES**

1.     IICNA is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1601 Chestnut Street, Philadelphia, PA 19103, with additional offices located at 500 Colonial Center Parkway, Suite 200, Roswell, GA 30076.

2.     Fourth-Party Defendant, National Union, is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 175 Water Street, New York, NY 10038.

**B.     JURISDICTION AND VENUE**

- 8 -

3.    Jurisdiction is proper pursuant to 28 U.S.C. §1367 as the matter is already pending before this Honorable Court.  Jurisdiction is also founded upon the provisions of 28 U.S.C. §2201 for the entry of a Declaratory Judgment.  Venue in this district is proper pursuant to 28 U.S.C. §1409(a).

C.    **THE POLICIES**

*The 1999 Policies*

4.    Integrated Health Services, Inc. (hereinafter "IHS") was a health care corporation organized under the laws of Delaware and having its principle place of business is Maryland.  At the times relevant hereto, coverage was provided to IHS on a calendar year basis.

5.    From January 1, 1999 through January 1, 2000, IHS was insured at the primary level by Reliance National Insurance Company under a matching deductible Health Care Medical Professional Liability and General Liability policy No. NGB 0151564-00 (the "Reliance Policy").  A copy of the Reliance Policy is attached hereto as Exhibit "A".

6.    The Reliance National Insurance Company was obligated to defend and indemnify IHS for claims coming within the coverage afforded by the Reliance Policy from the first dollar.

7.    Shortly after the Reliance Policy began defending IHS, but prior to the Reliance Policy's exhaustion, Reliance National Insurance Company was placed into liquidation by the Insurance Commissioner for the Commonwealth of Pennsylvania.

8.    The limits and coverage available under the Reliance Policy are the subject of litigation between the Liquidator for Reliance National Insurance Company and IHS Liquidating LLC that is currently pending in Pennsylvania.

9.    Fourth-Party Plaintiff, IICNA, and Fourth-Party Defendant National Union, both issued policies of insurance to Integrated Health Services, Inc. ("IHS") in excess of the Reliance Policy for the period January 1, 1999 to January 1, 2000.

10.    The first layer of excess coverage was provided by National Union which issued two separate policies of insurance.  National Unions policies attach either (a) upon the exhaustion of the Reliance Policy; or, (b) upon the "insured" becoming "legally obligated to pay" claims in excess of the Reliance Policy's limits.

11.    The applicable National Union policies are:

a.    Commercial Umbrella Policy No. BE 357-43-43 (hereinafter the "1999 IHS Main Policy").  The Declarations to the 1999 IHS Main Policy identifies the "***insured***" as Integrated Health Services, Inc.  The policy limits are $25,000,000 each occurrence/aggregate.  On information and belief, the "***insured***" paid $725,000.00 for this coverage; and,

b.    Commercial Umbrella Policy No. BE 357-43-44 (hereinafter the "1999 Lester Policy").  The Declarations to the 1999 Lester Policy identifies the "***insured***" as "Integrated Health Services of Lester, Inc." (hereinafter "IHS of Lester").  The policy limits as stated in the Declarations are $25,000,000 each occurrence/aggregate.  On information and belief, the "***insured***" paid $16,000.00 for this coverage.  A true and correct copy of policy No. BE 357-43-44 as

produced to IICNA by National Union is attached hereto as Exhibit "B" and incorporated herein by reference.

12.    Both the 1999 IHS Main Policy and the 1999 Lester Policy provide professional liability and general liability coverage.

13.    The 1999 Lester Policy contains Endorsement #17 which, purportedly, reduces the limits to $2 million each occurrence/aggregate.

14.    The 1999 Lester Policy also contains Endorsement #19 which places defense expenses within the limits of the coverage provided.  The 1999 IHS Main Policy does not contain such an endorsement.  Rather, pursuant to the 1999 IHS Main Policy, Section II. Defense, B 2, all expenses incurred by National Union "in the defense of any **suit** or claim are in addition to" the limits of insurance listed in the Declarations.

15.    On March 26, 2003, IHS filed an adversary proceeding in the United States Bankruptcy Court for the District of Delaware (hereinafter the "Bankruptcy Court") styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, Adv. Proc. No. 03-52081, in an effort to enforce coverage under the 1999 IHS Main Policy *only*.  Through this action, IHS sought to compel National Union to assume administration and defense of any remaining open professional liability claims alleging residency or injury occurring during the 1999 calendar year ("1999 Claims").

