# E X H I B I T  "C"



## COMMERCIAL UMBRELLA DECLARATIONS

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

RENEWAL OF: BE    NEW

POLICY NUMBER: BE    357-43-43.

PRODUCER NAME: LOCKTON COMPANIES

ADDRESS:    P O BOX 419351

KANSAS CITY    MO 64141-6351

**ITEM 1.    NAMED INSURED:** INTEGRATED HEALTH SERVICES INC

ADDRESS:    10065 RED RUN BLVD    MD 21117-4827
OWINGS MILLS

**ITEM 2.    POLICY PERIOD: FROM:** January 01, 1999    **TO:** January 01, 2000    AT
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.    LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $25,000,000 | Each Occurrence |
| B. | $25,000,000 | General Aggregate (in accordance with Section III. Limits of Insurance) |
| C. | $25,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | $25,000 | Self Insured Retention |

**ITEM 4.    PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE PER FLAT | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | | $725,000 | $725,000 |

**ITEM 5.    ENDORSEMENTS ATTACHED:**    SEE ATTACHED SCHEDULE

BY _____
AUTHORIZED REPRESENTA

COUNTERSIGNED _____
DATE

57896 (5/93)

## FORMS SCHEDULE

**NAMED INSURED:** INTEGRATED HEALTH SERVICES INC    **EFFECTIVE DATE:** 01/01/99

**POLICY NO:** 357-43-43

1. BROAD NAMED INSURED
2. U60417 (5/94)
3. U60434 (5/94)
4. U62222 (3/95)
5. U62224 (3/95)
6. U62622 (5/95)
7. U67674 (5/97)
8. U70633 (5/98)
9. CLUBS
10. CONTRACTUAL-AUTO CONTRACTS
11. INTENTIONAL INJURY AMENDATORY
12. NOTICE OF OCCURRENCE
13. EXTENDED REPORTING PERIOD OPTION
14. AMENDED INSURING AGREEMENT
15. LIMITS OF LIABILITY

BN054128.DOO

## SCHEDULE OF UNDERLYING INSURANCE

Issued To:  INTEGRATED HEALTH SERVICES INC                    Policy Number:    357-43-43

| TYPE OF COVERAGE | INSURER POLICY NUMBER POLICY PERIOD | | LIMITS OF LIABILITY |
|---|---|---|---|
| AUTOMOBILE LIABILITY | | $1,000,000 | COMBINED SINGLE LIMIT |
| | | | |
| COMMERCIAL GENERAL | RELIANCE NATIONAL INDEMNITY COMPANY | | NON PROFESSIONAL LIABILITY |
| LIABILITY | NGB01516400 | $1,000,000 | EACH OCCURRENCE |
| | JANUARY 1, 1999 | $2,500,000 | GENERAL AGGREGATE |
| | JANUARY 1, 2000 | $2,500,000 | PRODUCTS/COMPLETED |
| | WITH GUARANTEED AGGREGATE | | OPERATIONS AGGREGATE |
| | REINSTATEMENT | $1,000,000 | PERSONAL & ADVERTISING INJURY |
| | | | PROFESSIONAL LIABILITY |
| | | $2,000,000 | EACH OCCURRENCE |
| | | $4,500,000 | AGGREGATE |
| | | | |
| STANDARD WORKERS | | | |
| COMPENSATION AND | | $1,000,000 | EACH ACCIDENT |
| EMPLOYERS LIABILITY | | $1,000,000 | DISEASE POLICY LIMIT |
| | | $1,000,000 | DISEASE EACH EMPLOYEE |
| | | | |
| MISCELLANEOUS LIABILITY | N/A | | |

PAT1.DOC

Authorized Representative _____

AMERICAN INTERNATIONAL GROUP, INC.

