# E X H I B I T  "E"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-------------------------------------------------------X
In re:                                                 :     Case No. 00-389(MFW)
                                                       :     Jointly Administered
INTEGRATED HEALTH SERVICES, INC.,                      :
et al.,                                                :
                                                       :
            Debtors.                                   :
-------------------------------------------------------X     Chapter 11
IHS LIQUIDATING LLC,                                   :
                                                       :     Adv. Pro. No. 05-51318(MFW)
            Plaintiff,                                 :
                                                       :
    v.                                                 :
                                                       :
ACE INDEMNITY INSURANCE COMPANY                        :
f/k/a INDEMNITY INSURANCE COMPANY                      :
OF NORTH AMERICA,                                      :
                                                       :     **REPLY TO COUNTERCLAIM**
            Defendant,                                 :     **AND THIRD-PARTY COMPLAINT**
-------------------------------------------------------X
IHS LIQUIDATING LLC,                                   :
                                                       :
            Third-Party Plaintiff,                     :
                                                       :
    v.                                                 :
                                                       :
NATIONAL UNION FIRE INSURANCE                          :
COMPANY OF PITTSBURGH, PA.,                            :
GENERAL STAR INDEMNITY COMPANY,                        :
and ACE INDEMNITY INSURANCE COMPANY                    :
f/k/a INDEMNITY INSURANCE COMPANY                      :
OF NORTH AMERICA,                                      :
                                                       :
            Third-Party Defendants.                    :
-------------------------------------------------------X

## REPLY TO COUNTERCLAIM

Plaintiff IHS Liquidating LLC, by its undersigned attorneys, for its Reply to the

Counterclaim, respectfully alleges as follows.

**In Response to The Parties**

1.  Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 1 of the Counterclaim.

2.  Admits the allegations contained in Paragraph 2 of the Counterclaim.

**In Response to Jurisdiction and Venue**

3.  Denies each and every allegation contained in Paragraph 3 of the Counterclaim.

4.  Admits the allegations contained in Paragraph 4 of the Counterclaim.

5.  Denies each and every allegation contained in Paragraph 5 of the Counterclaim, except admits the allegations contained in the first two sentences thereof.

**In Response to Background – IHS's Bankruptcy Case**

6.  Admits the allegations contained in Paragraph 6 of the Counterclaim.

7.  Admits the allegations of Paragraph 7 of the Counterclaim, except refers to the Confirmation Order for its true and complete contents.

8.  Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 8 of the Counterclaim, except admits that IICNA together with other insurance companies filed a joint objection (the "Objection") to confirmation of the Plan, and refers to that Objection for its stated basis.

9.  Denies each and every allegation contained in Paragraph 9 of the Counterclaim, except refers to the Confirmation Order for its true and complete contents.

10.  Admits the allegations of Paragraph 10 of the Counterclaim.

**In Response to The Stock Purchase Agreement and Settlement with Briarwood**

11.  Denies each and every allegation contained in Paragraph 11 of the Counterclaim, except refers to the Stock Purchase Agreement for its true and complete contents.

2

12.    Denies each and every allegation contained in Paragraph 12 of the Counterclaim, except refers to the Court's March 14, 2003 Order for its true and complete contents.

13.    Denies each and every allegation contained in Paragraph 13 of the Counterclaim, except refers to the Stock Purchase Agreement for its true and complete contents.

14.    Denies each and every allegation contained in Paragraph 14 of the Counterclaim, except refers to the Stock Purchase Agreement for its true and complete contents.

15.    Denies each and every allegation contained in Paragraph 15 of the Counterclaim, except refers to the referenced Motions to Compel for their true and complete contents.

16.    Denies each and every allegation contained in Paragraph 16 of the Counterclaim, except refers to the referenced objections for their true and complete contents.

17.    Denies each and every allegation contained in Paragraph 16 of the Counterclaim, except refers to the referenced Stipulation and hearing record for their true and complete contents.

18.    Denies each and every allegation contained in Paragraph 16 of the Counterclaim, except refers to the referenced Stipulation for its true and complete contents.

**In Response to The IICNA Policy**

19.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 19 of the Counterclaim, except admits that IICNA issued an excess liability policy to IHS for the 1999 policy period (the "IICNA Policy") and refer to that Policy for its true and complete contents.

