**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: <br><br> INTEGRATED HEALTH SERVICES, INC., *et al.*, <br><br> Debtors. | | Chapter 11 <br><br> Case No. 00-389 (MFW) <br><br> (Jointly Administered) |
| IHS LIQUIDATING LLC, <br><br> Plaintiff, <br><br> v. <br><br> ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, <br><br> Defendant | | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC, <br><br> Third-Party Plaintiff <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, GENERAL STAR INDEMNITY COMPANY, and ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA <br><br> Third-Party Defendants | | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA <br><br> Third-Party Defendant and Fourth-Party Plaintiff <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and GENERAL STAR INDEMNITY COMPANY, | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
MOTION TO AMEND PLEADINGS TO CONFORM TO THE EVIDENCE**

## TABLE OF CONTENTS

**Page No.**

**Table of Authorities** ...................................................................................................................ii

**PRELIMINARY STATEMENT** ................................................................................................. 1

**STATEMENT OF FACTS**

    A.    Procedural History ......................................................................................... 4

    B.    Procedural History for the 1999 Coverage Period ........................................ 5

    C.    Relationship of Defendants ............................................................................ 6

    D.    Insurance Coverage ........................................................................................ 6

        1.    1999 Policies ..................................................................................... 6

        2.    2000 Policies ..................................................................................... 9

**ARGUMENT**

**THE MOTION TO AMEND SHOULD BE GRANTED** ........................................................... 12

    A.    Amendment Granted Freely ........................................................................ 12

        1.    Undue Delay ................................................................................... 12

        2.    Amendment is Not Futile ............................................................... 14

        3.    No Prejudice ................................................................................... 15

**CONCLUSION** ......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page No.**

### CASES

Foman v. Davis,
    371 U.S. 178 (U.S. 1962) ............................................................................................ 12, 13, 16

Lindquist v. Buckingham Twp.,
    106 Fed. Appx. 768 (3d Cir. 2004) ................................................................................. 13

Koken v. GPC Int'l, Inc.,
    443 F. Supp.2d 631 (D. Del. 2006) ..................................................................... 12, 14, 15

Lewis v. Foster,
    2006 U.S. Dist. LEXIS 45819 (D. Del. 2006) ................................................................. 14

Hamilton v. Civigenics,
    2005 U.S. Dist. LEXIS 2625 (D. Del. 2005) ................................................................... 14

Jeffries v. Kent County Voc. Tech. Sch. Dist. Bd. of Educ.,
    743 A.2d 675, 678-679 (Del. Super. Ct. 1999) ............................................................... 14

### STATUTES

28 U.S.C. §157(d) ........................................................................................................................ 5

Fed. R. Civ. P. 15(a) .................................................................................................................. 12

Del.Bankr.L.R. 5011-1 ................................................................................................................ 5

ii

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
MOTION TO AMEND PLEADINGS TO CONFORM TO THE EVIDENCE**

Defendant, Indemnity Insurance Company of North America (hereinafter "IICNA"), by and through its attorneys, respectfully submits this Memorandum of Law in support of its Motion to Amend IICNA's Answer to the Third-Party Complaint And Fourth-Party Cross-Claims against Third-Party Defendant, National Union Fire Insurance Company of Pittsburgh, PA to conform to the evidence developed through discovery.

**PRELIMINARY STATEMENT**

IICNA seeks to amend its Answer and Affirmative Defenses to IHS Liquidating LLC's Third-Party Complaint and Fourth-Party Cross-Claims against the Co-Defendant, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") to conform to the evidence developed through discovery.

Both Defendant, Third-Party Defendant and Fourth-Party Plaintiff, IICNA, and Third-Party Defendant and Fourth-Party Defendant, National Union, issued insurance policies to Integrated Health Services, Inc. (hereinafter "IHS"), for a period of two consecutive calendar years. The first coverage period commenced on January 1, 1999 and continued until January 1, 2000. The second coverage period commenced on January 1, 2000 and continued until January 1, 2001.

