**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>Debtors. | | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>Defendant | | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC,<br><br>Third-Party Plaintiff<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA,<br>GENERAL STAR INDEMNITY COMPANY,<br>and ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA<br><br>Third-Party Defendants | | |
| ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA<br><br>Third-Party Defendant and<br>Fourth-Party Plaintiff<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA, and<br>GENERAL STAR INDEMNITY COMPANY, | | |

**DEFENDANT, THIRD-PARTY DEFENDANT AND FOURTH-PARTY
PLAINTIFF INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S
BRIEF IN OPPOSITION TO FOURTH-PARTY DEFENDANT
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA's
MOTION FOR SUMMARY JUDGMENT**

WETZEL & ASSOCIATES, P.A.

/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III (I.D. No 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200

Of Counsel:
Ward A. Rivers, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street., Suite 3400
Philadelphia, PA  19103-2978

## <u>TABLE OF CONTENTS</u>

**<u>Page No.</u>**

**Table of Authorities** ............................................................................................ ii

**PRELIMINARY STATEMENT** .................................................................................1

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS** ....................3

**SUMMARY OF FACTS** .............................................................................................6

**ARGUMENT**

      1.     Improper Reliance on <u>Bell Atlantic Corp. v. Twombley</u> ...........................12

      2.     Pleadings Can Still Be Amended, Therefore Summary Judgment
             is Premature ............................................................................................14

      3.     Equitable Subrogation Is A Valid Basis For Recovery ............................17

**CONCLUSION** ........................................................................................................20

i

# TABLE OF AUTHORITIES

## CASES

**Federal Cases**                                           **Page No.**

Bell Atlantic Corp. v. Twombley,
175 S.Ct. 1955 (U.S. 2007)......................................12, 13, 14, 20

Foman v. Davis,
371 U.S. 178 (U.S. 1962)...........................................................15

Adams v. Gould, Inc.,
739 F.2d 858 (3d. Cir. 1984).....................................................16

**State Cases**

Centerforce Tech. Inc. v. Austin Logistics, Inc.,
2000 U.S. Dist. LEXIS 6924 (D. Del. 2000).............................16

Whitten v. Bob King's AMC/Jeep Inc.,
231 S.E.2d 891 (N.C. 1977)................................................. 16-17

Fireman's Fund Ins. Co. v. Continental Ins. Co.,
519 A.2d 202 (Md. 1987) ...................................................17, 18

AT&T Corp. v. Clarendon American Ins. Co.,
2007 Del. Lexis 294 (Del. 2007) ..............................................17

Poffenberger v. Risser,
413 A.2d 677 (Md. 1981) .........................................................18

Prande v. Bell,
660 A.2d 1055 (Md. Ct. Spec. App. 1995)...............................18,

## STATUTES

**Federal**

15 U.S.C. §1..............................................................................12

Fed. R. Civ. P. 8(a) ...............................................................1, 13

Fed. R. Civ. P. 15(a) ................................................................15

**State**

Md. Code Ann. Cts. & Jud. Proc. § 5-101 ................................18

## PRELIMINARY STATEMENT

Defendant, Third-Party Defendant and Fourth-Party Plaintiff, Indemnity Insurance Company of North America (hereinafter "IICNA"), by and through its attorneys, files this Brief In Opposition to National Union Fire Insurance Company of Pittsburgh, PA's Motion For Summary Judgment. IICNA has sought leave to amend its pleadings to conform to the evidence developed through discovery, particularly the review of National Union Fire Insurance Company of Pittsburgh, PA's underwriting and claims files. IICNA's proposed Amended Pleading does not assert a new claim, rather it conforms IICNA's claim for relief to the information provided to IICNA by National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union").

IICNA has always asserted that National Union had failed to exhaust the underlying limits of its coverage before tendering the defense of Integrated Health Services, Inc. and its subsidiaries to the next layer excess carrier. IICNA has also always asserted that National Union's failure to exhaust entitled IICNA to the unpaid limits of the underlying coverage. As such the basis of IICNA's claim has not changed.

