**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | | Case No. 00-389 (MFW) |
| Debtors. | | (Jointly Administered) |
| IHS LIQUIDATING LLC, | | |
| Plaintiff, | | Civil Action No. 05-376 (GMS) |
| v. | | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | | |
| Defendant | | |
| IHS LIQUIDATING LLC, | | |
| Third-Party Plaintiff | | |
| v. | | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, GENERAL STAR INDEMNITY COMPANY, and ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | | |
| Third-Party Defendants | | |
| ACE INDEMNITY INSURANCE COMPANY f/k/a INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | | |
| Third-Party Defendant and Fourth-Party Plaintiff | | |
| v. | | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and GENERAL STAR INDEMNITY COMPANY, | | |

*Continued next page*

**CROSS-CLAIM PLAINTIFF, INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA'S REPLY BRIEF TO NATIONAL UNION'S BRIEF IN
OPPOSITION TO IICNA'S MOTION TO AMEND**


WETZEL & ASSOCIATES, P.A.


/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III (I.D. No 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200


Of Counsel:
Ward A. Rivers, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street., Suite 3400
Philadelphia, PA  19103-2978

## **TABLE OF CONTENTS**

**Page No.**

**Table of Authorities** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................... 1

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS** ................................. 1

**ARGUMENT**

    I.     IICNA Has Demonstrated Good Cause ............................................................. 8

    II.    IICNA's Motion to Amend is Proper .............................................................. 10

    III.   IICNA's Motion to Amend is Not Futile ........................................................ 12

**CONCLUSION** ......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

### CASES

<u>Eastern Minerals & Chemicals Co. v. Mahan</u>,
    255 F.3d 330 (3d Cir. 2000) .............................................. 10

<u>Dimensional Communications, Inc. v. OZ Optics, Ltd.</u>,
    148 Fed. Appx. 82 (3d Cir. 2005) ...................................... 10

<u>Adams v. Gould, Inc.</u>,
    739 F.2d 858 (3d Cir. 1984) ............................................. 11

<u>Whitten v. Bob King's AMC/Jeep, Inc.</u>,
    292 N.C. 84, 231 S.E. 2d 891 (N.C. 1977) ...................... 11

<u>Lindquist v. Buckingham Twp.</u>,
    106 Fed. Appx. 768 (3d Cir. 2004) .................................. 12

<u>Foman v. Davis</u>,
    371 U.S. 178 (U.S. 1962) ................................................ 12

<u>Government Employees Ins. Co. v. Insurance Commissioner of Maryland</u>,
    40 Md. App. 201, 389 A.2d 422 (Md. Ct. Spec. App. 1978) .................................. 14, 15

<u>Government Employees Ins. Co. v. Ropka</u>,
    74 Md. App. 249, 536 A.2d 536 (Md. Ct. Spec. App. 1988) .................................. 15, 16

<u>Giles v. St. Paul Fire & Marine Ins. Co.</u>,
    405 F. Supp. 719 (N.D. Ala. 1975) .................................. 16

<u>Bauman v. Royal Indemnity Co.</u>,
    36 N.J. 12, 174 A.2d 585 (N.J. 1961) .............................. 16

<u>Mallette v. British Am. Assurance Co.</u>,
    91 Md. 471, 46 A. 1005 (Md. 1900) .............................. 16

<u>Admiral Ins. Co. v. John Stromberg Assoc.</u>,
    77 Md. App. 726, 551 A.2d 923 (Md. Ct. Sp. App. 1989) .............................. 16

<u>Poffenberger v. Risser</u>,
    290 Md. 631, 413 A.2d 677 (Md. 1981) .......................... 17

<u>Prande v. Bell</u>,
    105 Md. App. 636, 660 A.2d 1005 (Md. Ct. Spec. App. 1995) ....................... 17

### STATUTES

F. R. Civ. P. 30(b)(6) ....................................................... 4, 5

F. R. Civ. P. 16(b) ................................................................................................ 10, 11

Fed. R. Civ. P. 15(a) ............................................................................................ 10, 11

Md. Ins. Code. Ann. §27-605 .............................................................................. 12, 14

Md. Ins. Code Ann. §27-612 ............................................................................... 13, 14

Md. Code Ann. Cts. & Jud. Proc. §5-101 ................................................................ 17

**CROSS-CLAIM PLAINTIFF, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S REPLY BRIEF TO NATIONAL UNION'S BRIEF IN OPPOSITION TO IICNA'S MOTION TO AMEND**

Cross-claim Plaintiff, Indemnity Insurance Company of North America (hereinafter "IICNA"), by and through its attorneys, respectfully submits this Reply Brief to National Union's Brief in Opposition to IICNA's Motion to Amend its Answer to the Third-Party Complaint And Fourth-Party Cross-Claims against Third-Party Defendant, National Union Fire Insurance Company of Pittsburgh, PA to conform to the evidence developed through discovery.

