**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>INTEGRATED HEALTH SERVICES, INC., *et al.*,<br><br>Debtors. | | Chapter 11<br><br>Case No. 00-389 (MFW)<br><br>(Jointly Administered) |
| IHS LIQUIDATING LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>Defendant | | Civil Action No. 05-376 (GMS) |
| IHS LIQUIDATING LLC,<br><br>Third-Party Plaintiff<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA,<br>GENERAL STAR INDEMNITY COMPANY,<br>and ACE INDEMNITY INSURANCE COMPANY<br>f/k/a INDEMNITY INSURANCE COMPANY OF<br>NORTH AMERICA<br><br>Third-Party Defendants | | |

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**FINAL PRETRIAL ORDER**

This matter having come before the court at a pretrial conference held pursuant to

Fed. R. Civ. P. 16 ( Rule 16), Lee W. Stremba, Esq., of the firm Troutman Sanders LLP

and Garvin F. McDaniel, Esq., of the firm Bifferato Gentilotti LLC, 800 N. King Street,

Plaza Level, Wilmington, DE 19801, having appeared as counsel for Plaintiff/Third Party

Plaintiff, IHS Liquidating LLC,(hereinafter "IHS Liquidating"), Benjamin C. Wetzel III,

Esq., of the firm Wetzel & Associates, P.A., The Carriage House, Suite 201, 1100 N.

Grant Avenue, Wilmington, DE 19805 and  Francis J. Deasey, Esq., of the firm Deasey,

Mahoney & Valentini, Ltd., Suite 3400, 1601 Market Street, Philadelphia, PA 19103,

having appeared as counsel for Defendant/Third-Party Defendant/Fourth-Party Plaintiff,

Indemnity Insurance Company of North America (hereinafter "IICNA"), and Christopher

P. Simon, Esq., of the firm Cross & Simon, LLC, 913 N, Market Street, 11th Floor,

Wilmington, DE 19889 and Gwynne A. Young, Esq., of the firm Carlton Fields P.A.,

4221 W. Boy Scout Blvd, Suite 1000, Tampa, FL 33607 having appeared as counsel for

Third-Party Defendant/ Fourth-Party Defendant, National Union Fire Insurance Company

of Pittsburgh, P.A. ( hereinafter "National Union") the following actions were taken:

(1)     This is an action for declaratory judgment with respect to certain policies of

        insurance issued to Integrate Health Services, Inc., a Delaware Corporation.  This

        Court has jurisdiction over the matter pursuant to 28 U.S.C. §1367 and 28 U.S.C.

        §2201 for the entry of a Declaratory Judgment.  Venue in this district is proper

        pursuant to 28 U.S.C. §1409(a).

- 1 -

(2)    The following stipulations and statements were submitted and are attached to and
made a part of this Order.

(a)    Joint Stipulation of Undisputed Facts is attached hereto and made part of
this Pre-Trial Order;

(b)    an agreed Statement of Contested Issues of Fact and Law is attached
hereto and made part of this Pre-Trial Order;

(c)    Schedule of Exhibits: The parties have made their best effort to comply
with the Court's required Final Pretrial Order. However, until the Court resolves the
pending Summary Judgment Motions and the Motion to Amend, the parties do not know
what issues, if any, are in the case and are unable to complete a schedule of exhibits. The
exhibits change drastically dependent upon whether the Court grants the pending Motion
to Amend or otherwise allows IICNA to assert the claims which it seeks to add by that
motion. The parties believe good cause exists to allow the parties to submit an exhibit
list upon resolution of the pending motions. The parties have a pending request with the
court to extend the deadline for filing this Final Pretrial Order until those motions are
resolved.

(d)    Witnesses that may be called are:

1.    Mr. Frank Chiacchio, employee and Fed. R. Civ. P. 30(b)(6)
corporate designee of National Union Fire Insurance Company of
Pittsburgh, PA.

2.    Ms. Donna DiTuri, employee and Fed. R. Civ. P. 30(b)(6)
corporate designee of National Union Fire Insurance Company of
Pittsburgh, PA.

3.    Mr. Dennis Hecht, employee and Fed. R. Civ. P. 30 (b)(6)
designee of Indemnity Insurance Company of North America.

- 2 -

4.     Ms. Jennie Wu, Risk Strategies, Inc., who can be reached through her counsel, Mr. Moe Keshevarsi, Esquire, of the firm Sheppard, Mullin, Richter & Hampton, LLP, 333 South Hope Street, Forty-Eighth Floor, Los Angeles, CA 90071.

