IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Integrated Health Services, Inc., *et al.*, | ) | Bankruptcy Case No. 00-389 (MFW) |
| | ) | (Chapter 11) |
| Debtors. | ) | |
| | ) | |
| Indemnity Insurance Company of North America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1262 (GMS) |
| | ) | |
| Integrated Health Services, Inc., and ABE Briarwood Corp., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| IHS Liquidating LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-376 (GMS) |
| | ) | |
| Ace Indemnity Insurance Company | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

**I.    INTRODUCTION**

On May 6, 2005, IHS Liquidating, LLC (the "Liquidating LLC") commenced an adversary proceeding in the United States Bankruptcy Court for the District of Delaware against Indemnity Insurance Company of North America ("IICNA") seeking a determination of whether coverage provided to Integrated Health Services ("IHS," of which the Liquidating LLC is a successor) by

IICNA under an excess catastrophe liability policy had been triggered. (See D.I. 6 at 2.) IICNA filed a Motion to Withdraw Reference on June 8, 2005 (D.I. 1), and filed an Answer and Counterclaim to the Liquidating LLC's complaint on July 26, 2005. (See D.I. 6 at 2.) The Liquidating LLC filed a Reply to the counterclaim and a Third Party Complaint against National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and General Star Indemnity Company ("GenStar") seeking a declaration of coverage under policies issued by National Union and GenStar, and also seeking injunctive relief against IICNA. (See id.) IICNA answered the Liquidating LLC's Third Party Complaint and filed a cross-claim complaint against National Union and GenStar on September 19, 2005. (See id.) IICNA moved to amend its cross-claim complaint on October 31, 2006. (D.I. 29.) The court granted the motion by oral order on February 21, 2007, and IICNA filed its amended answer and cross-claim complaint with the court on February 28, 2007. (D.I. 57).

Presently before the court are four motions. The first is the Liquidating LLC's Motion for Partial Summary Judgment seeking summary judgment as to Count I of its complaint (D.I. 21). The second is IICNA's motion for summary judgment (D.I. 94). The third is National Union's cross-motion for summary judgment (D.I. 97). The fourth is IICNA's motion to amend its answer and cross-claim complaint (D.I. 102). Because the later-filed motions resolve issues relevant to the earlier motions, the court will address the motions in reverse chronological order. For the reasons that follow, the Liquidating LLC's motion for partial summary judgment and National Union's motion for summary judgment will both be granted, and both of IICNA's motions will be denied.

## II.     BACKGROUND

This dispute involves the various coverages provided to IHS for the 1999 and 2000 policy years. Reliance National Indemnity Company ("Reliance") provided IHS's primary coverage with a matching deductible policy that provided coverage of either $4,500,000 or $9,000,000 aggregate (the "Reliance Policy"). (D.I. 21 at 7.) National Union provided IHS's next layer of coverage with a policy with a coverage limit of $25,000,000 per occurrence and aggregate in excess of the underlying coverage. (Id. at 9.) GenStar provided the third layer of coverage with a policy with a coverage limit of $25,000,000 per occurrence and aggregate in excess of the underlying coverage. (Id. at 10.) IICNA provided the fourth and final layer of coverage (the "IICNA Policy"). The IICNA Policy had a coverage limit of $50,000,000 per occurrence and aggregate in excess of the underlying coverage. (Id. at 11.)

> Coverage under the IICNA Policy is afforded as follows under Section I(A) of the policy:
>
> WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE (2) *only after all UNDERLYING INSURANCE has been exhausted by payment* of the limits of such insurance for losses arising out of OCCURRENCES that take place during Our policy period and are insured by all of the policies designated in the declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than exhaustion of an aggregate limit of insurance, then We shall not pay *such* loss.

(D.I. 7-5 at 12.)  (emphasis added). Section IV(I) of the policy provides:

> if any limits of liability of UNDERLYING INSURANCE . . . are unavailable due to bankruptcy or insolvency of an underlying insurer . . . then the insurance afforded by this policy *shall apply in the same manner as if such underlying insurance and limits of liability had been in effect, available, so maintained and unchanged.*

(Id. at 15.)  (emphasis added).

National Union issued two policies to IHS for the 1999 and 2000 policy years. The first (the "Main Policy") was issued to IHS, and contained limits of $25 million per occurrence and aggregate.