16.    In connection with its claims to coverage, IHS filed a Motion for Summary Judgment which was granted in IHS's favor by order dated October 23, 2003.

17.    In response to IHS's Motion for Summary Judgment, National Union filed its own Cross-Motion for Summary Judgment and, in support thereof, filed a copy of its

1999 IHS Main Policy with the Bankruptcy Court.  A true and correct copy of the 1999

IHS Main Policy as filed with the Bankruptcy Court is attached hereto as Exhibit "C" and

incorporated herein by reference.

      18.     The Schedule of Forms to the 1999 IHS Main Policy, as filed by National

Union in support of its Motion for Summary Judgment with the Bankruptcy Court,

identifies Endorsement #1 as Broad Named Insured which contains the following

relevant provisions:

### BROAD NAMED INSURED-AMENDATORY

> The definition of Named Insured (IV E1 a and b) is amended to include any partnership, interest in a joint venture[*], subsidiary controlled or proprietary company, corporations, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership interest or management control.

> However, this policy shall exclude all coverage and limits for the exposure of **Integrated Health Services of Lester, Inc.** and its interests in other entities.

> \* See Joint Venture Endorsement for additional conditions.

> **ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

(Emphasis in original).

      19.     Upon IICNA's request, National Union provided a "certified copy" of the

1999 Lester Policy under cover letter dated February 7, 2005 (see Exhibit "B").  The

1999 Lester Policy contains an endorsement which does not bear any identifying number

but contains the following provisions:

### AMENDATORY ENDORSEMENT

It is hereby understood and agreed that this policy shall not respond to any insureds, named insureds or additional insureds covered under policy BE 357-43-43 for Integrated Health Services, Inc.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

20.    Pursuant to the foregoing endorsements, the 1999 IHS Main Policy and the 1999 Lester Policy provide mutually exclusive coverage.

21.    Shortly after National Union issued the 1999 IHS Main Policy and the 1999 Lester Policy the broker, Lockton Insurance Services (hereinafter "Lockton") sent a "fax memo" to National Union documenting the numerous errors Lockton had discovered in the policies as issued.  The "fax memo" dated May 28, 1999, states that Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester") should not be excluded from coverage under the 1999 IHS Main Policy.  Further, the "fax memo" states that the 1999 IHS of Lester Policy should be included on the Schedule of Underlying Insurance as an underlying to the 1999 IHS Main Policy.  A true and correct copy of the May 28, 1999 "fax memo" is attached hereto as Exhibit "D" and incorporated herein by reference.  The May 28, 1999 "fax memo" attached hereto was made available to IICNA through discovery requests served on National Union.

22.    As of the filing of this Amended Fourth-Party Complaint, National Union has never issued a revised Schedule of Underlying Insurance that includes the 1999 IHS of Lester policy as a scheduled underlying policy to the 1999 IHS Main Policy.

23.    The next layer of coverage was provided by General Star Indemnity Company (hereinafter "GenStar") through Excess Liability Policy No. IXG-347714B (hereinafter the "1999 GenStar Policy").  The 1999 GenStar Policy, issued for the period

January 1, 1999 to January 1, 2000, provides coverage limits of "$25,000,000 each

occurrence Bodily Injury and/or Property Damage liability combined/$25,000,000

aggregate (where applicable) in excess" of the underlying coverage.

     24.    The last known layer of insurance available to IHS for the period January

1, 1999 to January 1, 2000 was provided by IICNA.  IICNA issued Excess Liability

Catastrophe Policy No. XLXG1 9524139, with limits of $50,000,000 each

occurrence/$50,000,000 aggregate (the "1999 IICNA Policy").

     25.    The 1999 IICNA Policy provides, in part, as follows:

**SECTION I**
**INSURING AGREEMENTS**

A.    COVERAGE

WE will pay on YOUR behalf the ULTIMATE NET LOSS
(1) in excess of all UNDERLYING INSURANCE and (2)
***only after all UNDERLYING INSURANCE has been***
***exhausted by the payment of the limits of such insurance***
for losses arising out of OCCURRENCES that take place
during OUR policy period and are insured by all of the
policies designated in the Declarations as UNDERLYING
INSURANCE.  If any UNDERLYING INSURANCE does
not pay a loss for reasons other than the exhaustion of an
aggregate limit of insurance then WE shall not pay such
loss.  (Emphasis added).