70 PINE STREET
NEW YORK, N.Y. 10970

THOMAS R. TIZZIO
SENIOR VICE CHAIRMAN

June 8, 1998

To Our Insureds:

I am writing to call your attention to a situation that has the potential to cause unprecedented dislocation to businesses in the United States and throughout the world. As many of you know, thousands, perhaps millions, of computers and devices with embedded microchips record only the last two digits of a year. As a result, they may not be able to recognize that January 1, 2000 (or subsequent dates) comes after December 31, 1999. As soon as dates in the Year 2000 become relevant to the operation of products or business transactions - a process that has already begun-computers and microchips containing the "millennium bug" may produce erroneous calculations or cease to function, causing problems that can range from the merely inconvenient to the potentially disastrous. Inventory and accounting systems will be affected; so will credit-card validation, electronic data interchange, automated banking reports, pension benefit payments, drug distribution systems for pharmacies and hospitals, and mechanical systems operating everything from office building environmental controls and elevator banks to telephone switches and oil refineries. The cost of fixing the problem in the United States alone has been estimated at more than $600 billion.

Whether the dislocation resulting from this "bug" will be crippling or merely extraordinarily expensive, we at AIG believe that any business that uses or is affected by computers — in other words, every business in the country -- must respond immediately, proactively, and aggressively.  Most Year 2000 problems can be averted, given sufficient foresight, resources, and will.  Companies will be judged -- and, in some cases, will succeed or fall -- depending on how they address these issues.

At AIG, we have identified those of our systems that are subject to Year 2000 risk, and we are well on the way to ensuring that all of our systems will be Year 2000-compliant in time to prevent any significant disruption or dislocation in our business or in the services we provide to our insureds.  We are also communicating with the third-party brokers, agents, and administrators with whom we deal to alert them to these issues and encourage them to take similar actions.  Every process to address Year 2000 should include backup and contingency plans to ensure that any incidents that do occur have minimal impact on operations.

The principal purpose of this letter is to encourage you, in the strongest possible terms, to do what is necessary to ensure that you have the same degree of comfort about the operation of your business in the face of potential Year 2000 problems as we have about ours. The Year 2000 bug is, first and foremost, a business and technical problem that must be addressed on that basis.  It cannot be too strongly emphasized that a company's most important response to the Year 2000 problem is to take all feasible steps to eliminate the problem on a *technical* basis--or, to the extent the problem cannot be eliminated, to minimize its impact.  Resources must be assembled and managed; the board of directors should take an active and ongoing role in ensuring that management has identified, addressed, and resolved problems on a timely basis.

Y2KLetter
Y00001

What, then, should your organization do? There is obviously no single general solution to a problem that will have as many different manifestations as there are addressees of this letter, but a few common sense guideposts may be helpful:

- If you have not yet evaluated your Year 2000 exposure, do it now. Assemble whatever resources are needed to get a handle on the scope of the problem at your organization *now*, so that remedial efforts can be started without further delay. Most public companies will already have started this process in response to SEC disclosure requirements, but *everyone* should take a good, hard look at their compliance efforts to ensure that nothing has been overlooked.

- Set priorities. What is critical and what merely important? What can be fixed and what should be junked?

- Be practical. Many "Year 2000 questionnaires" seem designed as much to transfer potential blame as to solve the problem. If there is a truly crucial third party -- your payroll services vendor, for example, or the sole supplier of an indispensable raw material -- don't just send a questionnaire. Instead, give serious consideration to direct testing and evaluation of the vendor or supplier's systems. If there is a crippling Year 2000 problem, a later breach of warranty claim against the supplier's trustee in bankruptcy will not provide you a great deal of comfort.

- Test, test, and then test some more. Expect and plan for the unexpected.

As I said at the outset of this letter, the potential for dislocation from Year 2000 problems is unprecedented. But so is the level of knowledge concerning the problem and the technical ability to solve it. I urge all of our insureds to address their Year 2000 issues promptly and aggressively.

*Thomas R. Tizzio*

Senior Vice Chairman

Thomas R. Tizzio

Y2KLetter
Y00001

## Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in Insuring Agreement IV. Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in Insuring Agreement IV. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### Insuring Agreements

**I.    Coverage**

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III. Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

**II.    Defense**

    **A.**    We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:

        **1.**    The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or

        **2.**    Damages are sought for **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

    **B.**    When we assume the defense of any claim or suit:

        **1.**    We will defend any suit against the Insured seeking damages on account of **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

        **2.**    We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the Insured:

            **a.**    premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond:

            **b.**    premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish any such bond:

            **c.**    all costs taxed against the Insured in any claim or suit we defend;

    d.    pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    e.    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    f.    the insured's expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any suit or claim are in addition to our Limits of Insurance.