20.    Denies each and every allegation contained in Paragraph 20 of the Counterclaim, and refers to the IICNA Policy for its true and complete contents.

21.    Denies each and every allegation contained in Paragraph 21 of the Counterclaim,

3

and refers to the IICNA Policy for its true and complete contents.

22.    Denies each and every allegation contained in Paragraph 22 of the Counterclaim, and refers to the IICNA Policy and the "various policies of underlying insurance" for their true and complete contents.

23.    Denies each and every allegation contained in Paragraph 23 of the Counterclaim, except admits that IHS subsidiaries are additional insureds under the IICNA Policy, and refers to the IICNA Policy for its true and complete contents.

24.    Admits the allegations contained in Paragraph 24 of the Counterclaim.

25.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 25 of the Counterclaim.

26.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 26 of the Counterclaim.

27.    Denies each and every allegation contained in Paragraph 27 of the Counterclaim, except admits that once the underlying limits of insurance have been exhausted, IICNA is obligated to defend covered claims then outstanding against IHS, and refers to the IICNA Policy for its true and complete contents.

**In Response to General Allegations Applicable to the IICNA Policy**

28.    Denies each and every allegation contained in Paragraph 28 of the Counterclaim, except admits that National Union issued the National Union Policy, refers to that Policy for its true and complete contents, and in particular denies that the National Union Policy was the only underlying policy that National Union issued to IHS and its affiliates for the 1999 policy period.

29.    Denies each and every allegation contained in Paragraph 29 of the Counterclaim, except admits that the National Union Policy provides a $25 million coverage layer in excess of

4

the underlying insurance and refers to the National Union Policy and the Reliance Policy for their true and complete contents.

30.    Admits the allegations contained in Paragraph 30 of the Counterclaim, except refers to the Reliance Policy for its true and complete contents.

31.    Admits the allegations contained in Paragraph 31 of the Counterclaim, except refers to the October 3, 2001 declaration and Liquidation Order for their true and complete contents.

32.    Admits the allegations contained in Paragraph 32 of the Counterclaim.

33.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 33 of the Counterclaim.

34.    Denies each and every allegation contained in Paragraph 34 of the Counterclaim, except admits that a number of 1999 Insured Tort Claims were resolved through binding settlements or judgments, and further admits that IHS successfully sought to have National Union assume the administration and defense of certain of those claims.

35.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 35 of the Counterclaim, except admits the allegations contained in the first sentence thereof.

36.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 36 of the Counterclaim, except admits the allegations contained in the first sentence thereof and further admits that National Union formerly denied its obligation to assume the administration and defense of the 1999 Insured Tort Claims.

37.    Admits the allegations contained in Paragraph 37 of the Counterclaim.

NEWYORK01 1065534v3 359273-000007

38.    Denies each and every allegation contained in Paragraph 38 of the Counterclaim, except refers to the relevant court papers and hearing transcript for their true and complete contents.

39.    Denies each and every allegation contained in Paragraph 39 of the Counterclaim, except refers to the relevant court papers and hearing transcript for their true and complete contents.

40.    Denies each and every allegation contained in Paragraph 40 of the Counterclaim, except refers to the relevant court papers and hearing transcript for their true and complete contents.

41.    Admits the allegations contained in Paragraph 41 of the Counterclaim.

42.    Admits the allegations contained in Paragraph 42 of the Counterclaim.

43.    Admits the allegations contained in Paragraph 43 of the Counterclaim.

44.    Admits the allegations contained in Paragraph 44 of the Counterclaim.

45.    Admits the allegations contained in Paragraph 42 of the Counterclaim.

**In Response to Count I**

46.    Repeats the responses herein to Paragraphs 1 through 45 of the Counterclaim.

47.    Denies each and every allegation contained in Paragraph 47 of the Counterclaim.

48.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 48 of the Counterclaim.

49.    Denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 49 of the Counterclaim.

50.    Admits the allegations contained in Paragraph 50 of the Counterclaim, except refers to the Plan for its true and complete contents.

6

51.    Denies each and every allegation contained in Paragraph 51 of the Counterclaim, except admits the allegations contained in the first sentence thereof, and refers to the referenced correspondence for its true and complete contents.