The rights, duties and obligations of both IICNA and National Union to respond to claims alleging residency or occurrence during the January 1, 1999 to January 1, 2000 have been placed at issue by the Plaintiff, IHS Liquidating LLC (hereinafter "Liquidating LLC"). On February 20, 2007, this Honorable Court granted IICNA's Motion to Amend, permitting ICNA to assert cross-claims addressing the period January 1, 1999 to January 1, 2000 directly against National Union. As the issues arising during the January 1, 1999 to January 1, 2000 coverage period were substantially similar to the same issues arising during the January 1, 2000 to January 1, 2001 coverage period, this Honorable Court further permitted IICNA to assert the same cross-claims against National Union for the January 1, 2000 to January 1, 2001. IICNA's cross-claims both mirrored and supplemented the allegations first raised in the

Page 1

Liquidating LLC's Third-Party Complaint against National Union.[1]

Since this Honorable Court granted IICNA's Motion to Amend, the parties have engaged in extensive discovery. The information exchanged has led to the resolution of a number of the IICNA's claims. Few issues remain and the parties have engaged in numerous discussions related to the settlement of those issues. National Union has indicated that, although extensive discovery has taken place on the issue of coverage for the entity Integrated Health Services of Lester, Inc., IICNA's pleadings do not sufficiently place National Union on notice of IICNA's position with respect to that coverage. IICNA, however, believes that its pleadings are sufficient and that the issue over which the parties disagree is subsumed in IICNA's Fourth-Party Complaint. Rather than debate the issue with National Union, and out of an abundance of caution, IICNA hereby moves this Honorable Court for permission to amend its Fourth-Party Complaint.

If permitted, IICNA's Amended Fourth-Party Cross-Claim will seek a determination as to whether National Union's policies, issued for the period January 1, 2000 to January 1, 2001 contain a "Non-Pyramiding of Limits" endorsement which effectively caps National Union's coverage limits at $25,000,000.00. It is IICNA's position that National Union's underwriting material shows that the "Non-Pyramiding of Limits" endorsements were improperly added to the policies and should have been removed.

Documents addressing the coverage provided by National Union which have come to light throughout the course of discovery detail the numerous errors made in the issuance of National Union's coverage. Moreover, the documents show that the National Union polices, as originally issued, are not in keeping with the quote and binder.

According to materials obtained through discovery, the coverage provided by National Union to IHS and its subsidiary and related companies for the period January 1, 2000 to January 1, 2001 is

---

[1] The Liquidating LLC's Third-Party Complaint also raised certain allegations against General Star Indemnity Company (hereinafter "GenStar"), as did IICNA's Amended Answer and Affirmative Defenses to the Third-Party Complaint. IICNA and GenStar have resolved their differences, therefore, only the allegations against National Union are included herein.

supposed to be identical to that provided by National Union to IHS and its subsidiary and related companies in the coverage period January 1, 1999 to January 1, 2000.  National Union has, however, elected to apply its coverage differently in each of its two coverage periods.  The parties have engaged in extensive discovery on all of the issues related to each coverage term.  National Union has been aware of IICNA's position with respect to the "Non-Pyramiding of Limits" endorsements as developed throughout the course of discovery, and has had an ample opportunity to develop defenses to IICNA's contentions.  As such, there are no issues of prejudice arising from IICNA's proposed amended pleading.

      Moreover, the addition of these claims will not cause an undue delay.  All written discovery materials have already been exchanged.  All depositions related to the written discovery have been taken.  No additional time will be required by any of the parties to prepare defenses to the claims.  Neither party will incur additional costs.  As such, IICNA's Motion to Amend should be granted.

## STATEMENT OF FACTS

### A. Procedural History

On February 2, 2000 (the "Filing Date"), Integrated Health Services, Inc. (hereinafter "IHS") and a number of its subsidiaries filed voluntary petitions for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). [Bankr. D.I. No. 1.]