National Union's challenge to the sufficiency of IICNA's pleading is misplaced. IICNA's pleading complied with the F. R. Civ. P. 8(a) at the time it was filed and it still does. IICNA's Motion to Amend was filed out of an abundance of caution and, with leave of court, would serve only to conform the pleading to the evidence developed through discovery. It would not change the underlying contention in this matter, that National Union issued a second $2,000,000.00 policy and paid nothing from the corpus of that policy before tendering claims to the next excess carrier.

Maryland recognizes equitable subrogation as a valid basis for recovery between and excess insurer and an underlying insurer.  Under Maryland law, the discovery rule tolls the statute of limitation until the plaintiff has actual knowledge.  As such, there is a question of fact as to when IICNA had actual knowledge of the National Union's failure to exhaust its underlying coverage.

For all of the above reasons National Union's Motion for Summary Judgment should be denied.

**STATEMENT OF NATURE AND STAGE OF PROCEEDINGS**

Integrated Health Services, Inc., a national health care corporation, filed a voluntary petition for bankruptcy and protection under Chapter 11 of the Bankruptcy Code on February 2, 2000. [Bankr. D.I. No. 1.] Pursuant to the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the United States Bankruptcy Code, three new entities were created as "subsidiaries" of Integrated Health Services, Inc. (hereinafter "IHS"). One of those "subsidiaries", IHS Liquidating LLC (hereinafter the "Liquidating LLC"), is an entity created for the purpose of administering the resolution of all IHS pre-petition liabilities including all pre-petition professional liability and general liability claims.

During the period January 1, 1999 to January 1, 2000, IHS was insured by four insurance carriers. Primary coverage was provided by Reliance National Insurance Company under a "matching deductible" policy. On information and belief, the terms, conditions and limits of the Reliance National Insurance Company policy remain a matter of dispute between the Liquidating LLC and the Insurance Commissioner of the Commonwealth of Pennsylvania (who is charged with liquidating Reliance National Insurance Company and its parent company, Reliance Insurance Company). The next layer of coverage, provided by National Union, will be addressed in greater detail below. The third layer of coverage was provided by General Star Indemnity Company with the fourth and final layer being provided by IICNA under that certain Excess Catastrophe Liability Policy, No. XLX G19545507 (hereinafter the 1999 IICNA Policy).

In or about January 2005, the agent for General Star Indemnity Company (hereinafter "GenStar") informed IICNA that the limits of the GenStar's coverage were

nearly exhausted.  IICNA reviewed the coverage terms and conditions of its policy, the underlying coverage and the data for the claims themselves.  This review disclosed that the IICNA policy was not triggered despite the apparent exhaustion of the underlying coverage.  IICNA's policy requires the exhaustion "by payment" of all underlying insurance.  It is undisputed that the limits of the Reliance National Indemnity Company policy have never been exhausted by payment.  As such, IICNA informed the Liquidating LLC that its coverage had not been triggered.  At the same time, IICNA informed the Liquidating LLC that it would provide for the defense of all open professional liability claims alleging injury or residency during 1999 under a full and complete reservation of rights.  On May 6, 2005, the Liquidating LLC filed a declaratory judgment action seeking to compel coverage under the 1999 IICNA Policy.  [Bankr. Adv. D.I. No. 1].  IICNA responded by filing a Motion to Withdraw the Reference [D.I. No. 1] and, subsequently, an Answer and Counterclaim.  [Bankr. Adv. D.I. No. 19].  The Liquidating LLC answered and filed a Third-Party Complaint against National Union, General Star Indemnity Company and IICNA.  [Bankr. Adv. D.I. 20].  All of the carriers answered the Third-Party Complaint.

Pursuant to the Court's Scheduling Order, IICNA filed a Motion to Amend seeking the Court's permission to assert cross-claims directly against National Union and General Star Indemnity Company (hereinafter "GenStar").  The Court granted IICNA's Motion on February 20, 2007 and IICNA's Amended Pleading was filed on February 28, 2007.  [D.I. No. 57].  National Union and Gen Star filed Answers to IICNA's Cross-Claims.  The parties engaged in discovery which resulted in the dismissal of all of IICNA's claims against GenStar.