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The parties have briefed the Court with regard to the nature and stage of the proceedings over the course of numerous documents.  IICNA incorporates its statements addressing the nature and stage of the proceedings as set forth in its Motion For Summary Judgment [D.I. No. 94], its Response to Motion for Summary Judgment [D.I. No. 105], its Motion to Amend [D.I. No. 102] are incorporated herein by reference.

Although the parties have spent a considerable amount of the Court's time briefing the nature and stage of the proceedings, the parties have limited their comments to the most significant filings and rulings in this matter.  National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") recently filed a brief in opposition to IICNA's Motion to Amend wherein National Union alleges that IICNA failed to diligently pursue a claim asserting that the "Non-Pyramiding of Limits" endorsement was invalid and that such failure should preclude the Court from considering IICNA's Motion to Amend.  [D.I. No. 108].  In setting forth its arguments, National Union intentionally omits facts relevant to the Court's determination of whether

IICNA can show "good cause" to set aside the F. R. Civ. P. 16 (b) Scheduling Order.

National Union argues that IICNA elected not to file a claim related to the "Non-Pyramiding of Limits" endorsement as a tactical matter. Nothing could be further from the truth.

As National Union knows well, IICNA filed a Complaint in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (hereinafter the "Florida Action"). In that Complaint, IICNA alleged *inter alia*, that National Union had improperly exhausted its policy limits by: (i) improperly making payments for settlement of claims asserted against Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester") under a policy of insurance issued to Integrated Health Services, Inc. (hereinafter "IHS"); (ii) improperly paying Chapter 400 attorneys fees out of the corpus of the policy; and, (iii) improper allocation of payments made in resolution of general liability claims against professional liability coverage limits. IICNA's lawsuit against National Union was filed on or about September 21, 2005. In the Florida Action IICNA alleged improper exhaustion of National Union's coverage for two consecutive coverage periods. The first coverage period commenced January 1, 1999 and ended January 1, 2000 and the second coverage period commenced January 1, 2000 and ended January 1, 2001. IICNA's lawsuit asserted identical claim against the coverage provided by IHS's second layer excess carrier, General Star Indemnity Company.

On May 6, 2005, the Liquidating LLC filed a declaratory judgment action seeking to compel coverage under the 1999 IICNA Policy. [Bankr. Adv. D.I. No. 1]. IICNA responded by filing a Motion to Withdraw the Reference [D.I. No. 1] and, subsequently, an Answer and Counterclaim. [Bankr. Adv. D.I. No. 19]. IICNA's Counterclaim, filed

July 26, 2005, alleged that IHS Liquidating LLC (hereinafter the "Liquidating LLC"),

had permitted the improper exhaustion of the underlying National Union policy by: (i)

improper payment of defense costs and expenses within the coverage limits; and (ii)

improper payment of judgments or settlements of claims against facilities owned and/or

operated by IHS of Lester.  IICNA's assertions were limited to the coverage made

available to IHS under the National Union policy in force during the period January 1,

1999 to January 1, 2000.  As with the Florida Action, IICNA made similar averments

against IHS's second layer carrier, General Star Indemnity Company.

The Liquidating LLC answered and filed a Third-Party Complaint against

National Union, General Star Indemnity Company and IICNA.  [Bankr. Adv. D.I. 20].

The Liquidating LLC's Third-Party Complaint was limited to the coverage made

available by both National Union and General Star Indemnity Company for the period

January 1, 1999 to January 1, 2000.  The Liquidating LLC's pleading was filed on

August 18, 2005.