5.     Mr. Michael Christian, Risk Strategies, Inc., who can be reached through his counsel, Mr. Moe Keshevarsi, Esquire, of the firm Sheppard, Mullin, Richter & Hampton, LLP, 333 South Hope Street, Forty-Eighth Floor, Los Angeles, CA 90071.

6.     Vivian Cardamone, employee of American Home Assurance Company, a member company of American International Group Inc., in the Excess Casualty Underwriting Division.

7.     Depending upon how the court rules on the pending motions, there could be additional witnesses.

(e)     Qualifications of expert witnesses:     Not applicable.

(f)     Listing of depositions to be read into evidence:

1.     Deposition(s) of Frank Chiacchio

2      Deposition(s) of Donna DiTuri

3.     Deposition(s) of Dennis Hecht

4.     Deposition of Jennie Wu

The parties have not designated specific portions of the depositions which they intend to read into the record at trial.  At this time it is anticipated that the depositions of the identified witnesses will be used for impeachment purposes.  If one or more witnesses are unavailable at time of trial, then the deposition testimony may be read into the record.  The specific provisions sought to be read will be designated sufficiently in advance of trial in order that parties may lodge objections to the testimony.

(g)     Special Damages:     Not Applicable.

- 3 -

(h)     Waivers of claims or defenses that have been abandoned by any party:
1999 Policies:

IHS Liquidating has not abandoned any claims it asserted against
IICNA with regard to the trigger of IICNA's policy.  IICNA has not
waived any defenses to that coverage or the allegations contained in IHS
Liquidating's pleadings.  However, IHS Liquidating and IICNA agree that
trial on these issues is not necessary as there are no issues of fact in
dispute between the parties.  Rather, IHS Liquidating and IICNA agree
that the issue of whether IICNA's coverage is triggered is a question of
law which has been fully briefed and presented to the Court.  Oral
arguments have been requested but, to the extent that the Court believes
oral arguments would beneficial in narrowing the issues, such arguments
have not scheduled.

IICNA will not be pursuing any claims for improper exhaustion
arising from the (i) payment of defense costs within the limits of National
Union Fire Insurance Company of Pittsburgh, PA's ("National Union")
policies; (ii) payment of Chapter 400 attorneys' fees; (iii) payment of
third-party administration fees from the corpus of National Union's
policies; or, (iv) improper payment of claims asserted against Integrated
Health Services of Lester, Inc. based upon the express exclusion of
coverage contained in the Broad Named Amendatory endorsement.
IICNA will, however, continue to assert improper exhaustion resulting

- 4 -

from National Union's failure to pay the full limits of coverage separately

available to Integrated Health Services of Lester, Inc.

2000 Policies:

IICNA will not be pursuing any claims for improper exhaustion

arising from the (i) payment of defense costs within the limits of National

Union Fire Insurance Company of Pittsburgh, PA's ("National Union")

policies; (ii) payment of Chapter 400 attorneys' fees; (iii) payment of

third-party administration fees from the corpus of National Union's

policies; or, (iv) improper payment of claims asserted against Integrated

Health Services of Lester, Inc.

The parties dispute whether IICNA has pled a claim challenging

the Non-Pyramiding of Limits endorsements as included in National

Union's policies, and whether IICNA should be permitted to put on

evidence related to the Non-Pyramiding of Limits endorsement. National

Union has asserted that IICNA did not plead a right of recovery based on

the "Non-Pyramiding of Limits" endorsement, therefore, National Union

has not been permitted an opportunity to place on the record any

affirmative defenses it may have to IICNA's allegations regarding the

"Non-Pyramiding of Limits" endorsements. Moreover, National Union

has averred that IICNA's failure to specify the "Non-Pyramiding of

Limits" endorsement as a basis for recovery is in violation of the decision

of Bell Atlantic Corp. v. Twombley, 175 S.Ct. 1955. IICNA disagrees and

has averred that any claim it has based on the "Non-Pyramiding of Limits"

- 5 -

endorsement is subsumed in its earlier pleadings.  Notwithstanding its

position, IICNA has filed a Motion to Amend to expressly assert a claim

against National Union under the "Non-Pyramiding of Limits"

endorsement.  National Union has filed a brief in opposition to IICNA's

Motion to Amend and IICNA has timely responded.  National Union has

filed a Motion for Leave to File a Surreply to the Motion to Amend.