3

(D.I. 97 at 5.) The second (the "Lester Policy") was issued to IHS of Lester, Inc., a subsidiary of IHS, with a $2 million limit. (Id.) The 2000 Main Policy contained the following endorsement:

### Non-Pyramiding of Limits Endorsement

If damages covered by this policy are also covered in whole or in part by Policy Numbers 357-43-86 [the 2000 Lester Policy] and 357-43-88, our total Limits of Insurance under all policies combined shall be:

| | |
|---|---|
| $25,000,000 | Each Occurrence Limit |
| $25,000,000 | Each Medical Incident Limit |
| $25,000,000 | Products Completed Operations Aggregate Limit |
| $25,000,000 | Medical Professional Aggregate Limit |
| $25,000,000 | General Aggregate Limit |

(Id. at 5-6.) The 2000 Lester Policy contains an identical anti-pyramiding endorsement, except that it refers to the IHS 2000 Main Policy number rather than the Lester Policy number. (Id. at 6.) These provisions (the "Non-Pyramiding endorsements") expressly limit the combined coverage for all IHS entities to $25 million for the 2000 policy period. The Non-Pyramiding endorsements did not appear in the 1999 National Union policies, but appeared in both of the 2000 policies.

In its motion for partial summary judgment, the Liquidating LLC seeks a determination that IICNA's policy obligates IICNA to pay professional liability and general liability claims that have been liquidated to the extent that such liquidated claims are in excess of the applicable per occurrence or aggregate limits of the underlying insurance coverage of IHS for the 1999 policy year. (D.I. 21 at 24.) IICNA opposes the motion by arguing that the IICNA Policy has not been triggered, because the coverage limits of the Reliance Policy were not exhausted by actual payment, and because the limits of the underlying coverage were improperly exhausted. (D.I. 6 at 4.)

IICNA has also filed a cross-claim complaint against National Union, and the remaining three motions relate to that cross-claim complaint. IICNA argues in its own motion for summary judgment that the Non-Pyramiding endorsements are not applicable to National Union's 2000 Main Policy and requests that the court declare that "IICNA is entitled to the limits of the 2000 Lester Policy." (D.I. 94, Wherefore clause.) In practical terms, IICNA is asserting that the limits of National Union's coverage for the 2000 policy year should be $27,000,000 (the sum of the limits of the 2000 Main Policy and the 2000 Lester Policy) instead of $25,000,000 (the limits of the 2000 Main Policy), and is asking the court to order National Union to reimburse IICNA for the $2,000,000 differential created by the Non-Pyramiding endorsements.

National Union opposed IICNA's motion for summary judgment and filed its own cross-motion for summary judgment on the grounds that IICNA's claim relating to the Non-Pyramiding endorsements was not pled in IICNA's amended cross-claim complaint. (D.I. 100 at 11-12; D.I. 97 at 10.) National Union further contends that because IICNA's counsel stated on the record that all of IICNA's claims against National Union except the claim relating to the Non-Pyramiding endorsements were being withdrawn, National Union is entitled to summary judgment on the entirety of IICNA's cross-claim complaint. (D.I. 97 at 7-8.) Shortly after National Union filed its motion for summary judgment, IICNA filed a motion to amend in which it asked for leave to replace all of the claims in the existing cross-claim complaint with a claim challenging the validity of the Non-Pyramiding endorsements. (D.I. 102.)

### III. STANDARD OF REVIEW

#### A. Motion to Amend

5

Motions to amend under Rule 15(b) of the Federal Rules of Civil Procedure are made "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties." The issue of the Non-Pyramiding endorsements has not been tried by the parties, nor has National Union given its express or implied consent to try these issues. Consequently, the court reads IICNA's motion as a motion to amend under Rule 15(a) rather than a motion to amend to conform to evidence under Rule 15(b).[1]

Under Rule 15(a), permission to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same). Nevertheless, a court can deny a motion to amend if the motion is motivated by bad faith or if granting the motion will result in undue delay or prejudice to the opposing party. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). Furthermore, the doctrine of futility allows the court to refuse any amendment that fails to state a cause of action. *See Foman,* 371 U.S. at 182.