The Definitions, Terms, Conditions, Limitations and Exclusions of
the "first policy of UNDERLYING INSURANCE", in effect at the
inception date of this policy, apply to this coverage unless they are
inconsistent with provisions of this policy, or relate to premium,
subrogation, any obligation to defend, the payment of expenses,
limits of insurance, cancellation or any renewal agreement.

**SECTION III**
**DEFINITIONS**

ULTIMATE NET LOSS means the amount paid or payable
in cash in the settlement or satisfaction of claims for which
the insured is liable, either by adjudication or compromise

with OUR written consent, after making proper deduction
for all recoveries and salvages.

26.    The "first policy of UNDERLYING INSURANCE" to the 1999 IICNA

Policy was the 1999 IHS Main Policy.

27.    Due to the express exclusion of coverage for IHS of Lester as contained in

the 1999 IHS Main Policy filed by National Union in its response to IHS's Motion for

Summary Judgment in the Bankruptcy Court, IICNA has advised IHS' successor-in-

interest, IHS Liquidating LLC, that IICNA does not provide coverage for IHS of Lester

or its interests in other entities.

28.    In its Reply to Counterclaim and Third-Party Complaint, IHS Liquidating

LLC has sought a declaration that the 1999 IICNA Policy provides coverage to IHS of

Lester upon the exhaustion of the underlying limits as comprised by the 1999 IHS Main

Policy issued by National Union and the 1999 GenStar Policy issued by GenStar.  A copy

of IHS Liquidating LLC's Reply to Counterclaim and Third Party Complaint (without

attachments) is attached hereto as Exhibit "E".

29.    Since IICNA's declination of coverage for IHS of Lester under the 1999

IICNA Policy, IICNA has referred all open 1999 Claims alleging residency or injury at

an IHS of Lester facility to National Union.  National Union is providing for the defense

of these 1999 Claims under its 1999 Lester Policy.

30.    In reliance upon information exchanged in discovery, including material

produced by Lockton as well as the May 28, 1999 "fax memo", the parties have agreed

that IHS of Lester is covered under the 1999 IHS Main Policy.

31.     As such, in the event that this Honorable Court determines that the limits of the Reliance Policy have been "paid" and that 1999 IICNA Policy is triggered, IICNA also provides coverage for IHS of Lester under the 1999 IICNA Policy.

32.     Both National Union and IICNA have also agreed that the limits of the 1999 Lester Policy have not been exhausted.  As a result, National Union is providing for the defense of 1999 Claims asserted against IHS of Lester under the 1999 Lester Policy.

### ***The 2000 Policies***

33.     National Union issued Commercial Umbrella Policy No. BE 357-43-84 for the policy period January 1, 2000 to January 1, 2002 (hereinafter the "2000 IHS Main Policy").  The "***insured***" identified in the Declarations is Integrated Health Services, Inc.

34.     Pursuant to III, Limits of Insurance, D., third paragraph:

> The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

35.     Pursuant to Endorsement #3 to the 2000 IHS Main Policy, the Limits of Insurance applicable to the period January 1, 2000 to January 1, 2001 are $25,000,000 each occurrence/$25,000,000 aggregate in excess of a $1,000,000 each occurrence/$5,000,000 general liability self-insured retention and a $2,000,000 each medical incident/$14,000,000 aggregate professional liability self-insured retention.  On information and belief, the "***insured***" paid $1,900,000.00 for the January 1, 2000 to January 1, 2001 coverage.

36.     National Union contracted with Hamlin & Burton Liability Management, Inc. ("Hamlin & Burton"), to act as its agent for the purpose of adjusting claims asserted against IHS and administrating National Union's 1999 and 2000 policies.

37.     In the course of adjusting claims asserted against IHS, National Union and its agents have delivered three different versions of the 2000 IHS Main Policy to IICNA. On each occasion, these agents have represented that the document delivered to IICNA was a "true and correct copy" of the 2000 IHS Main Policy.

38.     The copy of the 2000 IHS Main Policy attached hereto as Exhibit "F" is a true and correct copy of the 2000 IHS Main Policy, as delivered to IICNA by Hamlin & Burton.  Said policy was delivered to IICNA when, on behalf of the underlying carriers National Union and GenStar, Hamlin & Burton tendered the open 2000 tort claims to IICNA upon the purported exhaustion of the underlying limits.

39.     The 2000 IHS Main Policy, as produced by Hamlin & Burton, contains a Broad Named Insured-Amendatory endorsement which states:

### <u>BROAD NAMED INSURED-AMENDATORY</u>

> The definition of Named Insured (IV E1 a and b) is amended to include any partnership, interest in a joint venture[*], subsidiary controlled or proprietary company, corporations, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership interest or management control.