C.    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## III.  Limits of Insurance

A.    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    1.    Insureds;

    2.    Claims made or suits brought; or

    3.    Persons or organizations making claims or bringing suits.

B.    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    1.    Damages included in the Products-Completed Operations Hazard; and

    2.    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

C.    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the Products-Completed Operations Hazard.

D.    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of any one Occurrence.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the insured are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    1.    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    2.    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

57697 (6/93)

E.    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the Declarations as Self **Insured** Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured**;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

## IV.    Definitions

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include mobile equipment.

C.    **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than Your **Product** or Your **Work**, that cannot be used or is less useful because:

1.    It incorporates Your **Product** or Your **Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of Your **Product** or Your **Work**; or

2.    Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

1.    The Named **Insured**, meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

b.    any organization newly acquired, controlled or formed by you during the policy period but only:

    1)    as respects Occurrences taking place after you acquire, take control or form such organization;

    2)    if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

    3)    if you give us prompt notice after you acquire, take control or form such organization.

    We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.    If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.    If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

    No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

4.    Any person or organization, other than the Named Insured, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.    Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

    However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any autos, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.    Any person, other than one of your employees, or organization while acting as your real estate manager.

7.    Any person, organization, trustee or estate to whom you are obligated by a written Insured Contract to provide insurance such as is afforded by this policy but only with respect to:

    a.    liability arising out of operations conducted by you or on your behalf; or

    b.    facilities owned or used by you.

8.    Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any auto owned by you, loaned to you or hired by you or on your behalf and used with your permission.

    However, the coverage granted by this provision 8. does not apply to any person using an auto while working in a business that sells, services, repairs or parks autos unless you are in that business.

F.    **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.    **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    1.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    2.    Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads.

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

   a. equipment designed primarily for:

      1) snow removal;

      2) road maintenance, but not construction or resurfacing; or

      3) street cleaning;

   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H. **Occurrence** means:

   1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**;

   2. As respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

   3. As respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I. **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

   1. False arrest, detention or imprisonment;

   2. Malicious prosecution;

   3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

57697 (6/93)

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

J. 1. **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    a.    products that are still in your physical possession; or

    b.    work that has not yet been completed or abandoned.

2. Your Work will be deemed completed at the earliest of the following times:

    a.    When all of the work called for in your contract has been completed.

    b.    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    c.    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    a.    the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    b.    the existence of tools, uninstalled equipment or abandoned or unused materials.

K.    **Property Damage** means:

    1.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    2.    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

L.    **Suit** means a civil proceeding in which **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

    1.    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    2.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

M.    **Your Product** means:

    1.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.    you;

        b.    others trading under your name; or

        c.    a person or organization whose business or assets you have acquired; and

57697 (6/93)

2.    Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

Your Product includes:

1.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Product; and

2.    The providing of or failure to provide warnings or instructions.

Your Product does not include vending machines or other property rented to or located for the use of others but not sold.

N.    Your Work means:

1.    Work or operations performed by you or on your behalf; and

2.    Materials, parts or equipment furnished in connection with such work or operations.

O.    Your Work includes:

1.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work; and

2.    The providing of or failure to provide warnings or instructions.

V.    Exclusions

This insurance does not apply to:

A.    Any obligation of the Insured under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

B.    Any obligation of the Insured under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

C.    Any obligation of the Insured under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

D.    Property Damage to :

1.    Property you own, rent, occupy or use;

2.    Personal property in the care, custody or control of the Insured.

E.    Property Damage to Impaired Property or property that has not been physically injured, arising out of:

1.    A defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

2.    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

F.    Property Damage to Your Product arising out of it or any part of it.

G.    Property Damage to Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    1.  **Your Product;**

    2.  **Your Work; or**

    3.  **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.  Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