52.    Denies each and every allegation contained in Paragraph 52 of the Counterclaim, except admits that this case presents an actual case or controversy.

**First Affirmative Defense**

53.    The Counterclaim fails to state a claim on which relief can be granted.

**Second Affirmative Defense**

54.    IICNA has an adequate remedy at law.

**Third Affirmative Defense**

55.    The Counterclaim is barred under the doctrine of laches.

**Fourth Affirmative Defense**

56.    The Counterclaim is barred under the doctrines of waiver and estoppel.

**Fifth Affirmative Defense**

The Counterclaim is barred under the doctrine of unclean hands.

**Sixth Affirmative Defense**

57.    The relief sought in the Counterclaim is necessarily premised on IICNA's allegations: (i) that the National Union Policy and the GenStar Policy are "improperly exhausted" because these insurers made improper charges--for defense costs and for coverage of claims arising at IHS of Lester--against their Policies; (ii) that National Union and GenStar are therefore further liable to plaintiff under their insurance policies; and (iii) that IICNA is therefore excused from performing under the IICNA Policy until and unless the alleged liability of National Union and GenStar under their insurance policies is satisfied.

7

58.    Upon information and belief, the position of National Union and GenStar is that their insurance policies are exhausted, that no improper charges have been made against those Policies; and that neither National Union nor GenStar has any remaining liability to plaintiff thereunder.

59.    If IICNA's position with regard to coverage for defense costs and coverage of claims arising at IHS of Lester is upheld in a decision binding on all three of the excess carriers, then IHS has additional insurance with National Union and GenStar, which will be paid before the IICNA layer of coverage is reached. Conversely, if the position taken by National Union and GenStar with respect to the exhaustion of their coverage limits is upheld in a decision binding on all three of the excess carriers, then IICNA's layer of coverage has been reached. In either event, IHS has full coverage for claim payments and defense costs.

60.    In this regard, taken together, the 1999 insurance policies issued to IHS by National Union, GenStar and IICNA were intended to and do provide IHS with a seamless web of excess insurance coverage of at least $100,000,000 over and above IHS's $9,000,000 primary level of insurance with Reliance. Plaintiff expects that the aggregate coverage provided by its primary layer of coverage with Reliance, which was exhausted many months ago, together with the three excess insurance policies as aforesaid, will substantially exceed the aggregate amount of all covered claims arising during 1999, together with applicable defense costs. Accordingly, whether the National Union and GenStar policies have been exhausted, as those insurers claim, or have not been exhausted, as IICNA claims, IHS is fully insured for all claim payments and defense costs that may arise in the future with respect to any and all 1999 tort claims that have not as yet been resolved.

61.    However, at present neither National Union nor GenStar is a party to this

8

adversary proceeding and, as such, any adjudication of the Counterclaim would: (i) as a practical matter impair or impede the ability of National Union and GenStar to protect their interests; and (ii) subject plaintiff to a substantial risk of inconsistent rulings with respect to the obligations of IICNA, GenStar and National Union under their excess insurance policies, which would create gaps in IHS's excess insurance coverage for 1999 tort claims.

62.    Thus, plaintiff is prejudiced by IICNA's failure to join National Union and GenStar and the consequential risk of inconsistent determinations of issues IICNA has raised in its Counterclaim.

63.    The Counterclaim should therefore be dismissed for failure to join National Union and GenStar as necessary or indispensable parties.

**WHEREFORE**, plaintiff-counterclaim defendant demands judgment dismissing the Counterclaim in its entirety with prejudice, granting the declaratory and other relief sought in the Complaint, and awarding plaintiff-counterclaim defendant the costs and disbursements of this action to the full extent permitted by law, together with such other and further relief as the Court may deem just and proper.

## THIRD-PARTY COMPLAINT

Plaintiff-Counterclaim Defendant-Third-Party Plaintiff IHS Liquidating LLC (the "Liquidating LLC"), for its Third-Party Complaint, alleges the following.