Under the auspices of the Bankruptcy Court, IHS and its counsel developed a "plan of reorganization" which contemplated the sale of IHS' on-going operations to the highest bidder. The winning bid was made by Abe Briarwood Corporation, a Nevada corporation with its principle place of business in New York, New York. The finalized Plan, called for the establishment of three new corporations to facilitate the sale of IHS' assets and the protection of the creditors. IHS Liquidating LLC was charged with the resolution of all pre-petition matters, including the resolution of all professional liability and general liability claims ("PLGL Claims").

Upon being advised of the terms the Plan and being provided with a copy of that certain Stock Purchase Agreement of January 28, 2003, made by and between IHS and ABE Briarwood Corporation, (hereinafter "SPA"), IICNA filed timely objections. In one such objection, IICNA objected to the assignment of its January 1, 2000 through January 1, 2001 policy to ABE Briarwood Corporation (hereinafter "Briarwood") without IICNA's prior written endorsement as required by the express written terms of its policy. The Bankruptcy Court approved the Plan and the SPA, however, in so doing, it preserved IICNA's objections. IICNA then filed a Complaint for Declaratory Judgment regarding the assignment. Named as Defendants to IICNA's Complaint for Declaratory Judgment are IHS (the Liquidating LLC's predecessor-in-interest) and Briarwood. Nothing amended in IICNA's cross-claim has any direct or indirect impact on its claim that its January 1, 2000 through December 31, 2000 policy was improperly assigned.

B. **Procedural History for the 1999 Coverage Period**

In early 2005, IICNA was informed that the aggregate limits to the policy directly underlying IICNA's Excess Catastrophe Liability policy No. XLX G1952413, effective January 1, 1999 to January 1, 2000 (hereinafter the "1999 IICNA Policy"), were nearing exhaustion. IICNA investigated the status of the underlying aggregate erosion and informed counsel for the Liquidating LLC that IICNA's coverage may not be triggered due to Reliance National Indemnity Company's failure to exhaust the underlying limits by payment. IICNA further informed counsel for the Liquidating LLC that it intended to file a Declaratory Judgment action to have IICNA's rights and obligations under the 1999 IICNA Policy judicially determined. IICNA then sought the Liquidating LLC's permission to add the Reliance National Indemnity Company exhaustion coverage questions to IICNA's already pending lawsuit. The Liquidating LLC objected to both the venue and the additional requests for relief; therefore, it filed the instant Declaratory Judgment action in the Bankruptcy Court. [Bankr. Adv. D.I. No. 1.] IICNA responded by filing a Motion to Withdraw the Reference and a Motion For Determination Pursuant to 28 U.S.C. §157(d) and Del.Bankr.L.R. 5011-1 for Determination Whether Proceeding Is Core. [D.I. No. 1.] Separately, IICNA filed an Answer to the Liquidating LLC's Complaint and Counter-Claim. [Bankr. Adv. D.I. No. 19.]

The Liquidating LLC answered IICNA's Counter-Claim and filed a Third-Party Complaint against IICNA, National Union and GenStar. [Bankr. Adv. D.I. No. 20.] In joining National Union and GenStar, the Liquidating LLC brought into this litigation all of the parties against which IICNA is seeking to assert cross-claims. IICNA has not sought leave to amend to add additional parties and does not see any need to bring in additional parties.

IICNA, National Union and GenStar filed Answers to the Liquidating LLC's Third-Party Complaint. [D.I. No. 10; D.I. No. 12 and Bankr. Adv. D.I. No. 22.] Shortly thereafter, the Liquidating LLC filed a Motion for Partial Summary Judgment, to which IICNA responded. The Liquidating LLC then filed a Reply Brief and Request for Oral Argument.

On March 16, 2006 this Honorable Court granted IICNA's Motion to Withdraw the Reference.

[D.I. No. 5.] On information and belief, all documents related to the Cross-Motions for Summary Judgment have been filed with this Honorable Court.