Discovery continued as between IICNA and National Union up through June 8, 2007.  Upon the completion of discovery, both IICNA and National Union filed cross-Motions for Summary Judgment.  [D.I. No. 96 and 97].  This Reply Brief addresses National Union contentions.

## STATEMENT OF FACTS

For two consecutive calendar years commencing January 1, 1999 and ending

January 1, 2001, National Union provided coverage by and through certain Commercial

Umbrella policies to IHS and its subsidiaries including a subsidiary known as Integrated

Health Services of Lester, Inc. (hereinafter "Lester"). National Union also provided

separate coverage to Lester. The relevant policies were:

> Commercial Umbrella Policy No. BE 357-43-43 issued for the period January 1, 1999 to January 1, 2000 (hereinafter the "1999 Main Policy"). Pursuant to the Declarations to the 1999 IHS Main Policy the "*insured*" was Integrated Health Services, Inc and the policy limits are $25,000,000 each occurrence/aggregate;
>
> Commercial Umbrella Policy No. BE 357-43-44 issued for the period January 1, 1999 to January 1, 2000 (hereinafter the "1999 Lester Policy"). Pursuant to the Declarations to the 1999 Lester Policy the "*insured*" was "Integrated Health Services of Lester, Inc." and the policy limits were $25,000,000 each occurrence/aggregate. By endorsement, the policy limits were reduced to $2,000,000 each occurrence and aggregate.
>
> Commercial Umbrella Policy No. BE 357-43-84 issued for the policy period January 1, 2000 to January 1, 2002 (hereinafter the "2000 Main Policy"). Pursuant to the Declarations, the "*insured*" was Integrated Health Services, Inc. and the limits were $25,000,000 each occurrence/aggregate for each of the calendar periods identified.
>
> Commercial Umbrella Policy No. BE 357-43-86 for the period January 1, 2000 to January 1, 2001 (hereinafter the "2000 Lester Policy"). Pursuant to the Declarations the "*insured*" was "Integrated Health Services of Lester" and the limits were $25,000,000. By Endorsement #3, the applicable limits were reduced to $2,000,000 each occurrence/$2,000,000 aggregate in excess of the underlying self-insured retention.

During the period January 1, 1999 to January 1, 2000, National Union's coverage

attached in excess of a so called "matching" deductible policy issued by Reliance

National Indemnity Company.  During the period January 1, 2000 to January 1, 2001,

National Union's coverage attached in excess of a true "self-insured retention".

At issuance, the 1999 Main Policy and the 1999 Lester Policy each contained an

endorsement which rendered the coverage available under the 1999 Main Policy and the

1999 Lester Policy mutually exclusive.  The 1999 Main Policy contained a **Broad**

**Named Insured-Amendatory** endorsement which provided:

> The definition of Named Insured (IV E1 a and b) is
> amended to include any partnership, interest in a joint
> venture[*], subsidiary controlled or proprietary company,
> corporations, firm, organization or other entity as now
> exists or may hereafter be constituted, formed or acquired
> where the Named Insured has at least 50% ownership
> interest or management control.
>
> However, this policy shall exclude all coverage and limits
> for the exposure of **Integrated Health Services of Lester,
> Inc.** and its interests in other entities.
>
> * See Joint Venture Endorsement for additional conditions.
>
> **ALL OTHER TERMS AND CONDITIONS REMAIN
> UNCHANGED.**

The 1999 Lester Policy contained an Amendatory Endorsement which provided:

> It is hereby understood and agreed that this policy shall not
> respond to any insureds, named insureds or additional
> insureds covered under policy BE 357-43-43 for Integrated
> Health Services, Inc.
>
> ALL OTHER TERMS AND CONDITIONS REMAIN
> UNCHANGED.