IICNA's filing in Florida was necessitated by concerns over the coverage in place

during the period January 1, 2000 to January 1, 2001 coverage period (alternatively

referred to as the "2000 coverage period").  At the time of filing, it was unclear as to

whether this Honorable Court would grant IICNA's Motion to Withdraw the Reference

or whether the matter would remain in the United States Bankruptcy Court for the

District of Delaware (hereinafter, the "Bankruptcy Court").  As the Liquidating LLC had

brought both National Union and General Star Indemnity Company into the Bankruptcy

Adversary to address questions of coverage for the period January 1, 1999 to January 1,

2000, IICNA was able to test the coverage provided by its underlying carriers through

discovery.  However, the Liquidating LLC had not asserted a claim against National

Union (or General Star Indemnity Company) for the 2000 coverage period despite having

a claim to that coverage.  IICNA did not believe that it had sufficient standing to bring a

direct claim against National Union in the Bankruptcy Court for the 2000 coverage

period, therefore it elected to file the Florida Action.

Upon the filing of IICNA's Florida Action, General Star Indemnity Company

filed a Motion For Abstention [Bankr. Adv. D.I. 28] and a Motion to Stay [Bankr. Adv.

D.I. No. 29] effectively precluding any activity in the Bankruptcy adversary.  The Florida

Action progressed only to the point of service of IICNA's discovery requests to which

National Union responded to on January 11, 2006.  However, before IICNA could depose

any National Union employee or F. R. Civ. P. 30 (b)(6) corporate underwriting designee

on the contents of the underwriting material produced to IICNA, the parties to the Florida

Action agreed to stay the Florida Action in favor of resolving the issues before this

Honorable Court.  The Stay Order in the Florida Action was effective on May 1, 2006.

This Honorable Court set a scheduling order, with which IICNA complied by filing a

Motion to Amend on October 31, 2006.  [D.I. No. 29].

Although IICNA had moved to amend, both National Union and General Star

Indemnity Company objected to IICNA's efforts to investigate the coverage for the 2000

coverage period.

> **Q.     Now, at some point in time there was a renewal
> of the 1999 policies for the policy period 2000, correct?**
>
> A.     Correct.
>
> **Q.     Were you involved in that?**
>
> A.     Yes.

> Mr. Farrish: This might be a good point for me to just interject and place on the record General Star's objections to the taking of discovery on the 2000 policy.
>
> Mr. Campion: On behalf of National Union, I will join in that objection.
>
> [Wu depo at 72; 6-18, February 12, 2007].

In point of fact, the issue of discovery related to the 2000 coverage period became so contentious that on February 16, 2007 General Star Indemnity Company submitted a letter to this Honorable Court outlining the issue for a teleconference which was to be conducted on February 20, 2007. [D.I. No. 55]. The February 16, 2007 letter states:

> The parties to this action dispute whether, in light of the foregoing, IICNA may take discovery related to the 2000 Policies or to other topics newly raised in its proposed amended complaint. Specifically, the parties dispute whether IICNA may take such discovery in the absence of a court order granting IICNA's motion to amend its pleading; in the absence of the alleged additional party in interest; and in view of the stay ordered by the Florida Court.

As such, it was not until this Honorable Court orally granted IICNA's Motion to Amend on February 20, 2007 that National Union would permit IICNA to take discovery on its underwriting of Commercial Umbrella Policy No. BE 357-43-84, issued to IHS, and Commercial Umbrella Policy No. BE 357-43-86, issued to IHS of Lester.

Upon the Court's Order, IICNA began the discovery process, scheduling and taking the deposition of National Union's F. R. Civ. P 30 (b)(6) underwriting designee. That deposition took place over two non-consecutive days, commencing on March 27, 2007 (National Union's corporate designee's first date of availability) and concluding on April 12, 2007. IICNA then scheduled time to review additional National Union

documents that came to light in the deposition of National Union's Ms. Donna DiTuri on April 9, 2007. IICNA recalled Ms. DiTuri to depose her on the additional documents on June 8, 2007. IICNA filed its second Motion to Amend approximately one month later.

The information obtained in the depositions of National Union's employees was critical to IICNA's assessment of the validity of its claim. As National Union has repeatedly pointed out, courts tend to enforce clear and unambiguous policy terms. However, the issue is not whether the "Non-Pyramiding of Limits" endorsements are clear and unambiguous (IICNA concedes that they are); rather, the issue is whether the "Non-Pyramiding of Limits" endorsements belong in the policies at all.