IICNA will oppose National Union's Motion for Leave to File a Surreply

and, in the alternative, will request leave to file a response to National

Union's Surreply.  As such, it is undetermined what issues if any, remain

in the case and are to be tried.  The issues have been otherwise fully

briefed in connection with the pending motions.

(i)     Jury Trial – Trial Briefs:      Not Applicable.

(j)     Findings of Fact and Conclusions of Law:    Until the Court resolves the

pending Summary Judgment Motions and the Motion to Amend, the

parties do not know what issues remain in the case and are not in a

position to do Findings of Fact and Conclusions of Law. The parties

believe that good cause exists to allow the parties to submit Findings of

Fact and Conclusions of Law upon resolution of the pending motions.

The parties have filed a request with the court to have the deadline for

filing this proposed order extended.

(k)     History and Status of Settlement Negotiations:

1999 Coverage

The parties have reached a framework agreement which would resolve any and all remaining claims related to policy BE 357-43-44. Resolution of the matter is delayed, however, by the insolvency issues and the final determination of the cross Motions for Summary Judgment filed by IHS Liquidating LLC and IICNA. IHS Liquidating LLC does not believe that it can approve the framework agreement unless a determination of IICNA's ultimate coverage responsibilities has been made.

### 2000 Coverage

IICNA and National Union engaged in settlement discussions toward the end of the discovery period. Because of what each party viewed as strong legal positions, the parties have not been able to reach a settlement in this matter. A mediation is set for August 24th. There are some ongoing settlement discussions which are occurring through the mediator before the actual mediation. These discussions revolve around the payment of the proceeds of policy BE 357-43-86.

(l)     IICNA has completed discovery in this matter. National Union has completed discovery on the claims as pleaded. Should the court allow amendment, National Union would have to assess whether additional discovery was necessary.

(m)     IICNA anticipates filing motions *in limine* to preclude testimony by National Union Fire Insurance Company of Pittsburgh, PA's Fed. R. Civ. P. 30(b)(6) designees Mr. Frank Chiacchio and Ms. Donna DiTuri with

regard to (i) the underwriting and formation of the policies as neither witness has personal knowledge and any evidence that would be introduced would be hearsay, and (ii) any decision by National Union to retain the "Non-Pyramiding of Limits" endorsement as neither witness has personal knowledge and any evidence that would be introduced would be hearsay. IICNA does anticipate calling both Mr. Chiacchio and Ms. DiTuri for purposes of authentication of documents and any events testified to during deposition for which the witnesses have personal knowledge. IICNA will also file a motion *in limine* regarding the prospective testimony of Ms. Vivian Cardamone.

Based on the current Pleadings, National Union will file a Motion in Limine to preclude any extrinsic evidence regarding to the non-pyramiding of limits endorsements.

As set forth in (c), above, the form and content of the parties Motions *in Limine* will vary depending upon the Court's rulings on the Summary Judgment Motions and the Motion to Amend. The parties believe that there is good cause to allow the parties to submit Motions *in Limine* upon resolution of the pending motions. The parties have a pending request with the court to extend the deadline for filing this Final Pretrial Order until those motions are resolved.

(3)    Trial of this case is set for 7 days of trial under the scheduling order. The length of the trial cannot be accurately determined until the pending motions are resolved and the parties know what if any issues remain to be tried.

(4)    This is to be a bench trial.

(5)    Number of jurors:    Not Applicable.

(6)    This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice. The parties have made a good faith effort to complete this proposed Final order but would note that the proposed Final Order will need to be amended upon this court's ruling on the pending motions.

(7)    This matter is scheduled for Mediation with Magistrate Judge Mary Pat Thynge on August 24, 2007. There remains a possibility of settlement of the issues between Indemnity Insurance Company of North America and National Union Fire Insurance Company of Pittsburgh, PA at that mediation.

TPA#2402573.1

**SECTION 2(a) JOINT STIPULATION OF UNDISPUTED FACTS**

TPA#2402573.1

### (a) JOINT STIPULATION OF UNDISPUTED FACTS

The parties in this proceeding, by and through their undersigned counsel, hereby stipulate and agree that the following facts in this case are not disputed.

1.      Integrated Health Services, Inc. (hereinafter "IHS"), was an owner/operator of nursing homes and long term care residential facilities in the United States.