### B.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 392 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d

---

[1] IICNA now appears to concur with this reading of its motion, since IICNA suggests in its reply brief that the provisions of 15(a) should apply to its motion to amend. (See D.I. 110 at 10.)

at 393. A fact is material if it might affect the outcome of the suit. *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.*; *see also Assaf v. Fields*, 178 F.3d 170, 173-74 (3d Cir. 1999). If the moving party has demonstrated an absence of material fact, the non-moving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue. *Anderson*, 477 U.S. at 249.

## IV.   DISCUSSION

### A.   Motion to Amend

A court may deny a motion to amend where the movant has unduly delayed in bringing the motion. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). While delay alone is usually "an insufficient ground to deny leave to amend . . . at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Id.* The plaintiff's delay may become undue after a motion for summary judgment is filed where the movant has had previous opportunities to amend a complaint, but chose not to do so. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (denying leave to amend where the plaintiff "offered no explanation for waiting until it was faced with a summary judgment motion before attempting to add its promissory estoppel

7

claim" although claim was previously available). In particular, if the requested amendment is based upon facts known to the plaintiff at the time the previous complaint was amended, the amendment is disfavored. *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (denying leave to amend where summary judgment was pending and amendment was not the product of newly discovery facts, but facts known at the time of the previous complaint).

Count II of the existing cross-claim complaint requests that the court require National Union to replenish the underlying policies in amounts equal to:

> (a) all amounts spent by National Union in connection with the defense of lawsuits and claims asserted against IHS of Lester and allocated toward the exhaustion of the 2000 IHS Main Policy's Limits of Liability . . .
> (c) all amounts spent by National Union . . . for Hamlin & Burton's administration of the 2000 IHS Main Policy . . . ; and
> (d) all amounts spent by National Union . . . in payment of Chapter 400 fees.[2]

(D.I. 57 at 30-31.)

IICNA knew or should have known of the existence of the Non-Pyramiding endorsements at the time it filed its cross-claim complaint. In fact, as recently as February 28, 2007, IICNA filed a copy of its amended answer with the court that quoted numerous other provisions of the 2000 policy, but never made any mention of the Non-Pyramiding endorsements that it now seeks to invalidate. (See D.I. 57 at 16-17.)

In Count II of the existing cross-claim complaint, IICNA bases its claim that National Union improperly exhausted its 2000 policies solely on the allegation that the 2000 Main Policy expressly excludes coverage for IHS of Lester. (Id. ¶¶ 101-104.) National Union therefore had no notice from the cross-claim complaint that IICNA might challenge the validity of the Non-Pyramiding

---

[2] Part (b) of the prayer for relief pertained only to GenStar, and all charges against GenStar have been dismissed by stipulation of the parties. (See D.I. 87.)

endorsements, nor that it would be required to litigate on any specific provision of the 2000 policies other than the express exclusion clause.

IICNA asserts in its reply brief that National Union did not allow discovery to proceed on the 2000 policies until February 20, 2007. (D.I. 110 at 5.) If IICNA believed, however, that the Non-Pyramiding endorsements could become relevant to its claim, it could have mentioned the endorsements in its cross-claim complaint or phrased its claims in broader terms so that the claims might encompass the endorsements. Instead, IICNA made no mention of the Non-Pyramiding endorsements in its cross-claim complaint, and Count II of the cross-claim complaint was phrased very narrowly so that only the exclusion provision was implicated. (See D.I. 57 at 30-31.) IICNA must bear the consequences of its choice to phrase its cross-claim complaint in such narrow terms. IICNA did not allege the invalidity of the Non-Pyramiding endorsements in any pleading or motion filed with this court in connection with its cross-claim against National Union until IICNA filed its motion for summary judgment on June 25, 2007, after the discovery period had ended. The motion to amend was filed only after National Union filed its own motion for summary judgment and asserted that the existing cross-claim complaint did not raise the issue of the validity of the Non-Pyramiding endorsements. (See D.I. 97 at 10.)

Given these facts, the delay in filing the motion to amend is inexcusable. The proposed amended cross-claim complaint would effectively replace all of the existing claims in the existing cross-claim complaint with a new claim that was not raised until after the conclusion of the discovery period. The court finds that granting the motion to amend under these circumstances would be unduly prejudicial to National Union, and would not serve the interests of justice. The motion to amend is therefore denied.