> However, this policy shall exclude all coverage and limits for the exposure of **Integrated Health Services of Lester, Inc.** and its interests in other entities.

> * See Joint Venture Endorsement for additional conditions.

> **ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

(Emphasis in original).

40.     Upon request from IICNA, National Union produced a "certified" copy of the 2000 IHS Main Policy.  This "certified" copy includes a Broad Named Insured-Amendatory endorsement that contains language nearly identical to the language reproduced in the preceding paragraph except that the exclusion of coverage for IHS of Lester has been removed.

41.     National Union also issued Commercial Umbrella Policy No. BE 357-43-86 for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 Lester Policy").  The Declarations to the 2000 Lester Policy identifies the "*insured*" as "Integrated Health Services of Lester".  Pursuant to Endorsement #3, the applicable limits are $2,000,000 each occurrence/$2,000,000 aggregate in excess of the underlying self-insured retention.  On information and belief, the *"insured"* paid $19,000.00 for this coverage.  A true and correct copy of the 2000 Lester Policy as provided by National Union to IICNA is attached hereto as Exhibit "G" and incorporated herein by reference.

42.     GenStar issued Excess Liability Policy IXG-347714C to Integrated Health Services, Inc. for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 GenStar Policy").  The 2000 GenStar Policy provides limits of $25,000,0000 each occurrence Bodily Injury and/or Property Damage liability combined/$25,000,000 aggregate (where applicable) in excess of underlying limits.

43.     IICNA issued Excess Catastrophe Liability Policy No. XLXG20108034 to IHS for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 IICNA Policy").  The 2000 IICNA Policy provides limits of $50,000,000 each occurrence/$50,000,000 aggregate in excess of underlying coverage.

44.    The 2000 IICNA Policy provides, in part, as follows:

**SECTION I**
**INSURING AGREEMENTS**

A.    COVERAGE

WE will pay on YOUR behalf the ULTIMATE NET LOSS
(1) in excess of all UNDERLYING INSURANCE and (2)
only after all UNDERLYING INSURANCE has been
exhausted by the payment of the limits of such insurance
for losses arising out of OCCURRENCES that take place
during OUR policy period and are insured by all of the
policies designated in the Declarations as UNDERLYING
INSURANCE.  If any UNDERLYING INSURANCE does
not pay a loss for reasons other than the exhaustion of an
aggregate limit of insurance then WE shall not pay such
loss.

The Definitions, Terms, Conditions, Limitations and Exclusion of
the "first policy of UNDERLYING INSURANCE", in effect at the
inception date of this policy, apply to this coverage unless they are
inconsistent with provisions of this policy, or relate to premium,
subrogation, any obligation to defend, the payment of expenses,
limits of insurance, cancellation or any renewal agreement.

45.    The "first policy of UNDERLYING INSURANCE" to the 2000 IICNA

Policy was the 2000 IHS Main Policy.

46.    As with the 1999 coverage, upon its issuance of the 2000 policies,

National Union received a "fax memo" from Lockton documenting the numerous errors

in the policies as issued by National Union.  That "fax memo" dated April 12, 2000,

again advises National Union that the 2000 Lester Policy should be identified as an

underlying policy to the 2000 IHS Main Policy as it was supposed to have been in the

1999 IHS Main Policy.  A copy of the April 12, 2000 "fax memo" in attached hereto and

incorporated herein by reference as Exhibit "H".  The April 12, 2000 "fax memo"

attached hereto was made available to IICNA pursuant to discovery requests served upon National Union.

47.      Nearly two years later broker Risk Strategies, Inc. (hereinafter "Risk Strategies"), sent a letter to National Union regarding the IHS account.  In that letter, Risk Strategies informs National Union that the policies still do not match National Union's original proposals.  Moreover, with regard to the 2000 coverage period, Risk Strategies, Inc., informs National Union that the program is a "renewal of the 1999 policy with forms, terms and conditions as expiring."  See paragraph 2.  A copy of Risk Strategies, Inc.'s letter, dated January 17, 2002 is attached hereto and incorporated herein by reference as Exhibit "I".