    1.  This exclusion shall not apply; and

    2.  The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.  **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    1.  This exclusion shall not apply; and

    2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.  **Personal Injury** or **Advertising Injury:**

    1.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

    2.  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    3.  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

    4.  For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.  **Advertising Injury** arising out of:

    1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    2.  The failure of goods, products or services to conform with advertised quality or performance;

    3.  The wrong description of the price of goods, products or services; or

    4.  An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

M.  1.  Bodily Injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to Bodily Injury, Property Damage or Personal Injury arising out of:

a.  Heat, smoke or fumes from a hostile fire;

b.  The upset, overturn or collision of a motor vehicle; or

c.  The Products-Completed Operations Hazard;

if insurance for such Bodily Injury, Property Damage or Personal Injury is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such Bodily Injury, Property Damage or Personal Injury will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

a.  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

b.  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

N.  Bodily Injury or Property Damage due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

O.  Bodily Injury or Property Damage expected or intended from the standpoint of the Insured.

However, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property.

P.  1.  Bodily Injury, Property Damage or Personal Injury arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.  Any obligation of the Insured to indemnify any party because of damages arising out of such Bodily Injury, Property Damage or Personal Injury as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  Any obligation to defend any suit or claim against the Insured alleging Bodily Injury, Property Damage or Personal Injury and seeking damages, if such suit or claim arises from Bodily Injury, Property Damage or Personal Injury as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

Q.  Bodily Injury or Personal Injury to:

1.  A person arising out of any:

    a.  Refusal to employ that person;

    b.  Termination of that person's employment; or

    c.  Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2.  The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

1.  Whether the **Insured** may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

R.  Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of or by reason of:

1.  The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

2.  Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

3.  Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

S.  Bodily Injury or Property Damage for which any **Insured** may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

T.  Bodily Injury or Property Damage:

1. a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

57697 (6/83)

1. b.    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.    **Bodily Injury or Property Damage** resulting from the hazardous properties of nuclear material, if:

    a.    the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

    b.    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

    c.    the **Bodily Injury or Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.    As used in this exclusion:

    a.    "hazardous properties" includes radioactive, toxic or explosive properties;

    b.    "nuclear material" means source material, special nuclear material or by-product material;

    c.    "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

    d.    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.    "nuclear facility" means:

        1)    any nuclear reactor;

        2)    any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

        3)    any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        4)    any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    g)    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h)     **Property Damage** includes all forms of radioactive contamination of property.

**VI.    Conditions**

**A.    Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

**B.    Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

**C.    Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

**D.    Cancellation**

1.    You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason , we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.    The policy period will end on the day and hour stated in the cancellation notice.

4.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.    The first Named Insured in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

57697 (6-93)

E.    Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F.    Duties In The Event Of An Occurrence, Claim Or Suit

1.    You must see to it that we are notified as soon as practicable of an Occurrence which may result in a claim under this policy. To the extent possible, notice should include:

a.    how, when and where the Occurrence took place;

b.    the names and addresses of any injured persons and witnesses; and

c.    the nature and location of any injury or damage arising out of the Occurrence.

2.    If a claim is made or suit is brought against any Insured that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.    You and any other involved Insured must:

a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

b.    authorize us to obtain records and other information;

c.    cooperate with us in the investigation, settlement or defense of the claim or suit; and

d.    assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

4.    No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

G.    Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

H.    Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.    You have complied with all the terms of this policy; and

2.    The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

I.    Maintenance of Underlying Insurance

During the period of this policy, you agree:

1.    To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for Occurrences covered by this policy; and

4. That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J.    Other Insurance**

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.    Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L.    Prior Insurance**

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M.    Separation of Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. As if each **Named Insured** were the only **Named Insured**; and

2. Separately to each **Insured** against whom claim is made or **Suit** brought.

**N.    Subrogation**

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

1. Any interests, including the **Insured**, that have paid an amount in excess of our payment under this policy will be reimbursed first;

2.    We then will be reimbursed up to the amount we have paid; and

3.    Lastly, any interests, including the Insured, over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the Insured, in the ratio of their respective recoveries as finally settled.