### The Parties

1.    The Liquidating LLC is a Delaware limited liability company with its principal place of business at 21 East 40th Street, Suite 1300, New York, New York 10016. The Liquidating LLC was formed under the Integrated Health Services, Inc. ("IHS") Plan of Reorganization for the purpose of implementing certain terms thereof including, among other

9

things, enforcing the rights of the IHS debtors' estates with respect to their prepetition insurance policies.

2.     Upon information and belief, National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") is a Pennsylvania corporation with its principal place of business at 175 Water Street, New York, New York 10038. National Union is an insurance company.

3.     Upon information and belief, General Star Indemnity Company ("GenStar") is a Connecticut corporation with its principal place of business at 695 Main Street, Stamford, Connecticut 06901. GenStar is an insurance company.

### Jurisdiction and Venue

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (C). This action is brought as an adversary proceeding pursuant to Bankruptcy Rule 700(2) and (9). Venue is proper under 28 U.S.C. § 1409(a).

### The Chapter 11 Cases

5.     On February 2, 2000 (the "Petition Date"), IHS and a number of its direct and indirect subsidiaries (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

6.     By Order dated May 12, 2003 (the "Confirmation Order"), this Court confirmed the *Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code*, dated March 13, 2003 (as amended, modified or supplemented by the Confirmation Order or otherwise, the "Plan").

7.     The Liquidating LLC was formed pursuant to the Plan for the purpose of

10

implementing certain aspects of the Plan.

        8.     Pursuant to the Plan, the Liquidating LLC is charged with responsibility for the administration of disputed prepetition claims against the Debtors, including, without limitation, claims relating to professional and general liability with respect to the operation of Debtors' business ("PL/GL Claims") covered by the Debtors' insurance policies for PL/GL Claims arising in 1999 ("1999 Insured Tort Claims").

        9.     The Plan provides that each holder of an allowed 1999 Insured Claim shall be entitled to receive its *pro rata* share of the aggregate sum of: (i) the proceeds recovered at any given time under the Debtors' insurance policies, including excess insurance policies, in respect of allowed 1999 Insured Tort Claims, after payment of defense costs payable under the policies ("Available 1999 Insurance Proceeds"); and (ii) 3% of the difference between the Available 1999 Insurance Proceeds and the total amount of allowed 1999 Insured Tort Claims.

        10.    For the Liquidating LLC to implement distributions to the holders of allowed 1999 Insured Tort Claims, the Plan further provides for the formation of an escrow account (the "1999 Insured Tort Claims Escrow"), to be established on the Effective Date and administered by the Liquidating LLC. Pursuant to the Plan, as each 1999 Insured Tort Claim is resolved, the insurance proceeds that would otherwise be paid directly to the claimant must be paid to the Liquidating LLC for deposit into the 1999 Insured Tort Claims Escrow so that the Liquidating LLC can make *pro rata* interim and final distributions as provided in the Plan.

**General Allegations**

**The National Union Policies**

        11.    Heretofore, National Union, for consideration, issued to IHS a Commercial Umbrella Policy, numbered BE 357-43-43 (the "National Union Policy"). The National Union Policy provides general liability and professional liability coverage for the policy period January

11

1, 1999 through January 1, 2000. The National Union Policy provides excess coverage of $25 million per occurrence and $25 million in the aggregate. A copy of the National Union Policy is annexed as Exhibit A.

      12.    Heretofore, National Union, for consideration, issued to Integrated Health Services of Lester, a subsidiary of IHS and one of the debtors, ("IHS of Lester") a Commercial Umbrella Policy, numbered BE 357-43-44 (the "National Union Lester Policy"). The National Union Lester Policy provides general liability and professional liability coverage for the policy period January 1, 1999 through January 1, 2000. The National Union Policy provides excess coverage of $25 million per occurrence and $25 million in the aggregate. A copy of the National Union Lester Policy is annexed as Exhibit B.

**The GenStar Policy**

      13.    Heretofore, GenStar, for consideration, issued to IHS a Commercial Umbrella Policy, numbered BE-TXG-347714B (the "GenStar Policy"). The GenStar Policy provides general liability and professional liability coverage for the policy period January 1, 1999 through January 1, 2000. The GenStar Policy provides excess coverage of $25 million per occurrence and $25 million in the aggregate. A copy of the GenStar Certificate of Excess Insurance is annexed as Exhibit C.