Defendants National Union, GenStar and IICNA are all insurance companies. During the coverage period January 1, 1999 to January 1, 2000 each of the Defendants issued a policy of insurance to IHS. Each carrier's policy, issued for this coverage period, is unique with different coverage, limits, terms, definitions, exclusions and endorsements.

National Union, GenStar and IICNA were all brought into the instant litigation by the Liquidating LLC due to questions concerning the nature and extent of each carrier's coverage.

On February 20, 2007, this Honorable Court granted IICNA's Motion to Amend permitting IICNA to assert cross-claims directly against National Union and GenStar relative to the coverage underlying IICNA's policies issued for the periods January 1, 1999 to January 1, 2000 and January 1, 2000 to January 1, 2001.

As of the filing of this Motion, all coverage issues arising from GenStar's policies have been resolved.

      **C.**      **Relationship of Defendants**

The Defendant against which IICNA seeks leave to amend its cross-claim is an insurance carrier which issued policies to Integrated Health Services, Inc. The Defendant against which IICNA seeks to assert its cross-claim issued two policies which are underlying to IICNA's coverage during the coverage period January 1, 1000 to January 1, 2000 and January 1, 2000 to January 1, 2001. The proper exhaustion of the underlying limits is a condition precedent to the attachment of IICNA's coverage.

      **D.**      **Insurance Coverage**

           1.      ***1999 Policies***

IHS was a healthcare corporation organized under the laws of Delaware and having its principle place of business is Maryland. At the times relevant hereto, coverage was provided to IHS on a calendar year basis. From January 1, 1999 through January 1, 2000, IHS was insured at the primary level by Reliance National Indemnity Company under a Health Care Medical Professional Liability and General

Liability policy No. NGB 0151564-00 (the "Reliance Policy").

During the period January 1, 1999 to January 1, 2000, the next layer of coverage was provided by National Union under Commercial Umbrella policy No. BE 357-43-43 (hereinafter the "1999 Main Policy") , which provided both professional liability and general liability coverage in excess of the underlying Reliance Policy.  The 1999 Main Policy contains limits of $25,000,000.00 per occurrence/aggregate in excess of the Reliance Policy.

During this same period, National Union issued a separate Commercial Umbrella Policy to an IHS subsidiary, Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester").  Commercial Umbrella Policy No.: BE357-43-44 (hereinafter the "1999 Lester Policy") provided both professional liability and general liability coverage in excess of the Reliance Policy.  The 1999 Lester Policy contains limits of $2,000,000.00 per occurrence/aggregate in excess of the Reliance Policy.

The next layer of coverage was provided by GenStar.  GenStar's excess liability policy limits were $25,000,000.00 per occurrence/aggregate in excess of National Union's coverage limits.

IICNA issued the 1999 IICNA Policy providing excess coverage limits to IHS of $50,000,000.00 per occurrence/aggregate in excess of the underlying.  The IICNA policy is a third layer excess policy providing coverage in excess of the Reliance Policy, the 1999 Main Policy and GenStar's Excess Liability policy.

On March 26, 2003, IHS filed an adversary proceeding in the Bankruptcy Court styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, Adv. Proc. No. 03-52081, in an effort to enforce coverage under the 1999 Main Policy (the "National Union Adversary") only.  Through this action, IHS sought to compel National Union to assume administration and defense of any remaining open professional liability claims alleging residency or injury occurring during the 1999 calendar year (hereinafter the"1999 Claims").  IHS further alleged in the National Union Adversary that the settlement value of the open 1999 Claims was in excess of the limits of the National Union Policy and would reach, at a minimum, the next layer of coverage which is provided by GenStar.