Through discovery, National Union provided documentation that these clear and

unambiguous provisions were included in the policies in error and that the policies were

not meant to be mutually exclusive.  Rather, the documentation discloses that the 1999

Lester Policy was supposed to be an underlying policy to the 1999 Main Policy.  This

underlying position only applied to coverage for Lester facilities. Upon the exhaustion of the limits of the 1999 Lester Policy, coverage was available to Lester under the 1999 Mail Policy. As such, there are limits of up to $27,000,000 available to Lester under the combined policies. In its original cross-claim, IICNA had averred that National Union had failed to exhaust the limits of the 1999 Lester Policy. Based on the documents produced during discovery, IICNA has withdrawn its claim that the 1999 Main Policy and the 1999 Lester Policy were mutually exclusive. The parties have engaged in negotiations relative to the 1999 Lester Policy limits.

The 1999 Main Policy and the 1999 Lester Policy were issued with other errors as well. At issuance, both the 1999 Main Policy and the 1999 Lester Policy contained claims made "follow-form" coverage for professional liability claims, despite the fact that the underlying Reliance National Indemnity Company policy was written on an occurrence basis. These policies also contained endorsements providing "Retroactive Date" and an "Extended Reporting Period" for such professional liability claims. None of these endorsements were included in National Union's quote and binder. Also at issuance, both the 199 Main Policy and the 1999 Lester Policy provided that defense expenses were in addition to limits, not included within the limits.[1]

All of the above "errors" were identified by the broker by correspondence dated May 28, 1999 and "corrected" by National Union subsequent to the issuance of the policies. A copy of the May 28, 1999 fax memo is attached hereto at App. as **"A"**. In

---

[1] Note that National Union attached a copy of its 1999 Main Policy as part of a response to a Motion for Partial Summary Judgment filed by IHS in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in prior litigation over the "trigger" of National Union's coverage. The copy of the 1999 Main Policy filed with the Bankruptcy Court did not provide coverage for IHS of Lester and did not include defense expenses within the policy limits. A copy of the 1999 Main Policy as filed by National Union is attached hereto.

fact, National Union was still making "corrections" to its policies as late as January 2005, when National Union produced "certified copies" of its policies.  A copy of National Union's January 24, 2005 correspondence is attached hereto at App. as **"B"**.

Similarly, the 2000 Main Policy and the 2000 Lester Policy contained "errors" at issuance.  The 2000 Main Policy contained an identical **Broad Named Insured-Amendatory** endorsement as quoted above despite the fact that the broker had, by copy of its May 28, 1999 fax memo, informed National Union that Lester should not be excluded from coverage under IHS's policy.  Interestingly, the 2000 Lester Policy contained also contained the identical **Broad Named Insured-Amendatory** endorsement, thereby excluding Lester from obtaining coverage under its own policy.

In addition to the inclusion of the **Broad Named Insured-Amendatory** endorsement, National Union unilaterally included a "Non-Pyramiding of Limits" endorsement in the 2000 Main Policy.  That endorsement states:

Non-Pyramiding of Limits

If damages covered by this policy are also covered in whole or part by Policy Numbers 357-43-86 and 357-43-88. our total Limits of Insurance under all policies combined shall be:

| | |
|---|---|
| $25,000,000 | Each Occurrence Limit |
| $25,000,000 | Each Medical Incident Limit |
| $25,000,000 | Products Completed Operations Aggregate Limit |
| $25,000,000 | Medical Professional Aggregate Limit |
| $25,000,000 | General Aggregate Limit |

The 2000 Lester Policy also contains a "Non-Pyramiding of Limits endorsement that is nearly identical however, Policy Number 357-43-84 is substituted for policy number 357-43-86.  The "Non-Pyramiding of Limits" endorsements were added despite the fact that the coverage was quoted and bound "as expiring".  Thus, the coverage for

- 9 -

the January 1, 2000 to January 1, 2001 period was intended to be identical to the corrected coverage for the period January 1, 1999 to January 1, 2000.

These errors were again brought to National Union's attention by the broker. A copy of an April 12, 2000 Fax Memo outlining all of the errors contained in the 2000 Main Policy and the 2000 Lester Policy is attached hereto at App. as **"C"**.

Note that none of the corrections requested by the broker for any of the National Union policies (whether 1999 Main Policy, 1999 Lester Policy, 2000 Main Policy or 2000 Lester Policy) indicates that the coverage provisions are "ambiguous". Rather, the correspondence shows that the inclusion of these coverage provisions was simply wrong.