National Union now suggests that the same protections which National Union relied upon in order to frustrate IICNA's attempts to take meaningful discovery with regard to the 2000 coverage period within the discovery period designated by this Honorable Court should prevent IICNA from amending its pleadings. Further, National Union suggests that IICNA should have sought to amend its pleadings before this Honorable Court had had an opportunity to rule on the merits of IICNA's timely filed Motion to Amend.

Separately, National Union asserts that IICNA's pleadings must contain averments of mutual mistake, fraud or duress in order to support a claim for reformation of the policy. National Union argues that under Maryland law the reformation of a policy cannot be made using extrinsic evidence and that, in any event, the statute of limitations for bringing a reformation claim has passed.

IICNA has never asserted a claim for reformation. Rather IICNA's Amended Pleading asserts an equitable subrogation claim based on endorsements that were

unilaterally inserted into National Union's policies without prior notice to National Union's insureds, IHS and IHS of Lester.  Under Maryland law, such endorsements are void and IICNA has no need to seek reformation.

**ARGUMENT**

**I.      IICNA Has Demonstrated Good Cause For Seeking to Amend Its Pleadings After the Close of Discovery.**

As discussed above, IICNA has sought to take discovery related to the placement, terms and conditions of National Union's Commercial Umbrella Policy No. BE 357-43-84, issued to IHS for the period January 1, 2000 to January 1, 2002, and Commercial Umbrella Policy No. BE 357-43-86, issued to IHS of Lester for the period January 1, 2000 to January 1, 2001 (hereinafter collectively referred to as the "AIG Policies") since the filing of the Florida Action in September 2005.  National Union did not provide its underwriting information until January 2006, by which time General Star Indemnity Company had filed its Motion for Abstention and Motion for Stay in the Bankruptcy Court.  In response to the objections of General Star Indemnity Company, IICNA agreed to a stay of discovery in the Florida Action in favor of resolving the issues before this Honorable Court.

With the Florida Action stayed, IICNA again sought to take discovery related to the terms, conditions and application of the AIG Policies for the 2000 coverage period in the instant action.  National Union objected.  Further, National Union joined with General Star Indemnity Company in seeking this Honorable Court's imprimatur on its refusal to permit IICNA from taking discovery on the 2000 coverage period.  Once IICNA had this Court's authorization to amend its pleadings and take discovery, granted February 20, 2007, IICNA moved diligently through the discovery process before filing a second Motion to Amend.

National Union has argued, correctly, that courts generally enforce clear and unambiguous provisions of an insurance policy.  In order for IICNA to bring a claim

asserting that the "Non-Pyramiding of Limits" endorsements were void and that IICNA was entitled to equitable subrogation, IICNA needed to be certain that its position was supported. IICNA was only able to test the applicability of the "Non-Pyramiding of Limits" endorsement after its First Amended Pleading was filed and it was able to engage in discovery. As noted above, the depositions of National Union's employees were pivotal in IICNA's assessment of the merits of its claim. It was only through the depositions of National Union's employees that IICNA was able to determine that the "Non-Pyramiding of Limits" endorsement was unilaterally inserted by National Union without prior notice to IHS or IHS of Lester.

With regard to IICNA's pending Motion to Amend, please note that IICNA moved this Honorable Court for permission to amend based on the information obtained in discovery approximately one month after IICNA completed the deposition of National Union's employee, Ms. Donna DiTuri. In the broader context, IICNA filed its Motion to Amend less than five months after being given permission to take discovery on the 2000 coverage period.

National Union has averred that IICNA could have amended its pleading to address the "Non-Pyramiding of Limits" endorsement prior to the deadline for filing amended pleadings as set forth in this Honorable Court's Scheduling Order. IICNA differs with National Union's position. As discussed, it was only through the taking of discovery and the depositions of National Union's employees that IICNA was able to confirm that National Union unilaterally inserted the "Non-Pyramiding of Limits" endorsements without any notice to the insureds and that National Union had either deliberately or accidentally refused to remove the "Non-Pyramiding of Limits"

endorsement upon being notified of its insureds' objection to the same. Since discovery in the Florida Action was stayed and the 2000 coverage period was not at issue in the Bankruptcy Adversary, IICNA did not have the information necessary to evaluate the viability of its claim. Once it had developed that information, IICNA promptly moved to amend.