2.      IHS was a Delaware Corporation with its principal place of business located at 910 Ridge Brook Road, Sparks, Maryland.

3.      On February 2, 2000, IHS filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware (hereinafter the "Bankruptcy Court").

4.      In or about January 2003, IHS and its subsidiaries developed the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code (hereinafter the "Plan"), which was Confirmed by the Bankruptcy Court on or about May 12, 2003 and which went into effect on September 3, 2003.

5.      Plaintiff, IHS Liquidating LLC (hereinafter "IHS Liquidating"), is a Delaware limited liability company created by IHS under the auspices of the Plan for the purpose of resolving any non-discharged pre-petition claims against IHS' estate.

6.      Defendant, Third-Party Defendant and Fourth-Party Plaintiff, Indemnity Insurance Company of North America (hereinafter "IICNA", is an insurance company existing under the law of the Commonwealth of Pennsylvania with its principal place of business located at 436 Walnut Street, Philadelphia, PA.

- 11 -

7. Defendant, Third-Party Defendant and Fourth-Party Defendant, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union"), is an insurance company organized under the law of the Commonwealth of Pennsylvania with its principal place of business located at 70 Pine Street, New York, New York.

8. During the period January 1, 1999 to January 1, 2000, IHS was insured at the primary layer by Reliance National Indemnity Company under policy NGB 0151564-00 (hereinafter the "Reliance Policy"). The Reliance Policy contained General Liability coverage with limits of $1,000,000 each occurrence and $5,000,000 aggregate. The Reliance Policy also contained Professional Liability coverage with limits of $2,000,000 each medical incident and $14,000,000 aggregate.

9. Following IHS' filing of its voluntary petition for bankruptcy, Reliance National Indemnity Company performed as required under the Reliance Policy. Reliance National Indemnity Company provided for the defense of all claims coming within the coverage provisions of the Reliance Policy and settled an unknown number of claims.

10. On October 3, 2001, the Commonwealth Court of Pennsylvania ordered Reliance Insurance Company, the parent company of Reliance National Indemnity Company, into liquidation. At the time of the Commonwealth Court of Pennsylvania's Order, neither the general liability aggregate limits nor the professional liability aggregate limits of the Reliance Policy had been paid.

11. During the period January 1, 1999 to January 1, 2000, National Union issued a Commercial Umbrella insurance policy to IHS under policy number BE 357-43-43 (hereinafter the "1999 Main Policy"). The 1999 Main Policy provided limits of

TPA#2402573.1

$25,000,000 per occurrence/aggregate in excess of the limits of the Reliance Policy. The Named Insured on the 1999 Main Policy was Integrated Health Services, Inc.

12.    During the period January 1, 1999 to January 1, 2000 National Union also issued a Commercial Umbrella insurance policy to an IHS subsidiary, Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester") under policy number BE 357-43-44 (hereinafter the "1999 Lester Policy") and provided limits of $2,000,000 per occurrence/aggregate in excess of the limits of the Reliance Policy. The Named Insured on the 1999 Lester Policy was Integrated Health Services of Lester, Inc.

13.    During the period January 1, 1999 to January 1, 2000, General Star Indemnity Company provided an Excess Liability policy to IHS with limits of $25,000,000 per occurrence/aggregate. It is not disputed that the limits of the General Star Indemnity Company policy were exhausted and the remaining professional liability claims were tendered to IICNA.

14.    During the period January 1, 1999 to January 1, 2000, IICNA issued Excess Catastrophe Liability policy number XLXG1 9524139 (hereinafter the "1999 IICNA Policy") to IHS. Pursuant to the Declarations, the limits of the 1999 IICNA policy are $50,000,000 each occurrence/aggregate. IHS Liquidating and IICNA dispute whether the 1999 IICNA Policy has been triggered.

15.    During the period between October 3, 2001 and March 23, 2003, IHS entered into settlement agreements on certain professional liability claims which occurred in 1999, the face value of which was purportedly in excess of the Reliance Policy's professional liability aggregate limit.

16.    On March 26, 2003, IHS filed an adversary in the Bankruptcy Court to compel National Union to provide for the defense of the remaining, open, professional liability lawsuits alleging accident, injury or residency occurring during the January 1, 1999 to January 1, 2000 coverage period.  The IHS adversary was limited in scope as it only alleged the exhaustion of the professional liability aggregate limits, as set forth in the Reliance Policy, and it only sought to compel coverage under the 1999 Main Policy.