### B.     IICNA's Motion for Summary Judgment

In its motion for summary judgment, IICNA does not ask the court to grant relief for any of the three remaining categories of expenditures articulated in its existing cross-claim. Instead, IICNA requests in its motion for summary judgment that the court declare that the Non-Pyramiding endorsements are "not applicable as they are not part of the policies" and that "IICNA is entitled to the limits of the 2000 Lester Policy." (D.I. 94, Wherefore Clause.) In effect, IICNA contends that the Non-Pyramiding endorsements are invalid and should not be considered a part of National Union's 2000 policies.

National Union argues that no challenge to the Non-Pyramiding endorsement has been pled in the existing cross-claim, and that the relief requested by IICNA in its motion for summary judgment is not the same as that requested in its cross-claim complaint. (D.I. 100 at 11.) The court agrees. As discussed above, the claim challenging the validity of the Non-Pyramiding endorsement was not present in the copy of the cross-claim complaint that IICNA filed with the court on February 27, 2007, and the claim was not present in any pleading or motion filed with the court until IICNA filed its motion for summary judgment on June 25, 2007.

The claim relating to the invalidity of the Non-Pyramiding endorsements has not been pled, and summary judgment cannot be granted for unpled claims. *See Aldinger v. Spectrum Control, Inc.*, 207 F. App'x 177, 180 n.1, 181 (3d Cir. 2006) (affirming the district court's dismissal of a claim on the grounds that the party had not raised the issue in its pleadings, but instead first raised the issue in a brief filed in opposition to a motion for summary judgment); *cf. White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) (holding that a party could not pursue an employment discrimination claim under one article of a labor agreement when the complaint was

framed exclusively in terms of another article of the same agreement).  Consequently, IICNA's motion for summary judgment is denied.

### C.  National Union's Motion for Summary Judgment

National Union moves to dismiss IICNA's entire cross-claim complaint on the grounds that all claims in the existing cross-claim complaint have been withdrawn, and that the claim based on the Non-Pyramiding endorsements has not been pled.  IICNA contends that summary judgment would be premature given IICNA's motion to amend, and since the claim based on the Non-Pyramiding endorsements has, in any case, been sufficiently pled in its existing cross-claim complaint. (D.I. 105 at 14-15.)

For the reasons explained above, the court rejects IICNA's contention that its existing cross-claim complaint pleads its claim based on the Non-Pyramiding endorsements, and denies IICNA's motion to amend.  The court also finds that the existing claims stated in IICNA's cross-claim complaint have been withdrawn, since IICNA's counsel stated on the record that "[e]very claim has been withdrawn except the claim with respect to the non pyramiding endorsement." (Deposition of Dennis Hecht, D.I. 98-2 at 10.)  Furthermore, in its answering brief to National Union's motion for summary judgment, IICNA does not dispute that these claims had all been withdrawn.  For these reasons, the court finds that all of IICNA's remaining claims against National Union in IICNA's amended cross-claim complaint have been withdrawn.  The court therefore will grant National Union's motion for summary judgment.

### D.  The Liquidating LLC's Motion for Partial Summary Judgment

In its brief in opposition to the Liquidating LLC's motion, IICNA contends that the language of Section I(A) makes exhaustion of all underlying coverage through actual cash payments an

absolute condition precedent to the attachment of IICNA's policy. IICNA then asserts that since Reliance's coverage was not exhausted due to Reliance's insolvency, and since the coverage limits of the National Union and GenStar policies were allegedly "improperly exhausted," IICNA has no obligation to make any payments to the plaintiff under the terms of the IICNA Policy.

The Liquidating LLC admitted in the brief accompanying its motion that Section I(A) relieves IICNA from any obligation to "drop down" to cover unpaid claims within the underlying layers of coverage. (D.I. 21 ¶ 59.) The Liquidating LLC also argues, however, that when Section I(A) is read together with Section IV(I), the policy must be interpreted such that Reliance's insolvency does not affect IICNA's obligation to pay claims within IICNA's *own* layer of coverage. The court agrees with the Liquidating LLC's interpretation of the policy.