48.      Included in the 2000 IHS Main Policy is endorsement No. 4, a Non-Pyramiding of Limits Endorsement.  That endorsement provides:

> If damages covered by this policy are also covered in whole or part by Policy Numbers 357-43-86 and 357-43-88. our total Limits of Insurance under all policies combined shall be:
>
> | | |
> |---|---|
> | $25,000,000 | Each Occurrence Limit |
> | $25,000,000 | Each Medical Incident Limit |
> | $25,000,000 | Products Completed Operations Aggregate Limit |
> | $25,000,000 | Medical Professional Aggregate Limit |
> | $25,000,000 | General Aggregate Limit |

49.      The 2000 Lester Policy contains a similar endorsement, however, Policy Number 357-43-84 is substituted for policy number 357-43-86.

50.      The April 12, 2000 "fax memo" clearly states that the Non-Pyramiding of Limits endorsement (Endorsement No. 4) should be removed from both the 2000 IHS Main Policy and the 2000 Lester Policy.

51.     Moreover, coverage for the year 2000 is to be a renewal of the prior year's coverage with "terms and conditions as expiring", according to Risk Strategies letter of January 17, 2002.

52.     As with the 1999 coverage, information exchanged in discovery supports the fact that IHS of Lester is covered under the 2000 IHS Main Policy, therefore, is covered under the 2000 IICNA Policy.[1]

53.     Moreover, that same information supports the fact that the Non-Pyramiding of Limits endorsement should not be part of either the 2000 IHS Main Policy or the 2000 Lester Policy, and should be removed.

54.     National Union, in reliance on the Non-Pyramiding of Limits endorsement, has refused to pay any portion of the limits of the 2000 Lester Policy toward the defense or settlement of claims asserted against IHS of Lester and alleging injury or residency during the 2000 calendar year.

55.     As a result, IICNA has been compelled to defend claims and pay settlements of claims asserted against IHS of Lester, an entity for which other coverage should be available.

56.     By its actions, National Union has rendered $2,000,000.00 in coverage illusory.  In 1999, IHS of Lester paid $16,000.00 for $2,000,000.00 in coverage.  In 2000, IHS of Lester paid $19,000.00 for $0.00 in coverage.  In total, In 1999, IHS and IHS of Lester paid $793,000.00 for $27,000,000 in coverage limits.  In 2000, IHS and IHS of Lester paid $1,919,000.00 for $25,000,000 in coverage.

---

[1] Unlike 1999, however, there is no dispute as to whether the underlying professional liability limits of coverage have been "paid".

57.    Evidence provided by National Union documents that the 2000 IHS Main Policy and the 2000 IHS of Lester Policy do not comport with the intentions of the insured as memorialized by the broker.

58.    National Union has been on notice since April 12, 2000 that the Non-Pyramiding of Limits endorsements, as included in the 2000 IHS Main Policy and the 2000 IHS of Lester Policy are not consistent with a renewal of the prior year's coverage.

**COUNT I**
**CROSS-CLAIM FOR IMPROPER EXHAUSTION OF THE 2000 POLICIES**

59.    Paragraphs 1 through 58 above are incorporated herein by reference as if more fully set forth at length.

60.    Evidence disclosed during discovery documents that the 2000 IHS Main Policy and the 2000 Lester Policy, as issued, are incorrect.

61.    National Union has been aware for years that the Non-Pyramiding of Limits endorsements contained in the above policies should be removed.

62.    Despite this, National Union has failed to allocated the defense costs and settlement amounts spent in connection with the handling and disposition of lawsuits and claims asserted against IHS of Lester and alleging residency or injury occurring during the term of the 2000 Lester Policy toward the exhaustion of the Limits of Liability available under the 2000 Lester Policy.

63.    As a result, IICNA has incurred significant costs in the defense of IHS of Lester under its 2000 IICNA Policy and has been compelled to pay settlements on behalf of an entity for which other coverage should be available.

WHEREFORE, IICNA prays that National Union be required to:

(a)    reimburse IICNA for all amounts it has paid in the defense of IHS

of Lester under its 2000 IICNA Policy up to the limits of the 2000 Lester Policy;

and,

(b)    to the extent that the 2000 Lester Policy is not exhausted by the

payment of (a), above, reimburse IICNA for all settlements paid on behalf of IHS

of Lester under its 2000 IICNA Policy up to the limits of the 2000 Lester Policy;

and,

(c)    to the extent that the 2000 Lester Policy is not exhausted by

the payment of (a) and (b), above, provide for the defense of all lawsuits

naming IHS Lester or an IHS of Lester facility as a defendant and alleging

injury or residency at an IHS of Lester facility during the 2000 Lester

Policy.

P:\InsuranceClients\Ace-USA-500\IHS1999 General-21931\Discovery\Conform DJ to
National Union.doc