O.    Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

P.    When Loss Is Payable

Coverage under this policy will not apply unless and until the Insured or the Insured's underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the Insured the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an Insured.

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

*Elizabeth M. Tuck*

SECRETARY

PRESIDENT

**ENDORSEMENT**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/99        FORMS A PART OF

POLICY NO: 357-43-43                          ISSUED TO:  INTEGRATED HEALTH SERVICES INC

BY   NAITONAL UINION FIRE INSURANCE FOMPANY OF PITTSBURGH, PA

## BROAD NAMED INSURED-AMENDATORY

The definition of Named Insured (IV E) a and b) is amended to include any partnership, interest in a joint venture," subsidiary controlled or propriety company, corporation, firm, organization or other entity as now exists or may hereafter be constituted, formed or acquired where the Named Insured has at least 50% ownership interest or management control.

However, this policy shall exclude all coverage and limits for the exposure of Integrated Health Services of Lester,Inc. and its interests in other entities.

*See Joint Venture Endorsement for additional conditions.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22303A.D00

_____
AUTHORIZED REPRESENTATIVE

### ENDORSEMENT

This endorsement, effective 12:01 A.M.  01/01/1999          forms a part of

policy No 92      387-43-43      issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### <u>WAIVER  OF  SUBROGATION</u>

In the event of any payment under this policy, for a loss for which you have waived the right of recovery in a written contract entered into prior to the loss, we hereby agree to also waive our right of recovery.  This waiver shall only apply with respect to a loss occurring due to operations undertaken as per the specific contract in which you waived the right of recovery.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

60417 (5/94)

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 01/01/1999          forms a part of

policy No. BE     357-43-43     issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### JOINT VENTURE ENDORSEMENT

In the event of any Occurrence caused by or arising out of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter joint venture) in which the Insured has an interest, our Limits of Insurance under this policy shall be limited to the product of:

1.     The percentage interest of the Insured in the said joint venture; and

2.     The total liability coverage afforded the Insured by this policy.

Where the percentage interest of the Insured in said joint venture is not set forth in writing the percentage to be applied shall be that which would be imposed by law at the inception of the joint venture. Such percentage shall not be increased by the insolvency of others' interest in the said joint venture.

It is further agreed that where the limits of insurance of the underlying insurance(s) have been reduced by an endorsement similar to the paragraph above, our liability under this Schedule as limited by the paragraph above shall be excess of the sum of:

1     Such reduced limits of underlying insurance(s), and

2.     The limit of any underlying insurance not reduced.

All other terms and conditions of this policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

60434 (5/94)

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  01/01/1999          forms a part of

policy No. BE     357-43-43     issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### UNINTENTIONAL ERRORS OR OMISSIONS ENDORSEMENT

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

82222 (02/95)

**ENDORSEMENT**

This endorsement, effec...e 12:01 A.M.  01/01/1999          forms a part of

policy No. BE      357-43-43      issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## KNOWLEDGE OF OCCURRENCE ENDORSEMENT

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

62224 (03/95)

**ENDORSEMENT**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.    01/01/99    FORMS A PART OF

POLICY NO. 357-43-43    ISSUED TO. INTEGRATED HEALTH SERVICES INC

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**FOLLOW-FORM ENDORSEMENT**

**(CLAIMS MADE VERSION)**

**PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY**

This insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of:

**PROFESSIONAL HEALTH CARE LIABILITY**

However, if insurance for a negligent act, error or omission in the performance of the Insured's professional services as insurance agent or broker is provided by a policy listed in the Schedule of Underlying Insurance:

1.    This exclusion shall not apply;

2.    The insurance provided by your policy will follow form to such policy but will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance; and

3.    Solely as respects this endorsement, we will only provide coverage for a claim made against the Insured during our policy period.


This follows from endorsement shall be subject to any claims made conditions endorsed to this policy.


All Other Terms And Conditions Of This Policy Remain Unchanged.