      14.    In Paragraph 48 and 49 of its Counterclaim herein, defendant-counterclaim plaintiff IICNA alleges that the aggregate policy limits of both the National Union Policy and the GenStar Policy are "improperly exhausted."

      15.    Specifically, with respect to the National Union Policy, IICNA alleges that National Union improperly charged against the National Union Policy limits: (i) payments of defense costs and expenses; and (ii) payments of judgments or settlements against IHS of Lester.

12

16.    Specifically, with respect to the GenStar Policy, IICNA alleges that GenStar improperly charged against the GenStar Policy limits: (i) payments of defense costs and expenses; and (ii) payments of judgments or settlements against IHS of Lester.

17.    Upon information and belief, it is the position of National Union that the National Union Policy is exhausted, that no improper charges have been made against the National Union Policy, and that National Union has no remaining liability thereunder.

18.    Upon information and belief, it is the position of GenStar that the GenStar Policy is exhausted, that no improper charges have been made against the GenStar Policy, and that GenStar has no remaining liability thereunder.

19.    If IICNA's position with regard to coverage for defense costs and coverage of claims arising at IHS of Lester is upheld in a decision binding on all three of the excess carriers, then IHS has additional insurance with National Union and GenStar, which will be paid before the IICNA layer of coverage is reached. Conversely, if the position taken by National Union and GenStar with respect to the exhaustion of their coverage limits is upheld in a decision binding on all three of the excess carriers, then IICNA's layer of coverage has been reached. In either event, IHS has full coverage for claim payments and defense costs.

20.    In this regard, taken together, the 1999 insurance policies issued to IHS by National Union, GenStar and IICNA were intended to and do provide IHS with a seamless web of excess insurance coverage of a least $100,000,000 over and above IHS's $9,000,000 primary level of insurance with Reliance. The Liquidating LLC expects that the aggregate coverage provided by its primary layer of coverage with Reliance, which was exhausted many months ago, together with the three excess insurance policies as aforesaid, will substantially exceed the aggregate amount of all covered claims arising during 1999, together with applicable defense

13

costs. Accordingly, whether the National Union and GenStar policies have been exhausted, as those insurers claim, or have not been exhausted, as IICNA claims, IHS is fully insured for all claim payments and defense costs that may arise in the future with respect to any and all 1999 tort claims that have not as yet been resolved.

21.    By letter dated June 7, 2005 to counsel for the Liquidating LLC (the "June 7 Letter"), IICNA demanded that the Liquidating LLC immediately sue National Union and GenStar for declaratory relief concerning IICNA's position that National Union and GenStar improperly exhausted their policies. IICNA concluded that failure to do this could "vitiate coverage" under the IICNA Policy. A copy of the June 7 letter is attached hereto as Exhibit D.

22.    By letter dated June 17, 2005 (the "June 17 Letter"), counsel for the Liquidating LLC advised National Union and GenStar of IICNA's position and concluded:

> The issues raised by IICNA are of critical urgency to the Liquidating LLC and to the 1999 personal injury claimants who are dependent upon the IHS insurance policies for their recovery under the IHS Plan of Reorganization. Unless these issues are resolved expeditiously, the process of resolving and paying 1999 tort claims will be disrupted and delayed to the prejudice of all such claimants. In an attempt to avoid needless costly litigation on these issues, we request your prompt response setting forth your position with respect to [the] IICNA assertions.

A copy of the June 17 Letter is attached as Exhibit E.

23.    Neither National Union nor GenStar responded to the June 17 Letter.

24.    By letter dated July 6, 2005 (the "July 6 Letter"), counsel for the Liquidating LLC again advised National Union and GenStar that their dispute with IICNA concerning the terms of the National Union and GenStar Policies could prejudice the Liquidating LLC's rights only if the coverage dispute was permitted to go unresolved or if the coverage dispute was resolved differently by different courts that did not have all three carriers before it. The July 6 Letter

14

concluded:

> IICNA has raised issues concerning whether defense costs can be charged against the aggregate limits of the excess policies and whether IHS has additional coverage for IHS of Lester claims. If these issues are disputed, it is the excess carriers only and not IHS that have a financial stake in the outcome of the dispute. In this regard, if either or both of the issues raised by IICNA have merit, the result would be that the National Union and GenStar layers have not been exhausted and the IICNA layer of coverage has not yet been reached. On the other hand, if the issues raised by IICNA are both without merit, then the IICNA policy is now responsible for all of the 1999 claims. In either event, IHS has ample excess insurance to pay any and all 1999 claims and applicable defense costs. The only difference is the allocation of responsibility among the excess carriers.
>
> Under these circumstances, the excess carriers should very quickly seek to resolve among themselves the coverage issues raised by IICNA. Moreover, the excess carriers should immediately determine among themselves how all 1999 claims are to be administered while any coverage issues remain unresolved to make sure that all claims are adequately defended. Otherwise, it will be necessary to resolve these issues in an action to which all three of the excess carriers are a party.

A copy of the July 6 Letter is attached as Exhibit F.

     25.    Neither National Union nor GenStar responded to the July 6 Letter.

**The IICNA Disclaimers**

     26.    After the Liquidating LLC filed its Complaint herein, IICNA sent the Liquidating

LLC at least eight letters disclaiming coverage of claims against IHS of Lester (the "Lester

Disclaimers" and the "Lester Claims"). Other than the description of the individual Lester

Claims, these letters are substantially identical, and a sample letter dated July 18, 2005 and

concerning the claim of Travie Leslie, individually and as personal representative of the Estate of

Ezzie Braszley, is annexed as Exhibit G.

     27.    The sole basis for the denial of coverage given by IICNA for the Lester

Disclaimers is that, "The IICNA policy is a 'follow form' excess policy which follows the form

15

of National Union Fire Insurance Company of Pittsburgh, PA policy number BE 357-43-43" and according to IICNA that National Union Policy by its terms excludes all coverage for the exposure of IHS of Lester.

28.    The IICNA has thus concluded that: (i) because the IICNA Policy covers only claims against debtor subsidiaries of IHS that qualify as insureds in the underlying policies; and (ii) because claims against IHS of Lester are not covered by the National Union Policy (but rather by the separate National Union Lester Policy); (iii) therefore the IICNA Policy does not cover claims against IHS of Lester.

29.    By letter dated August 3, 2005 (the "August 3 Letter"), counsel for the Liquidating LLC rejected IICNA's Lester Disclaimers and demanded that IICNA proceed with its defense of the Lester Claims without interruption. A copy of the August 3 letter is annexed as Exhibit H.

30.    To date, IICNA has failed and refused to retract its Lester Disclaimers and continues to send letters disclaiming coverage with respect to such Claims.

31.    While IICNA's letters disclaiming coverage of the Lester Claims refer to IICNA Policy XLX G19524139, IICNA has advised the Liquidating LLC that Policy XLX G19524139 was superseded by IICNA Policy XLX 19545507 (attached as Exhibit A to the Complaint and attached for the Court's convenience as Exhibit I hereto) in early 1999.

32.    IICNA is unable to locate a copy of IICNA Policy XLX G19524139 to which the letters disclaiming coverage of the Lester Claims refer and has so advised the Liquidating LLC. However, IICNA has further advised the Liquidating LLC that IICNA Policy XLX G19524139 is in all material respects substantially identical to Policy XLX 19545507.

33.    The Lester Disclaimers are of no force or effect because they are expressly made

16

under a policy that IICNA states has been superseded and is itself of no force or effect.

34.     Furthermore, the Lester Disclaimers are of no force or effect because the IICNA Policy (attached as Exhibit I hereto) does not state that it follows form to National Union Policy BE 357-43-43.

35.     In fact, the IICNA Policy does not refer to National Union Policy BE 357-43-43 or any other National Union policy, does not refer to the GenStar Policy, and does not refer to IHS of Lester.

36.     Rather the IICNA Policy refers to its Schedule of Underlying Insurance (included in Exhibit I hereto) for the policies as to which it follows form, and that Schedule refers only to an unidentified policy purportedly issued by Zurich Insurance Company.

37.     In fact, Zurich Insurance Company provided no insurance coverage to IHS for the year 1999.

38.     IICNA referred to the incorrect underlying policy in its Schedule of Underlying Insurance.

39.     In fact, IHS's first layer of excess coverage for 1999 was with National Union and was split into two policies, one for IHS of Lester and one for all other IHS entities.