The Bankruptcy Court entered partial summary judgment in favor of IHS by Order Granting

Debtors' Motion for Partial Summary Judgment dated October 23, 2003 (the "Summary Judgment Order"). The Summary Judgment Order held, *inter alia*, that National Union's 1999 Main Policy No.: BE 357-43-43, was triggered because IHS had entered into Settlement Agreements for professional liability claims in excess of the Reliance Policy limits. The Court held that such settlements constituted a "legal obligation to pay", which satisfied the conditions precedent to coverage under the National Union policy regardless of whether underlying insurance or IHS' own funds were actually paid for such claims.[2]

The copy of the 1999 Main Policy No. BE 357-43-43, which National Union filed with the Bankruptcy Court in support of its Motion For Summary Judgment clearly states that it does not apply to IHS of Lester. The certified copy of the 1999 Lester Policy, No. BE 357-43-44, which National Union has made available to IICNA, clearly states that it does not apply to IHS. As such, the policies are mutually exclusive.

National Union did not appeal from the Summary Judgment Order. On information and belief, after the issuance of the Summary Judgment Order, National Union assumed the administration and defense of the 1999 Claims under the 1999 Main Policy.

At some point, National Union tendered the administration and defense of the 1999 Claims to GenStar. GenStar assumed the administration and defense of the 1999 Claims.

In or about May 2005, GenStar tendered the administration and defense of the 1999 Claims to IICNA. Upon learning that the underlying GenStar policy was nearing exhaustion, IICNA commenced a review of the payment records of National Union and GenStar purporting to support the exhaustion of the underlying policies. That information was maintained and provided by National Union and GenStar's agent, Hamlin & Burton Liabilities Management, Inc. (hereinafter "Hamlin & Burton"). During IICNA's review it became aware that payments made by National Union in the settlement of lawsuits filed against

---

[2] We note that, neither the Liquidating LLC nor National Union placed in issue the attachment of another National Union Commercial Umbrella policy No. BE 357-43-44, issued to IHS of Lester despite the fact that it, too, was potentially triggered on a "legally obligated to pay" standard. We also note that despite its acknowledged responsibility for 1999 Insured Tort Claims, the Liquidating LLC was unaware of National Union Commercial Umbrella policy No. BE 357-43-44 until such time as IICNA informed the Liquidating LLC of this additional coverage.

IHS of Lester were included within the limits of the 1999 Main Policy. However, no payments of any kind were made under National Union's 1999 Lester Policy.

Coverage under IICNA's Excess Catastrophe Liability policy differs significantly from that provided by National Union under its Commercial Umbrella policy in that coverage under the IICNA's Excess Catastrophe Liability policy is triggered *only by actual payment* of underlying insurance coverage and not simply upon the insured becoming "legally obligated to pay" a liability. Since the Reliance Policy was not exhausted by actual payment of policy proceeds, the 1999 IICNA Policy is not triggered.

The payments used to exhaust the underlying coverage must be appropriate under the policies. National Union's payment of settlements of lawsuits filed against IHS of Lester under the 1999 Main Policy despite an express exclusion to the contrary, is not appropriate. As such, the 1999 Main Policy has not been exhausted by actual payment of the policy proceeds.

With respect to the 1999 Claims presented to IICNA by Hamlin & Burton, IICNA is providing for the defense of the 1999 Claims alleging residence or injury in an IHS facility under a full and complete Reservation of Rights, pending disposition of IICNA's Motion for Summary Judgment. IICNA has, however, declined coverage for any 1999 Claims alleging residence or injury in an IHS of Lester facility and has returned those claims to National Union.

National Union has acknowledged that the limits of the 1999 Lester Policy have not been exhausted and is providing a defense to all 1999 Claims alleging residence or injury at an IHS of Lester facility.

    2.  ***2000 Policies***

As stated previously, IICNA issued policies of insurance to IHS for the period January 1, 2000 through January 1, 2001. Defendant National Union issued two separate policies during this same coverage period. One policy Commercial Umbrella Policy No. BE 357-43-86, issued for the period January 1, 2000 through January 1, 2001 was issued by National Union to IHS of Lester (hereinafter the "2000 Lester Policy"). On information and belief, IHS of Lester paid $19,000.00 for coverage under the 2000 Lester Policy.