At the April 12, 2007 deposition of National Union's corporate underwriting representative, Mr. Frank Chiacchio, Mr. Chiacchio acknowledged that the corrections requested by the broker reflected both the broker's and the insured's intent with regard to the coverage provided by National Union.

> Q.    So as far as we know, as we sit here today, it was the intent of the insured to have no non-Pyramiding of limits in this policy, correct.
>
> A.    Correct.
>
> Q.    And as far as we know, as we sit here today, it was the intent of the insured that the Lester policy, the $2 million umbrella was to be considered an underlying policy to IHS main policy' is that correct.
>
> A.    Correct.
>
> Q.    Okay. Do you have any – can you point to any documentation that you've seen in going through National Union's underwriting file that tells you one way or another why those changes were not made?
>
> A.    No, I can't.

<u>See</u> Chiacchio Depo at 30, and 36-37 attached as App. at **"D"**.

**ARGUMENT**

**1.     National Union incorrectly relies on Bell Atlantic Corp. v. Twombley, 175 S.Ct. 1955, to aver that IICNA's pleadings must specifically inform the defendant of the theory of the claim.**

In Bell Atlantic Corp. v. Twombley, 175 S.Ct. 1955, the plaintiff represented a putative class consisting of "all 'subscribers of local telephone and/or high speed internet services . . . from February 8, 1996 to present.'" Id, at 1961.  Plaintiff sought declaratory and injunctive relief under 15 U.S.C. § 1, which "prohibits 'every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations.'" Id.  Plaintiff alleged that the defendants, Bell Atlantic Corporation and the other "baby Bells" (created through the divestiture of AT&T's local telephone holdings) had impermissibly conspired to restrain trade through an agreement not to compete with each other.  Plaintiff alleged that the baby Bell's "parallel conduct" was evidence of the agreement.  Defendants moved for dismissal.  The Court rejected plaintiff's argument finding that plaintiff had not plead any "factual context" to suggest that an agreement had been made between the parties and that allegations of parallel conduct were not sufficient evidence of an agreement to raise a § 1 claim.  Twombley, 1961.

Twombley addresses the "question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act." Id.  In addressing the allegations before it, the Court found that in order to state "a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Id, at 1965.

Even if, as has been suggested, Twombley requires that pleading contain enough facts to state a claim for relief that is plausible on its face, nothing in <u>Twombley</u> requires the plaintiff to expressly identify the exact theory upon which it will seek recovery.  It is enough that the pleader show that it is "entitled to relief" and that the pleading give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  <u>Id</u>, at 1964.  Moreover as the Court states in Footnote 14 that "[i]n reaching this conclusion, we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rules of Civil Procedure 9, which can only bee accomplished 'by the process of amending the Federal Rules, and not by judicial interpretation.'" <u>Twombley</u>, at 1973.[2]

As such, National Union's reliance on <u>Twombley</u> is misplaced.  To the contrary, in addressing the notice pleading standards under F. R. Civ. P. 8(a), the Court held that "once a claim has been stated adequately, it may be supported by showing ***any set of facts*** consistent with the allegations in the complaint."  <u>Id</u>, at 1969.  Parenthetically, the Court noted that "once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypothesis are consistent with the complaint.'" <u>Id</u>.

IICNA's original Crossclaim alleged that the underlying limits of the 2000 Lester Policy had not been exhausted prior to the tender of the claims to the next excess level of coverage.  IICNA did not limit the basis of its allegation.  <u>See</u> Paragraph 82, of IICNA's Amended Answer to Third-Party Complaint and Crossclaim for Declaratory Judgment. [D.I. No. 57.]  Moreover, IICNA's Prayer for Relief has always sought payment of the limits of the 2000 Lester Policy up to the amount allocated by National Union to the 2000

---

[2] Similarly we note that National Unions reliance on Thomas v. Independence Township, 463 F.3d 285 (3d. Cir. 2006) is also misplaced.  In Thomas, the court assessed the factual pleadings necessary to overcome an affirmative defense of qualified immunity on a F. R. Civ. P. 12 (b)(6) Motion, not the pleading standard under F. R. Civ. P. 8(a).