National Union has averred that this Honorable Court's Scheduling Order should not be set aside absent a showing of good cause. The cases cited by National Union in support of is argument disclose that the decision to permit or deny a Motion to Amend, particularly given the procedural posture of a case such as this, is decided by balancing the interplay between F. R. Civ. P. 16(b) with F. R. Civ. P. 15(a). See, Eastern Minerals & Chemicals Co. v. Mahan, 255 F.3d 330 (3d Cir. 2000) and Dimensional Communications, Inc. v. OZ Optics, Ltd., 148 Fed. Appx. 82 (3d Cir. 2005) Both cases acknowledge that, had the moving party demonstrated "good cause", the decision to amend would be based on the more expansive amendment provisions of F. R. Civ. P. 15(a). In the instant matter, IICNA moved diligently once it had the ability to take discovery on the AIG Policies for the 2000 coverage period and has demonstrated good cause to set aside the Court's Scheduling Order. Therefore the provisions of F. R. Civ. P. 15(a) should apply to the proposed Amended Pleading.

## II.     IICNA's Motion to Amend Is Proper

National Union has asserted that IICNA's Motion to Amend should be denied because it is prejudicial in that National Union was never on notice of IICNA's intention to seek recovery based on the "Non-Pyramiding of Limits" endorsement. National Union further argues that it was never permitted the opportunity to assert affirmative defenses to

the Amendment.  IICNA again disagrees.  To the extent that National Union wishes to plead affirmative defenses, it would have the opportunity to do so in an Answer to the amended pleading, if permission is granted by the Court.

Otherwise, National Union was clearly on notice of IICNA's intention to seek recovery under the "Non-Pyramiding of Limits" endorsement since it briefed its opposition to IICNA's claim in its own Motion for Summary Judgment.  National Union's Motion for Summary Judgment was filed prior to IICNA's Motion to Amend. Since National Union had already formulated arguments as to why this Honorable Court should enforce the "Non-Pyramiding of Limits" endorsement, there is no prejudice to National Union.  Amendment has been allowed "[w]here the legal theory of a complaint is rejected by the district court on a motion for summary judgment, but where an alternative theory has been raised which, on the same facts, is legally sufficient, it would be unusual for a district court not to allow the plaintiff leave to amend because of 'undue delay.'"  Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  See also Whitten v. Bob King's AMC/Jeep Inc., 292 N.C. 84, 231 S.E.2d 891 (N.C. 1977) were amendment to the pleadings were permitted based on evidence produced at a hearing on a Motion for Summary Judgment.

Having provided this Honorable Court with information sufficient to demonstrate "good cause", IICNA's Motion to Amend should not be judged on the F. R. Civ. P. 16(b) standard, but the more expansive F. R. Civ. P. 15(a) standard.

"The Supreme Court has stated that the Rule 15(a) mandate that leave to amend 'shall be freely given when justice so requires' is to be heeded.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  Lindquist v. Buckingham Twp., 106 Fed. Appx. 768, 775 (3d Cir. 2004)

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962).

## III.    IICNA's Motion to Amend Is Not Futile

National Union has asserted that IICNA's Motion to Amended its pleading should be denied because: (i) the Maryland statute of limitations for actions on a contract is three years and the insured had notice of National Union's unilateral inclusion of the "Non-Pyramiding of Limits" endorsement as early as April 2000 but failed to bring an action; (ii) IICNA stands in the shoes of the insured for purposes of an equitable subrogation action and is bound by the knowledge of the insured, therefore cannot bring an action after the expiration of the statute of limitation in its own name; (iii) that the only basis for relief is reformation of the policy which requires mutual mistake, fraud or duress, none of which were pleaded by IICNA; and, (iv) that as a result of (i) (ii) and (iii) above, the proposed amendment is futile and should not be granted.  IICNA disagrees.

Under Maryland law, an insurer wishing to cancel or refusing to renew coverage must provide the insured with forty-five (45) days prior written notice of the proposed cancellation or non-renewal along with clearly stated reasons for such cancellation or non-renewal.  Md. Ins. Code Ann. §27-605.  The penalty to the insurer for failure to comply is that the "insurer is liable to the applicant for the coverage that was requested,

- 12 -

or that would have become effective except for the failure to comply with these provisions".  Md. Ins. Code Ann. §27-612.