17.    Pursuant to an order and opinion from the Bankruptcy Court, National Union assumed the defense of 1999 IHS and IHS of Lester claims.  National Union exhausted the limits of the 1999 Main Policy in the defense and settlement of certain professional liability claims asserted against IHS and IHS of Lester and, upon the exhaustion of the 1999 Main Policy limits, tendered the remaining professional liability claims to the next layer carrier, General Star Indemnity Company.

18.    Upon the exhaustion of the coverage provided by General Star Indemnity Company, the remaining professional liability claims were tendered to IICNA.

19.    IICNA declined coverage, in part, based on the fact that the underlying Reliance Policy limits had never been paid.  On May 6, 2005, IHS Liquidating filed an adversary in the Bankruptcy Court seeking to compel coverage under the 1999 IICNA Policy.

20.    On June 8, 2005, IICNA filed a Motion to Withdraw the Reference, which was granted by this Court on March 14, 2006.

21.    On October 31, 2006,  IICNA filed a motion to amend its Answer to IHS Liquidating's Third-Party Complaint and to assert a Crossclaim against National Union and GenStar for improper exhaustion of IHS' insurance policies for the 1999 policy year,

TPA#2402573.1

and for the first time, in this Court, to assert claims involving the separate insurance policies of National Union and GenStar for the 2000 Policy year[1], asserting that those policies were improperly exhausted as well.

22.    During the period January 1, 2000 to January 1, 2001, IHS was self-insured at the primary level. The self-insured limits were $1,000,000 per occurrence/$5,000,000 aggregate for general liability coverage and $2,000,000 each medical incident/$14,000,000 aggregate for professional liability coverage.

23.    During the period January 1, 2000 to January 1, 2002, National Union issued Commercial Umbrella policy number BE 357-43-84 (hereinafter the "2000 Main Policy") with limits of $25,000,000 each occurrence/aggregate in excess of IHS's self-insured retention (hereinafter "SIR"). The Named Insured on the 2000 Main Policy was Integrated Health Services, Inc.

24.    During the period January 1, 2000 to January 1, 2001, National Union issued Commercial Umbrella policy number BE 357-43-86 (hereinafter the "2000 Lester Policy") with limits of $2,000,000 each occurrence/aggregate in excess of IHS's SIR. The Named Insured on the 2000 Lester Policy was Integrated Health Services of Lester, Inc.

25.    IICNA and National Union disagree as to the terms and conditions and coverage afforded under the 2000 Main Policy and the 2000 Lester Policy. Further, IICNA and National Union disagree as to whether the coverage available under the 2000 Main Policy and the 2000 Lester Policy is exhausted.

---

[1] IICNA had previously filed an action in the Thirteenth Judicial District in and for Hillsborough County, which asserted a number of claims with regard to the 2000 Policy year.

TPA#2402573.1

26.     The expired Reliance Policy was attached to and made part of both the 2000 Main Policy and the 2000 Lester Policy as the Health Care Medical Professional Liability and General Liability Policy Addendum.

27.     During the period January 1, 2000 to January 1, 2001, General Star Indemnity Company provided an Excess Liability policy to IHS with limits of $25,000,000 per occurrence/aggregate.  It is not disputed that the limits of the General Star Indemnity Company policy were exhausted and the remaining professional liability claims were tendered to IICNA.

28.     During the period January 1, 2000 to January 1, 2001, IICNA issued Excess Catastrophe Liability policy number XLXG2 0108034 (hereinafter the "2000 IICNA Policy") to IHS.  The 2000 IICNA Policy provides limits of $50,000,000 each occurrence/aggregate.

29.     IICNA is actively defending professional liability claims alleging accident, injury or residency in an IHS facility during the January 1, 2000 to January 1, 2001 coverage period.

30.     Both IICNA and National Union have filed Motions for Summary Judgment in this cause.  In addition,  IICNA has filed a Motion to Amend its Crossclaim which has been opposed by National Union.  Because of these outstanding unresolved motions, the parties are unable to stipulate to any additional facts at this time.