In attempting to resolve a dispute between parties regarding the proper interpretation of the language of an insurance policy, a court should first seek to determine the parties' intent from the language of the insurance contract itself. *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 388 (D. Del. 2002) (internal citations omitted). In so doing, the court must construe the policy "as a whole." *Id.* All provisions should be given meaning and the policy should not be interpreted to render any part superfluous. *Id.*

In this case, accepting IICNA's interpretation of Section I(A) would require reading Section IV(I) out of the policy. The meaning of Section IV(I) is plain and unambiguous: the bankruptcy or insolvency of an underlying insurer, such as Reliance, does not affect IICNA's obligations with respect to claims within its own layer of coverage. Reading the policy so that Reliance's insolvency relieves IICNA of its obligation to pay out any claims thus would be wholly inconsistent with Section IV(I). Consequently, to the extent that Reliance was unable to pay out its claims as a result

of its insolvency, the failure of Reliance to exhaust its claims through actual payments does not affect IICNA's obligations to IHS for claims within IICNA's own layer of coverage.

IICNA's claim that the underlying policies have been improperly exhausted does not affect the determination of the Liquidating LLC's motion. Even if claims against National Union or GenStar remained, IICNA's contention that the coverage limits of the underlying policies were improperly exhausted would not affect the determination of the narrow declaratory judgment that the Liquidating LLC seeks. The only issues before the court on the present motion relate to IICNA's policy with IHS, and under that policy, IICNA is obligated to pay claims if the coverage limits of all underlying insurance have been exhausted by payment or, as in the case of Reliance, could not be exhausted by payment due to bankruptcy or insolvency. (See D.I. 7-5 at 12.) It is undisputed that the coverage limits of the National Union and GenStar policies have been exhausted by actual payment, and the terms of the policy do not require an inquiry whether the payments were proper. Furthermore, all of IICNA's claims against GenStar have been dismissed and, as discussed above, IICNA's claims against National Union asserting that its policies were improperly exhausted have either been withdrawn or were not pled. As a result, IICNA's allegation that the underlying insurance was improperly exhausted does not alter the determination of IHS's motion.

The court also notes that IICNA spent several pages in its brief characterizing the plaintiff's motion for partial summary judgment as an attempt to force IICNA to "drop down" and cover unpaid portions of the underlying insurance coverage, and arguing that IICNA has no such duty to drop down. Even a cursory review of the plaintiff's motion, however, reveals that the plaintiff is not requesting that IICNA drop down to provide coverage within a lower level of insurance. On the contrary, the Liquidating LLC merely asks IICNA to pay the portions of outstanding claims that

*exceed* the coverage limits of all underlying insurance -- in other words, those portions of the claims that would be within IICNA's own layer of coverage. That request is wholly consistent with the terms of the IICNA Policy.

For these reasons, to the extent that Reliance was unable to pay out its claims as a result of its insolvency or bankruptcy, the court declares that the IICNA Policy obligates IICNA to pay claims that have been liquidated by judgment or settlement to the extent that such claims exceed the per occurrence and aggregate limits of liability set forth in the Reliance, National Union, and GenStar policies, regardless of whether the Reliance coverage has been exhausted by actual cash payments of claims and defense costs.

## V.   CONCLUSION

For the reasons stated above, the court denies IICNA's Motion to Amend (D.I. 102) and IICNA's Motion for Summary Judgment (D.I. 94), and grants National Union's motion for Summary Judgment (D.I. 96) and the Liquidating LLC's Motion for Partial Summary Judgment (D.I. 21).

Dated: September 12, 2007                    /s/ Gregory M. Sleet
                                             CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) ) | |
| Integrated Health Services, Inc., *et al.*, | ) ) | Bankruptcy Case No. 00-389 (MFW) (Chapter 11) |
| Debtors. | ) ) ) | |
| | ) ) | |
| Indemnity Insurance Company of North America, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 04-1262 (GMS) |
| Integrated Health Services, Inc., and ABE Briarwood Corp., | ) ) ) | |
| Defendants. | ) ) ) | |
| | ) ) | |
| IHS Liquidating LLC | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-376 (GMS) |
| Ace Indemnity Insurance Company | ) ) ) | |
| Defendants. | ) ) | |

## **ORDER**

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY ORDERED that:

1. The Liquidating LLC's Motion for Partial Summary Judgment (D.I. 21) is GRANTED;

2. IICNA 's Motion for Summary Judgment (D.I. 94) is DENIED;

3. National Union's Motion for Summary Judgment (D.I. 96) is GRANTED;

4. IICNA's Motion to Amend (D.I. 102) is DENIED.

Dated: September 12, 2007  /s/ Gregory M. Sleet
CHIEF, UNITED STATES DISTRICT JUDGE