62662 (5/95)

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT

This endorsement, effective 12:01 A.M.  01/01/1999          forms a part of

policy No. BE ` 357-43-43     issued to INTEGRATED HEALTH SERVICES INC

by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT
#### (Defense Expenses Outside S.I.R.)
#### (Version 4)

Exclusion M of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1. Bodily Injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2. Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3. Any loss, cost or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to Bodily Injury, Property Damage or Personal Injury arising out of:

1. Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage;

2. The Products - Completed Operations Hazard; or

3. Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:

   a. It was accidental and neither expected nor intended by the Named Insured. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the Insured to mitigate or avoid a situation where substantial third party Bodily Injury, Property Damage or Personal Injury could occur; and

   b. It was demonstrable as having commenced on a specific date during the term of this policy; and

   c. Its commencement became known to the Named Insured within seven (7) calendar days and was further reported to the Risk Management Department within a reasonable time frame; and

   d. Its commencement was reported in writing to us within twenty-one (21) calendar days of becoming known to the Risk Management Department; and

   e. Reasonable effort was expended by the Named Insured to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision 3. shall operate to provide any coverage with respect to:

   a. Any site or location principally used by the Insured, or by others on the Insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

   b. Any fines or penalties;

c. Any clean-up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion c. shall not serve to deny coverage for third party clean-up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

d. Acid rain;

e. Clean-up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the Insured owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said pollutants; or

f. Water pollution caused by oil or its derivatives.

It is further agreed that solely as respects any coverage granted by this endorsement:

1. The Self Insured Retention in Item 3. D. of the Declarations is amended to $ _1,000,000_ ;

2. The Self Insured Retention shall not include "Defense Expenses."

"Defense Expenses" means a payment allocated to a specific loss, claim or suit for its investigation, settlement or defense, including but not limited to:

a. attorneys' fees and all other investigation, loss adjustment and litigation expenses;

b. premiums on bonds to release attachments;

c. premiums on appeal bonds required by law to appeal any claim or suit;

d. costs taxed against the Insured in any claim or suit;

e. pre-judgment interest awarded against the Insured;

f. interest that accrues after entry of judgment;

3. In Section II. Defense, provision A. 2. is hereby deleted in its entirety; and

4. We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

All other terms and conditions of this policy remain unchanged.

## ENDORSEMENT

This endorsement, effective   12:01   A.M.   01/01/99      forms a part of

Policy No: 357-43-43    Issued to:  INTEGRATED HEALTH SERVICES INC

By     NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### EXCESS/UMBRELLA DATE RECOGNITION ENDORSEMENT

This insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising directly or indirectly out of:

A.  Any actual or alleged failure, malfunction or inadequacy of:

    1.  Any of the following, whether belonging to any Insured or to others:

        a. Computer hardware, including microprocessors;

        b. Computer application software;

        c. Computer operating systems and related software;

        d. Computer networks,

        e. Microprocessors (computer chips) not part of any computer system; or

        f. Any other computerized or electronic equipment or components; or

    2.  Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1. of this endorsement due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for any potential or actual problems described in paragraph A. of this endorsement.

    All other terms and conditions of this policy remain unchanged.

                                                **AUTHORIZED REPRESENTATIVE**

70633 (5/98)

ENDORSEMENT

THIS ENDORSEMENT, EFFECTIVE    12:01 A.M.   01/01/99    FORMS A PART OF

POLICY NO: 357-43-43                    ISSUED TO:  INTEGRATED HEALTH SERVICES INC

BY  NAITONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## CLUBS

"Insured" includes any association, club or other organization and employees who are members thereof provided such
entity is formed for or by employees for social or recreational purposes w'''    wledge and consent.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22302A.DOO

_____
AUTHORIZED REPRESENTATIVE

ENDORSEMENT

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/99      FORMS A PART OF

POLICY NO: 357-43-43                          ISSUED TO:  INTEGRATED HEALTH SERVICES INC

BY   NAITONAL UNION FIRE INSURANCE FOMPANY OF PITTSBURGH, PA .