40.     IHS obtained two excess policies from National Union solely to satisfy the demands of a landlord of IHS of Lester to obtain such separate coverage.

41.     That landlord did not demand separate excess coverage for the two layers of excess insurance above National Union, and IHS had no reason to do so.  Accordingly, only one excess policy was issued by each of GenStar and IICNA.

42.     If IICNA had identified the correct policies in the Schedule of Underlying Insurance, both National Union policies would have been listed because those two Policies

17

together constituted IHS's first layer of excess coverage for 1999.

43.     Thus in disclaiming coverage of the Lester Claims, IICNA seeks to benefit from its patent error in preparing the Schedule of Underlying Insurance.

### First Claim For Relief
### (Declaratory Judgment)

44.     The Liquidating LLC repeats the allegations of Paragraphs 1 through 43 of this Third-Party Complaint.

45.     An actual controversy exists between IICNA, on the one hand, and National Union and GenStar, on the other, as to whether National Union and GenStar have exhausted coverage under their Policies and whether IICNA's coverage under its Policy has been triggered.

46.     An actual controversy exists between the Liquidating LLC and IICNA as to whether the IICNA Policy covers the Lester Claims.

47.     These controversies have a substantial and present adverse impact on the Liquidating LLC's administration of: (i) 1999 Insured Tort Claims; and (ii) the Plan and the proceedings related thereto.

48.     The Liquidating LLC is entitled to additional declaratory relief beyond the relief sought in its Complaint herein.

49.     Specifically, the Liquidating LLC is entitled to a further declaration whether National Union and GenStar made improper charges against their respective policy limits, including without limitation, (i) payments of defense costs and expenses; and (ii) payment of judgments or settlements against IHS of Lester.

50.     Specifically, the Liquidating LLC is entitled to further declaration that IICNA's purported disclaimer and denial of coverage of the Lester Claims is without basis under the IICNA Policy or otherwise, and is of no force or effect, and that the IICNA Policy, *inter alia*,

18

requires IICNA to defend and cover the Lester Claims.

51.     Plaintiff has no adequate remedy at law.

### Second Claim For Relief
**(Injunction)**

52.     The Liquidating LLC repeats the allegations of Paragraphs 1 through 51 of this Third-Party Complaint.

53.     The Liquidating LLC is entitled to preliminary and permanent injunctions directing IICNA to perform its obligations under the IICNA Policy, including without limitation, its obligation to defend and insure the Lester Claims.

### Third Claim For Relief
**(Breach of Contract; Compensatory Damages)**

54.     The Liquidating LLC repeats the allegations of Paragraphs 1 through 53 of this Third-Party Complaint.

55.     IICNA's disclaimer of coverage under the IICNA Policy constitutes a breach of the IICNA Plicy for which the Liquidating LLC is entitled to recover its damages from IICNA. The Liquidating LLC has incurred additional administrative costs and will incur additional administrative costs by reason of IICNA's eleventh hour disclaimer. The Liquidating LLC is entitled to judgment against IICNA for all such costs, in such amounts as may be demonstrated at trial.

### Fourth Claim For Relief
**(Bad Faith; Punitive Damages)**

56.     The Liquidating LLC repeats the allegations of Paragraphs 1 through 55 of this Third-Party Complaint.

57.     IICNA's disclaimer under the IICNA Policy was made without reasonable basis and in bad faith.

19

NEWYORK01 1065534v3 359273-000007

58.    Under applicable law, the Liquidating LLC is entitled to an award of punitive damages against IICNA in an amount to be determined by the Court.

WHEREFORE, the Liquidating LLC demands judgment:

(A)    On the First Claim of the Third-Party Complaint:

    (i)    declaring whether National Union and GenStar made improper charges against their respective policy limits, including without limitation: (a) payments of defense costs and expenses; and (b) payment of judgments or settlements against IHS of Lester;

    (ii)    declaring that IICNA's purported disclaimer and denial of coverage of the Lester Claims is without basis under the IICNA Policy or otherwise, and is of no force or effect, and that the IICNA Policy, *inter alia*, requires IICNA to defend and cover the Lester Claims;

(B)    On the Second Claim of the Third-Party Complaint enjoining IICNA from refusing perform its obligations under the IICNA Policy, including without limitation, refusing to defend and insure the Lester Claims;

(C)    On the Third Claim of the Third-Party Complaint, awarding compensatory damages in an amount to be determined at trial;

(D)    On the Fourth Claim of the Third-Party Complaint, awarding punitive damages in an amount to be determined at trial; and

20

(E)    Awarding interest and the costs and disbursements of this action to the full extent

permitted by law and such other and further relief as the Court shall deem proper.