Page 9

A separate policy, Commercial Umbrella Policy No. BE 357-43-84 (hereinafter the "2000 Main Policy"), was issued for the period January 1, 2000 to January 1, 2002 by National Union to IHS. Although the coverage period identified in the Declarations of the 2000 Main Policy indicates coverage was provided to IHS for two successive calendar years, the cross-claims contemplated in IICNA's Amended Third-Party Complaint address the coverage provided by National Union during the period January 1, 2000 to January 1, 2001. The limits of the 2000 Main Policy for the period January 1, 2000 to January 1, 2001 are $25,000,000 per occurrence/aggregate in excess of a $1,000,000 each occurrence/$5,000,000 general liability self-insured retention and a $2,000,000 each medical incident/$14,000,000 aggregate professional liability self-insured retention. On information and belief, IHS paid $1,900,000.00 for the coverage provided under Policy BE 357-43-84.[3]

The next layer of coverage was provided by GenStar through Excess Liability Policy IXG-347714C to IHS which provides limits of $25,000,0000 each occurrence Bodily Injury and/or Property Damage liability combined/$25,000,000 aggregate (where applicable) in excess of underlying limits.

Upon the purported exhaustion of the underlying coverage IICNA began providing for the defense of IHS under a Non-Waiver Agreement. IICNA has determined that payment of settlements of lawsuits against IHS of Lester have been used to exhaust the limits of coverage under National Union's 2000 Main Policy.

Material developed through discovery discloses that the "Non-Pyramiding of Limits" endorsements were added to National Union's policies without the consent of IHS or IHS of Lester. Further, discovery materials disclose that National Union was notified on more than one occasion yet failed to remove the endorsements.

As a result, IICNA has expended a considerable amount of the corpus of its policy in the defense

---

[3] It is not clear whether the premium paid was for the coverage period January 1, 2000 to January 1, 2001 only or for the full term of the policy January 1, 2000 to January 1, 2002. Both the 2000 Main Policy and the 2000 Lester Policy contain a "Non-Pyramiding of Limits" endorsement. These endorsements, if given effect, will effectively reduce the limits of coverage available to IHS and IHS of Lester to $25,000,000.00. National Union's coverage for the period January 1, 1999 to January 1, 2000 does not contain a "Non-Pyramiding of Limits" endorsement.

of IHS of Lester and the settlement of claims asserted against IHS of Lester when other coverage should be available. IICNA has sought payment of the limits of the 2000 Lester Policy in its cross-claim against National Union. If IICNA is permitted to amend its pleading, it will again ask for the payment of the limits of the 2000 Lester Policy. The only change will be IICNA's contention that the "Non-Pyramiding of Limits" endorsement does not apply.

**ARGUMENT**

**THE MOTION TO AMEND SHOULD BE GRANTED**

IICNA has properly petitioned this Honorable Court for leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, IICNA is permitted to petition the Court for leave to amend, which leave "shall be given freely when justice so requires". F.R.C.P. 15(a).

**A.     Amendment Granted Freely**

It is well established that amendments to pleadings are granted freely. "Rule 15 (a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962).

"In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the Movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id.

Courts have limited a parties ability to amend. The test is whether the proposed amendment is (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, or (2) the amendment would be futile, or (3) the amendment would prejudice the other party. None of the conditions are met here. Koken v. GPC Int'l, Inc., 443 F.Supp.2d 631, 633-634 (D.Del.2006).

**1.     *Undue Delay***

As set forth above, the amended cross-claim which IICNA wishes to address in its pleading is, in IICNA's opinion, subsumed within its prior Complaint. However, out of an excess of an abundance of caution, IICNA seeks leave to amend to conform its pleading to the evidence developed through

Page 12

discovery.

Through discovery, National Union and IICNA have made available to each other thousands of documents. National Union and IICNA have taken numerous depositions.