Main Policy for the defense and settlement of Lester claims.  See Count II, Prayer for Relief (a) IICNA's Amended Answer to Third-Party Complaint and Crossclaim for Declaratory Judgment. [D.I. No. 57.]

National Union has sought to make issue of the form of IICNA's pleading rather than the substance of the pleading.  Discovery material provided by National Union has disclosed that the 2000 Main Policy and the 2000 Lester Policy were never intended to be mutually exclusive (as IICNA had originally alleged) from the insured's perspective. Discovery material provided by National Union also disclosed that the Non-Pyramiding of Limits endorsements were not intended from the insured's perspective.

The core issue in IICNA's claim is that the limits of the 2000 Lester Policy were never paid.  It is not determinative to the viability of IICNA's pleading that the limits were never paid because of an endorsement that, subsequent to the issuance of the 2000 Main Policy, National Union chose to correct.  Similarly, it is not determinative to the viability of IICNA's pleading that the limits were never paid because of an endorsement that, subsequent to the issuance of the 2000 Main Policy and the 2000 Lester Policy, National Union chose not to correct.

IICNA's original crossclaim met the Twombley standard by alleging facts sufficient to establish that IICNA is entitled to relief and the reason therefore.  Moreover, National Union never elected to challenge the sufficiency of the pleading.  IICNA can support its allegation of failure to exhaust, therefore National Union's demand for summary judgment on Count II of IICNA's crossclaim should be denied.

**2.      National Union's Motion for Summary Judgment is premature since IICNA can still amend its pleading to conform to the evidence developed through discovery.**

Under Federal Rules of Civil Procedure 15(a), amendments to the pleadings are to be "freely given when justice so requires".  F. R. Civ. P. 15(a).  Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962).  In the instant matter, IICNA has filed to amend its crossclaim against National Union out of an abundance of caution.  IICNA's claim for improper exhaustion of the underlying coverage was based on National Union's failure to exhaust the limits of a separate policy issued to the IHS subsidiary, Lester.  Moreover, IICNA's claim for relief demanded payment of the limits of the 2000 Lester Policy.  See IICNA's Amended Answer to Third-Party Complaint and Crossclaim for Declaratory Judgment. [D.I. No. 57.]

IICNA's claim, as stated in the Crossclaim for Improper Exhaustion was based on the fact that National Union's coverage (as set forth in greater detail above) was provided through two separate Commercial Umbrella policies.  The policy under which National Union elected to pay claims alleging injury or residency in a Lester facility and occurring during the coverage period of the 2000 Lester Policy contained an endorsement which expressly excluded coverage for Lester at issuance.

During discovery, National Union made available to IICNA certain documents related to the underwriting of National Union's coverage for both IHS and Lester.  Those documents disclose that the coverage provided by the 2000 Main Policy and the 2000 Lester Policy should be the same as the coverage provided by the expiring 1999 Main Policy and the 1999 Lester Policy.  As with the 1999 Main Policy, the endorsement which excluded coverage for Lester under the 2000 Main Policy was added to the policy in error.  The documentation discloses that it was the intent of the insured that Lester would be covered both individually, under the 2000 Lester Policy, and as part of IHS.

Similarly, the 2000 Lester Policy was supposed to be an underlying policy to the 2000 Main Policy, the limits of which needed to be exhausted prior to the attachment of coverage under the 2000 Main Policy for Lester facilities.  Moreover, the documentation disclosed that National Union unilaterally inserted a "Non-Pyramiding of Limits" endorsement into both the policy issued to IHS policy issued to Lester without the consent of its insureds.  Despite being informed that the addition of the "Non-Pyramiding of Limits" endorsement was not in keeping with the insured's intent, National Union has refused to remove these endorsements from the policies.