In the instant matter, IHS's insurance broker Lockton Insurance Services (hereinafter "Lockton"), sent a request for quotation for coverage for IHS to National Union on or about December 14, 1999 for coverage.  National Union replied by issuing a "renewal quote" on or about the same day.  The quotation clearly states that it is a renewal of policy BE 357 43 43 for IHS and that the "terms and conditions" as well as the limits are to be as "expiring".  Nothing in the quotation informs IHS or Lockton of National Union's intention to restrict the limits of coverage by including a "Non-Pyramiding of Limits" endorsement to the policy.  A copy of National Union's quote is attached hereto as Exhibit "A".

Subsequently, National Union issued a binder on December 27, 1999 again expressly stating that it was a renewal of IHS's coverage and that the "[f]orm, terms and conditions" are as expiring.  A copy of the binder is attached hereto as Exhibit "B". Again, there is no notification to the insured of National Union's intention to unilaterally limit coverage by including the "Non-Pyramiding of Limits" endorsement.  We note that even if National Union provided notice of its intention to restrict IHS's coverage by including a "Non-Pyramiding of Limits" endorsement as part of IHS's policy in the binder, the period for such notification had long expired and the "Non-Pyramiding of Limits" endorsement would have been void as a matter of law.

On January 29, 2000, National Union issued a binder for renewal coverage for IHS of Lester for the period January 1, 2000 to January 1, 2001.  The binder clearly discloses that it is a renewal, with "terms and conditions" as "expiring".  A copy of

National Union's binder for IHS of Lester is attached hereto as Exhibit "C". There was no notice of National Union's decision to unilaterally limit IHS of Lester's coverage by the insertion of the "Non-Pyramiding of Limits" endorsement into the IHS of Lester policy. As discussed above, even if the "Non-Pyramiding of Limits" endorsement was disclosed on the binder, the period for notification of non-renewal had expired and the "Non-Pyramiding of Limits" endorsement was void as a matter of law.

Under Maryland law, the insurer is obligated to submit to the insured a notification of cancellation or non-renewal and the reasons for the cancellation or non-renewal at least forty-five (45) days prior to such cancellation or non-renewal. Md. Ins. Code Ann. §27-605. No such notice was sent. The penalty to the insurer for failing to provide both the notice and clearly articulated reasons for such cancellation or non-renewal is continuation of the coverage as originally written. Md. Ins. Code Ann. §27-612. The insured needs only to tender the payment of the premium in order to continue the coverage as previously written. Id.

In Government Employees Ins. Co. v. Insurance Commissioner of Maryland, 40 Md. App. 201; 389 A.2d 422 (Md. Ct. Spec. App. 1978), Government Employees Insurance Company ("GEICO") had written to its insured, Mr. and Mrs. Leonard Frank, informing them that GEICO was cancelling coverage for one of the cars on the Frank's policy. That car was driven by the Frank's son, who no longer resided with his parents. The Frank's son, Alan, had a history of citations for speeding, thus prompting the notice of non-renewal of coverage for the car driven by Alan. The Frank's filed an appeal to the Insurance Commissioner of Maryland who decided that coverage for the car should not have been cancelled. GEICO appealed and the Court held that the notice provided to the

Frank's was not sufficient as it did not adequately inform the Frank's of the reasons for non-renewing the coverage for the car.  As the notice was not sufficient, under Maryland law the Court held that GEICO remained liable to the Franks for the coverage.  <u>GEICO</u>, Md. App. 210-11, 389 A.2d 427.