- 16 -

**SECTION 2(b) STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

## (b) STATEMENT OF CONTESTED ISSUES OF FACT AND LAW

### 1999 ISSUES

1.    The parties, Indemnity Insurance Company of North America (hereinafter "IICNA") and National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") contest the terms, conditions, exclusions and application of certain insurance policies as set forth more fully below:

    i.    National Union issued two Commercial Umbrella policies identified by policy numbers BE 357-43-43 and Be 357-43-44.

    ii.    Policy BE 357-43-43 (hereinafter the "1999 Main Policy") was issued to Integrated Health Services, Inc. (hereinafter "IHS") and provided limits of $25,000,000 each occurrence/aggregate.

    iii.    Policy BE 357-43-44 (hereinafter the "1999 Lester Policy") was issued to Integrated Health Services of Lester, Inc. (hereinafter "IHS of Lester") and provided limits of $2,000,000 each occurrence/aggregate.

2.    In it's Fourth-Party Cross Claim, IICNA alleges that the 1999 Main Policy was improperly exhausted by:

    (i)    The deduction of fees paid to a third-party claims administrative service from the limits of coverage;

    (ii)    The deduction of expenses including fees paid to defense counsel from the limits of coverage;

    (iii)    The payment of Chapter 400 attorneys' fees from the limits of coverage; and

TPA#2402573.1

(iv)    The payment of defense costs and settlement amounts by National Union in defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 1999 Main Policy's limits of liability [D.I. 57, ¶¶76,90,91,92, 93, 94, Count I prayer for relief (b)]

3.    IICNA has withdrawn claims (i), (ii), and (iii) above. National Union is entitled to Summary Judgment it is favor on these withdrawn claims.

4.    National Union and IICNA are in agreement that a corrective Broad Named Insured Amendatory Endorsement was issued which deleted the Lester Exclusion from the 1999 Main Policy as originally issued and that as a result, IHS of Lester claims may be paid from the limits of the 1999 Main Policy. IICNA contends that National Union was required to exhaust the limits of the 1999 Lester Policy before it could pay IHS of Lester claims from the 1999 Main Policy. National Union disputes that such a claim was pleaded and disputes that it was required to exhaust the 1999 Lester policy before paying IHS of Lester claims from the 1999 Main Policy.

5.    National Union has, however, acknowledged that under the 1999 Lester Policy there was $2 million in professional liability coverage available to pay 1999 IHS of Lester claims. National Union has assumed the defense of outstanding 1999 Lester claims under the 1999 Lester policy.

**2000 ISSUES**

6.    National Union issued two Commercial Umbrella policies identified by policy numbers BE 357-43-84 and BE 357-43-86.

7.    Policy BE 357-43-84 (hereinafter the "2000 Main Policy") was issued to IHS. The parties dispute the amount and application of the limits of the 2000 Main Policy.

8.    Policy BE 357-43-86 (hereinafter the "2000 Lester Policy") was issued to IHS of Lester.  The parties dispute the amount and application of the limits of the 2000 Lester Policy.

9.    In it's Fourth Party Cross-Claim, IICNA alleges that the 2000 Main Policy was improperly exhausted on three grounds:

(i)    The deduction of fees paid to a third-party administrative service from the limits of coverage;

(ii)    The payment of Chapter 400 attorneys' fees from the limits of coverage; and

(iii)    the payment of defense costs and settlements and settlements  asserted against IHS of Lester and allocated toward the exhaustion of the 2000 IHS Main Policy limits of Liability.

10.    IICNA agrees that it has withdrawn claims (i) and (ii) above but disputes that it has withdrawn the substance of (iii) above.  National Union contends that IICNA has withdrawn all three claims as pleaded.  Dennis Hecht, IICNA's corporate representative conceded on the record in his deposition that all claims were withdrawn other than the challenge to the validity of the Non-Pyramiding of Limits endorsements, a claim National Union contends is not pleaded. National Union contends that it is entitled to Summary Judgment on all three withdrawn claims. National Union has moved for Summary Judgment on Count II of the Cross Claim as pleaded asserting that the Non-Pyramiding of Limits issues is not plead.  This motion is opposed by IICNA.  IICNA has also moved for Summary Judgment.  IICNA has contended that any claim it has that the Non-Pyramiding of Limits endorsement was improperly included in the 2000 Main Policy and the 2000 Lester Policy, as issued, was subsumed in its prior pleadings, and that the Non-Pyramiding of Limits endorsements are void as a matter of law.  As such, IICNA has sought

- 20 -

equitable subrogation based on National Union's failure to exhaust its coverage limits. National Union has opposed IICNA's Summary Judgment. The parties positions are discussed in more depth below.