CONTRACTUAL-AUTOMOBILE

Insured contract, policy definitions IV F is amended to provide coverage for automobile contracts on a follow form basis.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22303A.DO0

_____
                AUTHORIZED REPRESENTATIVE

ENDORSEMENT

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/99     FORMS A PART OF

POLICY NO: 357-43-43                           ISSUED TO:   INTEGRATED HEALTH SERVICES INC

BY   NAITONAL UINION FIRE INSURANCE FOMPANY OF PITTSBURGH, PA

INTENTIONAL INJURY-AMENDATORY

Exclusion D of the policy is amended as follows:

Bodily Injury or Property Damage expected or intended from the standpoint of the Insured. However, this exclusion does not apply to Bodily Injury or Property Damage resulting from the use of reasonable force to protect persons or property.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22303A.000

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT

THIS ENDORSEMENT, EFFECTIVE    12:01 A.M.   01/01/99    FORMS A PART OF

POLICY NO: 357-43-43                    ISSUED TO:  INTEGRATED HEALTH SERVICES INC

BY  NAITONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### NOTICE OF OCCURRENCE

The Company shall not deny coverage as the result of an unintentional failure to give notice as respects to any occurrence, provided notice is given as soon as practicable after becoming aware that this policy may apply to such occurrence.

ALL OTHER TEPMS AND CONDITIONS REMAIN UNCHANGED.

22302A.DOO

_____

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/99     FORMS A PART OF

POLICY NO. 357-43-43                              ISSUED TO.  INTEGRATED HEALTH SERVICES INC

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## EXTENDED REPORTING PERIOD OPTION
### (CLAIMS MADE ONLY)

1.  We will provide an Extended Reporting Period only if the policy is either cancelled or not renewed by the insured or by us for any reason except non-payment of premium. Non-renewal shall mean the refusal by us to renew the policy on any terms. Non-renewal shall not mean change in premium, retained amounts, or any other terms and conditions.

2.  A Claim first made, in writing, during the Extended Reporting Period will be deemed to have been made on the last day of the policy period, provided that the Claim is for damages because of Personal Injury or Property Damage or Advertising Injury that occurred before the end of the policy period but not before any applicable retroactive date.

3.  The Extended Reporting Period will not reinstate or increase the limits of liability or extend the policy period.

4.  The Extended Reporting Period will be as set forth below:

    a.  If no other insurance the insured purchases to replace this policy applies to the Claim or would apply but for the exhaustion of its applicable limits of liability, an Extended Reporting Period of 60 days from the end of the policy period will apply. This Extended Reporting Period may not be cancelled and requires no additional premium.

    b.  If the insured makes a written request for an Extended Reporting Period within 30 days after the expiration of the policy period and pays additional premium within 30 days after said request, we will issue an Extended Reporting Endorsement for a period of twelve (12) months from the end of the policy period.

    The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be cancelled.

    The Extended Reporting Period Endorsement will also amend the Other Insurance condition so that the insurance provided will be excess over any other valid and collectible insurance available to the insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

5.  The premium for the Extended Reporting Period Endorsement (Section 4b above) will not exceed 200% if the annual premium for this policy and will be fully earned when the endorsement takes effect.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT**

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M.   01/01/99      FORMS A PART OF

POLICY NO. 357-43-43                         ISSUED TO.  INTEGRATED HEALTH SERVICES INC

BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### AMENDED INSURING AGREEMENT AND RETROSPECTIVE DATE
### (CLAIMS MADE ONLY)

The first paragraph of the insuring agreements Coverage is amended as follows:

We will pay on behalf of the insured those sums in excess of the Retained Limit that the Insured becomes legally Obligated to pay by reason of liability imposed by law because of injury to which this insurance applies. The injury must be caused by a "medical incident" that takes place after the Retrospective Date, but before the expiration Date on the policy, and for which a claim is first made during our policy period.