Dated:  Wilmington, Delaware
        August 18, 2005

                        BIFFERATO, GENTILOTTI & BIDEN


                        Ian Connor Bifferato (#3273)
                        Garvan F. McDaniel (#4167)
                        The Buckner Building
                        1308 Delaware Avenue
                        Wilmington, Delaware 19899
                        (302) 429-1900

                                -and-

                        KAYE SCHOLER LLP
                        Arthur Steinberg
                        Marc D. Rosenberg
                        Ana Alfronso
                        425 Park Avenue
                        New York, New York  10022-3598
                        (212) 836-8000

                                -and-

                        TROUTMAN SANDERS LLP
                        Lee W. Stremba
                        Clement H. Berne
                        The Chrysler Building
                        405 Lexington Avenue
                        New York, New York  10174
                        (212) 704-6000

                        Attorneys for IHS Liquidating LLC

21

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| Integrated Health Services, Inc., | ) Case No. 00-389 (MFW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| HIS Liquidating LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 05-51318 (MFW) |
| | ) |
| ACE INDEMNITY INSURANCE COMPANY f/k/a | ) |
| INDEMNITY INSURANCE COMPANY OF NORTH | ) |
| AMERICA, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| IHS Liquidating LLC, | ) |
| | ) |
| Third-Party Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL UNION FIRE INSURANCE CO OF | ) |
| PITTSBURGH, P A , GENERAL STAR INDEMNITY | ) |
| COMPANY and ACE INDEMNITY INS CO OF | ) |
| NORTH AMERICA | ) |
| | ) |
| Third-Party Defendants | ) |

**SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN AN ADVERSARY PROCEEDING**

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of Clerk:  824 Market Street, 3rd Floor
Wilmington, DE 19801

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Ian Connor Bifferato, Esquire
Garvan F. McDaniel, Esquire
**BIFFERATO, GENTILOTTI &**
**BIDEN**
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

Error! Unknown document property name. 8/18/05

Address:                              Room: **TBD**
U.S. Bankruptcy Court
824 Market Street, 6th Floor
Wilmington, DE 19801                  Date and Time: September 30, 2005 9:30 a.m.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

                          Date: August 18, 2005         /s/ David D. Bird
                                                         Clerk of the Bankruptcy Court

Error! Unknown document property name. 8/18/05

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Integrated Health Services, Inc , | ) | Case No. 00-389 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| HIS Liquidating LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 05-51318 (MFW) |
| | ) | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| IHS Liquidating LLC, | ) | |
| | ) | |
| Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE CO OF PITTSBURGH, P.A., GENERAL STAR INDEMNITY COMPANY and ACE INDEMNITY INS. CO OF NORTH AMERICA | ) ) ) ) | |
| | ) | |
| Third-Party Defendants | ) | |

## CERTIFICATE OF SERVICE

I, Garvan F. McDaniel, Esquire, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the **Complaint** and **Summons** was made on August 18, 2005 by:

☒ First Class Mail, Postage Pre-Paid

**See attached Service List**

Under penalty of perjury, I declare that the foregoing is true and correct.

Garvan F. McDaniel (No. 4167)
Bifferato, Gentilotti & Biden
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
(302) 429-1900

Error! Unknown document property name. 8/18/05

## SERVICE LIST

8/18/05

Marc Stephen Casarino, Esq.
Christian Singlewald, Esq.
White and Williams LLP
824 Market Street
Suite 902
Wilmington, DE 19899

Thomas G. Whalen, Esq.
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

National Union Fire Insurance Company of Pittsburgh, PA
175 Water Street
New York, NY 10038

General Star Indemnity Company
695 Main Street
Stamford, CT 06901