As part of this discovery, issues related to the coverage provided to IHS of Lester for the period January 1, 2000 to January 1, 2001 have been explored. Through that discovery, IICNA first became aware that National Union had added the "Non-Pyramiding of Limits" endorsement to its policies after the issuance of a quote and binder, neither of which included a "Non-Pyramiding of Limits" endorsement. Moreover, discover showed that upon issuance of the policies containing the "Non-Pyramiding of Limits" endorsements, the broker notified National Union that the endorsement was not agreed and should be removed.

National Union has been on notice of IICNA's position with regard to the application of the 2000 Lester Policy and the application of the "Non-Pyramiding of Limits" endorsement. Similarly, National Union has been on notice of IICNA's position with regard to the application of the "Non-Pyramiding of Limits" endorsement as contained in the 2000 Main Policy. National Union has had ample opportunity to defend and has defended the application of the "Non-Pyramiding of Limits" endorsement in its policies. If permitted to amend, no additional discovery is necessary.

"The Supreme Court has stated that the Rule 15(a) mandate that leave to amend 'shall be freely given when justice so requires' is to be heeded. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Lindquist v. Buckingham Twp., 106 Fed. Appx. 768, 775 (3d Cir. 2004), citing to Foman, *supra*.

As no undue delay will result from granting IICNA leave to amend, IICNA's Motion to Amend should be granted.

### 2. *Amendment is Not Futile*

This Honorable Court has held:

> Futility of an amendment occurs when the Complaint, as amended, does not state a claim upon which relief can be granted. If the proposed amendment 'is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend'." Koken v. GPC Int'l, Inc., 443 F. Supp. 2d 631, 634 (D. Del. 2006). (Internal citations omitted).

> "Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the Amended Complaint fails to state a claim upon which relief may be granted. In other words, 'the Court should apply the same standards as are applied to Rule 12(b)(6) Motions to Dismiss'". Lewis v. Foster, 2006 U.S. Dist. LEXIS 45819, 30-31 (D. Del. 2006). (Internal citations omitted). See also, Hamilton v. Civigenics, 2005 U.S. Dist. LEXIS 2625 (D. Del. 2005).

Applying the above standards to the instant matter, IICNA's amendment could be considered futile only if it failed to state a claim for which relief could be granted.

IICNA's proposed amended pleading does not contain new or different allegations than its prior pleading. The amended pleading seeks only to address a notice issue raised by National Union during the course of discovery.

As Delaware recognizes the Doctrine of Equitable Subrogation, subrogation is "the substitution of one person in place of another with reference to a lawful claim or right." 9 The doctrine of subrogation has its roots in equity and, at common law, equitable principles control its application. 10 For example, equity requires that one who seeks equity must give equity in return. 11 The [*679] mere fact that subrogation presents itself in a statute does not necessarily change the common law application of the principle because subrogation is an equitable remedy no matter what form it takes. Jeffries v. Kent County Voc. Tech. Sch. Dist. Bd. of Educ., 743 A.2d 675, 678-679 (Del. Super. Ct. 1999). IICNA's cause of action is not futile and IICNA's Motion to Amend should be granted.

   **3.**     *<u>No Prejudice</u>*

In order to deny leave based on prejudice to the Plaintiff, the prejudice must be "substantial or undue," and "there must be some showing that Plaintiff's ability to present its case would be seriously impaired were amendment allowed. <u>Koken,</u> 443 F. Supp. 2d 631, 634 (D. Del. 2006).

As stated previously, discovery has been completed. National Union is aware of and has defended against the allegations in IICNA's amended pleading. Permitting IICNA's amendment will have no impact whatsoever on National Union's ability to present its case.

**CONCLUSION**

Pursuant to Foman, *supra*, leave to amend should be granted freely.  As set forth above, because granting Indemnity Insurance Company of North America permission to amend its pleadings will not result in undue delay, or raise a claim for which relief cannot be granted (futile) and will not result in prejudice to any other party, defendant and third-party defendant, Indemnity Insurance Company of North America's Motion for Leave to Amend should be granted.