Leave to amend should be given freely unless there is sufficient reason to deny leave.  Centerforce Tech. Inc. v. Austin Logistics, Inc., 2000 U.S. Dist. LEXIS 6924 (D. Del. 2000).  Sufficient reasons include undue delay, bad faith or dilatory motive or undue prejudice to the opposing party.  Id.  In the instant matter these reasons do not apply. IICNA has not raised a "new theory" of liability which requires additional discovery. Rather, IICNA has maintained its theory of liability – that the underlying limits of the 2000 Lester Policy were never paid prior to the tender of coverage to the next layer carrier.  IICNA has always sought to recover the amount which should have been paid by National Union under the 2000 Lester Policy.  As the parties have engaged in discovery on the "Non-Pyramiding of Limits" endorsement, there is no prejudice to National Union. Moreover, amendment has been allowed "[w]here the legal theory of a complaint is rejected by the district court on a motion for summary judgment, but where an alternative theory has been raised which, on the same facts, is legally sufficient, it would be unusual for a district court not to allow the plaintiff leave to amend because of 'undue delay.'" Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  See also Whitten v. Bob King's

AMC/Jeep Inc., 292 N.C. 84, 231 S.E.2d 891 (N.C. 1977) were amendment to the pleadings were permitted based on evidence produced at a hearing on a Motion for Summary Judgment.

Since IICNA can still amend its pleading, on leave of court, to address the "deficiency" National Union claims exists in IICNA's pleading, the Motion for Summary Judgment is premature and should be denied.

**3.     National Union's Summary Judgment should be denied as equitable subrogation is a valid basis for recovery under applicable law.**

IICNA's claim, whether predicated on mutually exclusive coverage or the improper inclusion of a "Non-Pyramiding of Limits" endorsement, arises from IICNA's right to equitable subrogation.  In each case, IICNA has paid money on behalf of its insured, solely because National Union failed to honor its obligations under the 2000 Lester Policy.  Both Delaware and Maryland recognize the doctrine of equitable subrogation as a valid basis for an excess carrier to seek reimbursement from a "primary" carrier.  See Fireman's Fund Ins. Co. v. Continental Ins. Co., 308 Md. 315; 519 A.2d 202 (Md. 1987).

In Fireman's Fund, the Court held that "[e]quitable subrogation arises by operation of law when a person pays the debt of another under such circumstances that equity entitles that person to reimbursement."  Id, 308 Md. 319, 519 A.2d 204.  The court further held that where an insurer pays the debt of another (IHS in this instance) and that payment protects the insurer's interest (IICNA), the carrier is entitled to pursue its claim with all the rights of its subrogor.  Id, 308 Md. 319-320, 519 A.2d 204.  See also, AT&T Corp. v. Clarendon American Ins. Co., 2007 Del. LEXIS 294 (Del. 2007) permitting equitable subrogation based on California law.

In the instant matter, National Union has failed to exhaust the limits of the 2000 Lester Policy, leaving IICNA in the position of having to pay claims on behalf of its insured to protect IICNA's interest.  Under <u>Fireman's Fund</u>, supra, IICNA can establish a basis for a claim in equitable subrogation.

National Union has argued that there is a three-year statute of limitations on contract actions under Maryland law.  Maryland law provides:

> A civil action at law shall be filed within three years from the date it ***accrues*** unless another provision of the Code provides a different period of time within which an action shall be commenced.

> (Emphasis added)

> Md. Code Ann. Cts. & Jud. Proc. § 5-101 (2007).

The statute does not identify when the action "accrues".  In <u>Poffenberger v. Risser</u>, 290 Md. 631, 636, 413 A.2d 677, 680 (Md. 1981), the Court of Appeals of Maryland held that the discovery rule was "applicable to all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong."  Further, the Court held that the "discovery rule contemplates <u>actual knowledge</u>."  (Emphasis added).  <u>Id</u>, 290 Md. 636, 413 A.2d 681.  The question of whether a plaintiff was on notice of a cause of action is a question of fact.  <u>Prande v. Bell</u>, 105 Md. App. 636, 659, 660 A.2d 1055, 1066 (Md. Ct. Spec. App. 1995).