In <u>Government Employees Insurance Company v. Ropka</u>, 74 Md. App. 249; 536 A.2d 536 (Md. Ct. Sp. App. 1988), the Court addressed changes in coverage, which were included by the insurer without disclosure to the insured.  Ropka was the administrator of the estate of a GEICO insured and his family.  The decedent was killed in a car accident that involved a truck owned by Consolidated Rail Corporation and operated by its employee.  The estate filed a wrongful death claim and the defendants filed a third-party claim for contribution from the estate.  The estate tendered the defense of the third-party claim to GEICO, which declined coverage citing the "household" exclusion of the policy.  The "household" exclusion had been added to the policy at time of renewal.[1]  The Court affirmed and expanded on the rights of an insured where its policy has been "renewed" with undisclosed changes.  The Court held "'where an insurer agrees to renew a policy, the insured should have a right to expect that the new protection will be in substance the same as that afforded by the former contract and upon the same conditions'."  <u>Ropka</u>, 74 Md. App. 266, 536 A.2d 1222.  The Court also held that "[t]his rule of law is consonant with the reasonable expectations of an insured, to whom an agreement to 'renew' a policy conveys the impression that he is obtaining an extension of the policy already in effect and not negotiating a new contract under different terms."  <u>Id</u>, at 267, 1223.  Moreover, "[m]ost jurisdictions impose an affirmative duty on the insurer to make the insured aware

---

[1] Shortly before the appeal in this case, the "household" exclusion had been held to be against public policy and, therefore, void as a matter of law.

of changes inserted into a renewal policy; absent notice of the change, the insured is entitled to coverage as the policy was originally stated." Id, citing Giles v. St. Paul Fire & Marine Ins. Co., 405 F. Supp. 719 (N.D. Ala. 1975) "(renewal policy contained new exclusions, only some of which were contained in the summary of changes; the exclusions held *invalid* was in an accompanying endorsement but not in the summary of changes.)" Emphasis added.

The Court in Ropka, also held that "[a]bsent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and that his coverage has not in anywise been lessened." Id, at 268, 1223 quoting Bauman v. Royal Indemnity Co., 36 N.J. 12, 174 A.2d 585 (1961). In reliance on Maryland law the Court held "we hold that where there is an agreement for a renewal of a policy, the insured is justified in assuming that the premium, and all the terms and conditions of the renewal will be the same as those of the original, unless he has notice of some proposed change." Id, at 272, 1225 quoting Mallette v. British Am. Assurance Co., 91 Md. 471, 46 A. 1005 (1900).

Finally, in Admiral Ins. Co. v. John Stromberg and Assoc., 77 Md. App. 726, 551, A.2d 923 (Md. Ct. Spec. App. 1989) the Court held that the notification provisions of Maryland law are for the public benefit. Id, at 739, 930. These provisions require an insurer to send prior notification of cancellation or non-renewal to its insured within the prescribed time period and an obligation to continue coverage if they fail to do so.[2] Tender of the premium, even though refused by Admiral, was sufficient to continue the

---

[2] "We think, rather, that the obligation to send the notice is clear and fixed, and that the only exception to it is where the broker or agent, prior to the time the notice is required to be given, has either given the notice itself on behalf of the insurer or actually replaced the existing policy with one acceptable to the insured." Admiral, 77 Md. App. 741, 551 A.2d 930-31.

coverage.

In light of the foregoing, the unilaterally inserted "Non-Pyramiding of Limits" endorsement was void, as a matter of law, at the time of issuance.  As such, IICNA has not pled a cause of action for reformation.  Nor has IICNA averred mutual mistake, fraud or duress as those averments would be without merit.  Rather, IICNA has averred that National Union unilateral altered the terms of its coverage upon issuance of its policies despite having clearly quoted and bound coverage on a "renewal" basis.  IICNA has asserted that it is entitled to the corpus of National Union's Commercial Umbrella Policy, BE 357-43-86 as a matter of equitable subrogation.  Maryland law provides:

> A civil action at law shall be filed within three years from the date it *accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced.

> (Emphasis added)

> Md. Code Ann. Cts. & Jud. Proc. § 5-101 (2007).

The statute does not identify when the action "accrues".  In <u>Poffenberger v. Risser</u>, 290 Md. 631, 636, 413 A.2d 677, 680 (Md. 1981), the Court of Appeals of Maryland held that the discovery rule was "applicable to all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong."  Further, the Court held that the "discovery rule contemplates <u>actual knowledge</u>."  (Emphasis added).  <u>Id</u>, 290 Md. 636, 413 A.2d 681.  The question of whether a plaintiff was on notice of a cause of action is a question of fact.  <u>Prande v. Bell</u>, 105 Md. App. 636, 659, 660 A.2d 1055, 1066 (Md. Ct. Spec. App. 1995).