      11.    The Cross Claim provides as follows:

      (a)    "As the 2000 IHS Main Policy excludes coverage for IHS of Lester, the 2000 IICNA Policy also excludes coverage for IHS of Lester." [Cross Claim ¶ 52]

      (b)    "National Union permitted the improper erosion of the limits of the 2000 IHS Main policy by:

          .....

      b.    including payments of defense costs and settlements made on behalf of HIS of Lester within the policy's limits. ..." [Cross Claim ¶ 86]

      (c)    "The 2000 IHS Main Policy provided to IICNA in conjunction with the tender of the defense of some 255 open claims by filed by National Union's agent , Hamlin & Burton, expressly excludes coverage for "Integrated Health Services of Lester and its interests in other entities" " [Cross Claim ¶ 101]

      (d)    "Despite this express exclusion, National Union has improperly allocated the defense costs and settlement amounts spent in connection with the handling and disposition of lawsuits and claims asserted against IHS of Lester and alleging residency or injury occurring during the term of the 2000 Lester Policy toward the exhaustion of the Limits of Liability available under the 2000 IHS Main Policy." [Cross Claim ¶ 102]

      (e)    "National Union violated it obligations to IHS and its excess carriers, including IICNA, by allocating amounts spent in connection with the defense of lawsuits and

- 21 -

claims asserted against IHS of Lester from the Limits of Liability available under the 1999[sic]

Main policy despite an express exclusion of such coverage." [Cross Claim ¶103]

       (f)    "IICNA prays that National Union...be required to replenish the

underlying policies in amounts equal to:

       (a)    all amounts spent by National Union in connection with the

defense of lawsuits and claims asserted against IHS of Lester and allocated toward the

exhaustion of the 2000 IHS Main Policy. ..." [ Prayer for Relief on Count II of the Cross Claim]

    12.    The parties agree that the Broad Named Insured endorsement included within the

2000 policy as originally issued and as referenced in ¶ 101 of the Cross Claim was amended to

delete the Lester exclusion.  On this basis, IICNA has withdrawn its claim that the amounts spent

in connection with the defense of lawsuits and claims asserted against IHS of Lester were

improperly paid out of the 2000 Main Policy.

    13.    The 2000 Main Policy and the 2000 Lester Policy each contain Non-Pyramiding

of Limits endorsements which expressly limit the total coverage available under both policies to

$25 Million.  IICNA disputes the validity of these endorsements as discussed more fully below.

    14.    IICNA contends that the only 2000 claim remaining in the case is a challenge to

the validity of these Non-Pyramiding of Limits endorsements.  IICNA also contends that

National Union improperly included a " Non-Pyramiding of Limits endorsement" in both the

2000 Main Policy and the 2000 Lester Policy, therefore - while payments made by National

Union for the defense and settlement of Professional liability claims alleging accident, injury or

residency in an IHS of Lester facility during the coverage period January 1, 2000 to January 1,

2001 are not per se improper - such payments are premature as National Union has not exhausted

the limits of the 2000 Lester Policy.  If IICNA is correct in its contentions, there is a total of $27

- 22 -

Million in coverage available under National Union's policies not $25 Million in coverage. IICNA has contended that its claim challenging the validity and application of the "Non Pyramiding of Limits" endorsement is subsumed in its existing Cross Claim for improper exhaustion; that the endorsements were improperly added by National Union at issuance of the 2000 Main Policy and the 2000 Lester Policy and were, therefore, void at issuance. IICNA has filed a Motion for Summary Judgment on this claim which is opposed by National Union.

15.    National Union contends that because the 2000 Policies expressly contain the Non-Pyramiding of Limits endorsements, there can be no argument that National Union improperly exhausted the policies as written when it applied those endorsements. Further, National Union contends that IICNA would have to obtain reformation of the policies to delete those endorsements, that no claim for reformation or to otherwise challenging the endorsements was ever pleaded, the endorsements are unambiguous and cannot be altered by parole evidence, and that the claim is untimely because it is barred by the 3 year Maryland statute of limitations. Moreover, National Union has contended that IICNA's rights to reformation or to otherwise challenge these endorsements derive from the rights of IICNA's and National Union's insured, IHS. Any claim for reformation or to otherwise challenging these endorsements which IHS would have had are governed by Maryland's three year statute of limitations. Since IHS did not file an action for reformation or to otherwise challenge the validity of these endorsements within three years of the issuance of National Union's policies, any rights to reformation or to otherwise challenge these endorsements that IHS may have had are time barred, therefore IICNA's claim is also time barred. As discussed in the next paragraph, IICNA has contended that the statute of limitations is governed by the discovery rule. National Union contends that the statute of limitations is triggered upon the actual knowledge of the insured and not the actual knowledge of

TPA#2402573.1

IICNA. IHS had actual knowledge of the Non-Pyramiding of Limits endorsement as early as April 12, 2000. As such, the statute of limitations began to run no later than April 12, 2000. Again, this issue has been fully briefed in connection with the pending Summary Judgment Motions and Motion to Amend.