Medical incident shall mean that definition found in the underlying policy.

| ENTITY | RETRO DATE |
|---|---|
| Bay Area Partners | 07/26/86 |
| Lithotripsy Partners of Cincinnati | 01/01/93 |
| Lithotripsy Management Services | 01/01/93 |
| Service Trends | 09/11/93 |
| North Georgia Lithotripsy Partners of Atlanta | 06/12/90 |
| North Georgia Lithotripsy, LP | 06/12/90 |
| North Georgia Lithotripsy Associates, Inc. | 12/12/94 |
| North Georgia Lithotripsy Partners of Augusta | 02/11/91 |
| Cobb Regional Lithotripsy Partners | 06/25/90 |
| Midwest Urologic Stone Limited Partnership | 04/01/93 |
| Mobile Lithotripter of Indiana, Inc. | 02/01/93 |
| Mobile Lithotripter of Indiana, LTD | 02/01/93 |
| Mobile Lithotripter of Indiana Limited Partnership | 02/01/93 |
| New Jersey Litho, LP | 09/14/90 |
| Northeast Indiana Stonecare, LLC | 03/01/94 |
| Southwest Lithotripter Partners, Ltd. | 12/31/93 |
| Gulf South Lithotripsy | 12/01/90 |
| Gulf South Cyrogenics | 12/01/90 |

This policy does not apply to any claim for injury arising from a "medical incident":

1.      That was first made to any insurer prior to the effective date of acquisition;

2.      That is made against this policy because of the limits of liability under any previous policy, whether issued by us or any other insurer, are insufficient or have been exhausted due to the payment of claims arising from a "medical incident";

3.      That is made against this policy because of the insolvency or bankruptcy of any insurer;

4.      That was known by or reported to, prior to the effective date of the acquisition, any "insured", prior insurer or its agents and that arose from a "medical incident" that occurred subsequent to the retroactive date of our policy.

5.  That is covered by any other insurance including any coverage afforded by any "extended reporting period" provisions; or

6.  For which any other insurance does not apply because the amount of the claim is solely within a deductible or self-insured retention.


**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**


22302A.DOO

_____

**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT

THIS ENDORSEMENT, EFFECTIVE 12:01 A.M. 01/01/99      FORMS A PART OF

POLICY NO:   357-43-43            ISSUED TO:  INTEGRATED HEALTH SERVICES INC

BY   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

### LIMITS OF LIABILITY

It is understood and agreed the inclusion of claims made coverage to this policy shall not
act to increase the limits of liability stated on the policy declarations page.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

22302A.DOO

_____
AUTHORIZED REPRESENTATIVE

# AMERICAN INTERNATIONAL GROUP

PREMIUM STATISTICAL REPORTING

PAGE NO. 00100
RUN DATE 01/28/98

REPORT 104686 AAP4M028 -
FOR THE PERIOD: 01/28/98

INTEGRATED HEALTH 00000

100 ACCT    105 DUN & BRAD

TOTAL 1ST PREM:    725,000.00

REPORT I220 AAPAHO61 -

AMERICAN INTERNATIONAL GROUP

DATE RUN: 01/28/99    PAGE  1

UPS REINSURANCE LAYOFF

PERIOD ENDED 01/28/99

PREF POLICY NO    SUFF    POL EFF: 01/01/99    REINS EFF: 01/01/99    INS NAME: INTEGRATED HEALTH SERVICES INC    PROD REGION: D
BE   003574343            POL EXP: 01/01/00    REINS EXP: 01/01/00    COV CO :195  TYPE COV: EXCESS UMBRI  PROD BRANCH: 04  SEQ NO: 01
RENEW OF:

LIMITS --                COVERAGE    MAJOR CLASS CODES:                        DOSP:  DIV: 30 DEPT: 09 SECT: 8  PROFIT UNIT: 0240
   OCCURRENCE:          25,000,000    0352  0353  0352  0353  0714
   AGGREGATE:           25,000,000

REINSURANCE LAYER TOTALS:    CEDED PREMIUM    LAYER NO    CEILING    CEDED PREMIUM    LAYER NO    CEILING    CEDED PREMIUM
LAYER NO       CEILING        $725,000
01          26,000,000

REINSURANCE DETAILS:    CERTIFICATE    PERCENTAGE       ADD
REINS       INTERN      NUMBER       CEDED    IND REMARKS
COMP    TYPE EDIARY                   COMMISSION

                                      LAYER: 01    FLOOR:    1,000,000    CEILING:    26,000,000

NET                          100.000000    0.000000