National Union has asserted that IICNA is barred from asserting a claim for "reformation" (a cause of action IICNA has not plead even in its proposed Second Amended Crossclaim), due to the three year statute of limitation.  National Union asserts that its policy is clear an unambiguous and, had IICNA wished to file a cause of action against the policy, it was bound to do so by April 2003.  National Union's own

documents show, however, that National Union continued making changed to the policies up through January 24, 2005.  National Union's employee, Ms. Vivian Cardamone, acknowledges making changes to conform the coverage as requested by the broker back on April 12, 2000.  <u>See</u> App. **"B"**.  The only changes requested by the broker that National Union did not make are the removal of the "Non-Pyramiding of Limits" endorsement and modifying the Schedule of Underlying Insurance to recognize the 2000 Lester Policy as an underlying policy to the 2000 Main Policy.

We also note that Ms. Cardamone's January 24, 2005 letter indicates that with respect to the 2000 Main Policy, National Union did not include "endorsement # 27" as National Union did "not have a record of it in its file." <u>See</u> App. **"B"**.  As such it was impossible for the insured, the broker or the excess carriers to know the exact terms and conditions of the 2000 Main Policy.

Maryland Court's recognize the ability of an excess carrier to pursue a claim of equitable subrogation against an underlying carrier.  Under Maryland law, the discovery rule tolls the statute of limitation until the plaintiff has actual knowledge.  As such, there is a question of fact as to when IICNA had actual knowledge of the National Union's failure to exhaust its underlying coverage or decision not to correct its coverage.  For the above reasons National Union's Motion for Summary Judgment should be denied.

**CONCLUSION**

National Union's Motion For Summary Judgment should be denied because Indemnity Insurance Company of North America's Crossclaim met the heighten pleading standard set forth in Twombley, 175 S.Ct. 1955.  Moreover, Twombley requires that the pleader show that it is "entitled to relief" and that the pleading give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Id, at 1964.  IICNA has met Twombley's requirements even if the facts supporting the claim, as developed through discovery, differ.

National Union's Motion for Summary Judgment should also be denied as premature since IICNA can still, with leave of this Honorable Court, amend its pleadings to address the "deficiency" National Union claims exists in IICNA's pleading.

Maryland Court's recognize the ability of an excess carrier to pursue a claim of equitable subrogation against an underlying carrier.  Under Maryland law, the discovery rule tolls the statute of limitation until the plaintiff has actual knowledge.  As such, there is a question of fact as to when IICNA had actual knowledge of the National Union's failure to exhaust its underlying coverage or decision not to correct its coverage.

For all of the above reasons National Union's Motion for Summary Judgment should be denied.

Respectfully Submitted,

WETZEL & ASSOCIATES, P.A.


/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III (I.D. No 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200

Of Counsel:
Ward A. Rivers, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street., Suite 3400
Philadelphia, PA  19103-2978

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 13, 2007, I electronically filed the within Defendant/Third-Party Defendant Indemnity Insurance Company of North America's Brief and Appendix in Opposition to National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

       Garven F. McDaniel, Esquire
       Bifferato Gentilotti & Balick
       P.O. Box 2165
       Wilmington, DE 19899

       Christopher P. Simon, Esquire
       Cross & Simon, LLC
       913 N. Market Street, 11th Floor
       Wilmington, DE 19801

and served through the U.S. Mail:

       Lee W. Stemba, Esquire
       Clement H. Berne, Esquire
       Troutman Sanders, LLP
       The Chrsyler Building
       405 Lexington Avenue
       New York, NY 10174

       George C. Campion, Esquire
       Weiner Lesniak, LLP
       629 Parsippany Road
       Parsippany, NJ 07054-0438

       Gwynne A. Young, Esquire
       Carlton Fields, P. A
       Corporate Center Three at International Plaza
       4221 W. Boy Scout Boulevard
       Tampa, Fl 33607-5736

       <u>/s/ Benjamin C. Wetzel, III</u>
       WETZEL & ASSOCIATES, P.A.
       Benjamin C. Wetzel, III (I.D. No 985)
       Natalie M. Ippolito (I.D. No. 3845)
       The Carriage House, Suite 201
       1100 N. Grant Avenue
       Wilmington, DE 19805
       (302) 652-1200

Of Counsel:
Ward A. Rivers, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street., Suite 3400
Philadelphia, PA  19103-2978