National Union's own documents show that National Union has slowly amended its coverage to conform to the changes requested by Lockton in the April 12, 2000 "fax

memo". National Union has attached an affidavit from its employee, Ms. Vivian

Cardamone, to National Union's Motion for Summary Judgment at Appendix B

(hereinafter "National Union App. '**B**'"). According to Ms. Cardamone's affidavit

National Union was still attempting to comply with the changes requested in the April 12,

2000 "fax memo" as late as January 24, 2005. <u>See</u> National Union App. **"B"**. One of the

changes requested by the broker that National Union did not make are the removal of the

"Non-Pyramiding of Limits" endorsement, which Ms. Cardamone readily acknowledges.

We also note that Ms. Cardamone's January 24, 2005 letter indicates that with

respect to the 2000 Main Policy, National Union did not include "endorsement # 27" as

National Union did "not have a record of it in its file." <u>See</u> National Union App. **"B"**.

As such it was impossible for the insured, the broker or the excess carriers to know the

exact terms and conditions of the AIG Policies prior to January 24, 2005, at the earliest.

National Union provided no notice of cancellation or non-renewal to either IHS or

IHS of Lester. National Union quoted and bound coverage for both IHS and IHS of

Lester on a "renewal" basis. National Union then unilaterally inserted the "Non-

Pyramiding of Limits" endorsement to the policies it issued to both IHS and IHS of

Lester. National Union does not dispute that IHS and IHS of Lester paid premium for the

quoted and bound renewal coverage. The "Non-Pyramiding of Limits" endorsements

were, therefore, void as a matter of law at issuance. As the "Non-Pyramiding of Limits"

endorsement was void as a matter of law at issuance, it is not IICNA that is seeking

reformation of the policy; rather, it is National Union that is seeking reformation.

To the extent that IICNA's equitable subrogation action is subject to Maryland's

statute of limitations, its ability to prosecute the action would be governed by the

discovery rule.  As IICNA could not be aware of National Union's refusal to remove the

"Non-Pyramiding of Limits" endorsement until January 24, 2005 at the earliest, its

Amended Pleading is timely filed and is not, therefore, futile.

**CONCLUSION**

As set forth above, IICNA has shown good cause for setting aside this Honorable Court's Scheduling Order and in demonstrating that the more expansive amendment provisions of F. R. Civ. P. 15(a) should be applied to IICNA's Motion to Amend. IICNA has demonstrated that its action is not futile in that the "Non-Pyramiding of Limits" endorsement was void as a matter of law at issuance. Moreover, National Union's arguments with regard to prejudice are not valid since National Union's own Motion for Summary Judgment addressed the application of the "Non-Pyramiding of Limits" endorsement. National Union's Motion for Summary Judgment was filed prior to IICNA's second Motion to Amend.

For the foregoing reasons IICNA's Motion to Amend should be granted.

Respectfully Submitted,

WETZEL & ASSOCIATES, P.A.

/s/ Benjamin C. Wetzel, III
Benjamin C. Wetzel, III (I.D. No 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200

Of Counsel:
Ward A. Rivers, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street., Suite 3400
Philadelphia, PA 19103-2978

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2007, I electronically filed the within Cross-Claim Plaintiff Indemnity Insurance Company of North America's Reply Brief to National Union's Brief in Opposition to IINCA's Motion to Amend Pleadings to Conform to the Evidence with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Garven F. McDaniel, Esquire
Bifferato Gentilotti & Balick
P.O. Box 2165
Wilmington, DE 19899

Christopher P. Simon, Esquire
Cross & Simon, LLC
913 N. Market Street, 11th Floor
Wilmington, DE 19801

and served through the U.S. Mail:

Lee W. Stemba, Esquire
Clement H. Berne, Esquire
Troutman Sanders, LLP
The Chrsyler Building
405 Lexington Avenue
New York, NY 10174

George C. Campion, Esquire
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, NJ 07054-0438

Gwynne A. Young, Esquire
Carlton Fields, P. A
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard
Tampa, Fl 33607-5736

/s/ Benjamin C. Wetzel, III
WETZEL & ASSOCIATES, P.A.
Benjamin C. Wetzel, III (I.D. No 985)
Natalie M. Ippolito (I.D. No. 3845)
The Carriage House, Suite 201
1100 N. Grant Avenue
Wilmington, DE 19805
(302) 652-1200