16.    IICNA contends that the Maryland Statute of limitations commences to run upon the actual knowledge of the party asserting the claim and that IICNA's actual knowledge that National Union would not remove the "Non Pyramiding of Limits" endorsements from the policies was, at the earliest, January 24, 2005. IICNA further contends that under Maryland law, an excess insurer has the right to sue the primary insurer, as if the insurer were the insured and that the doctrine of equitable subrogation is recognized by Maryland law and is applicable in this case  In the instant matter, IICNA has contended that National Union improperly and unilaterally inserted the "Non-Pyramiding of Limits" endorsements into its policies and that the endorsements should not be given effect. These issues have been fully briefed in connection with the pending Summary Judgment Motions. Moreover, IICNA has filed a Motion to Amend to address National Union's contention that the Non-Pyramiding of Limits issue was never properly pled as discussed below.

17.    IICNA has filed a Motion to Amend it's Cross Claim to add a claim challenging the validity of the Non-Pyramiding of Limits endorsements  The issues have been fully briefed in connection with the pending Motion to Amend which National Union has opposed.

18.    In its Reply to National Union's opposition to its Motion to Amend,  IICNA raises for the first time a claim that National Union included the Non-Pyramiding of Limits endorsements in the 2000 Policies without notice and hence was obligated to continue the coverage provided in the 1999 policies.  National Union has filed a Motion for Leave to file a

- 24 -

Surreply in opposition to this new claim.  National Union opposes it on the grounds that it is

untimely, not pleaded in IICNA's existing cross claim, or its motion to amend that cross-claim,

and is legally meritless.  National Union's position is fully briefed in its proposed Surreply.

19.    Upon service, IICNA will file a Brief in Opposition to National Union's Motion

for Surreply and, in the alternative, leave to respond to the surreply.

Dated: _____

_____
The Honorable Gregory M. Sleet
United States District Court

CROSS & SIMON, LLC

By: /s/ Christopher Page Simon
    Christopher Page Simon (No. 3697)
    913 N. Market Street, 11th Floor
    Wilmington, DE  19801
    Telephone:    (302) 777-4200
    Facsimile:    (302) 777-4224

    -and-

    George G. Campion, Esquire
    Weiner Lesniak, LLP
    629 Parsippany Road
    Parsippany, NJ  07054-0438
    Telephone:    (973) 403-1100
    Facsimile:    (973) 403-0010

    -and-

- 25 -

Gwynne A. Young, Esquire
Frederick T. Hawkes, Esquire
Carlton Fields, P.A.
P.O. Drawer 190
Tallahassee, FL 32302
Telephone:    (850) 224-1585
Facsimile:    (850) 222-0398

Counsel for Cross-Claim Defendant
National Union Fire Insurance Co. of
Pittsburgh, PA.


BIFFERATO GENTILOTTI LLC

By: /s/ Garvin F. McDaniel
    800 N. King Street, Plaza Level
    Wilmington, Delaware 19801
    Telephone:    (302) 429-1900
    Facsimile:    (302) 429-8600

    -and-

    Lee W. Stremba, Esquire
    Troutman Sanders LLP
    405 Lexington Avenue
    New York, New York 10174
    Telephone:    (212) 704-6000

    Counsel for IHS Liquidating LLC


WETZEL & ASSOCIATES, P.A.

By: /s/ Benjamin C. Wetzel, III
    Benjamin C. Wetzel, III
    The Carriage House, Suite 201
    1100 N. Grant Avenue
    Wilmington, Delaware 19805
    Telephone:    (302) 652-1200
    Facsimile:    (302) 652-1900

    -and-

- 26 -

Francis J. Deasey, Esquire
Ward Rivers, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, Suite 3400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 587-9400

Counsel for Indemnity Insurance Company
of North America

TPA#2402573.1